# 23-0793-CV

## United States Court of Appeals

*for the*

## Second Circuit

E. JEAN CARROLL,

*Plaintiff-Appellee,*

– v. –

DONALD J. TRUMP,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 5 of 12 (Pages A-1121 to A-1400)

ROBERTA A. KAPLAN
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
– and –
JOSHUA A. MATZ
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883

*Attorneys for Plaintiff-Appellee*

TODD BLANCHE
EMIL BOVE
BLANCHE LAW
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Attorneys for Defendant-Appellant*

i

## TABLE OF CONTENTS FOR JOINT APPENDIX

**Page**

District Court Docket Entries (20-cv-07311-LAK)
(hereinafter "*Carroll I*")......................................... A-1

District Court Docket Entries (22-cv-10016-LAK)
(hereinafter "*Carroll II*") ...................................... A-32

### **Documents Submitted in *Carroll I***

Exhibit Annexed to Declaration of Roberta A.
Kaplan, for Plaintiff, in Opposition to
Defendant's Motion to Substitute, dated
October 5, 2020
(Declaration omitted herein):

Exhibit A to Kaplan Declaration -
Letter from Roberta A. Kaplan to Marc E.
Kasowitz, dated August 10, 2020, with Enclosure     A-60

Memorandum of Law, by Defendant, in Support of
Motions *in Limine*, dated February 16, 2023......... A-66

Plaintiff's Notice of Omnibus Motion *in Limine*,
dated February 16, 2023 ....................................... A-87

Declaration of Roberta A. Kaplan, for Plaintiff,
in Support of Omnibus Motion *in Limine*,
dated February 16, 2023 ....................................... A-89

Exhibit 1 to Kaplan Declaration -
Excerpts from Deposition Transcript of Lisa
Birnbach, dated September 21, 2022 ..................... A-92

Exhibit 2 to Kaplan Declaration -
Excerpts from Deposition Transcript of Carol
Martin, dated October 18, 2022 ............................ A-104

ii

**Page**

Exhibit 3 to Kaplan Declaration -
Excerpts from Deposition Transcript of Donald J.
Trump, dated October 19, 2022 ............................ A-112

Exhibit 4 to Kaplan Declaration -
Excerpts from Deposition Transcript of Natasha
Stoynoff, dated October 13, 2022 ......................... A-140

Exhibit 5 to Kaplan Declaration -
Excerpts from Deposition Transcript of Jessica
Leeds, dated October 13, 2022 ............................. A-148

Exhibit 6 to Kaplan Declaration -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 ........................... A-155

Exhibit 7 to Kaplan Declaration -
Email from Daniel Bucheli to Tim Murtaugh and
Others, dated July 8, 2019, with Attachment ......... A-158

Exhibit 8 to Kaplan Declaration -
Expert Report of Ashlee Humphreys, Ph.D, dated
October 14, 2022 .................................................. A-167

Exhibit 9 to Kaplan Declaration -
Expert Rebuttal Report of Robert J. Fisher, dated
November 14, 2022 ................................................ A-308

Exhibit 10 to Kaplan Declaration -
Excerpts from Deposition Transcripts of
Robert J. Fisher, dated December 14, 2022,
and December 20, 2022 ......................................... A-323

Exhibit 11 to Kaplan Declaration -
Defendant's Rule 26(a)(1) Initial Disclosures,
dated June 8, 2022 ................................................ A-405

iii

**Page**

Exhibit 12 to Kaplan Declaration -
Defendant's Supplemental Rule 26(a)(1) Initial
Disclosures, dated September 19, 2022 ................ A-410

Exhibit 13 to Kaplan Declaration -
Defendant's Rule 26(a)(1) Initial Disclosures in
*Carroll II*, dated January 9, 2023 .......................... A-414

Exhibit 14 to Kaplan Declaration -
Defendant's Supplemental Responses to
Plaintiff's First Set of Interrogatories, dated
August 23, 2022 ...................................................... A-420

Exhibit 15 to Kaplan Declaration -
Email from Michael Madaio to Matthew Craig
and Others, dated August 24, 2022 ....................... A-424

Exhibit 16 to Kaplan Declaration -
Twitter Post, dated June 21, 2019 ......................... A-427

Exhibit 17 to Kaplan Declaration -
Excerpts from Deposition Transcript of Stephanie
Grisham, dated October 6, 2022 ........................... A-429

Declaration of Alina Habba, for Defendant,
in Opposition to Plaintiff's Omnibus Motion *in
Limine*, February 23, 2023 .................................... A-439

Exhibit A to Habba Declaration -
Excerpts from Deposition Transcript of Natasha
Stoynoff, dated October 13, 2022 ......................... A-441

Exhibit B to Habba Declaration -
Excerpts from Deposition Transcript of Jessica
Leeds, dated October 13, 2022 ............................. A-445

iv

**Page**

Exhibit C to Habba Declaration -
Expert Rebuttal Report of Robert J. Fisher, dated
November 14, 2022
(Reproduced herein at pp. A-308-A-322)

Exhibit D to Habba Declaration -
Excerpts from Deposition Transcripts of
Robert J. Fisher, dated December 14, 2022, and
December 20, 2022 .................................................. A-449

Exhibit E to Habba Declaration -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 ........................... A-463

Exhibit F to Habba Declaration -
Plaintiff's Responses and Objections to
Defendant's First Set of Interrogatories, dated
June 27, 2022 ......................................................... A-470

Exhibit G to Habba Declaration -
Plaintiff's Second Supplemental Rule 26(a)(1)
Disclosures, dated October 14, 2022 ..................... A-487

Exhibit H to Habba Declaration -
Plaintiff's Third Supplemental Rule 26(a)(1)
Disclosures, dated January 6, 2023 ....................... A-493

Reply Declaration of Roberta A. Kaplan, for
Plaintiff, in Further Support of Omnibus Motion
*in Limine*, dated March 9, 2023 ............................ A-500

Exhibit 1 to Kaplan Reply Declaration -
Excerpts from Deposition Transcript of
Robert J. Fisher, dated December 14, 2022 ........... A-502

Exhibit 2 to Kaplan Reply Declaration -
Excerpts from Deposition Transcript of Robert J.
Fisher, dated February 6, 2023 .............................. A-506

v

**Page**

Letter from Roberta A. Kaplan to the Honorable
   Lewis A. Kaplan, dated March 17, 2023 ............... A-509

   Annexed to Letter -
   Proposed Order ...................................................... A-511

### **Documents Submitted in *Carroll II***

Complaint and Demand for a Jury Trial, dated
   November 24, 2022 ................................................. A-513

Answer, dated January 27, 2023 ............................... A-542

First Amended Answer, dated February 10, 2023...... A-556

Defendant's Letter Motion for Discovery, dated
   February 10, 2023 ................................................. A-571

   Exhibit A to Defendant's Letter Motion -
   DNA Report, dated January 8, 2020 ..................... A-574

   Exhibit B to Defendant's Letter Motion -
   Twitter Post, dated February 25, 2021 .................. A-602

Plaintiff's Letter Response in Opposition to
   Defendant's Motion for Discovery, dated
   February 10, 2023................................................. A-607

Defendant's Letter Reply in Further Support of
   Motion for Discovery, dated February 10, 2023.... A-612

Transcript of Conference, dated February 7, 2023 .... A-614

Notice of Motion, by Defendant, for an Order
   Granting Partial Summary Judgment, dated
   February 23, 2023................................................. A-635

Declaration of Matthew G. DeOreo, for Defendant,
   in Support of Motion for Partial Summary
   Judgment, dated February 23, 2023...................... A-637

vi

**Page**

Exhibit A to DeOreo Declaration -
Complaint and Jury Demand filed in *Carroll I*,
dated November 4, 2019 ........................................ A-639

Exhibit B to DeOreo Declaration -
Answer filed in *Carroll I*, dated January 23, 2020.. A-668

Exhibit C to DeOreo Declaration -
Complaint and Demand for a Jury Trial filed in
*Carroll II*, dated November 24, 2022
(Reproduced herein at pp. A-513-A-541)

Exhibit D to DeOreo Declaration -
First Amended Answer filed in *Carroll II*, dated
February 10, 2023
(Reproduced herein at pp. A-556-A-570)

Exhibit E to DeOreo Declaration -
Transcript of Plaintiff's Interview with Anderson
Cooper, dated June 24, 2019 ................................. A-681

Exhibit F to DeOreo Declaration -
"EXCLUSIVE: Trump vehemently denies E.
Jean Carroll allegation, says 'she's not my type'"
(*The Hill*, June 24, 2019) ...................................... A-707

Memorandum of Law, by Defendant, in Support of
Motion for Partial Summary Judgment, dated
February 23, 2023 ................................................. A-713

Defendant's Local Civil Rule 56.1 Statement, dated
February 23, 2023 ................................................. A-735

Defendant's Notice of Motions *in Limine*, dated
February 23, 2023 ................................................. A-745

Memorandum of Law, by Defendant, in Support of
Motions *in Limine*, dated February 23, 2023......... A-747

vii

**Page**

Declaration of Alina Habba, for Defendant,
in Support of Motions *in Limine*, dated
February 23, 2023 .................................................. A-773

Exhibit A to Habba Declaration -
Excerpts from Deposition Transcript of Natasha
Stoynoff, dated October 13, 2022 .......................... A-775

Exhibit B to Habba Declaration -
Excerpts from Deposition Transcript of Jessica
Leeds, dated October 13, 2022 .............................. A-779

Exhibit C to Habba Declaration -
Plaintiff's Second Supplemental Rule 26(a)(1)
Disclosures, dated October 14, 2022
(Reproduced herein at pp. A-487-A-492)

Exhibit D to Habba Declaration -
Plaintiff's Third Supplemental Rule 26(a)(1)
Disclosures, dated January 6, 2023
(Reproduced herein at pp. A-493-A-499)

Plaintiff's Notice of Omnibus Motion *in Limine*,
dated February 23, 2023 ........................................ A-783

Declaration of Roberta A. Kaplan, for Plaintiff,
in Support of Omnibus Motion *in Limine*,
dated February 23, 2023 ........................................ A-785

Exhibit 1 to Kaplan Declaration -
Excerpts from Deposition Transcript of Robert J.
Fisher, dated February 6, 2023 .............................. A-786

Exhibit 2 to Kaplan Declaration -
Expert Report of Robert J. Fisher, dated
January 30, 2023 .................................................. A-863

viii

**Page**

Exhibit 3 to Kaplan Declaration -
Expert Report of Ashlee Humphreys, Ph.D, dated
January 9, 2023 ....................................................   A-891

Declaration of Matthew G. DeOreo, for Defendant,
in Opposition to Plaintiff's Omnibus Motion
*in Limine*, dated March 9, 2023 ............................   A-1018

Exhibit 1 to DeOreo Declaration -
Memorandum of Law, by Defendant, in Support
of Motions *in Limine* filed in *Carroll I*, dated
February 16, 2023
(Reproduced herein at pp. A-66-A-86)

Exhibit 2 to DeOreo Declaration -
Declaration of Alina Habba, for Defendant, in
Support of Motions *in Limine* filed in *Carroll I*,
dated February 16, 2023 ........................................   A-1020

Exhibit 3 to DeOreo Declaration -
Excerpts from Deposition Transcript of Natasha
Stoynoff, dated October 13, 2022 (Habba
Exhibit A).............................................................   A-1023

Exhibit 4 to DeOreo Declaration -
Excerpts from Deposition Transcript of Jessica
Leeds, dated October 13, 2022 (Habba
Exhibit B).............................................................   A-1027

Exhibit 5 to DeOreo Declaration -
Memorandum of Law, by Defendant, in
Opposition to Plaintiff's Omnibus Motion
*in Limine* filed in *Carroll I*, dated
February 23, 2023 .................................................   A-1031

ix

Page

Exhibit 6 to DeOreo Declaration -
Declaration of Alina Habba, for Defendant,
in Opposition to Plaintiff's Omnibus Motion
*in Limine* filed in *Carroll I*, dated
February 23, 2023
(Reproduced herein at pp. A-439-A-440)

Exhibit 7 to DeOreo Declaration -
Excerpts from Deposition Transcript of Natasha
Stoynoff, dated October 13, 2022 (Habba
Exhibit A)
(Reproduced herein at pp. A-441-A-444)

Exhibit 8 to DeOreo Declaration -
Excerpts from Deposition Transcript of Jessica
Leeds, dated October 13, 2022 (Habba
Exhibit B)
(Reproduced herein at pp. A-445-A-448)

Exhibit 9 to DeOreo Declaration -
Excerpts from Deposition Transcripts of
Robert J. Fisher, dated December 14, 2022, and
December 20, 2022 (Habba Exhibit D)
(Reproduced herein at pp. A-449-A-462)

Exhibit 10 to DeOreo Declaration -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 (Habba
Exhibit E)
(Reproduced herein at pp. A-463-A-469)

Exhibit 11 to DeOreo Declaration -
Reply Memorandum of Law, by Defendant,
in Further Support of Motions *in Limine* filed
in *Carroll I*, dated March 2, 2023 .......................... A-1065

x

**Page**

Declaration of Shawn G. Crowley, for Plaintiff, in
Opposition to Defendant's Motions *in Limine*,
dated March 9, 2023 .............................................  A-1080

Exhibit 1 to Crowley Declaration -
Plaintiff's Rule 26(a)(1) Initial Disclosures, dated
January 9, 2023 .......................................................  A-1082

Exhibit 2 to Crowley Declaration -
Video of Deposition of Natasha Stoynoff, taken
October 13, 2022
(All parties are already in possession of video
exhibit) ....................................................................  A-1089

Exhibit 3 to Crowley Declaration -
Video of Deposition of Jessica Leeds, taken
October 13, 2022
(All parties are already in possession of video
exhibit) ....................................................................  A-1091

Plaintiff's Response to Defendant's Local Civil
Rule 56.1 Statement, dated March 9, 2023............  A-1093

Declaration of Roberta A. Kaplan, for Plaintiff, in
Opposition to Defendant's Motion for Partial
Summary Judgment, dated March 9, 2023 ............  A-1108

Exhibit 1 to Kaplan Declaration -
Excerpts from Deposition Transcript of Donald J.
Trump, dated October 19, 2022 ............................  A-1110

Exhibit 2 to Kaplan Declaration -
Truth Social Post, dated October 12, 2022 ............  A-1127

Exhibit 3 to Kaplan Declaration -
Expert Report of Ashlee Humphreys, Ph.D, dated
January 9, 2023
(Reproduced herein at pp. A-891-A-1017)

xi

**Page**

Reply Declaration of Roberta A. Kaplan, for
    Plaintiff, in Further Support of Omnibus Motion
    *in Limine*, dated March 16, 2023 .......................... A-1130

Exhibit 1 to Kaplan Reply Declaration -
Defendant's Rule 26(a)(1) Initial Disclosures,
dated January 9, 2023
(Reproduced herein at pp. A-414-A-419)

Exhibit 2 to Kaplan Reply Declaration -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 ........................... A-1132

Exhibit 3 to Kaplan Reply Declaration -
Excerpts from Deposition Transcript of Robert J.
Fisher, dated February 6, 2023 ............................. A-1136

Exhibit 4 to Kaplan Reply Declaration -
Expert Report of Robert J. Fisher, dated
January 30, 2023
(Reproduced herein at pp. A-863-A-890)

Exhibit 5 to Kaplan Reply Declaration -
Excerpts from Deposition Transcript of Robert J.
Fisher, dated December 20, 2022 ......................... A-1153

Reply Declaration of Alina Habba, for Defendant,
    in Further Support of Motions *in Limine*, dated
    March 16, 2023 ....................................... A-1160

Exhibit A to Habba Reply Declaration -
Joint Proposed Discovery Plan, dated
December 19, 2022 ................................................ A-1162

Exhibit B to Habba Reply Declaration -
Plaintiff's Rule 26(a)(1) Initial Disclosures, dated
January 9, 2023
(Reproduced herein at pp. A-1082-A-1088)

xii

**Page**

Defendant's Letter Motion to Reopen Discovery,
  dated April 13, 2023 ............................................... A-1175

Exhibit A to Letter Motion -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 ........................... A-1185

Exhibit B to Letter Motion -
Letter from Roberta A. Kaplan to Alina Habba,
dated April 10, 2023 ............................................... A-1190

Exhibit C to Letter Motion -
Letter from Roberta A. Kaplan to Chad Seigel,
dated April 11, 2023.............................................. A-1193

Exhibit D to Letter Motion -
Defendant's First Set of Interrogatories filed in
*Carroll I*, dated May 27, 2022 .............................. A-1196

Exhibit E to Letter Motion -
Plaintiff's Responses and Objections to
Defendant's First Set of Interrogatories filed in
*Carroll I*, dated June 27, 2022
(Reproduced herein at pp. A-470-A-486)

Exhibit F to Letter Motion -
Excerpts from Deposition Transcript of Donald J.
Trump, dated October 19, 2022 ............................ A-1207

Plaintiff's Letter Response to Defendant's Motion
  to Reopen Discovery, dated April 13, 2023 ........... A-1213

Exhibit A to Letter Response -
Letter from Roberta A. Kaplan to Alina Habba,
dated April 10, 2023
(Reproduced herein at pp. A-1190-A-1192)

xiii

**Page**

Exhibit B to Letter Response -
Letter from Roberta A. Kaplan to Chad Seigel,
dated April 11, 2023
(Reproduced herein at pp. A-1193-A-1195)

Exhibit C to Letter Response -
Excerpts from Deposition Transcript of E. Jean
Carroll, dated October 14, 2022 ........................... A-1218

Exhibit D to Letter Response -
Defendant's Request for the Production of
Documents, dated August 21, 2020 ...................... A-1221

Exhibit E to Letter Response -
Plaintiff's Responses and Objections to
Defendant's First Request for Production of
Documents, dated September 8, 2020 .................. A-1237

Exhibit F to Letter Response -
Defendant's Request for the Production of
Documents filed in *Carroll I*, dated May 27, 2022    A-1263

Exhibit G to Letter Response -
Defendant's First Set of Interrogatories filed in
*Carroll I*, dated May 27, 2022
(Reproduced herein at pp. A-1196-A-1206)

Exhibit H to Letter Response -
Plaintiff's Responses and Objections to
Defendant's Request for Production of
Documents filed in *Carroll I*, dated
June 27, 2022 ....................................................... A-1278

Exhibit I to Letter Response -
Plaintiff's Responses and Objections to
Defendant's First Set of Interrogatories filed in
*Carroll I*, dated June 27, 2022
(Reproduced herein at pp. A-470-A-486)

xiv

**Page**

Exhibit J to Letter Response -
Plaintiff's Responses and Objections to
Defendant's Request for Production of
Documents, dated January 23, 2023 ...................... A-1318

Exhibit K to Letter Response -
Excerpts from Deposition Transcript of Edgar P.
Nace, M.D., dated March 15, 2023........................ A-1359

Letter from Joseph Tacopina to the Honorable
Lewis A. Kaplan, dated April 22, 2023 ................. A-1367

Exhibit A to Letter -
Transcript of Plaintiff's Interview with Natasha
Stoynoff, dated June 22, 2020 ............................... A-1370

Letter from Roberta A. Kaplan to the Honorable
Lewis A. Kaplan, dated April 23, 2023 ................. A-1416

Trial Transcript, dated April 25, 2023........................ A-1420

Trial Transcript, dated April 26, 2023........................ A-1524

Trial Transcript, dated April 27, 2023........................ A-1697

Trial Transcript, dated May 1, 2023........................... A-1851

Trial Transcript, dated May 2, 2023........................... A-2036

Trial Transcript, dated May 3, 2023........................... A-2210

Trial Transcript, dated May 4, 2023........................... A-2375

Trial Transcript, dated May 8, 2023........................... A-2567

Trial Transcript, dated May 9, 2023........................... A-2771

Parties' Trial Exhibits:

PX-1          Twitter Post, dated June 21, 2019 ............ A-2839

xv

| | | Page |
|---|---|---|
| PX-2 | "Remarks by President Trump before Marine One Departure" (Office of the Press Secretary, June 22, 2019) | A-2840 |
| PX-3 | "EXCLUSIVE: Trump vehemently denies E. Jean Carroll allegation, says 'she's not my type'" (*The Hill*, June 24, 2019) | A-2853 |
| PX-4 | Truth Social Post, dated October 12, 2022 | A-2858 |
| PX-6 | "Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life." (New York Magazine, June 21, 2019) | A-2859 |
| PX-12 | Photograph | A-2879 |
| PX-22 | Sixth Floor Construction Plan of Bergdorf Goodman | A-2880 |
| PX-24 | Sixth Floor Construction Plan of Bergdorf Goodman | A-2881 |
| PX-25 | Video Excerpt from Defendant's Interview with Billy Bush (All parties are already in possession of video exhibit) | A-2882 |
| PX-25-T | Transcript of Video Excerpt from Defendant's Interview with Billy Bush | A-2883 |
| PX-26 | Video Excerpt from Presidential Debate (All parties are already in possession of video exhibit) | A-2885 |

xvi

**Page**

PX-26-T    Transcript of Video Excerpt from
Presidential Debate .................................   A-2886

PX-29    Video Excerpt from Defendant's Speech
at Campaign Rally
(All parties are already in possession of
video exhibit) ...........................................   A-2887

PX-29-T    Transcript of Video Excerpt from
Defendant's Speech at Campaign Rally...   A-2888

PX-31    Video Excerpt from Defendant's Speech
(All parties are already in possession of
video exhibit) ...........................................   A-2889

PX-31-T    Transcript of Video Excerpt from
Defendant's Speech.................................   A-2890

PX-46    Twitter Post, dated November 15, 2022...   A-2891

PX-48    Twitter Post, dated December 12, 2022 ...   A-2893

PX-51    Twitter Post, dated January 29, 2023 .......   A-2896

PX-53    Twitter Post, dated January 29, 2023 .......   A-2898

PX-57    Email, dated October 13, 2022 ................   A-2901

PX-112    Video Excerpt from Defendant's
Interview with Roger Ailes
(All parties are already in possession of
video exhibit) ...........................................   A-2902

PX-112-T    Transcript of Video Excerpt from
Defendant's Interview with Roger Ailes..   A-2903

PX-200    Video Excerpt from Deposition of
Donald J. Trump, taken October 19,
2022 .........................................................   A-2904

xvii

**Page**

PX-200-T  Transcript of Video Excerpt from
Deposition of Donald J. Trump, taken
October 19, 2022......................................  A-2905

DX-CK  Email Regarding Law & Order SVU,
dated July 23, 2019 ..................................  A-2986

Court Exhibits:

C  Timeline of Events....................................  A-2987

D  WordPerfect Document Compare
Summary of Jury Instructions..................  A-2988

Letter from Joseph Tacopina to the Honorable
Lewis A. Kaplan, dated May 1, 2023 ....................  A-3024

Exhibit A to Letter -
Excerpts of Trial Transcripts...................................  A-3042

Exhibit B to Letter -
LinkedIn Post..........................................................  A-3081

Exhibit C to Letter -
"One of the Democratic Party's biggest donors is
exploring a new anti-Trump boycott" (*Vox*,
July 2, 2020) ...........................................................  A-3083

Letter from Roberta A. Kaplan to the Honorable
Lewis A. Kaplan, dated May 5, 2023 ....................  A-3088

Letter from Joseph Tacopina to the Honorable
Lewis A. Kaplan, dated May 6, 2023 ....................  A-3091

Verdict Form, dated May 9, 2023 ..............................  A-3095

Notice of Appeal, dated May 11, 2023 ......................  A-3099

Notice of Motion, by Defendant, for an Order
Granting a New Trial or Remittitur, dated
June 8, 2023 ...........................................................  A-3101

xviii

**Page**

Memorandum of Law, by Defendant, in Support of
Motion for a New Trial or Remittitur, dated
June 8, 2023 ............................................................ A-3103

Declaration of Matthew G. DeOreo, for Defendant,
in Support of Motion for a New Trial or
Remittitur, dated June 8, 2023 .............................. A-3134

Exhibit A to DeOreo Declaration -
Complaint and Demand for a Jury Trial filed in
*Carroll II*, dated November 24, 2022
(Reproduced herein at pp. A-513-A-541)

Exhibit B to DeOreo Declaration -
Excerpts of Trial Transcripts.................................. A-3136

Exhibit C to DeOreo Declaration -
Complaint and Jury Demand filed in *Carroll I*,
dated November 4, 2019
(Reproduced herein at pp. A-639-A-667)

Exhibit D to DeOreo Declaration -
Verdict Form, dated May 9, 2023
(Reproduced herein at pp. A-3095-A-3098)

Declaration of Roberta A. Kaplan, for Plaintiff, in
Opposition to Defendant's Motion for a New
Trial or Remittitur, dated June 22, 2023 ................ A-3219

Exhibit 1 to Kaplan Declaration -
Excerpts of Trial Transcripts.................................. A-3221

Exhibit 2 to Kaplan Declaration -
Twitter Post, dated June 21, 2019
(Reproduced herein at p. A-2839)

xix

**Page**

Exhibit 3 to Kaplan Declaration -
"Remarks by President Trump before Marine
One Departure" (Office of the Press Secretary,
June 22, 2019)
(Reproduced herein at pp. A-2840-A-2852)

Exhibit 4 to Kaplan Declaration -
"EXCLUSIVE: Trump vehemently denies E.
Jean Carroll allegation, says 'she's not my type'"
(*The Hill*, June 24, 2019)
(Reproduced herein at pp. A-2853-A-2857)

Exhibit 5 to Kaplan Declaration -
Truth Social Post, dated October 12, 2022
(Reproduced herein at p. A-2858)

Exhibit 6 to Kaplan Declaration -
Excerpts from Deposition Transcript of Donald J.
Trump, dated October 19, 2022 ............................ A-3312

Exhibit 7 to Kaplan Declaration -
Excerpts of Trial Transcript, in *Breest v. Haggis*,
(Supreme Court of New York, County of
New York Index No. 161137/17), dated
October 19, 2022 .................................................... A-3315

Exhibit 8 to Kaplan Declaration -
Various Twitter Posts and Email, dated
October 13, 2022 .................................................... A-3323

Amended Notice of Appeal, dated July 19, 2023 ...... A-3337

Order of the United States Court of Appeals for the
Second Circuit, dated July 19, 2023 ..................... A-3339

A-1121

Page 127

1                        D. J. TRUMP

2        Q.    And people have the opportunity to like

3   or heart one of your posts as well; correct?

4        A.    Could be.

5        Q.    Okay.  Now, on October 12, just a few

6   days ago, you issued a statement on Truth Social

7   about Ms. Carroll and this case; correct?

8        A.    I believe so, yes.

9        Q.    And the statement that you posted, who

10  wrote that statement?

11       A.    I did.

12       Q.    You yourself?

13       A.    Yeah.

14       Q.    Did you post the statement yourself?

15       A.    Yes.

16       Q.    And in addition to posting the statement

17  on Truth Social, you also sent it to the press?

18       A.    Yes.  It's called truth and post.  We

19  post much like -- how would you say it?  We put out

20  a statement, and we also put it on Truth.

21       Q.    And when you say you put it out --

22       A.    Like a public relations statement.

23       Q.    It goes, like, to an email list of

24  reporters?

25       A.    Yeah, whatever.  Yeah.  The bigger grab

A-1122

```
                                                        Page 128
 1                       D. J. TRUMP
 2   is The Truth, but we also -- we call it posts.  We
 3   have -- actually it's truth and post.  So we call it
 4   post.  But the bigger -- the more important of the
 5   two is The Truth because people are watching it.
 6         Q.    And in that sentence, you just used the
 7   word "we."  Does someone help you --
 8         A.    Well, I'm talking about me.
 9         Q.    Okay.  But --
10         A.    But when I say "we," I'm talking about
11   perhaps Truth because Truth has, you know, people
12   working for it, quite a few people.
13         Q.    Okay.  But you didn't personally send the
14   email to the reporters yourself, did you?
15         A.    No.  What they do is they take it from
16   Truth, and then they'll put it out as a press
17   release.
18         Q.    And that's what I'm trying to ask, sir.
19   Who's "they"?
20         A.    Different people that work in the
21   organization in Truth or -- some cases my office.
22         Q.    And with this statement, do you recall
23   whether it was people who worked for Truth Social or
24   your office?
25         A.    I believe we put it out through my
```

A-1123

Page 129

D. J. TRUMP

1

2    office.

3         Q.    And who in your office would have been

4    responsible for doing that?

5         A.    Possibly -- maybe Margo or maybe

6    Chamberlain, Chamberlain Harris.

7         Q.    So Chamberlain Harris and -- I don't know

8    Margo's last name.

9         A.    One or two of the people in the office

10   would have done it.

11        Q.    What's Margo's last name?

12        A.    Excuse me?

13        Q.    Do you know Margo's last name?

14        A.    Margo Martin.

15        Q.    Trying to interpret the last several

16   questions and answers.

17              When you post something on Truth Social,

18   does it always go to the press ultimately, or does

19   someone make that decision?

20        A.    Pretty automatic.

21        Q.    Okay.

22        A.    It goes to the press really directly on

23   Truth too.  So most people have it before they get

24   the Post.

25        Q.    And I take it when it goes to the

Page 132

```
 1                        D. J. TRUMP

 2    on October 12, 2022, and a blown-up version because

 3    we appreciate that the type is very small.  A

 4    blown-up version that should be more legible.

 5         A.    I can see it, yeah.

 6         Q.    Would you like me to read it into the

 7    record?

 8         A.    Yeah, go ahead.  Sure.

 9         Q.    So it says:  "October 12, 2022, statement

10    by Donald J. Trump, forty-fifth President of the

11    United States of America.  This 'Ms. Bergdorf

12    Goodman case' is a complete con job, and our legal

13    system in this country but especially in New York

14    State (just look at Peekaboo James) is a broken

15    disgrace.  You have to fight for years and spend a

16    fortune in order to get your reputation back from

17    liars, cheaters, and hacks.  This decision is from

18    the judge who was just overturned on my same case.

19    I don't know this woman, have no idea who she is

20    other than it seems she had a picture of me many

21    years ago with her husband shaking my hand on a

22    reception line at a celebrity charity event.  She

23    completely made up a story that I met her at the

24    doors of this crowded New York City department store

25    and within minutes 'swooned' her."  "Swooned" is in
```

A-1125

Page 133

1                        D. J. TRUMP

2    quotes.

3              "It is a hoax and a lie just like all the

4    other hoaxes that have been played on me for the

5    past seven years, and while I'm not supposed to say

6    it, I will.  This woman is not my type!  She has no

7    idea what day, what week, what month, what year, or

8    what decade this so-called 'event' supposedly took

9    place.  The reason she doesn't know is because it

10   never happened, and she doesn't want to get caught

11   up with details or facts that could be proven wrong.

12   If you watch Anderson Cooper's interview with her

13   where she was promoting a really crummy book, you

14   will see that it is a complete scam.  She changed

15   her story from beginning to end after the commercial

16   break to suit the purposes of CNN and Andy Cooper.

17   Our justice system is broken along with almost

18   everything else in our country.  Her lawyer is a

19   political operative and Cuomo crony who goes around

20   telling people that the way to beat Trump is to sue

21   him all over the place.  She is suing me on numerous

22   frivolous cases just like this one, and the court

23   system does nothing to stop it.

24              "In the meantime and for the record,

25   E. Jean Carroll is not telling the truth, is a woman

Page 134

                              D. J. TRUMP

1

2    I had nothing to do with, didn't know, and would

3    have no interest in knowing her if I ever had the

4    chance.  Now all I have to do is go through years

5    more of legal nonsense in order to clear my name of

6    her and her lawyer's phony attacks on me.  This can

7    only happen to 'Trump'!"

8              Did I read that correctly?

9         A.   Great statement, yeah.  True.  True.

10        Q.   And now that you've heard it again and

11   you have it in front of you, you again confirm that

12   you wrote the whole thing yourself?

13        A.   I wrote it all myself.  All myself.

14        Q.   Did you talk to anyone before you wrote

15   it?  Did you talk to anyone about what to say in the

16   statement?

17        A.   No.  I didn't need to.  I'm not Joe

18   Biden.

19        Q.   In this statement you say, I think, for

20   the first time that it was a charity event, that

21   photo.  It was a charity event that --

22        A.   That was what I was told, yeah.  I was

23   told it was a charity event.  Nobody knows which

24   event it was, but it was like a charity event.

25        Q.   Do you know -- remember who told you

A-1127

# EXHIBIT 2







TRUTH. Log in

Home

Search

← @realDonaldTrump's post

Donald J. Trump

New to Truth Social?

Sign up

Trends

People To Follow

SAVE AMERICA

PRESIDENT DONALD J. TRUMP

## Statement by Donald J. Trump, 45th President of the United States of America

This "Ms. Bergdorf Goodman" case is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, "swooned" her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type. She has no idea what day, what week, what month, what year, or what decade this so-called "event" supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country. Her lawyer is a political operative and Cuomo crony who goes around telling people that the way to beat Trump is to sue him all over the place. She is suing me on numerous frivolous cases, just like this one, and the court system does nothing to stop it. In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to "Trump"!

Continue the conversation

Join Truth Social to get the full story and details.

Log in

Sign up

EXHIBIT PP DJT 28 10-19-22

PENGAD 800-631-6989

★ ★ ★ ★ ★
SAVE
**AMERICA**
PRESIDENT DONALD J. TRUMP

- October 12, 2022 -

## Statement by Donald J. Trump, 45th President of the United States of America

This "Ms. Bergdorf Goodman" case is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, "swooned" her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called "event" supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country. Her lawyer is a political operative and Cuomo crony who goes around telling people that the way to beat Trump is to sue him all over the place. She is suing me on numerous frivolous cases, just like this one, and the court system does nothing to stop it. In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to "Trump"!



A-1130

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

*Plaintiff,*

v.

DONALD J. TRUMP,

*Defendant.*

No. 22 Civ. 10016 (LAK) (JLC)

## DECLARATION OF ROBERTA A. KAPLAN IN SUPPORT
## OF PLAINTIFF E. JEAN CARROLL'S REPLY
## IN SUPPORT OF HER OMNIBUS MOTION IN LIMINE

I, Roberta A. Kaplan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a member of the bar of the State of New York and am admitted to appear before this Court. I am a partner in the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action.

2. I respectfully submit this declaration in support of Carroll's reply in support of her omnibus motion in limine.

3. Attached hereto as **Exhibit 1** is a true and correct copy of Defendant Donald J. Trump's Rule 26(a)(1) Initial Disclosures in this action, dated January 9, 2023.

4. Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from the official transcript of Carroll's deposition, which was taken in the related action, *Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y) ("*Carroll I*"), on October 14, 2022.

5. Attached hereto as **Exhibit 3** is a true and correct copy of excerpts from the official transcript of Robert J. Fisher's deposition, which was taken in this action on February 6, 2023.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the Expert Report of Robert J. Fisher, dated January 30, 2023.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of excerpts from the official transcript of Robert J. Fisher's deposition, which was taken in *Carroll I* on December 14 and 20, 2022.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:      New York, New York
            March 16, 2023                    Roberta A. Kaplan

A-1132

# EXHIBIT 2

Page 1

```
 1

 2           UNITED STATES DISTRICT COURT

 3           SOUTHERN DISTRICT OF NEW YORK

 4

 5    E. JEAN CARROLL,            )
                   Plaintiff,    )
 6                                )
              -against-          ) 20-cv-7311 (LAK)
 7                                )
      DONALD J. TRUMP, in his    )
 8    personal capacity,         )
                   Defendant.    )
 9    _____   )

10

11

12           ***CONFIDENTIAL***

13       VIDEOTAPED DEPOSITION OF

14          E. JEAN CARROLL

15         New York, New York

16       Friday, October 14, 2022

17

18

19

20    Reported By:

21    CATHI IRISH, RPR, CRR, CLVS

22

23

24

25
```

A-1134

Page 217

1                 CARROLL - CONFIDENTIAL

2    your blog?

3        A.   Oh, Substack, yes, I do.

4        Q.   You do.  Do you know how much?

5        A.   Yes, 70,000 a year.

6        Q.   And how long have you been

7    generating that amount of income from the

8    blog?

9        A.   It was immediately popular.  Not

10   a big huge massive salutation but it's

11   doing all right.  I enjoy writing it.

12       Q.   Did it increase after 2019?

13       A.   Oh, I didn't start it until 2021.

14       Q.   So it's pretty successful since

15   you started it?

16       A.   It's successful for a Substack,

17   yes.

18       Q.   Have you sued anyone else?

19       A.   No.

20       Q.   Have you ever been sued?

21       A.   No.

22       Q.   Last set of questions I have for

23   you, you stated in the public that you had

24   DNA from the former president; is that

25   correct?

A-1135

Page 218

1              CARROLL - CONFIDENTIAL

2      A.   Yes.

3      Q.   Why did you state that?

4      A.   Because we sent the dress to be

5   examined and then we got back a report.

6   Robbie published it.

7      Q.   What did that report say that you

8   recall?  And don't divulge anything that's

9   privileged, please, so conversations

10  between you and your attorney I don't want

11  to know.

12     A.   It is so far above my head.  The

13  reports about DNA are so detailed and so

14  much scientific rigor is required to

15  understand even the opening paragraph, I

16  can't really -- I can't say.

17     Q.   And how did you discover that

18  there might have been a trace of DNA from

19  this event?

20          MS. KAPLAN:  I don't think you

21      can answer that question.

22          MS. HABBA:  Okay.  I think I'm

23      done.

24          Oh, yes, I forgot.

25  ///

A-1136

# EXHIBIT 3

A-1137

Page 1

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF NEW YORK

3

4    E. Jean Carroll,                    )
                                         )
5                Plaintiff,              )
                                         ) Case No.
6         vs.                            )
                                         ) 1:22-CV-10016-LAK
7    Donald J. Trump,                    )
                                         )
8                Defendant.              )
     _____)

9

10

11

12

13

14       VIDEO DEPOSITION OF ROBERT J. FISHER

15           Via Zoom Videoconference

16          Monday, February 6, 2023

17

18

19

20

21   Reported by:

22   LISA MOSKOWITZ, CA CSR 10816, RPR, CRR, CLR,

23   Washington CSR 21001437, Nevada CCR 991,

24   NCRA Realtime Systems Administrator

25   JOB NO. 222071

Page 10

1              In Carroll II, as you're talking

2     about, I was asked to do just an expert

3     report, and it had nothing to do with

4     rebuttal reports but do an expert report in

5     that case.

6         Q.   And by you were asked, you were

7     asked by defendant's counsel; is that

8     correct?

9         A.   Yes, that's correct.

10        Q.   Mr. Fisher who's on the line

11    today -- I'm sorry.  Mr. Swift.

12        A.   Mr. Swift, yes.  He can claim my

13    name.  That's fine.

14        Q.   So is it your testimony that your

15    report in Carroll II which was dated

16    January 30, 2023, was not a rebuttal report?

17        A.   No, not at all.  No.  In Carroll I,

18    I was specifically retained to do -- as a

19    rebuttal expert, and my main task was to do

20    a rebuttal report, and we had two

21    subsequent -- or one deposition over two

22    periods.

23              In rebuttal II after the

24    plaintiff -- I'm sorry.  In Carroll II when

25    the plaintiff refiled, they asked me to do

Page 11

1    an expert report which had nothing to do

2    with rebutting anything.  It was just

3    strictly to do a report on -- as an expert

4    in that case.

5            So the first one was a rebuttal

6    report.  The second one was a plain expert

7    report.

8        Q.   Okay.

9            So your position is that your

10   report in Carroll II is not a response to or

11   rebuttal of Professor Humphreys' report in

12   Carroll II?

13       A.   No.  In fact, I didn't even read --

14   Professor Humphrey did two reports.  She did

15   a rebuttal report -- or she did a report on

16   the June 21, June 22, and June 24 statements

17   of Mr. Trump.  I wrote -- and then she filed

18   a report on that.  I wrote a rebuttal report

19   on that.

20           Subsequently Mr. Trump made other

21   statements on October 12, 2022, of which

22   case subsequent to that, the plaintiff filed

23   a second lawsuit which included battery I

24   think, as well as defamation.  I was asked

25   after that to do a full expert report based

Page 12

1    on her, you know, her new complaint

2    addressing defamation.  None of it has to do

3    anything -- Professor Humphreys subsequently

4    did a second report based on the October 12

5    statement.  I was not asked to do a rebuttal

6    report on her second report and, as a matter

7    of fact, I didn't even read it.  I skimmed

8    it, but I'm not here to talk about her

9    second report.

10       Q.   Understood.

11       A.   Okay.

12       Q.   And so I'm going to -- we'll mark

13   this as Fisher 1.

14            (Exhibit Number 1 was marked

15            for identification.)

16   BY ATTORNEY CRAIG:

17       Q.   The court reporter just handed you

18   a document marked as Exhibit 1.  Is this the

19   report you prepared in Carroll II and issued

20   on January 30, 2023?

21       A.   That's correct.

22       Q.   Okay.  How many hours did it take

23   you to draft this report?

24       A.   I don't know exactly, but I'm going

25   to guess probably around 12, 15 hours.

A-1141

Page 28

```
 1   give context and perspective when I guess
 2   it's not needed sometimes.
 3        Q.   Have you developed any new methods
 4   or methodologies or techniques as part of
 5   your work since your Carroll I deposition?
 6        A.   No, because those methodologies are
 7   rock solid.  There's no reason to reinvent
 8   the wheel when they are accepted
 9   methodologies, and they're effective
10   methodologies.
11        Q.   And would you say your methodology
12   in Carroll II is similar to your methodology
13   in Carroll I?
14        A.   I would say so, yes.
15        Q.   Okay.
16             And if we can look at your report
17   which is Exhibit 1 which you still have in
18   front of you, I just had a -- on page 2 --
19        A.   Oh, they're back and back.  That's
20   unusual.  Okay.  I went from 1 to 3, and I
21   thought a page was missing.  Yes, go ahead.
22        Q.   Do you see there's a section in the
23   middle of the page with the title Media
24   Expert/Analysis?
25        A.   Yes.
```

A-1142

Page 46

```
 1   it's relevant to the case, yes, I do list

 2   it.

 3           But usually that only comes in the

 4   form of media articles for the most part.

 5      Q.   And those relevant media articles

 6   in this case are the six that we are talking

 7   about before?

 8      A.   Yeah.  One other thing too is if I

 9   come across a legal document on the internet

10   which they haven't provided me, then I would

11   put that down as well.  I would record that

12   because that's -- that's specifically

13   related to the case as opposed to the

14   background and what products this company

15   makes.

16      Q.   Were there any legal documents in

17   this case that you found through your

18   internet research that you didn't -- that

19   you listed here?

20      A.   No, there were none in this case

21   that I -- sometimes I come across, not often

22   but not in this case, no.

23      Q.   Approximately how long did you

24   spend on your internet research in

25   connection with your Carroll II report?
```

Page 47

```
 1        A.    I would say at most an hour,

 2   maybe -- I'd say a half hour to an hour and

 3   a half is generally for most cases, you

 4   know, I just do a cursory look at -- you

 5   know, I Google whatever it is, and then I

 6   look down, scroll down and look and see if

 7   there's anything.

 8            So I would say 45 minutes to an

 9   hour and a quarter would be average.

10        Q.    Average in all your cases?

11        A.    Yeah, in most cases.

12        Q.    In this case 30 to 60 minutes?

13        A.    Yeah, unless something like the one

14   case I had which I won't mention the name

15   of, there were like 2- or 300 media articles

16   on; so I probably spent three or four hours

17   on that.  But that's a rare case.

18        Q.    Are there any parts of your report

19   that are based on the internet research that

20   you did in connection with this case?

21        A.    I would say -- I would say no

22   except maybe -- no, I mean, the legal

23   documents, complaints gave me information.

24   Deposition.  I got a lot of good information

25   off the depositions.  And the expert report.
```

A-1144

Page 49

1    that you've had in your professional

2    communications and expert witness

3    backgrounds.  Are there specific previous

4    applicable experiences you drew upon in

5    preparing this Carroll II report?

6         A.   I think I mean that in a general

7    sense as opposed to individual cases.  No, I

8    can't say that there was a specific case or

9    more than one case.  It's more or less the

10   broad overview of circumstances that

11   happened in such cases of this type.

12        Q.   And did you review any files from

13   prior cases in connection with your Carroll

14   II report?

15        A.   No, not in writing this report, no.

16        Q.   Okay.

17             And you also write in your report

18   that you don't rely on, quote, surveys,

19   studies, tests, research, or other forms of

20   qualitative types of analyses, facts

21   gathering procedures.  Is that sort of a

22   fair reflection of the type of materials you

23   didn't consider in connection with your --

24        A.   Yes.

25        Q.   -- Carroll II report?

Page 52

1   give me any direction as to what to do.  He

2   said -- she did another report based on the

3   October 12 thing.

4          I mean, he didn't ask me to read it

5   in total.  He didn't ask me to comment on it

6   or anything.  He just said -- I assume he

7   just thought it would be good for me for

8   background.

9      Q.   Are there any parts of Professor

10  Humphreys' Carroll II report that you sought

11  to rebut in connection with your Carroll II

12  report?

13     A.   No, not at all.  But I did -- I do

14  have a section in this report, which I'm

15  sure you're aware of, that does discuss

16  Ms. Carroll's expert, but most of that is

17  information derived from the first report,

18  is basically on her views and opinions.

19          I did put one paragraph into this

20  report.  The only thing I picked out of that

21  report in skimming it was a statistic that

22  she had related to the number of people that

23  might be influenced by Mr. Trump's comments.

24  And that's near the end of the report.

25          You know, I just made a reference

A-1146

Page 54

1   there was an interesting point she made in

2   the report that I thought was worth adding

3   into this report.

4        Q.   Understood.

5             And is there any other part of your

6   report that addresses Professor Humphreys'

7   Carroll II report besides this paragraph?

8        A.   Yes.  I mention earlier in the

9   section on -- that I first addressed the

10  reputation expert.  The plaintiff's expert,

11  page 21.  I do note that she did do a second

12  report.

13       Q.   On page 21 do you report or respond

14  to that in any way?

15       A.   No, in fact, it's on page 22 a

16  third of the way down under assignments.

17  Humphreys was retained by plaintiff legal

18  counsel twice to prepare expert witness

19  reports.  The first was to cover the alleged

20  false statements made by defendant on

21  June 21, 2022, and 24, 2019.

22            The second report covered his

23  October 12, 2022, statement.  That's the

24  only other time in the report that I

25  referenced the second report that she did.

Page 148

1           Certified Stenographer.)

2   BY ATTORNEY CRAIG:

3      Q.   The six newspaper articles we

4   talked about before, is there anything

5   besides those newspaper articles?

6      A.   Well, reading her biography, her

7   profile.

8      Q.   Where did you see her biography?

9      A.   Well, I went online and saw

10  information about her.  I told you I Googled

11  her.  A gal like that, she had a couple of

12  pages of content about her on there, and I

13  looked at some of it for background.  As I

14  said, I looked to see who she was, and I saw

15  nothing negative whatsoever about her, not

16  unrelated to the Trump case, but I saw

17  nothing in her background that was negative.

18  It appears she was a total professional and

19  viewed that way.

20     Q.   So besides the articles you

21  mentioned before and the Googling you did,

22  anything else that you considered?

23     A.   Yeah, these -- I have it in my

24  report here.  These articles.  I quote some

25  of the articles on the Trump case, the six

Page 149

1    that I listed there.  I quoted some of them

2    in my report and talked about the highly

3    laudatory comments that were made in those

4    articles about her after the fact.  After

5    the suit.

6        Q.   Is your entire understanding of

7    Ms. Carroll's reputation based on the

8    comments in those six articles?

9        A.   Well, we already talked about

10   online I saw --

11       Q.   So the six articles and the

12   Googling you did?

13       A.   Yeah, the Googling for the most

14   part, yeah, and also in the complaint.  The

15   complaint, the original complaint and the

16   other complaint talked about her image, her

17   reputation, talked about her

18   accomplishments.

19            I mean, it's all over the place.  I

20   don't deny the woman -- I never heard of her

21   before the Trump case.  I mean, I live in

22   L.A.  She's in New York.  I don't read Elle

23   magazine.  So I didn't know who she was from

24   these two people when I walked in this room.

25            The point is I did do research on

Page 197

1   study?  No.  From looking online and looking

2   at the first ten pages of her Google

3   presence, it was clear that there was a

4   tremendous increase in articles about her or

5   exposure than there was prior to that.

6       Q.   By looking -- by your reference to

7   looking at the first ten pages of Google,

8   you just mean the nature of the search

9   results that you would see if you put in

10  E. Jean Carroll's name in Google?

11      A.   Yeah, in other words, you know,

12  each page has 10 to 12 things on it and you

13  go through pages 2, 3, 4, 5.

14           You know, I saw other references to

15  Ms. Carroll but not nearly the weight of the

16  exposure she received after she came forward

17  to accuse Mr. Trump of rape.

18      Q.   You referred in your earlier answer

19  to you did an analysis in this report which

20  is in the next section on page 20, and those

21  articles are highly favorable toward

22  Ms. Carroll.  Are you referring just to the

23  three articles you talk about on page 20 and

24  carrying over to page 21?

25      A.   Yeah, in other words, on page 20

Page 206

```
 1      record.

 2             (Recess taken from 2:59 p.m. to

 3             3:08 p.m.)

 4             THE VIDEOGRAPHER:  The time is now

 5      3:08 p.m., and we're back on the video

 6      record.

 7  BY ATTORNEY CRAIG:

 8      Q.   So, Mr. Fisher, if you want to turn

 9  to page 22 of your report at Exhibit 1, you

10  see there's a section that has the header,

11  Reputation Repair Program?

12      A.   Yes.

13      Q.   And you note in here that at the

14  bottom of -- sorry.  Right above that

15  section you say:  While I attribute the

16  following mostly to her first report, the

17  content from my brief review from her second

18  report was the same in both her reports.

19             And then you go on to the section

20  entitled Reputation Repair Program.

21             Do you see that?

22      A.   Uh-huh.

23      Q.   Is it accurate to say that the text

24  of this with the exception of that one

25  paragraph on page 24 draws from your first
```

A-1151

Page 207

1    report?

2        A.   Yes, yes.

3        Q.   And so this is written,

4    specifically concerns the reputation repair

5    program that Professor Humphreys developed

6    in her Carroll I report?

7        A.   Yeah.  Most of this text was in my

8    rebuttal report.  It's just since I was

9    doing an overview of the entire case, I

10   thought I should have a section in here

11   about her report.  But most of this is old

12   ground covered in our first two depositions.

13       Q.   And, in fact, the citations in this

14   section are to pages in Professor Humphreys'

15   first report --

16       A.   Correct.

17       Q.   -- from Carroll I?

18       A.   Correct.  100 percent, yes.

19       Q.   Is there anything different sort of

20   in substance between what's in this report

21   and then what's in your prior Carroll I

22   report?

23       A.   No, I don't believe so.  I think

24   that -- I mean, obviously this is only an

25   excerpt from my first report because my

Page 208

```
 1    first report was, what, 10, 12 pages.  I
 2    just put out -- basically from the first
 3    report I just pulled out sort of the gist
 4    of, you know, the important points from that
 5    first report.  I added in a paragraph just
 6    referencing the second report which you saw.
 7            And so there's no real new ground
 8    break in that.  It's just I thought if I was
 9    doing a comprehensive report on the whole
10    case, I would have had to add in, you know,
11    something related to their expert.
12       Q.   Were there any additional materials
13    that we didn't cover --
14       A.   No.
15       Q.   -- in your last deposition --
16       A.   No.
17       Q.   Let me just get the question out.
18            Are there any materials that
19    weren't addressed or covered in your last
20    deposition that you considered before
21    including this section in your Carroll II
22    report?
23       A.   No, no.  As I said, what I was
24    trying to do was just to kind of summarize
25    the main points I had in the -- relating to
```

A-1153

# EXHIBIT 5

Page 266

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF NEW YORK

3    _____

                                     )
4    E. JEAN CARROLL,                )CASE NO.:
                                     )
5                    Plaintiff,      )20-Civ-7311
                                     )(LAK)(JLC)
6            v.                      )
                                     )
7    DONALD J. TRUMP, in his personal )
     capacity,                       )
8                                    )
                     Defendant.      )
9    _____)

10

11

12

13

14           DEPOSITION OF ROBERT FISHER

15                   VOLUME II

16       REMOTELY IN LOS ANGELES, CALIFORNIA

17           TUESDAY, DECEMBER 20, 2022

18

19

20

21

22

23

24   REPORTED BY:   NATALIE PARVIZI-AZAD, CSR, RPR, RSR
                    CSR NO. 14125
25   JOB NO.:       220862

Page 299

```
 1          A.    No.   This is a blueprint to work from in
 2     the future.
 3          Q.    And do you follow any sort of
 4     peer-reviewed methodology for tracking dissemination
 5     in print news sources?
 6          A.    Again, premature.
 7          Q.    So is the answer -- at the time of
 8     authoring the report --
 9          A.    Yes.
10          Q.    -- you don't follow any particular
11     peer-reviewed methodology for print news sources?
12          A.    Yes.   And I'm going go beyond yes.   I'm
13     going to be clear here because I think the questions
14     you're asking are the same.   What I do -- what I've
15     done is laid out a plan featuring tried and true
16     things that have been done over the years to address
17     a problem of reputation harm.   I don't get into the
18     weeds or the details at this point in time.   I'm
19     just setting a blueprint of what needs to be done
20     for a successful program, the implementation, which
21     all these things you're bring up would be part of
22     the implementation, would be at the time or just
23     before the program would start.
24          Q.    And you refer to tried and true things
25     that have been done over the years.
```

Page 300

1       A.    Yes.

2       Q.    Tried and true in what way?

3       A.    Well, I mean, these are things -- these

4   are actions, activities, strategies, concepts,

5   whatever, that have been proven to be effective in

6   repairing reputation damage.

7       Q.    And proven in what context?   In

8   peer-reviewed studies?

9            (Whereupon Roberta Kaplan joined the

10  proceedings via Zoom.)

11      A.    Not peer review, no.   In actually doing

12  it.   Let me just be crystal clear.   I've been doing

13  reputation repair programs for 50 years, long before

14  the internet came around.   The internet is a nice

15  bonus to help, but it's -- unlike Professor

16  Humphreys thinks that no programs existed before the

17  internet.   No, the bottom line is this is not peer

18  reviews, this is not textbooks.   This is having

19  boots on the ground, being in the field, and doing

20  these programs, and seeing what works and doesn't

21  work.

22      Q.    And is it -- so is it fair to say you

23  don't consider peer review, sort of, a necessary

24  aspect of your work as an expert?

25      A.    I don't need peer review.   They would

A-1157

Page 301

1   be reviewing -- you know, I'd be reviewing them, not

2   vice versa.

3        Q.   Okay.  And -- and so we were talking just

4   now about whether or not you had any methodology for

5   tracking -- sort of quantifying dissemination in

6   print news, and I take it that the answer is no;

7   correct?

8        A.   No, it's not at this point.

9        Q.   Okay.

10       A.   It would be done but not at this point.

11       Q.   Understood.  But at the time you prepare

12  an expert report, you don't use any particular

13  methodology to quantify dissemination?

14       A.   It's premature.

15       Q.   So just so I can get an answer, but at the

16  time, you -- I understand you think it's premature,

17  but at the time of drafting an expert report, you

18  don't quantify the dissemination in print news?

19       A.   No.

20       Q.   Okay.  And then turning to online news

21  sources, do you follow any particular methodology to

22  quantify dissemination of online -- defamatory

23  statements in online news sources?

24       A.   Not at this point.

25       Q.   And at this point, you mean at the point

Page 304

1          Q.    And do you ever look at the readership

2    data associated with the specific online news

3    sources?

4          A.    No.

5          Q.    And do you know what a bounce rate is?

6          A.    Yes.

7          Q.    What's a bounce rate?

8          A.    Well, bounce rate is how many times

9    somebody goes on your website and actually sees

10   content as opposed to moving on.

11         Q.    And do you account for a bounce rate in

12   part of your analysis of the dissemination of online

13   news?

14         A.    That's something that I may or may not

15   factor in.

16         Q.    What -- what data do you use as your

17   source for specifying the bounce rate?

18         A.    Well, I haven't -- I don't get into it

19   that specifically.

20         Q.    Do you know any of the specific data

21   sources that experts use for bounce rates?

22         A.    Not particularly.

23         Q.    And has your methodology for tracking

24   dissemination in online news been subject to any

25   form of peer review?

A-1159

Page 305

```
 1          A.    Not that I know of but they may exist.
 2          Q.    Have you ever seen it in any peer-reviewed
 3    literature?
 4          A.    No.  I haven't looked for it.
 5          Q.    And do you -- turning to television, do
 6    you follow any particular methodology to quantify
 7    the dissemination of allegedly defamatory statements
 8    through television?
 9          A.    No.
10          Q.    And is there particular data sets that you
11    consult to measure the viewership of individual
12    television programs?
13          A.    No.
14          Q.    And has your methodology for tracking
15    dissemination of allegedly defamatory information on
16    television been subject to any peer review?
17          A.    No.  As I say, I'm not the one that would
18    be doing this.  So you can keep asking and I'll keep
19    saying no.
20          Q.    Understood.  And do you follow any
21    particular methodology to quantify the dissemination
22    of allegedly defamatory statements on Twitter?
23          A.    No.
24          Q.    And is there any data that you've
25    consulted to measure the level of engagement with
```

A-1160

**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
          -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>                    *Plaintiff,*<br><br>        v.<br><br>DONALD J. TRUMP,<br><br>                    *Defendant.* | Civil Action No.: 1:22-cv-10016 (LAK)<br><br>**DECLARATION OF ALINA HABBA, ESQ.** |

I, Alina Habba, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of the State of New York and am admitted to appear before this Court. I am the managing partner of the firm of Habba Madaio & Associates LLP, counsel for Donald J. Trump (the "Defendant") in the above-captioned matter (the "Action").

2.      I respectfully submit this declaration in support of Defendant's Reply Memorandum of Law. The facts herein are true and correct and, unless otherwise stated, are within my personal knowledge.

3.      As counsel for Defendant, I have reviewed pleadings, and other documents related to the Action, and I am familiar with the facts and circumstances of this case.

1

A-1161

4.      Attached hereto as **Exhibit A** is a true and accurate copy of the Joint Proposed

Discovery Plan which was submitted on December 19, 2022.

5.      Attached hereto as **Exhibit B** is a true and accurate copy of Plaintiff E. Jean

Carroll's Rule 26(a)(1) Initial Disclosures, which is dated January 9, 2023.

Dated: March 16, 2023                              Respectfully submitted,

Alina Habba, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
                         -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

A-1162

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

                              *Plaintiff*,

               v.                                    No. 22 Civ. 10016 (LAK) (JLC)

DONALD J. TRUMP,

                              *Defendant*.

## JOINT PROPOSED DISCOVERY PLAN

Pursuant to the Court's Order dated December 2, 2022, Plaintiff E. Jean Carroll and Defendant Donald J. Trump respectfully submit this Joint Proposed Discovery Plan.

**I.     "Any Contention that Any of the Discovery Taken in [*Carroll I*] Is Not Admissible in this Action and the Basis, Item-by-Item, for that Contention"**

### A.     *Plaintiff's Position*

None. All discovery taken in *Carroll I* is clearly admissible in *Carroll II*. The parties and lawyers in both actions are the same; the facts in both actions almost completely overlap; and the parties had a full and fair opportunity in *Carroll I* to engage in discovery concerning those overlapping facts. This Court has already recognized that "discovery and evidence relating to whether or not the alleged rape occurred is relevant to both cases"—in fact, it is the "central" issue. *Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *7 (S.D.N.Y. Oct. 12, 2022); *accord Carroll I*, ECF 98-2 (comparing complaints).

More specifically, the parties have already dedicated six months to discovery. *See Carroll I*, ECF 76, 77. The discovery to date has included documents, interrogatories, requests for admissions, expert reports, and party, nonparty, and expert depositions. Defendant obtained from Plaintiff 30,799 pages of responsive documents and 19 substantive interrogatory responses. He

also deposed Plaintiff, Plaintiff's expert, and numerous non-parties, cross-examined additional nonparties whose depositions Plaintiff had noticed, and had his own rebuttal expert provide a report. *See* Ex. A (chart summarizing discovery in *Carroll I*).

Because "[a] trial court necessarily has wide discretion in managing pre-trial discovery," *Frere v. Orthofix, Inc.*, No. 99 Civ. 4049, 2000 WL 34511335, at *2 (S.D.N.Y. June 7, 2000) (Berman, J.), we are not aware of a single case in which a court has excluded discovery from one case in the other case in circumstances like this. To the contrary, in such circumstances, courts routinely allow "documents, interrogatory responses, and responses to requests for admission made and produced" from one action to be used in a later action. *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 817355, at *2 (S.D.N.Y. Jan. 30, 2004) (Cote, J.); *see also Ocean Ships, Inc. v. Stiles*, No. 00 Civ. 5469, 2003 WL 22741457, at *3 (S.D.N.Y. Nov. 19, 2003) (allowing "voluminous discovery that ha[d] already been completed" in one case to be used in a later case, including "depositions of the [fact] and expert witnesses"); *Baldwin–Montrose Chem. Co. v. Rothberg*, 37 F.R.D. 354, 356 (S.D.N.Y. 1964) (evidencing the longstanding rule that where "there are common questions of law or fact and a substantial identity of issue, this court may order use of depositions and interrogatories taken in one action to be used in the other").[1]

## B. Defendant's Position

Defendant agrees with Plaintiff's position and does not contend that any discovery taken in *Carroll I* is inadmissible in this action solely on the basis that it was derived from *Carroll I*. For the avoidance of doubt, however, Defendant expressly reserves the right to contest the

---

[1] To the extent there are questions regarding the admissibility of any particular evidence, those questions would likely be identical across both actions and should be addressed later in connection with the parties' joint pretrial order, motions in limine, and trial objections.

admissibility of discovery derived from *Carroll I* on any other independent basis through motions

in limine, trial objections, and other appropriate avenues.

## II.    "A Detailed Statement of What Specific Discovery that Was Not Conducted in *Carroll I* Is Needed for the Prosecution or Defense of this Case and the Basis for the Contention that It Is Needed"

### A.    *Plaintiff's Position*

Given the substantial overlap between the two actions, any additional discovery in

*Carroll II* should be limited to new issues unique to *Carroll II* that were not already explored or

could not have been explored in *Carroll I*. These issues include: (1) the harm that Plaintiff suffered

as a result of the underlying sexual assault (which is relevant to calculating damages for Plaintiff's

new Adult Survivors Act claim); (2) the circumstances of Defendant's October 12, 2022 statement

(which are relevant to the merits of Plaintiff's new defamation claim); and (3) the harm that

Defendant's October 12, 2022 statement caused Plaintiff (which is relevant to calculating damages

for Plaintiff's new defamation claim).[2] Discovery on these issues should be narrow and expeditious

since many of these topics have already been addressed to a significant degree in *Carroll I*, through

party and nonparty depositions that took place after Plaintiff informed Defendant and the Court on

August 8, 2022, of her intention to file this second action. *See Carroll I*, ECF 89; *see, e.g.*, Ex. B

(excerpts of depositions of Plaintiff and Defendant). Any further discovery into whether Defendant

sexually assaulted Plaintiff, the defamatory statements at issue in *Carroll I*, or the damages caused

by those statements, should not be permitted since those topics were fully explored in both fact

and expert discovery. *See, e.g.*, Ex. C (excerpts from deposition of Plaintiff providing detailed

---

[2] To be more precise, the only additional discovery that Plaintiff intends to take in *Carroll II* is: (1) the report of a forensic psychologist who will offer expert testimony regarding Plaintiff's damages from the underlying rape; (2) a second report from Plaintiff's original damages expert, who will offer expert testimony regarding the damages resulting from Defendant's October 12, 2022 defamatory statement; and (3) any rebuttal expert(s) whom Defendant puts forth.

account of the underlying sexual assault). Indeed, it is very hard if not impossible to conceive of any additional evidence that somehow relates to the circumstances of the sexual assault that is at the heart of the claims in both cases that would not have been relevant or discoverable by Defendant in *Carroll I.*

Limiting discovery in this way to be efficient and nonduplicative is, once again, common practice in this District since it "avoids the waste associated with duplicative discovery." *Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002) (Carter, J.); *see, e.g.*, *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 817355, at *2. In contrast, granting Defendant what would effectively be a "do-over" of discovery that he already had an opportunity to pursue would simply give Defendant another opportunity to obtain delay. *See, e.g.*, *Carroll v. Trump*, 590 F. Supp. 3d 575, 588 (S.D.N.Y. 2022) ("Taken together, these actions demonstrate that defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him.").

**B.      *Defendant's Position***

Defendant agrees with Plaintiff's position that discovery in *Carroll II* should be largely focused on the new issues raised in this action. However, the parties differ on their view as to the scope of these issues.

With respect to new issues that were not previously at issue in *Carroll I*, Defendant largely agrees with Plaintiff that the following new issues will require additional discovery in this action: (1) any and all damages, physical and psychological, purportedly suffered by Plaintiff as a result of the alleged sexual assault (which are relevant to Defendant's defense against the Adult Survivor's Act claim); (2) the purported harm suffered by Plaintiff as a result of the October 12 Statement (which is relevant to Defendant's defense against the new defamation claim); and (3)

the circumstances of Defendant's October 12, 2022 statement (which is relevant to Defendant's defense against the new defamation claim.

However, Defendant takes issue with Plaintiff's position that "[a]ny further discovery into whether Defendant sexually assaulted Plaintiff . . . should not be permitted since those topics were fully explored in both fact and expert discovery." *Carroll I* is a defamation action which deals with the broad question of whether the alleged incident happened at all. The instant action, on the other hand, alleges numerous violations of New York's Penal Code, including Articles § 130.35, § 130.25, § 130.65, § 130.55, § 130.20, and § 130.52, and necessarily requires a much more fact-specific inquiry into the purported circumstances of the alleged incident. Plaintiff bears the burden of proving each and every element of the statutory violations that she alleges, and Defendant is entitled to engage in a complete and thorough discovery process with full knowledge of the claims that he is defending against.

Therefore, while Defendants agree that a significant portion of discovery has already been obtained, Defendant is entitled to take additional discovery to address the issues enumerated above, as well as further discovery into the purported facts of the alleged incident.[3]

---

[3] Specifically, Defendant's additional discovery efforts shall include, but not be limited to, (1) written discovery regarding the newly-raised issues; (2) conducting an Independent Medical Examination of Plaintiff in accordance with Federal Rule 35, as Plaintiff has plainly put her physical and/or mental condition "in controversy" in this action. *See* FRCP 35; (3) the report of Defendant's own forensic expert; (4) a report from Defendant's original damages expert, who will offer expert testimony demonstrating that Plaintiff was not damaged by Defendant's October 12, 2022 statement; and (5) conducting additional depositions of Plaintiff and potential additional non-party witnesses with respect to the new issues raised in *Carroll II*.

5

III. **"The Parties Proposed Scheduling Orders for this Case and the Bases for Their Proposals"**

A. *Plaintiff's Position*

Given the substantial overlap between the two cases, Plaintiff proposes a schedule aimed at aligning *Carroll II* with the existing April 10, 2023 trial date in *Carroll I*, which would ensure that the two cases can be tried together (or, if *Carroll I* is delayed by ongoing appellate proceedings, that *Carroll II* is ready for trial to avoid further undue delay). *Cf. Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) (McMahon, J.) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). There should be no stay of proceedings pending the motion to dismiss that Defendant plans to file. *See K.A. v. City of New York*, No. 16 Civ. 04936, 2022 WL 3996710, at *2 (S.D.N.Y. Sept. 1, 2022) (no stay discovery given, *inter alia*, lack of substantial arguments for dismissal and limited discovery burden); *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). In any event, for the reasons we can explain in court, Plaintiff believes that all three grounds that Defendant identifies for his motion lack merit.

B. *Defendant's Position*

At the present time, this action has not been consolidated with *Carroll I*, and, absent an order pursuant to Federal Rule 42, it should not be treated as such. As discussed in Section II, *supra*, *Carroll II* raises a host of new issues which were not raised in *Carroll I*, particularly as they relate to damages and fact-sensitive issues. These issues will require significant, additional discovery efforts to be undertaken on Defendant's behalf.

Further, it is true that Federal Rule 42(a) does provide that consolidation is acceptable "[w]hen actions involving a common question of law or fact are pending before the court," and, without taking any position, Defendant does not necessary object to the consolidation of *Carroll I* and *Carroll II*. However, consolidation of these actions must be done with deference to "*both* equity and judicial economy." *Consorti v. Armstrong World Ind*., 72 F.3d 1003, 1007 (2d Cir.1995), vacated on other grounds, 518 U.S. 1031 (1996). Under the applicable law, "efficiency cannot be permitted to prevail at the expense of justice—consolidation should be considered when "savings of expense and gains of efficiency can be accomplished *without sacrifice of justice.*" *Id.* (emphasis added).

Plaintiff seeks to expedite this action to an extreme degree and proposes that trial be commenced less than five months after the filing of the Complaint. Such an accelerated track would deprive Defendant of the opportunity to engage in a meaningful discovery process and to establish a proper defense to the serious allegations raised by Plaintiff.

Moreover, Defendant has already advised Plaintiff that Defendant will be filing a pre-answer motion to dismiss and, additionally, will be seeking an interim stay of discovery during the pendency of said motion. Defendant intends to raise numerous defenses to Plaintiff's complaint, with each providing a substantial basis for dismissal, including, but not limited to: (1) the Adult Survivors Act is an improper 'claim revival' statute which violates the United States Constitution and/or the New York State Constitution; (2) Plaintiff has failed to plead a cognizable defamation claim since the October 12, 2022 statement does not qualify as defamation *per se* and Plaintiff has failed to allege special damages; (3) Plaintiff elicited the alleged defamatory statement through the publication of her book, the filing of *Carroll I*, the announcement of the anticipated filing of *Carrol*

7

*II*, and/or her frequent and ongoing public commentary on the foregoing and the alleged incident.[4]
Courts have routinely found that good cause exists to stay discovery throughout the pendency of a
motion to dismiss involving these type of threshold issues. *See e.g.*, *Shulman v. Becker & Poliakoff*,
No. 17-cv-09930, 2018 WL 4938808, at *23 (S.D.N.Y. Oct. 11, 2018) (granting, in part,
defendants motion to stay discovery pending disposition of its motion to dismiss for lack of subject
matter jurisdiction); *Boelter v. Hearst Commcn, Inc.*, No. 15-cv-03934, 2016 WL 361554, at *5
(S.D.N.Y. Jan. 28, 2016) (granting motion to stay where motion to dismiss for lack of subject
matter jurisdiction is supported by substantial arguments for dismissal set forth in defendants
motion to dismiss); *Picture Patents, LLC v. Terra Holdings LLC*, No. 07-Civ-5465, 2008 WL
5099947, at *2-3 (S.D.N.Y. Dec. 3, 2008) (granting defendants application for a stay of discovery
and stay of all deadlines currently in place, pending motion to dismiss for lack of subject matter
jurisdiction); *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08-Civ-2437, 2008
WL 11510668, at *2-3 (S.D.N.Y. June 12, 2008) (granting defendants motion for a stay of
discovery pending 12(b)(6) motion to dismiss for failure to state a claim).

**C.    *Proposed Schedule***

The parties' proposed schedules are reflected in the table below. The dates marked with an
asterisk (*) represent joint dates in *Carroll I* and *Carroll II*. *See Carroll I*, ECF 100, 102.

| Deadline | Plaintiff's Proposed Date | Defendant's Proposed Date[5] |
|---|---|---|
| Rule 26(a) Initial Disclosures | January 9, 2023 | Within 19 days of the filing of the Answer. |

---

[4] Defendant will provide a more detailed explanation of the arguments to be raised in the Motion to Dismiss upon the Court's request.
[5] Nearly all of the dates proposed by Defendant align with the amount of time allotted to the parties in the scheduling orders dated 5/5/22 (ECF No. 76) and 7/19/22 (ECF No. 77) in *Carroll I*.

| Deadline | Plaintiff's Proposed Date | Defendant's Proposed Date[5] |
|---|---|---|
| Expert Reports / Rule 26(a)(2) Disclosures | January 9, 2023 | Within 131 days of the filing of the Answer. |
| Written Discovery Requests and Requests for Inspection or Examination (including IMEs) | January 9, 2023 | Within 19 days of the filing of the Answer. |
| Responses to Written Discovery Requests | January 23, 2023 | Within 87 days of the filing of the Answer. |
| Depositions to be Completed | January 30, 2023 | Within 164 days of the filing of the Answer. |
| Rebuttal Expert Reports | January 23, 2023 | Within 192 days of the filing of the Answer. |
| Close of Fact and Expert Discovery | January 30, 2023 | Within 192 days of the filing of the Answer. |
| Joint Pretrial Order | *February 9, 2023 | Within 205 days of the filing of the Answer. |
| Motions in Limine | *February 16, 2023 | Within 219 days of the filing of the Answer. |
| Exchange of Pre-Marked Trial Exhibits | *February 16, 2023 | Within 212 days of the filing of the Answer. |
| Summary Judgment Motions | February 16, 2023 | Within 205 days of the filing of the Answer. |
| Oppositions to Motions in Limine | *February 23, 2023 | Within 226 days of the filing of the Answer. |
| Oppositions to Motions for Summary Judgment | February 23, 2023 | Within 212 days of the filing of the Answer. |

| Deadline | Plaintiff's Proposed Date | Defendant's Proposed Date[5] |
|---|---|---|
| Replies in Support of Motions for Summary Judgment | March 2, 2023 | Within 219 days of the filing of the Answer. |
| Trial | *April 10, 2023 | Within 279 days of the filing of the Answer. |

## IV. Additional Information Pursuant to Rule 26(f)

### A. *Proposed Changes to the Timing, Form, or Requirement for Disclosures under Rule 26(a)*

#### i. Plaintiff's Position

Plaintiff's proposed timing is set forth in Section III, *supra*. Plaintiff further proposes that the existing disclosures served in *Carroll I* be deemed disclosures in *Carroll II*; disclosures in *Carroll II* should be limited to new issues.

#### ii. Defendant's Position

Defendant's proposed timing is set forth in Section II, *supra*. Defendant accepts Plaintiff's proposal that the existing disclosures served in Carroll I be deemed disclosures in *Carroll II*, and according, that disclosures in *Carroll II* shall be limited to new issues.

### B. *The Subjects on Which Discovery May Be Needed, when Discovery Should Be Completed, and Whether Discovery Should Be Conducted in Phases or Be Limited to or Focus on Particular Issues*

*See* Sections II and III, *supra*.

### C. *Issues About Disclosure, Discovery, or Preservation of Electronically Stored Information, Including the Form or Forms in Which It Should be Produced*

#### i. Plaintiff's Position

10

As explained in Section II, *supra*, Plaintiff anticipates only limited additional discovery: namely, expert disclosures relating to damages uniquely at issue in *Carroll II* and the deposition of any defense experts who serve reports in *Carroll II*. Regardless, any additional production of documents or ESI should be done in a manner consistent with the parties' practices in *Carroll I* and in accordance with Rule 34. The parties' existing obligations to preserve potentially relevant documents in their possession, custody, and control should remain the same.

### ii.     Defendant's Position

Defendant agrees to Plaintiff's proposals with respect to maintaining the existing ESI protocol.

### D.     *Any Issues About Claims of Privilege or of Protection as Trial-Preparation Materials*

#### i.     Plaintiff's Position

Plaintiff proposes that the existing Protective and Confidentiality Order in *Carroll I*, entered on August 11, 2022, *Carroll I*, ECF 84, be superseded by a slightly modified order that would henceforth govern confidentiality requirements in both actions. A Proposed Protective and Confidentiality Order is attached as Exhibit D.

#### ii.     Defendant's Position

Defendant offers no objection to Plaintiff's proposed Confidentiality Order and is prepared to execute same.

### E.     *Limitations on Discovery*

*See* Section II, *supra*.

### F.     *Stipulation Regarding Protective Order*

#### i.     Plaintiff's Position

Plaintiff's Proposed Protective and Confidentiality Order is attached as Exhibit D.

11

ii.     **Defendant's Position**

Defendant offers no objection to Plaintiff's proposed Confidentiality Order and is

prepared to execute same.

Dated: December 19, 2022                    Respectfully submitted,
       New York, New York


/s/ Alina Habba                              /s/ Roberta A. Kaplan
Alina Habba                                  Roberta A. Kaplan
Michael Madaio                               Shawn Crowley
HABBA MADAIO & ASSOCIATES LLP                Matthew J. Craig
1430 U.S. Highway 206, Suite 240             KAPLAN HECKER & FINK LLP
Bedminster, New Jersey 07921                 350 Fifth Avenue, 63rd Floor
(908) 869-1188                               New York, New York 10118
ahabba@habbalaw.com                          (212) 763-0883
mmadaio@habbalaw.com                         rkaplan@kaplanhecker.com
                                             scrowley@kaplanhecker.com
*Attorneys for Defendant Donald J. Trump*    mcraig@kaplanhecker.com


                                             Joshua Matz
                                             KAPLAN HECKER & FINK LLP
                                             1050 K Street NW, Suite 1040
                                             Washington, D.C. 20001
                                             (202) 742-2661
                                             jmatz@kaplanhecker.com

                                             *Attorneys for Plaintiff E. Jean Carroll*

12

A-1175



HABBA MADAIO
& Associates LLP

Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

April 13, 2023

**VIA ECF**
The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007

> Re:   *E. Jean Carroll v. Donald J. Trump*
> *1:22-cv-10016 (LAK)*

Dear Judge Kaplan:

We write on behalf of the defendant, Donald J. Trump ("Defendant"), with respect to the recent, belated disclosure of material information by the plaintiff, E. Jean Carroll ("Plaintiff"), which raises significant concerns as to Plaintiff's bias and motive in commencing the instant lawsuit, and necessitates that discovery be re-opened for the limited purpose of addressing this issue.

For background, on October 14, 2022, Plaintiff sat for her deposition in the parallel proceeding of *Carroll v. Trump*, No. 1:20-cv-7311 (LAK) ("*Carroll I*").[1] At that time, she was asked about a pertinent issue that looms large over this case – whether her legal fees are being funded by a third-party benefactor, particularly one with political ties. She answered, unequivocally, in the negative:

> Q: Are you presently paying your counsel's fees?
>
> A: This is a contingency case.
>
> Q: So you're not paying expenses or anything out of pocket to date;
> is that correct?
>
> A: I'm not sure about expenses. I have to look that up.
>
> Q. Is anyone else paying your legal fees, Ms. Carroll?
>
> A: No.

*See* **Exhibit A** at tr. 209:11-21.

---

[1] Pursuant to the Court's Order dated December 21, 2022 (ECF No. 19), Plaintiff's October 14, 2022 deposition has, for all intents and purposes, been incorporated into the instant action and serves as the operative deposition with respect to all substantive issues aside from a particular subset of Plaintiff's damages claim.

Now, nearly six months later and a mere *two weeks* before trial is scheduled to commence, Plaintiff has acknowledged that the above statement was inaccurate. On April 10, 2023, defense counsel received a letter from Plaintiff's attorneys which stated, without elaboration, that Plaintiff "now recalls that at some point her counsel secured additional funding from a nonprofit organization to offset certain expenses and legal fees." *See* **Exhibit B** at 1.

Of course, the proposition that Plaintiff has suddenly "recollected" the source of her funding for this high-profile litigation—which has spanned four years, spawned two separate actions, and been before numerous state, federal, and appellate courts—is not only preposterous, it is demonstrably false. *Id.* Indeed, it simply defies logic to believe that Plaintiff's attorneys—four of whom were present at her deposition—were unaware that their *own firm* had "secured additional funding from a nonprofit organization" to bankroll their client's various lawsuits and ensure their bills were being paid. *Id.* It is equally inconceivable that neither Plaintiff nor her counsel have been aware of the identity of the third-party benefactor who was providing these payments. There is simply no justifiable excuse for Plaintiff's prolonged failure to disclose this information to Defendant in a timely manner. In short, Plaintiff apparently perjured herself during her deposition; her counsel sat by and allowed her to do so, knowing full well that her testimony was false[2]; and then they conspired to conceal the truth for nearly six months, only to disclose it on the eve of trial.

After receiving the April 10 letter, Defendant immediately scheduled a meet and confer with Plaintiff's counsel, which was held via conference call the next day, April 11, 2023. During the call, defense counsel: (i) inquired as to the identity of the "nonprofit organization" that was funding Plaintiff's lawsuits; (ii) requested that Plaintiff turn over documentation relating to the source of funding (i.e., payment history, retainer agreement with the third-party benefactor, communications with the third-party benefactor, etc.); (iii) requested that plaintiff appear for a supplemental deposition, limited in scope to the source of funding issue; and (iv) sought Plaintiff's consent to make a joint application to this Court seeking a brief adjournment of the trial date to allow sufficient time for the parties to engage in the additional discovery proceedings. In response, Plaintiff's counsel refused to disclose the identity of the "non-profit organization" and stated that they would advise as to their position on Defendant's remaining requests.

Later that evening, Plaintiff's lead counsel, Roberta Kaplan, submitted a letter to defense counsel, wherein she stated that she "would be willing to disclose the identity of the funder and agree not to object on relevance grounds to questions [defense counsel] might ask Ms. Carroll on cross-examination regarding her personal knowledge of the funding that her counsel secured" and suggested a follow-up meet and confer meeting. *See* **Exhibit C** at 2. Thereafter, pursuant to Ms. Kaplan's suggestion, a meet and confer was held via conference call the next morning, April 12, 2023. On the call, however, Plaintiff's counsel initially refused to disclose the identity of the third-party benefactor unless defense counsel first agreed to waive its ability to seek court intervention with respect to additional discovery surrounding the third-party benefactor. When defense counsel declined to do so, Plaintiff's counsel provided only the name of an individual, Reid Hoffman, who,

---

[2] *See* Rules of Professional Conduct, 22 NYCRR 1200.0, Rule 3.3(a)(3) ("If a . . . lawyer's client . . . has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures[.]"); Rule 3.4(a) ("A lawyer shall not . . . suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce [or] conceal or knowingly fail to disclose that which the lawyer is required by law to reveal[.]").

according to Plaintiff's counsel, is primary backer of the "non-profit organization." Plaintiff's counsel continued to refuse to disclose the identity of the "non-profit organization" itself, prompting the parties to have a follow-up meet and confer later that day, when Plaintiff's counsel ultimately disclosed that the "non-profit organization" is American Future Republic. Additional discussions took place between the sides, but no agreement was able to be reached with respect to additional discovery to be turned over.

The eleventh-hour disclosure that Plaintiff's legal fees are being subsidized by American Future Republic and Reid Hoffman is troubling and raises significant questions that require further investigation.  Based upon defense counsel's initial research, there appears to be little to no publicly available information on American Future Republic, aside from the fact that it is a 501(c)(4) social welfare organization entity funded by Reid Hoffman, the billionaire founder of LinkedIn. Hoffman is one of the largest donors to the Democratic party—reportedly "one of the most influential Democratic donors of the Trump era"[3]—and a vocal critic of Defendant and his political policies. In fact, Hoffman is on record stating that he would "'spend as much as [he] possibly can' to avoid another Trump presidency, saying it would be 'destructive to our society,'"[4] and, since 2017, has reportedly been "funding groups to create a bulwark against Mr. Trump's agenda."[5] Previously, Hoffman contributed more than $600,000 to the legal defense fund of Bean LLC[6]—otherwise known as Fusion GPS, the company responsible for the creation of the Steele Dossier—and was the primary source of funding for an organization that launched an "elaborate false flag" operation which involved spreading misinformation about a Republican senatorial candidate in the hopes that it would cost him the senatorial election.[7]

This revelation raises significant questions as to Plaintiff's credibility, as well as her motive for commencing and/or continuing the instant action. It also strikes at the heart of one of the key aspects of Plaintiff's defamation claim – whether the instant action is a "hoax" that was commenced and/or continued to advance a political agenda. As such, this issue has a material bearing on Defendant's defense strategy and additional discovery is needed. Due to the belated nature of Plaintiff's disclosure, Defendant was deprived of an opportunity to investigate this information in the course of discovery proceedings. In fact, given that this information was concealed for numerous months, only to be abruptly divulged on the eve of trial, Plaintiff's conduct appears to be a deliberate attempt to cut-off Defendant's ability to investigate this matter. *See, e.g.,* *Haibo Jiang v. Town of Tonawanda*, No. 15-cv-898-A, 2018 WL 3215575, at *4 (W.D.N.Y. July

---

[3] Theodore Schleifer, "This billionaire built a big-money machine to oust Trump. Why do some Democrats hate him?" *Vox*, September 23, 2020, available at https://www.vox.com/recode/21451481/linkedin-reid-hoffman-billionaire-democratic-party-tension-silicon-valley.

[4] Aaron Mok, "Reid Hoffman, LinkedIn cofounder, said he talks to his friend Peter Thiel less to avoid political discussions and feuding over Donald Trump," *Business Insider*, March 22, 2023, available at https://www.businessinsider.com/reid-hoffman-peter-thiel-politics-clash-dont-talk-trump-2023-3.

[5] Katie Benner, "Using Silicon Valley Tactics, LinkedIn's Founder Is Working to Blunt Trump," *The New York Times*, September 8, 2017, available at https://www.nytimes.com/2017/09/08/technology/reid-hoffman-silicon-valley-blunt-trump.html.

[6] https://projects.propublica.org/nonprofits/display_990/821110585/02_2020_prefixes_81-82%2F821110585_201812_990_2020021417149016

[7] Tony Romm, "Internet Billionaire Reid Hoffman Apologizes For Funding Group Tied to Disinformation In Alabama Race," *The Washington* Post, December 6, 2018, available at https://www.washingtonpost.com/technology/2018/12/26/internet-billionaire-reid-hoffman-apologizes-funding-group-behind-disinformation-alabama-race/?noredirect=on.

2, 2018) ("Given the timing of these disclosures—well after the discovery cutoff date, and on the eve of trial— the Defendant was unable to investigate these issues. The resulting prejudice to the Defendant was obvious.") (*citing Rienzi & Sons, Inc. v. N. Pugilisi & F. Industria Paste Alientari,* No. 80-cv-2540 (DLI), 2011 WL 1239867, at *3 (E.D.N.Y. Mar. 30, 2011)); *Res. Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 112 (2d Cir. 2002) (remanding and admonishing that "as a discovery deadline or trial date draws near, discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court.").

Therefore, in view of the circumstances at hand, and for the reasons outlined below, Defendant respectfully seeks: (i) a limited re-opening of the discovery period restricted to investigation into the narrow source of funding issue, and (ii) a one-month continuance of the trial date, the need for which, with respect to this issue, stems solely from Plaintiff's failure to disclose the subject information in a timely manner; or (iii) in the alternative, that the Court permit an adverse inference instruction against Plaintiff with respect to her willful defiance of her discovery obligations.

\*     \*     \*

"A district court has broad discretion in deciding whether to re-open discovery." *Carroll v. Trump,* No. 22-cv-10016 (LAK), 2023 WL 2006312, at *15 (S.D.N.Y. Feb. 15, 2023) (citing *Iacovacci v. Brevet Holdings, LLC,* No. 1:18-cv-08048 (MKV), 2022 WL 540658, at *1 (S.D.N.Y. Feb. 23, 2022); *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir. 2004)). Pursuant to Federal Rule of Civil Procedure 16, discovery may be re-opened upon a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"District courts in this Circuit generally consider six factors in deciding whether good cause to re-open discovery exists: '(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.'" *Carroll,* 2022 WL 540658, at 16 (citing *Bakalar v. Vavra,* 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011)). Here, all six factors weigh in Defendant's favor.

*First,* trial is currently scheduled to commence in less than two weeks, on April 25, 2023. Typically, such a close proximity to trial would weigh against Defendant, the moving party. However, given the circumstances at hand, this factor should be construed against Plaintiff, since it was Plaintiff's withholding of relevant information and then sudden disclosure on the eve of trial that created this dispute in the first place. Indeed, Plaintiff's counsel deliberately waited 178 days following their client's deposition to correct her materially false statement, clearly to gain a tactical advantage over Defendant in this proceeding. Had Plaintiff disclosed the source of her funding in a timely manner, Defendant would have been afforded ample opportunity to investigate the issue through routine discovery. Plaintiff should not be permitted to benefit from her failure to do so, nor the fact that she waited until the last possible moment.

*Second*, the request is opposed by Plaintiff. However, like the first factor, this consideration should not be weighed against Defendant. It is of no moment that Plaintiff opposes the instant motion, as she willfully neglected her discovery obligations. Thus, to consider this factor in her favor would be inequitable and unjust.

*Third*, Plaintiff would not be prejudiced by re-opening discovery for the purpose of allowing Defendant to engage in limited fact-finding surrounding the source of Plaintiff's funding. To the extent re-opening discovery causes any delay in the trial schedule, any such postponement would simply be the consequence of Plaintiff's own failure to timely abide by her discovery obligations. The resulting prejudice, if any, falls squarely upon Plaintiff's shoulders and should not be considered as a relevant factor by this Court.

*Fourth*, Defendant was diligent in obtaining discovery within the timeframe permitted by the Court. In his First Set of Interrogatories, served on May 27, 2022 in *Carroll I*, Defendant demanded that Plaintiff disclose the following information:

> 23. Identify all Persons who have made, provided, discussed, or offered to make or provide, any funds, payments, donations, gifts or consideration of any value, in connection with this Action . . . including but not limited to . . . attorneys' fees, and describe: (a) the nature of the contribution or provision of value or consideration; and (b) b. the dollar amount of the contribution or provision of value or consideration, if not financial in nature, the equivalent dollar amount of the contribution.

*See* **Exhibit D** at ¶ 23.[8] In her response, Plaintiff asserted that the information was protected by attorney-client privilege. *See* **Exhibit E** at 13. Thereafter, defense counsel questioned Plaintiff as to whether any third party was paying her legal fees, to which she unequivocally stated "No." *See* **Ex. A** at tr. 209:21.

Plaintiff's assertion of attorney-client privilege, coupled with her sworn denial that any third party was covering her legal expenses, provided Defendant with no reason to believe that any third-party benefactor was involved in the payment of Plaintiff's legal fees. It was only when Plaintiff corrected her false statement in her April 10, 2023 letter that Defendant was alerted to fact that a "nonprofit organization" has been funding her lawsuits. Since this information was not previously discoverable—and, in fact, was actively concealed by Plaintiff—Defendant never had *any* opportunity to engage in fact-finding on this issue within the confines of this Court's Scheduling Order. As such, this factor weighs heavily in favor of Defendant. *See, e.g., Sokol Holdings, Inc. v. BMD Munai, Inc.*, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (stating that, to re-open discovery, a moving party "must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."); Fed. R. Civ. P. 16 Advisory Comm. Notes to 1983 Amendment (noting that a court "may modify the [discovery] schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, No. 98-cv-861, 2005 WL 2132438,

---

[8] Defendant propounded a corresponding document request upon Plaintiff seeking related documents and communications, to which she made the same assertion of attorney-client privilege. *See* **Ex. C** at 1-2.

at *5 (S.D.N.Y. Sept. 6, 2005) ("[M]aterial events have occurred since the last discovery period, which justice requires that the parties have an opportunity to develop through discovery.").

*Fifth*, for the same reasons described above, it was entirely unforeseeable that Defendant would require additional discovery as to the source of Plaintiff's third-party funding, since Plaintiff actively concealed the existence of a third-party benefactor throughout the course of discovery. This fact only came to light within the past couple days, after Plaintiff suddenly reversed course and disclosed said information. As a result, it was impossible for Defendant to foresee the need for discovery into this area of inquiry. Therefore, this factor weighs in favor of Defendant.

*Sixth*, there is a significant likelihood that the information sought by Defendant will lead to the discovery of relevant evidence. Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy"). Indeed, the "right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts," and there is a tendency "toward admitting as much evidence as possible so that the facts may be more accurately determined." *Apicella v. McNeil Labs.*, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). "So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Jones*, 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018).

Here, there is no question that information pertaining to the "nonprofit organization" that has been funding Plaintiff's attorneys' fees is relevant to this case. It is well established that "[c]ourts can require [a party] to produce ... documents indicating the source of third-party payment of its legal fees." *Alfadda v. Fenn*, 1994 WL 577002, at *1 (S.D.N.Y. Oct. 19, 1994); *see also United States v. Zarrab*, 15-cr-867 (RMB), 2017 WL 1753466 (S.D.N.Y. Apr. 5, 2017). Such disclosure does not implicate attorney-client privilege or the attorney work product doctrine. *Vingelli v. U.S., Drug Enf't Agency*, 992 F.2d 449, 452 (2d Cir. 1993) ("[I]n the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice.") (2d Cir. 1993); *E. Profit Corp. Ltd. v. Strategic Vision US, LLC*, 18-CV-2185 (LJL), 2020 WL 7490107, at *8 (S.D.N.Y. Dec. 18, 2020) ("The identity of a person providing litigation funding—whether a private individual or a corporation or an insurance company—is not protected by the attorney-client privilege or attorney work product doctrine."); *In re Shargel*, 742 F.2d 61, 64 n.2 (2d Cir. 1984) ("[T]he privilege does not protect the identity of a 'benefactor' so far as legal fees are concerned . . . [t]he payment of another's legal fees is an act independent of that explanation and should not be accorded more protection against disclosure under the attorney-client privilege than a payment directly to the person for purposes of his or her retaining a lawyer.").

In addition, the source of funding of Plaintiff's legal fees is particularly relevant in the instant matter given the political overtones of this case. This action was filed against Defendant while he was the sitting President of the United States, and it has continued into his candidacy for the 2024 Presidential Election where he is currently the leading Republican candidate. Plaintiff, for her part, has long been an outspoken critic of Defendant's political policies and, at or around the time *Carroll I* was commenced, she frequently expressed her desire to see him removed from office.[9] Perhaps most interestingly, Plaintiff admitted during her deposition that she initiated the instant lawsuit at the urging of George Conway, a well-known detractor of Defendant and his politics,[10] who referred her to her current counsel, Kaplan Hecker & Fink LLP, a firm with ties to the Democratic party which is engaged in numerous lawsuits against Defendant:[11]

> Q: At what point did you decide to file a lawsuit against the defendant?
>
> A: Well, wherever I went after the story went people said are you going to sue him, are you going to sue him and I would say no, no, no, not going to do it. I'm just not -- and then I had a conversation with someone who knew the ins and outs, an actual lawyer, and he said you should really seriously think about this.
>
> Q: Who was that lawyer without getting into the conversation?
>
> A: George Conway.
>
> [. . .]
>
> Q: So after you spoke to George, did you retain counsel?
>
> A: Yes.
>
> Q: How soon after?
>
> A: The day after. The day – two days later.
>
> Q: Did George recommend Ms. Kaplan?
>
> A: Yes, he did.

*See* **Ex. A** at tr. 205:4-16, 209:3-10.

---

[9] *See, e.g.*, @ejeancarroll, 12/17/19, 6:05pm, https://twitter.com/ejeancarroll/status/1207074320440315906 ("I am a woman, and I want to see Trump Impeached and Removed. I want to stop the damage he and his flunkies are inflicting on the rights of women to control our own destinies!"); @ejeancarroll, February 3, 2017, 1:54pm, https://twitter.com/ejeancarroll/status/827591114437824514 ("The greatest threat to America is Donald Trump!"); @ejeancarroll, June 30, 2018, 4:39pm, https://twitter.com/ejeancarroll/status/1013160235295494144 ("Each of us should find one Trump Woman THAT WE PERSONALLY KNOW and spend the next three months tenderly and intelligently convincing her to vote against the candidates of his party in November. THAT WOULD STOP HIM.").

[10] *See, e.g.*, Erik Larson, "Roberta Kaplan Builds Progressive Firm Suing Trump, Defending Wall Street," *Bloomberg News*, March 13, 2021, available at https://news.bloomberglaw.com/us-law-week/roberta-kaplan-builds-progressive-firm-suing-trump-defending-wall-street; Catherine Triomphe, "Roberta Kaplan, The Lawyer Taking On Donald Trump And Fighting the Far-Right," *Barron's*, February 6, 2021, available at https://www.barrons.com/news/roberta-kaplan-the-lawyer-taking-on-donald-trump-and-the-far-right-01612662609.

[11] *See, e.g.*, George Conway III, "Unfit for Office: Donald Trump's narcissism makes it impossible for him to carry out the duties of the presidency in the way the Constitution requires," *The Atlantic*, available at https://www.theatlantic.com/ideas/archive/2019/10/george-conway-trump-unfit-office/599128/ (11,000 word op-ed written by Conway claiming that Trump's is unfit for office).

Moreover, Plaintiff's counsel has admitted that Reid Hoffman was one of the underlying sources of her funding. Hoffman is one of the largest individual donors to the Democratic party, an outspoken critic of Defendant, and an active contributor to numerous "anti-Trump" initiatives. Given the political machinations which are at issue in this case, Mr. Hoffman's involvement is certainly noteworthy.

In *Eastern Profit Corporation Limited v. Strategic Vision US, LLC*, No. 18-cv-2185 (LJL), 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020), the court made a conditional ruling allowing the admission of evidence at trial concerning the identity and political leanings of a third-party benefactor that had been funding the litigation costs of the defendant. The court permitted testimony and questioning on the identity of the funder provided that plaintiff could show it had a "good faith belief" that the funder was affiliated with a foreign political party, accepting the plaintiff's argument that this fact, if shown, would "tend to establish a relationship between [the] [d]efendant and the [foreign political party] and its supporters" and therefore make it "less likely" that certain defenses raised by the defendant were valid. *Id.* at *8. In so ruling, the court observed that the defendant had put "its own political associations" in issue and, therefore, could not complain if the plaintiff sought to "probe those associations." *Id.*

Here, similarly, Plaintiff's potential political ties are pertinent to her motivation for filing her lawsuits, her potential bias against Defendant, and her credibility as a witness. Plaintiff waited until Defendant was a sitting President to come forward with her purported twenty-five-year-old allegation that he sexually assaulted her; and she chose to do so in a profoundly public manner – through the publication of a book detailing her claims. She has also admitted that she had no intention of filing *Carroll I* (or, by extension, the instant lawsuit), until she was urged to do so by an individual with well-documented disdain for Defendant's political leanings. Thus, Plaintiff has undoubtedly put her "political associations" in issue in this case, and Defendant is entitled to "probe those associations." *Id.*

Moreover, aside from its relevance to Plaintiff's bias, motive, and intent, the source of litigation funding bears on a material aspect of Plaintiff's defamation claim – namely, whether this action has been brought for the purpose of advancing a political agenda. Defendant has consistently claimed that Plaintiff's *Carroll I* and *Carroll II* lawsuits are a "con job" and a "hoax," *see* Compl. (ECF No. 1) at ¶ 92, and has questioned whether she is "push[ing] a political agenda" or being funded by a rival political party, *id.* at ¶ 83 ("Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda[.]"); ("If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."). Carroll has also brought this issue into question, having argued that Defendant "asserts a far broader conspiracy of malfeasance that encompasses Carroll, her lawyer, the justice system at large, and even this Court," *see* ECF No. 79 at 16, and repeatedly questioning Defendant on these theories, *see, e.g.,* **Exhibit F** at tr. 88 14:-23 ("Q: Another thing that you say in your June 21 statement is that Ms. Carroll was trying to carry out a political agenda? A: Yeah. Q: How did you know she had a political agenda if you didn't know who she was? A: Somebody told me early on that she was somehow aligned with Hillary Clinton[.]"); tr. 89:22-25 ("Q: Before you issued your June 21 statement, did you have any documents indicating that she was pursuing a political agenda? A: No."); tr. 197:6-16 ("Q: So in

8

that video, you're talking about the women who had accused you of sexual impropriety; correct? A: Yeah. Q: And you say, "These are lies being pushed by the media and the Clinton campaign"; correct? A: Yeah. Not in all cases, but in some, yeah. I think that's what's happening with you and your client. I don't know if it's Clinton or if it's the Democrat party. It's probably not Clinton anymore."). Thus, the question of whether American First Republic and/or Reid Hoffman funded Plaintiff's legal fees for the purpose of pushing a political agenda is a substantive issue that goes directly towards the merits of Plaintiff's defamation claim. As a result, discovery that sheds light on this issue is relevant as a matter of law.

Lastly, should this Court not be inclined to re-open discovery, Defendant respectfully requests that the Court permit an adverse inference instruction against Plaintiff for her failure to comply with her discovery obligations. "[D]istrict courts have broad discretion in fashioning an appropriate sanction for a party's failure to produce documents in breach [of] its discovery obligations . . ." *Bogosian v. All Am. Concessions*, No. 06-CV-1633 (RRM) (RML), 2011 U.S. Dist. LEXIS 109082, 2011 WL 4460362, at *7 n.4 (E.D.N.Y. Sept. 26, 2011); *accord Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."); *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). An adverse inference may be drawn if (1) the party having control over the evidence had an obligation to timely produce it; (2) the party that failed to timely produce the evidence had a culpable state of mind; and (3) the missing evidence is relevant to a claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp.*, 306 F.3d at 107. As set forth at length above, Plaintiff, after receiving a written demand for discovery relating to third-party funding, failed to timely disclose responsive evidence and subsequently lied, under oath, when questioned about it. Further, Plaintiff and her counsel were fully aware that Reid Hoffman, through his non-profit, American Future Republic, was funding Plaintiff's litigation fees and yet consciously withheld this information. Finally, the sought after evidence is relevant to Plaintiff's credibility and bias, and it also relates directly to a substantive aspect of her defamation claim, namely, whether political considerations played into Plaintiff's decision to commence and/or continue the instant lawsuit. Therefore, permitting an adverse inference against Plaintiff is an appropriate sanction for Plaintiff's deliberate attempts to circumvent the discovery process.

For the reasons set forth above, Defendant respectfully seeks: (i) a limited re-opening of the discovery period restricted to fact-finding surrounding Plaintiff's litigation funding, including permitting Defendant to serve written discovery demands and re-depose Plaintiff on this singular issue, and (ii) a one month continuance of the trial date; or (iii) in the alternative, that the Court permit an adverse inference instruction against Plaintiff with respect to her willful defiance of her discovery obligations.

Respectfully submitted,

Dated: April 13, 2023
New York, New York

Alina Habba, Esq.
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP

A-1184

1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188

-and-

Joseph Tacopina, Esq.
Chad Siegel, Esq.
Matthew DeOreo, Esq.
TACOPINA SEIGEL & DEOREO
275 Madison Avenue, 35th Floor,
New York, New York 10016
Telephone: (212) 227–8877

*Counsel for Defendant, Donald J. Trump*

A-1185

# EXHIBIT A

Page 1

1

2          UNITED STATES DISTRICT COURT

3          SOUTHERN DISTRICT OF NEW YORK

4

5   E. JEAN CARROLL,            )
              Plaintiff,        )
6                               )
          -against-            )20-cv-7311(LAK)
7                               )
    DONALD J. TRUMP, in his    )
8   personal capacity,         )
              Defendant.        )
9   _____     )

10

11

12          ***CONFIDENTIAL***

13      VIDEOTAPED DEPOSITION OF

14          E. JEAN CARROLL

15        New York, New York

16      Friday, October 14, 2022

17

18

19

20   Reported By:

21   CATHI IRISH, RPR, CRR, CLVS

22

23

24

25

A-1187

Page 205

```
 1              CARROLL - CONFIDENTIAL
 2   she's swollen with happiness.  That's a
 3   prime example.
 4      Q.   At what point did you decide to
 5   file a lawsuit against the defendant?
 6      A.   Well, wherever I went after the
 7   story went people said are you going to
 8   sue him, are you going to sue him and I
 9   would say no, no, no, not going to do it.
10   I'm just not -- and then I had a
11   conversation with someone who knew the ins
12   and outs, an actual lawyer, and he said
13   you should really seriously think about
14   this.
15      Q.   Who was that lawyer without
16   getting into the conversation?
17      A.   George Conway.
18      Q.   How did you meet George Conway?
19      A.   Met him at a party at Molly
20   Jong-Fast's house.
21      Q.   Was he your lawyer at the time?
22      A.   No, no, no, no.
23      Q.   Where was that?
24      A.   Manhattan, 83rd Street or 84th
25   Street.
```

Case 23-793, Document 80, 11/20/2023, 3592066, Page88 of 300

1              CARROLL - CONFIDENTIAL

2       A.   No.

3       Q.   So after you spoke to George, did

4  you retain counsel?

5       A.   Yes.

6       Q.   How soon after?

7       A.   The day after.  The day -- two

8  days later.

9       Q.   Did George recommend Ms. Kaplan?

10       A.   Yes, he did.

11       Q.   Are you presently paying your

12  counsel's fees?

13       A.   This is a contingency case.

14       Q.   So you're not paying expenses or

15  anything out of pocket to date; is that

16  correct?

17       A.   I'm not sure about expenses.  I

18  have to look that up.

19       Q.   Is anyone else paying your legal

20  fees, Ms. Carroll?

21       A.   No.

22       Q.   You speak a lot about the Adult

23  Survivors Act being passed and we've

24  discussed numerous people who have

25  attacked you, assaulted you; is that

A-1189

Page 233

```
 1              CARROLL - CONFIDENTIAL
 2                 C E R T I F I C A T E
 3    STATE OF NEW YORK    )
 4                        : ss.
 5    COUNTY OF NASSAU      )
 6
 7        I, CATHI IRISH, a Registered
 8    Professional Reporter, Certified Realtime
 9    Reporter, and Notary Public within and for
10    the State of New York, do hereby certify:
11        That E. JEAN CARROLL, the witness
12    whose deposition is hereinbefore set
13    forth, was duly sworn by me and that such
14    deposition is a true record of the
15    testimony given by the witness.
16        I further certify that I am not
17    related to any of the parties to this
18    action by blood or marriage, and that I am
19    in no way interested in the outcome of
20    this matter.
21        IN WITNESS WHEREOF, I have hereunto
22    set my hand this 17th day of October,
23    2022.
24
25              CATHI IRISH, RPR, CRR, CLVS
```

A-1190

# EXHIBIT B

A-1191

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0883
DIRECT EMAIL        rkaplan@kaplanhecker.com

April 10, 2023

**VIA EMAIL**

Alina Habba
Habba Madaio & Associates LLP
1430 US Highway 206
Bedminster, New Jersey 07921

Re:    *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Alina:

We write to provide certain supplemental information relating to a set of questions that Ms. Carroll was asked at her deposition in *Carroll I*. More specifically, at her deposition in our offices on October 14, 2022, you asked the following questions and Ms. Carroll gave the following answers:

Q. Are you presently paying your counsel's fees?
A. This is a contingency case.
Q. So you're not paying expenses or anything out of pocket to date; is that correct?
A. I'm not sure about expenses. I have to look that up.
Q. Is anyone else paying your legal fees, Ms. Carroll?
A. No.

Dep. Tr. at 209:11-21.

During the course of preparing for her testimony at trial, Ms. Carroll has recollected additional information. While Ms. Carroll stands by that testimony about this case being a contingency case, she now recalls that at some point her counsel secured additional funding from a nonprofit organization to offset certain expenses and legal fees.

To be clear, these issues are irrelevant to Ms. Carroll's claims. *See, e.g.*, *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350, 2015 WL 5730101, at *3-5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (Marrero, J.); *Benitez v. Lopez*, No. 17 Civ. 3827, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019); *see also* ECF 95 at 21-22. Nevertheless, we are supplementing the record out of an excess of caution. If you intend to pursue these issues in cross-examining Ms. Carroll, or in any other way at trial, then we should schedule a meet-and-confer so

A-1192

KAPLAN HECKER & FINK LLP                                                          2

that the question of admissibility can be properly presented for a determination by the Court, if necessary.

Respectfully submitted,

Roberta A. Kaplan

cc:      Counsel of Record

A-1193

# EXHIBIT C

A-1194

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0883
DIRECT EMAIL       rkaplan@kaplanhecker.com

April 11, 2023

**VIA EMAIL**

Chad Seigel
Tacopina Seigel & DeOreo LLP
275 Madison Avenue, 35th Floor
New York, New York 10016

Re:   *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Chad:

We write as a follow up to our meet-and-confer earlier today regarding my letter to Alina dated April 10, 2023. We maintain our position that funding secured to defray certain of Ms. Carroll's expenses and fees is not relevant to any of the issues that the jury will consider at trial.

Based on our discussion, it appears that you may be operating on a misunderstanding of the facts. As Ms. Carroll testified at her deposition, she had (and continues to have) a contingency fee arrangement with her counsel. In September 2020—well after Ms. Carroll filed her state court complaint in November 2019—counsel for Ms. Carroll secured financial support from a nonprofit organization that would help offset certain costs and fees in connection with counsel's work on Ms. Carroll's behalf. Ms. Carroll has never met and has never been party to any communications (written or oral) with anyone associated with that nonprofit or its financial supporters.[1]

The resources that Ms. Carroll's counsel were able to secure obviously have nothing to do with what happened at Bergdorf Goodman and whether Donald Trump lied about Ms. Carroll starting in June 2019 when this dispute began. This is consistent both with the position that we have taken throughout these proceedings and your failure to raise this issue in connection with our objection to your discovery request. *See, e.g.*, Plaintiff's Response No. 14 to Defendant's Requests for Production (objecting to request for documents concerning "funds…which have

---

[1] We note that Donald Trump made many misstatements at his own deposition on October 19, 2022, concerning issues that (unlike this one) are in fact relevant to the jury determination in this case, such as with whom Mr. Trump spoke about Ms. Carroll's allegations, yet we would not contend that they are bases to reopen discovery now. *Compare* Deposition of Donald J. Trump, taken October 19, 2022 in *Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.) ("*Carroll I*"), at 99:23–103:5 *with* Defendant Donald J. Trump's Supplemental Responses to Plaintiff's First Set of Interrogatories, *Carroll I* (Aug. 23, 2022).

A-1195

KAPLAN HECKER & FINK LLP                                                          2

been…provided…in connection with this Action or in connection with … consultations with any legal counsel").

     For these reasons, we cannot agree to this effort to adjourn the trial by reopening discovery on this irrelevant point. Nevertheless, in an effort at compromise in order to put this issue behind us, we would be willing to disclose the identity of the funder and agree not to object on relevance grounds to questions you might ask Ms. Carroll on cross-examination regarding her personal knowledge of the funding that her counsel secured. Please let us know whether we should schedule an additional meet-and-confer to discuss our proposal. In the event that you decide to ask the Court for any relief on this issue, we would request that you include this letter in any submission that you file.

Very truly yours,

Roberta A. Kaplan

cc:      Counsel of Record

A-1196

# EXHIBIT D

A-1197

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E. JEAN CARROLL, <br><br> *Plaintiff,* <br><br> v. <br><br> DONALD J. TRUMP, in his personal capacity, <br><br> *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

### DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant, Donald J. Trump ("Defendant"), subject to and reserving all rights to his immunity under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") and any other applicable laws or doctrines, hereby demands that Plaintiff,  E. Jean Carroll ("Plaintiff") provide the following information, under oath, within twenty (20) days of the service of this notice at the offices of Habba Madaio & Associates, LLP, located at 270 West 60th Street, New York, New York 10023.

### DEFINITIONS

1.      "Action" shall mean the above-captioned action, including but not limited to the allegations and filings herein.

2.      "Article" refers to the June 21, 2019, article written by Plaintiff on the New York magazine website, The Cut, "*Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life.*"

3.      "Barbaro" shall mean Michael Barbaro, and his Representatives, as referenced in

Paragraph 101 of the Complaint.

4.      "Bennet" shall mean Jessica Bennet, and her Representatives, as referenced in Paragraph 105 of the Complaint.

5.      "Bergdorf" shall mean Bergdorf Goodman, the luxury department store on Fifth Avenue in New York City, referenced in Paragraph 22 of the Complaint and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

6.      "Birnbach" shall mean Lisa Birnbach, and her Representatives, as referenced in Paragraph 43 of the Complaint.

7.      "The Book" refers to the book written by Plaintiff: "*What Do We Need Men For? A Modest Proposal*."

8.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, presentations, demonstratives, visual aids, packages, conversations, meetings, discussions, telephone calls, text messages, instant messages, electronic messaging, social media messages or postings, telegrams, telexes, telecopies, seminars, conferences, messages, notes, emails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of Communication.

9.      "Complaint" shall mean the complaint, dated November 4, 2019, in this Action.

10.      "Concerning" shall mean about, regarding, relating to, referring to, reflecting, describing, evidencing, or constituting, and shall be construed as necessary to bring within the

2

scope of the Request all Documents that might otherwise be construed as outside of its scope.

11.      "Defendant" shall mean defendant Donald J. Trump.

12.      "Document(s)" and "all documents" shall mean the original and any copy differing from the original of any printed, written, typed, recorded, graphic, photographic, computerized printout, computer program, computer data base or other tangible matter from whatever source; whether produced or reproduced or stored on paper, cards, tapes, discs, belts, films, computer storage devices, or any other material or device; whether in draft or otherwise; whether sent or received or neither; including, but not limited to, the original or a true copy (if the original is not available) and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise); and includes, without limitation, all writings, correspondence, letters, calendars, diaries, journals, notebooks, files, logs, time logs or other indications of work done or time spent, telephone message slips, drafts, charts, data sheets, statistics, telegrams, email messages, text messages, instant messages, electronic messaging, social media messages or postings, teletypes, telefaxes, telecopies, facsimile transmissions, cables, contracts, agreements, policies, studies, transcripts, summaries, newspaper or magazine materials, pamphlets, books, ledgers, registers, reports, financial statements, prospectuses, minutes, agendas, invoices, purchase orders, order confirmations, statements, checks, receipts, returns, estimates, projections, memoranda, notes, interoffice and intra-office communications, offers, notations of any sort of conversations, bulletins, pictures, photographs, videos, films, computer printouts, work papers, work sheets and all drafts, alterations, modifications, and changes and amendments of any kind.  Documents shall include any associated ESI.

13.      "ESI" shall mean electronically stored information

14.      "*Elle*" shall mean *Elle* magazine and each of its current or former subsidiaries,

affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all persons and entities acting or purporting to act on their behalf, including but not limited to Hearst.

15.     "Hearst" shall mean Hearst Communications, Inc. and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

16.     "Kaplan Hecker & Fink" shall mean Kaplan Hecker & Fink LLP and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

17.     "Kaplan" shall mean Roberta A. Kaplan and her Representatives.

18.     "Martin" shall mean Carol Martin, and her Representatives, as referenced in Paragraph 47 of the Complaint.

19.     "Person" shall mean any natural Person or any business, legal or governmental entity, agency, service, or association.

20.     "Representative" shall mean, without limitation, any Person, including any current or former directors, officers, employees, agents, brokers, consultants, contractors, attorneys, partners, members, shareholders, intermediaries, subsidiaries and affiliates, who acts, has at any time acted, or has at any time by any Person been requested or solicited to act, at the Person's

4

request, for the Person's benefit, or on the Person's behalf, or one who acts or has at any time acted on the Person's behalf or for the Person's benefit with the Person's knowledge, consent, or acquiescence. "Statements" shall mean the allegedly defamatory statements as described in the Complaint.

21. "Carroll," "Plaintiff," "You," and "Your" shall mean Plaintiff E. Jean Carroll,  her Representatives, and her former Representatives, including but not limited to, Kaplan Hecker & Fink, and Kaplan.

## INSTRUCTIONS

1. These interrogatories are continuing, and if additional information is acquired or discovered by You or Your Representatives, You should, within ten days of the acquisition of such information, serve supplemental responses.  Defendant will object to the testimony of any witness, or presentation of any evidence, with regard to which information has been requested by these interrogatories but was not fully and timely furnished.

2. If any of the interrogatories herein call for information to which You assert a claim of privilege, You should produce with Your responses to these interrogatories a complete statement of the factual and legal basis for the claim of privilege, including specific identification of any judicial decisions or state privilege rules or statutes being invoked.

3. These interrogatories are directed to Your knowledge or information, and the answers hereto are to be completed to the best or Your knowledge.

4. If any of the information requested herein is not in Your or Your Representatives' possession but is known or believed to be in the possession of another Person, identify that Person.

5. Where an objection is made to any interrogatory or any sub-part thereof, the objection shall state with specificity all grounds.  No part of an interrogatory shall be left

unanswered merely because an objection is interposed to another part of the interrogatory. When used in reference to an individual Person, "identify" means to state his or her full name and present or last known address and telephone number, and contemporaneous or last known position and business affiliation at the time in question. When used in reference to a business organization or entity other than an individual, "identify" means to state its full name, its principal business address, and the nature of the organization (*e.g.*, corporation, partnership). When used in reference to a document, "identify" means to set forth its date, author, designated and actual recipients, type of document (*e.g.*, report, memorandum), beginning Bates number, number of pages and the identity (as defined above) of its present or last known custodian.

6.      As used herein, "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories all responses that might otherwise be construed outside of its boundaries. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed as outside of its scope.

7.      The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each," so as to bring within the scope of these interrogatories any information or documents that might otherwise be considered to be beyond their scope.

8.      The term "describe" means to explain all the specific circumstances and details involved or surround a particular event or occurrence. With respect to a conversation, it means to identify each party to the conversation and to relate the substance of what was said by each one, and to estimate the duration of the conversation.

9.      The use of the singular form of any word includes the plural and vice versa.

A-1203

10.     Unless otherwise indicated below, the time period for the Requests is January 1995 to the present.

## INTERROGATORIES

1.     Identify all Persons who have any knowledge or information about any of the allegations in the Complaint, and for each Person identified, describe the subject matter of the knowledge that each Person possesses.

2.     Identify each Person or entity with whom You or Your Representatives communicated in any way (including, but not limited to, in-person, by telephone, by e-mail, by facsimile, or in writing) about the Action or any of the allegations in the Complaint.

3.     For each Statement, identify all Persons, other than You or Your Representatives, who have viewed, read, heard, or in any way became aware of that Statement.

4.     Identify each Person with whom You discussed the purported incident described in Paragraphs 22 through 42 of the Complaint.

5.     Identify and describe the exact damages that You are seeking in the Complaint and the facts upon which such damages are based, and identify all documents that describe, reflect, support, or relate to the damages sought.

6.     Identify all of Your business or social relationships that were affected by the Statements, and identify how each such relationship was harmed, as referenced in Paragraph 129 of the Complaint.

7.     Identify all medical providers, including mental health professionals, that have treated you from 1990 to the present, and explain the nature and purpose of such treatment.

8.     Identify all medication You have been prescribed since 1990 to the present, including the dates on which You were taking such medications, and the reason You were

7

prescribed such medication.

9.      Describe in detail your record of employment, stating specifically as to each job the name and address of your employer, your duties, title, job description and authority, and the inclusive dates of beginning and ending each employment.

10.      Describe in detail each communication You had concerning Defendant, any interaction or communication with Defendant, or the allegations in the Complaint, including identifying the Person with whom You had the communication.

11.      Identify each Person with knowledge of Your decision to write or publish the Book or the Article, and Your thought process behind such decision, as alleged in paragraphs 74 through 76 of the Complaint.

12.      Identify each romantic partner You have had since the date of the purported incident.

13.      Identify each Person with knowledge of Your decision to speak with reporter, Barbaro, along with Martin and Birnbach, referenced in Paragraphs 101-104 in the Complaint.

14.      Describe in detail how each of the Statements tended to or did injure Your trade, occupation or business, reputation, or finances, as alleged in paragraphs 82 through 100 of the Complaint, identify each Person with knowledge of such alleged injury, and for each financial loss, identify:

       a.   the amount of each loss;

       b.   the date of each loss;

       c.   whether the loss was a realized loss or an unrealized loss;

       d.   whether you claimed and/or received a tax deduction for such loss;

       e.   each account and account number that reflects each loss; and

f. whether the loss has be recouped or mitigated in any way.

15. Describe in detail Your alleged emotional harm, as alleged in paragraph 145 of the Complaint, including but not limited to any treatment You received in connection with Your alleged emotional harm and identify each person with knowledge of such treatment.

16. For all of Your attorneys' fees and other professional fees You allegedly incurred as a result of the Statements, provide the name of the attorney or other professional, the work performed, and the date and amount of the invoice.

17. Identify each individual member of the group of, "Sixteen Women," referenced in Paragraph 78 of the Complaint, and describe, with respect to each individual member of the group:

a. Your relationship; and

b. any communications You had with such women.

18. Identify all Persons who have ever characterized Your statements, assertions, accusations, or allegations of being biased, bogus, concocted, counterfeit, deceptive, dishonest, erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented, misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.

19. Describe in detail each instance of any arrest by law enforcement authorities, including the specific violation or offense for which You were arrested, the disposition of the arrest, the date and place of the arrest, and the date, court, and place of any conviction.

20. Describe in detail any instance in which You accused another Person of sexual assault or inappropriate sexual conduct, including but not limiting to by identifying each such Person.

21. Identify all amounts of compensation, remuneration, or funds, received in

9

connection with the Book or the Article.

22.     Identify any publishers or distributors with which You had any discussions concerning publishing or distributing the Book.

23.     Identify all Persons who have made, provided, discussed, or offered to make or provide, any funds, payments, donations, gifts or consideration of any value, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person concerning the Defendant, any accusation or allegation concerning Defendant, this Action, the Statements, Defendant's presidency or campaign, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees, and describe:

    a.   the nature of the contribution or provision of value or consideration; and

    b.   the dollar amount of the contribution or provision of value or consideration, if not financial in nature, the equivalent dollar amount of the contribution.

24.     Identify all other litigations, arbitrations, or other formal disputes involving You.

25.     Describe in detail Your reputation before the alleged defamation compared to Your reputation afterward, indicating all facts, contentions and opinions that reflect in any way upon Your reputation before and after the alleged defamation.

Dated: May 27, 2022
      New York, New York

                                  Alina Habba, Esq.
                                  **HABBA MADAIO & ASSOCIATES LLP**
                                  1430 U.S. Highway 206, Suite 240
                                  Bedminster, New Jersey 07921
                                      -and-
                                  270 West 60th Street, 17th and 18th Floors
                                  New York, New York 10023
                                  Phone: (908) 869-1188
                                  Facsimile: (908) 450-1881
                                  E-mail: ahabba@habbalaw.com

A-1207

# EXHIBIT F

Confidential

1

2          UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF NEW YORK
3
           CASE No. 20 CIV. 7311 (LAK)(JLC)
4

5  E. JEAN CARROLL,

6            Plaintiff,

7  -vs-

8  DONALD J. TRUMP,
   in his personal capacity,
9
             Defendant.
10  _____/

11

12

13                   =  =  =

14               CONFIDENTIAL

15                   =  =  =

16

17      VIDEOTAPED DEPOSITION OF DONALD J. TRUMP

18
             Wednesday, October 19, 2022
19            10:22 a.m. - 3:50 p.m.

20            The Mar-a-Lago Club
             1100 South Ocean Boulevard
21           Palm Beach, Florida, Florida

22

23  Stenographically Reported By
    Pamela J. Pelino, RPR, FPR, CLR
24  Notary Public, State of Florida
    TSG REPORTING
25  JOB NO. 218342
                   -  -  -

A-1209

Confidential

Page 88

```
 1                      D. J. TRUMP

 2   book sales?

 3        A.    No idea.

 4        Q.    Before you made this statement, do you

 5   know if you or anyone working for you went on to --

 6   withdrawn.

 7              Before you made this statement that

 8   appears in DJT 20, do you know whether you or anyone

 9   working for you did any research on Ms. Carroll?

10        A.    I just don't know.  It's possible

11   somebody -- when they heard this horrible

12   accusation, it's possible that somebody did a little

13   quick research but not that I know of.

14        Q.    Another thing that you say in your June

15   21 statement is that Ms. Carroll was trying to carry

16   out a political agenda?

17        A.    Yeah.

18        Q.    How did you know she had a political

19   agenda if you didn't know who she was?

20        A.    Somebody told me early on that she was

21   somehow aligned with Hillary Clinton.  She was

22   either aligned with her or -- I thought aligned with

23   her.

24        Q.    Who told you that?

25        A.    I think you're aligned with her too
```

A-1210

Confidential

Page 89

```
1                        D. J. TRUMP

2      actually.

3           Q.    Who told you that?

4           A.    Somebody had mentioned it.

5           Q.    Do you recall who?

6           A.    I don't know.  I don't know who said it,

7      but somebody had mentioned it since, that she was

8      somehow into that whole world.

9           Q.    And you just said "I don't know who -- I

10     don't know who said it, but somebody has mentioned

11     it since"?

12          A.    No.  I meant since the accusation.

13          Q.    Oh, since the accusation.

14                Do you remember what that person told you

15     if you don't --

16          A.    Just mentioned that they thought she was

17     somewhat political and aligned with Hillary Clinton.

18          Q.    Before issuing your statement on June 21,

19     did you learn what political party Ms. Carroll

20     belonged to?

21          A.    No, I didn't know that.

22          Q.    Before you issued your June 21 statement,

23     did you have any documents indicating that she was

24     pursuing a political agenda?

25          A.    No.
```

A-1211

Confidential

Page 197

```
 1                        D. J. TRUMP

 2              (DJT Exhibit 39 was marked for

 3    identification.)

 4              (Video played.)

 5    BY MS. KAPLAN:

 6         Q.    So in that video, you're talking about

 7    the women who had accused you of sexual impropriety;

 8    correct?

 9         A.    Yeah.

10         Q.    And you say, "These are lies being pushed

11    by the media and the Clinton campaign"; correct?

12         A.    Yeah.  Not in all cases, but in some,

13    yeah.  I think that's what's happening with you and

14    your client.  I don't know if it's Clinton or if

15    it's the Democrat party.  It's probably not Clinton

16    anymore.

17         Q.    Let's watch --

18         A.    But the Democrat party.  That's you.

19         Q.    I apologize.

20               Let's watch another video, tab 86.

21              (DJT Exhibit 40 was marked for

22    identification.)

23              MS. KAPLAN:  This is from the West Palm

24         Beach event on October 13, 2016.

25              (Video played.)
```

Confidential

Page 220

```
 1                         D. J. TRUMP

 2                C E R T I F I C A T E

 3    STATE OF FLORIDA

 4    COUNTY OF PALM BEACH

 5

 6            I, Pamela J. Pelino, Registered Professional
      Court Reporter and Notary Public in and for the State of
 7    Florida at Large, do hereby certify that the
      aforementioned witness was by me first duly sworn to
 8    testify the whole truth; that I was authorized to and
      did report said deposition in stenotype; and that the
 9    foregoing pages are a true and correct transcription of
      my shorthand notes of said deposition.
10

11            I further certify that said deposition was
      taken at the time and place hereinabove set forth and
      that the taking of said deposition was commenced and
12    completed as hereinabove set out.

13            I further certify that I am not attorney
      or counsel of any of the parties, nor am I a
14    relative or employee of any attorney or counsel of
      party connected with the action, nor am I
15    financially interested in the action.

16            The foregoing certification of this
      transcript does not apply to any reproduction of the
17    same by any means unless under the direct control
      and/or direction of the certifying reporter.

18

19

20            Dated this 19th day of October, 2022.

21

22            _____
              Pamela J. Pelino, RPR, FPR, CLR

23

24

25
```

A-1213

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0883
DIRECT EMAIL       rkaplan@kaplanhecker.com

April 13, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Judge Kaplan:

We write on behalf of Plaintiff E. Jean Carroll in opposition to Defendant Donald J. Trump's motion to adjourn trial and reopen discovery. *See* ECF 108. Trial is less than two weeks away, and Trump has now requested two different one-month trial adjournments in the past three days. *See id.*; ECF 106. His latest transparent effort to keep a jury from deciding Carroll's claims should also be rejected.

\* \* \*

The factual and procedural background relevant to this motion is straightforward (though certainly not as Trump's letter portrays them). At her deposition in *Carroll I*, counsel for Trump asked the following questions and Carroll gave the following answers:

Q. Are you presently paying your counsel's fees?
A. This is a contingency case.
Q. So you're not paying expenses or anything out of pocket to date; is that correct?
A. I'm not sure about expenses. I have to look that up.
Q. Is anyone else paying your legal fees, Ms. Carroll?
A. No.

Dep. Tr. at 209:11-21. Plaintiff's counsel was not, in that deposition setting, able to object to that line of questioning on relevance grounds, *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 (S.D.N.Y. 2019), but did make an appropriate inquiry at the time to determine that Carroll had testified truthfully given her then-existing knowledge.

KAPLAN HECKER & FINK LLP                                                          2

Last week, during the course of preparing for her testimony at trial, Carroll recollected additional information relating to the above exchange. Accordingly, we promptly disclosed to Trump's counsel that, while Carroll stands by her testimony about this being a contingency fee case, she now recalls that her counsel at some point secured additional funding from a nonprofit organization to cover certain expenses and fees.[1] *See* Ex. A. Our letter explained that while the funding was plainly irrelevant to Carroll's claims, we were supplementing the record in an abundance of caution. *Id.*

Since sending that letter, we have provided additional information to Trump's counsel, both by phone and letter. *See* Ex. B. We explained that Carroll has (and has always had) a contingency fee arrangement with our firm, but that in September 2020—well after Carroll filed her state court complaint in November 2019—financial support was obtained from a nonprofit to help pay certain costs and fees in connection with the firm's work on Carroll's behalf. We informed Trump's counsel that Carroll has never met and has never been party to any communications (written or oral) with anyone associated with the nonprofit. We disclosed to Trump's lawyers the name of the individual donor and the nonprofit organization from which the funds originated. Finally, we proposed a compromise by which we would agree not to object on relevance grounds to cross-examination of Carroll regarding her personal knowledge of the funding that her counsel had secured.

But apparently, that was not enough. Betraying their true motive for pressing the issue, counsel for Trump said they needed a "one-month continuance of the trial" to reopen written discovery (including document requests and interrogatories) and to take depositions.[2] Trump's claim that further discovery is necessary—and that such discovery is so urgent as to warrant a disruption of the trial—is baseless for multiple reasons, as set forth below.

* * *

*First*, the proposed discovery is plainly irrelevant to the issues at stake in this litigation. Trump seems to principally argues that the proposed discovery concerns Carroll's credibility or political motive in writing about Trump's sexual assault in her book.[3] But that simply ignores the pertinent facts. That *Carroll's counsel* was able to obtain financial support *almost a year after Carroll commenced litigation* against Trump has absolutely no bearing on whether Trump sexually assaulted her in Bergdorf Goodman in the mid-1990s. Nor does it make it more or less likely that Trump lied when he denied her accusation in June 2019 and repated his denial in October 2022. Indeed, Carroll's book was published before she had even met her counsel—and more than a year

---

[1] That counsel sought additional resources for this case is not surprising. Carroll is not a wealthy person. Trump, by contrast, claims to be a billionaire who has reportedly used his own PAC funding to pay for his personal attorneys. *See* Maggie Haberman, *Trump Spent $10 Million From His PAC on His Legal Bills Last Year*, N.Y. Times (Feb. 21, 2023).

[2] Trump's counsel at first did not even outline what discovery they wanted to take until we insisted that they provide us with that information.

[3] Contrary to Trump's suggestion, Carroll's defamation claim does *not* turn on Carroll's motivation for filing suit; rather, the June 2019 defamation claim in *Carroll I* concerns whether Carroll *fabricated* an assault allegation to advance a political agenda. *Compare* ECF 108 at 8 ("[T]he source of litigation funding bears on a material aspect of Plaintiff's defamation claim – namely, whether this action has been brought for the purpose of advancing a political agenda.").

KAPLAN HECKER & FINK LLP                                                                  3

before her counsel secured financial resources to cover certain of Carroll's expenses and fees.[4] In these circumstances, funding obtained by counsel is not a proper topic for discovery, let alone a relevant issue at trial. *See, e.g., Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350, 2015 WL 5730101, at *3-5 (S.D.N.Y. Sept. 10, 2015) (denying request for documents relating to plaintiff's litigation funding where "defendants did not show that the requested documents are relevant to any party's claim or defense"), *ç'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (Marrero, J.); *Benitez v. Lopez*, No. 17 Civ. 3827, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) ("The financial backing of a litigation funder is as irrelevant to credibility as [a party's] personal financial wealth, credit history, or indebtedness. That a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth."); *Mackenzie Architects, P.C. v. VLG Real Ests. Devs., LLC*, No. 15 Civ. 1105, 2017 WL 4898743, at *3 (N.D.N.Y. Mar. 3, 2017) (denying request for litigation funding documents and noting that the "Court will not allow this already contentious case to now travel down an unfruitful path in pursuit of 'litigation motivation'"). In any event, Trump is now in possession of all the funding-related information about which Carroll has personal knowledge.

Trump's reliance on *Eastern Profit Corporation Limited v. Strategic Vision US, LLC*, No. 18 Civ. 2185, 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020), is misplaced. There, the court allowed conditional questioning on the source of the defendant's litigation funding not because it was related to a political motive, but rather because the defendant's knowledge on the matter was relevant to whether it reasonably relied on certain statements in entering a contractual agreement. *Id.* at *8. Indeed, Judge Liman clarified that "courts in this Circuit have rejected claims for such documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy [or] the adversary's reasons for pursuing what the requesting party might believe is baseless litigation." *Id.*

*Second*, even if the discovery were relevant (and it is not), Trump's request to reopen discovery into these issues has been waived. As far back as August 21, 2020, Trump sought discovery into documents concerning "payment of attorneys' fees or other expenses" and "funds, payments, [or] donations … provided … in connection with this Action or in connection with any … consultations with any legal counsel." Ex. D at 8. Carroll objected on relevance grounds, but expressed openness to a mutual exchange of responsive documents if Trump disclosed information concerning the entity (or entities) paying his attorney's fees in this action. Ex. E at 7-8. Once the case was in federal court, on May 27, 2022, Trump again requested documents relating to "payment of attorneys' fees or other expenses" and "funds, payments, [or] donations … provided … in connection with this Action or in connection with any … consultations with any legal counsel." Ex. F at 8. On the same day, Trump served an interrogatory for the identity of all persons who have "provided … funds, payments, [or] donations … in connection with this Action

---

[4] Trump's mischaracterization of the timeline is further apparent in his discussion of George Conway. Carroll testified at her deposition that she had received the undersigned counsel's name from Conway at a social gathering in mid-July 2019, after she had published her book. *See* Ex. C at 206:13-16. That has no bearing on whether the rape occurred or whether Carroll wrote truthfully about the rape in her book. Trump, of course, knows all this because his counsel explored it during Carroll's deposition, and he has not pursued it further. That social interaction between Carroll and Conway has nothing whatsoever to do with the funding that Carroll's counsel obtained more than a year later.

KAPLAN HECKER & FINK LLP                                                                    4

or in connection with any … consultations with any legal counsel." Ex. G at 10. Carroll objected to both requests on relevance and other grounds. Ex. H at 10-11; Ex I at 13-14.[5]

And then Trump did nothing. He did not press or pursue the issue within the discovery period (presumably, in part, because he sought the strategic benefit of avoiding reciprocal discovery concerning how he has funded his defense in this litigation). His counsel did not raise the issue in any of the numerous meet-and-confers on discovery requests that the parties had throughout the summer of 2022. Trump did not file any motions to compel in connection with any of his requests.[6] As a result, the time to pursue those requests has long since passed.[7] *See, e.g.,* *Agapito v. AHDS Bagel, LLC*, No. 16 Civ. 8170, 2018 WL 3216119, at *2 (S.D.N.Y. May 17, 2018) (denying motion to reopen discovery and explaining that "to the extent that [defendants] unsuccessfully requested production of these documents from [plaintiffs], the appropriate response would have been a motion to compel"); *Kelly v. Wright Med. Tech., Inc.*, No. 00 Civ. 8808, 2003 WL 40473, at *1 (S.D.N.Y. Jan. 3, 2003) (Kaplan, J.) ("There is no persuasive reason to relieve [a party] of the consequences of her own failure to seek discovery ... in a timely fashion.").

*Third and finally*, Trump's request to reopen discovery obviously cannot be separated from his many prior efforts to delay adjudication of Carroll's claims. *See, e.g., Carroll v. Trump*, 590 F. Supp. 3d 575, 587 (S.D.N.Y. 2022) ("[D]efendant's actions have been dilatory throughout the litigation."); *Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *1 (S.D.N.Y. Oct. 12, 2022) ("Mr. Trump has litigated this case since it began in 2019 with the effect and probably the purpose of delaying it."); *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023) (denying defendant's request to reopen discovery where granting the request "almost surely would delay the trial again").

Indeed, it has since become even more apparent that some of Trump's prior efforts to delay the proceedings—much like this one—reflected overt bad faith and dilatory conduct. As the Court will recall, Trump made a request on February 6, 2023 to delay trial from April 17 to sometime in June so that his new counsel could find a replacement for Trump's psychiatric expert, Dr. Edgar Nace. *See* ECF 48. In connection with that request, Trump's counsel represented to the Court that Dr. Nace had to withdraw from serving as an expert after counsel learned on January 24 that Dr. Nace's wife's health "had taken an unexpected turn for the worse, [she] needed immediate surgery, *and faced a real risk of death*." ECF 48 at 2 (emphasis added). But at Dr. Nace's deposition, it

---

[5] Trump's letter erroneously suggests that Carroll's sole basis for objecting to these requests was attorney-client privilege. ECF 108 at 5. But Carroll asserted relevance and other objections, which Trump never challenged.

[6] It is not even clear what Trump could hope to obtain in reopened discovery. As we explained to Trump's counsel, Carroll has not been involved in any communications with the nonprofit organization or its financial supporters, and we have already disclosed the information as to which she has personal knowledge. Because Carroll may not testify as to matters about which she has no personal knowledge, *see* Fed. R. Evid. 602, any discovery that Trump may hypothetically seek would have no effect on the upcoming trial. It is, of course, facially absurd for Trump to insist that Reid Hoffman, who has never met or communicated with Carroll, possesses evidence bearing on the truth or falsity of Carroll's battery and defamation claims, and so the rules of discovery and the upcoming trial schedule must be upended to depose him at the eleventh hour.

[7] Trump did make identical requests regarding funding as part of his document requests in *Carroll II*, which, despite the limitations imposed on discovery in this action, were largely copied and pasted from his *Carroll I* requests. Carroll once again objected to producing responsive documents, Ex. J at 7-8, and Trump's counsel did not raise any issue with our objections.

## KAPLAN HECKER & FINK LLP

<div align="right">5</div>

became clear this was not true. Dr. Nace testified that there was never a time that he was "no longer able to perform [his] role as a rebuttal expert." Ex. K at 108:23-109:2. Although Dr. Nace explained that his wife did undergo a medical procedure on January 17 or 18 that led to a complication, that complication was immediately addressed by a reversal of the procedure the following day, and she did not undergo any other surgery until February 14. *Id.* at 142:21-143:20. As a result, Dr. Nace testified that his wife's health was "stable" between the time he was retained on January 9 and his deposition on March 15. *Id.* at 114:17-115:4. Although we do not seek to diminish the seriousness or importance of Dr. Nace's wife's ongoing health concerns, Trump's lawyers' representations to this Court of a life-threatening emergency in order to seek an extension of the trial date were not only incorrect, but irreconcilable with this sworn testimony.[8]

\* \* \*

The parties are hard at work preparing for trial. Until three days ago, it finally seemed that we were past Trump's dilatory tactics. But then, without any advance notice to us (despite multiple calls between the parties on April 10 and 11), he filed a motion on April 11 seeking a four-week adjournment to "cool[] off" from the flames he himself had fanned. *See* ECF 106, 107. He now seeks to reopen discovery based on an irrelevant issue, which he raised and then dropped as part of the discovery process. One thing is clear—Trump will stop at nothing to avoid having a jury hear Carroll's claims. This latest motion to adjourn the trial date should also be denied.

<div align="right">
Respectfully submitted,

Roberta A. Kaplan
</div>

cc:    Counsel of Record

---

[8] As a fallback to his adjournment request, Trump seeks some sort of unspecified adverse inference against Carroll "with respect to her willful defiance of her discovery obligations." That is a meritless request. An adverse inference instruction is "an extreme sanction" that "should not be given lightly." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *see also Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir.2013); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Here, there is no basis at all—let alone an "extreme" basis—for sanctions. *First*, for the reasons explained above, evidence about third-party funding obtained well after the initiation of *Carroll I* is wholly irrelevant to the claims and defenses in this lawsuit. *Second*, Trump is simply wrong to assert that Carroll "failed to timely disclose responsive evidence" in response his "written demand for discovery"; as noted above, Carroll objected to those written requests on relevance grounds, and Trump made a choice not to pursue the issue any further in negotiations over written discovery demands. *Finally*, Carroll and her counsel acted appropriately at all times and certainly never acted with a culpable state of mind: Carroll testified truthfully at her deposition as to her recollection; she promptly informed Trump's counsel when she recollected additional information; and Carroll's counsel adhered to their ethical obligations in this process (which did not include any asserted obligation to volunteer information to Trump's counsel at odds with their client's own actual recollection). Because evidence about third-party funding is not relevant to any claim or defense that will be presented to the trier of fact, because Carroll had no obligation to produce any written discovery on this topic after her express objections sparked no pushback by Trump, and because Carroll upheld her obligations to testify truthfully when deposed and to disclose her subsequent additional recollection, there is simply no basis for any adverse inference in this case.

# EXHIBIT C

Page 1

1

2          UNITED STATES DISTRICT COURT

3          SOUTHERN DISTRICT OF NEW YORK

4

5    E. JEAN CARROLL,            )
              Plaintiff,         )
6                                )
         -against-              )20-cv-7311(LAK)
7                                )
     DONALD J. TRUMP, in his     )
8    personal capacity,          )
              Defendant.         )
9    _____      )

10

11

12          ***CONFIDENTIAL***

13       VIDEOTAPED DEPOSITION OF

14          E. JEAN CARROLL

15         New York, New York

16       Friday, October 14, 2022

17

18

19

20   Reported By:

21   CATHI IRISH, RPR, CRR, CLVS

22

23

24

25

Page 206

1                  CARROLL - CONFIDENTIAL

2        Q.    What was the party for?

3        A.    Just a party.

4        Q.    With friends, is that what you

5   mean?

6        A.    Yes, with friends.

7        Q.    Other than George, who else was

8   at that party?

9        A.    Paul Krugman, Noah Shachtman from

10  The Daily Beast, Kathy Griffin.  It was --

11  Molly puts interesting people together.

12       Q.    Do you know when this was?

13       A.    I do.  It was sometime in mid

14  July.

15       Q.    Of what year?

16       A.    2019.

17       Q.    Were any of their spouses there?

18             MS. KAPLAN:  Any of the guests

19       had their spouses?

20             MS. HABBA:  You need to answer

21       the question.

22             MS. KAPLAN:  The question was

23       were the spouses of any of the guests

24       there.

25             THE WITNESS:  Kellyanne was not

A-1221

# EXHIBIT D

A-1222

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
E. JEAN CARROLL,                                          Index No.:  160694/19

                          Plaintiff,

                    -against-

DONALD J. TRUMP, in his personal capacity,

                          Defendant.
-------------------------------------------------------------------X

## DEFENDANT PRESIDENT DONALD J. TRUMP'S
## REQUEST FOR THE PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that, pursuant to CPLR 3120, Defendant Donald J. Trump,

subject to and reserving all rights to his immunity, under the Supremacy Clause and Article II of

the United States Constitution, from a state court exercising jurisdiction over a sitting President

while he or she serves as President, and any other applicable laws or doctrines, hereby requests

that Plaintiff E. Jean Carroll produce and permit inspection and copying of the following

documents (the "Requests," and individually, a "Request") within twenty (20) days from the date

of service at the law offices of Kasowitz Benson Torres, LLP, 1633 Broadway, New York, New

York 10019.

## DEFINITIONS

1.      "Action" shall mean the above-captioned action, including but not limited to the

allegations and filings herein.

2.      "Article" refers to the June 21, 2019 article written by Plaintiff on the New York

magazine website, The Cut "*Donald Trump assaulted me in a Bergdorf Goodman dressing room*

*23 years ago. But he's not alone on the list of awful men in my life.*"

3.     "Bergdorf" shall mean Bergdorf Goodman, the luxury department store on Fifth Avenue in New York City, referenced in Paragraph 22 of the Complaint, including but not limited to each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

4.     "The Book" refers to the book written by Plaintiff: *What Do We Need Men For?: A Modest Proposal.*

5.     "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, presentations, demonstratives, visual aids, packages, conversations, meetings, discussions, telephone calls, text messages, instant messages, electronic messaging, social media messages or postings, telegrams, telexes, telecopies, seminars, conferences, messages, notes, emails and memoranda.  The transmission of Documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of Communication.

6.     "Complaint" shall mean the complaint, dated November 4, 2019, in this Action.

7.     "Concerning" shall mean about, regarding, relating to, referring to, reflecting, describing, evidencing or constituting, and shall be construed as necessary to bring within the scope of the Request all Documents that might otherwise be construed as outside of its scope.

8.     "Defendant" shall mean Defendant President Donald J. Trump.

9.     "Document(s)" and "all documents" shall mean the original and any copy differing from the original of any printed, written, typed, recorded, graphic, photographic, computerized printout, computer program, computer data base or other tangible matter from whatever source;

whether produced or reproduced or stored on paper, cards, tapes, discs, belts, films, computer storage devices, or any other material or device; whether in draft or otherwise; whether sent or received or neither; including, but not limited to, the original or a true copy (if the original is not available) and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise); and includes, without limitation, all writings, correspondence, letters, calendars, diaries, journals, notebooks, files, logs, time logs or other indications of work done or time spent, telephone message slips, drafts, charts, data sheets, statistics, telegrams, email messages, text messages, instant messages, electronic messaging, social media messages or postings including but not limited to Twitter, teletypes, telefaxes, telecopies, facsimile transmissions, cables, contracts, agreements, policies, studies, transcripts, summaries, newspaper or magazine materials, pamphlets, books, ledgers, registers, reports, financial statements, prospectuses, minutes, agendas, invoices, purchase orders, order confirmations, statements, checks, receipts, returns, estimates, projections, memoranda, notes, interoffice and intra-office communications, offers, notations of any sort of conversations, bulletins, pictures, photographs, videos, films, computer printouts, work papers, work sheets and all drafts, alterations, modifications, and changes and amendments of any kind.  Documents shall include any associated ESI.

10.     "*Elle*" shall mean *Elle* magazine and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf, including but not limited to Hearst.

11.     "ESI" shall mean electronically stored information.

3

12.     "Hearst" shall mean Hearst Communications, Inc. and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

13.     "Kaplan Hecker & Fink" shall mean Kaplan Hecker & Fink LLP and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members partners, shareholder, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

14.     "Kaplan" shall mean Roberta A. Kaplan and her Representatives.

15.     "Person" shall mean any natural person or any business, legal or governmental entity, agency, service or association.

16.     "Representative" shall mean, without limitation, any Person, including any current or former directors, officers, employees, agents, brokers, consultants, contractors, attorneys, partners, members, shareholders, intermediaries, subsidiaries and affiliates, who acts, has at any time acted, or has at any time by any Person been requested or solicited to act, at the Person's request, for the Person's benefit, or on the Person's behalf, or one who acts or has at any time acted on the Person's behalf or for the Person's benefit with the Person's knowledge, consent, or acquiescence.

17.     "Statements" shall mean the allegedly defamatory statements as described in the Complaint.

18.    "Carroll," "Plaintiff," "You," and "Your" shall mean plaintiff E. Jean Carroll and all Persons and her Representatives and former Representatives, including but not limited to, Kaplan Hecker & Fink, and Roberta Kaplan.

## INSTRUCTIONS

1.    Each Request calls for the production of the original Document or Documents.  If the original is not available, then a copy shall be produced.  In addition, any copy of a Document shall be produced if it differs in any respect from the original (*e.g.,* by reason of handwritten notes or comments having been added to the copy which do not appear on the original or otherwise).

2.    Each Request calls for the production of Documents in the possession, custody or control of You or Your representatives.

3.    To the extent that You object to any of the Requests, whether in whole or in part, on the ground that responsive Documents are privileged or otherwise immune from discovery:

    a.  identify the Document, including title, date, name of author(s), and name of recipient(s) (including addressees and cc's), attachments or appendices, and the subject matter;

    b.  identify each Person to whom any part of the content of any such Document has been communicated; and

    c.  state the factual basis on which privilege or immunity is claimed in sufficient detail to permit the Court to judge the validity of the claim.

4.    In the event that any Document responsive to the Requests has been lost or destroyed, identify the Document as follows:  title, date, name of author(s), name of recipient(s) (including addressees and cc's), indicated or blind copies, subject matter, number of pages and attachments or appendices, as well as the date, place, manner, reason and circumstances of the

A-1227

Document's destruction, Person or Persons authorizing destruction, Persons destroying the Document, and the paragraph of this request to which the Document relates.

5.      Each Request calls for the production of ESI associated with responsive Documents and any ESI that is otherwise responsive.  ESI should be produced in the following format: As Group IV, single-page TIFF images, at 300 dot-per-inch, with an Opticon load file and a Concordance/Relativity delimited dataload file (*.DAT).  All spreadsheets responsive to these Requests that are maintained in the usual course of business in electronic format shall be produced in their native format (along with the TIFF images, linked using NATIVEPATH field.).  Documents that cannot be converted to TIFF format should be produced in native format.  Extracted text of a Document must be delivered on a Document level.  All text for a single Document should be contained within one file.  If there is non-searchable ESI and the text cannot be extracted, You must provide Optical Character Recognition text for those Documents.

6.      If You contend that any Document or ESI responsive to the Requests cannot be produced for any other reason, state with specificity the basis for Your contention.

7.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all Documents that might otherwise be construed as outside of its scope.

8.      The terms "any" and "all" include each other within their meaning, whether both are referenced or otherwise.

9.      Unless otherwise indicated below, the time period for the Requests is January 1995 to the present.

## DOCUMENTS REQUESTED

1.      All Documents and Communications concerning the Statements.

2.      All Documents and Communications concerning statements made by You that have been characterized by anyone as biased, bogus, concocted, counterfeit, deceptive, dishonest, erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented, misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.

3.      All Documents and Communications concerning Defendant, President Trump's presidency and/or Mr. Trump's campaign.

4.      All Documents and Communications concerning the allegations in the Complaint.

5.      All Documents and Communications with Defendant, his family members, or his agents or representatives.

6.      All Documents and Communications concerning this Action, including but not limited to all Documents concerning Communications with any non-party.

7.      All Documents and Communications concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

8.      All Documents and Communications concerning any discussions You had with any other Person concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint, including but not limited to, the Communications described in paragraphs 43 through 54 of the Complaint.

9.      All Documents and Communications with Lisa Birnbach concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.

10.     All Documents and Communications with Carol Martin concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.

11.     All Documents and Communications concerning any tests of clothing that have occurred related to the allegations in the Complaint, including all Documents and Communications with Carol Martin.

12.     All Documents and Communications concerning what You were wearing during the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

13.     All Documents and Communications concerning the payment of attorneys' fees or other expenses, including but not limited to promises of payments for security expenses, relocation, or any other benefit, in connection with this Action or any statements, accusations or allegations concerning Defendant.

14.     All Documents and Communications concerning any funds, payments, donations, gifts or consideration of any value, which have been made, provided, discussed, or offered to have been made or provided, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person, concerning the Defendant, any accusation or allegation concerning Defendant, this Action, and/or Defendant's presidency or campaign, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees.

15.     All Documents and Communications between You, on one hand, and any member of the media or press, reporter, blogger, website operator, and/or journalist, on the other hand, concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

16.     All Documents and Communications concerning any quote attributed to You or interview given by You in any newspaper, magazine, journal, news source, or other publication concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

17.     All Documents and Communications concerning any press conferences in which You or Your representatives appeared, attended and/or participated, concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

18.     All Documents and Communications concerning publicity, public reports, interviews, or other media attention or "mentions" pertaining to You.

19.     All Documents and Communications concerning your attendance at any politically-related meeting, event, conference, rally, phone-call, or march, including but not limited to any payment or consideration received in connection with such attendance.

20.     All Documents and Communications with or concerning any witness or potential witness to any accusation or allegation concerning the Defendant or the allegations in the Complaint or this Action.

21.     All Documents and Communications concerning the Article.

22.     All Documents and Communications concerning the Book, including but not limited to all drafts of the Book and communications with editors, publishers, distributors, or promoters concerning the Book.

23.     All Documents and Communications concerning agreements related to the Book or the Article, including but not limited to any agreements as to indemnification, payment, royalties, or advances.

24.     All Documents and Communications concerning any funds received as a result of the Book, including but not limited to Documents sufficient to show all funds received in connection with sale, distribution, or promotion of the Book or the Article.

25.     All Documents and Communications concerning any public appearances concerning the allegations alleged in the Complaint, including but not limited to any payment, remuneration, reimbursement, or compensation, in exchange for or in connection with any such appearances.

26.     All Documents and Communications concerning the Store.

27.     All Documents and Communications concerning the Statements referenced in paragraphs 81 through 128 of the Complaint.

28.     All Documents and Communications concerning any alleged harm, injury or damages caused by the Statements.

29.     All Documents and Communications concerning damages related to your loss of employment or professional/reputational harm caused by the Statements.

30.     All Documents and Communications with anyone associated with the Store concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

31.     All Documents and Communications concerning any attempts to mitigate any harm, injury, or damages allegedly caused by the Statements.

32.     All Federal and state income tax returns (including K-1 statements from any entity) for the period 1995 to the present.

33.    All partnership or employment records demonstrating Your financial compensation, including all pay stubs, invoices, draws, carried interest, investments returns, W-2s or 1099s from any entity, for the period 1995 to the present.

34.    Documents and Communications sufficient to show all accounts, trusts, investments, companies, corporate interests, partnerships, or other vehicles, entities or enterprises in which You have a direct or indirect ownership or control interest, for the period 1995 to the present.

35.    Documents and Communications sufficient to show all assets, including real estate, securities, cash, partnership or corporate interests, You directly or indirectly own or control.

36.    All Documents and Communications concerning Your personal finances, including all personal banking records, checking account statements, savings account statements, investment account statements or transaction records, trust records or statements, family office records or statements, and any records of payments or disbursements made by You or on Your behalf, for the period 2015 to the present.

37.    All Documents and Communications concerning Your purported "reputational and other harm" caused by the Statements, as alleged in paragraphs 129 and 136 of the Complaint.

38.    All Documents and Communications concerning Your purported emotional harm caused by the Statements.

39.    All Documents and Communications concerning any employment by or publishing agreement with, whether formal or informal, any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to copies of such agreement(s).

40.    All Documents and Communications concerning your termination, whether voluntary or involuntary, from any employer, whether as an employee or independent contractor,

including but not limited to with any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to *Elle*, including but not limited to the reasons for such termination, and any performance reviews.

41.    Documents sufficient to show all employers for which You worked, whether as an employee or independent contractor, for the past 10 years, and any pay, salary, or remuneration received in connection with such employment or agreement.

42.    All Documents and Communications concerning Your attempts to obtain employment, work, contracts, or other engagements or financial arrangements with any magazine, newspaper, website, publisher, blogger, distributor, or publication, following Your termination from *Elle*.

43.    All Documents and Communications concerning Your pay, salary, or any compensation or remuneration received, from *Elle*.

44.    All Documents and Communications concerning Your decision to publish the Article in *New York Magazine*.

45.    All Documents and Communications concerning budget cuts at *Elle* or Hearst.

46.    All Documents and Communications concerning any meetings at the Russian Tea Room with editors of *Elle* or Hearst.

47.    All Documents and Communications concerning Your attribution of Your termination at *Elle* to the Statements.

48.    All Documents and Communications concerning Your allegation in paragraph 134 of the Complaint, that Your column was impaired, and any reasons therefor.

49.    All Documents and Communications concerning any criticism or critique of Your column in *Elle*.

50.     Documents sufficient to show the number of Communications received per month seeking advice in connection with Your column with *Elle*.

51.     All Documents and Communications concerning the number of Communications received per month seeking advice in connection with Your column with Elle.

52.     All Documents and Communications concerning all health-care providers (physical or mental) and services rendered to You from 1990 through the present, including all therapist, psychiatrist, treating physician or other doctor, hospital, and follow-on or supplementary health-care appointments and services scheduled and attended, and all prescriptions written and/or filled.

53.     All Documents and Communications concerning any accusations, charges, or inquiries by anyone concerning any actual or alleged unlawful acts or other criminal conduct by You during Your lifetime.

54.     All Documents and Communications concerning any accusation You made against another Person of sexual assault or inappropriate sexual conduct, including but not limited to any official complaints with employers, law enforcement agencies, or courts.

55.     All Documents and Communications concerning You and any alcohol or drug use or abuse.

56.     All Documents and Communications concerning any incarcerations, fines paid, arrests, or other criminal conduct during Your lifetime.

57.     All Documents and Communications concerning any disciplinary proceedings involving You, regardless of whether such proceeding resulted in any disciplinary action.

58.     All Documents and Communications concerning or bearing on Your reputation for honesty.

59.     All Documents and Communications concerning any polygraph examinations You have taken or been subject to during your lifetime.

60.     All diaries or journals you have kept during any portion of Your lifetime.

61.     Documents sufficient to identify all other litigations, arbitrations, or other formal disputes involving or concerning You.

62.     All Documents and Communications regarding any oral or written statement by any of the parties to this Action concerning the allegations in the Complaint, irrespective of who obtained them or how they were obtained.

63.     All Documents and Communications identifying any witness with knowledge of the purported matters at issue in this Action.

64.     All Documents and Communications between you and any third party concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign, since the Complaint was filed, excluding privileged Communications with attorneys.

65.     All Documents and Communications sent to, reviewed by, or prepared by any expert retained by you in this case concerning You, Defendant, the Complaint, or this Action.

66.     All Documents and Communications consulted in responding to Defendant's Interrogatories to You.

67.     All Documents and Communications on which You intend to rely or use at trial in this Action.

**PLEASE TAKE NOTICE** that this shall be deemed to be a continuing demand, and should any of the Documents or things designated for discovery and inspection in this notice come

into Plaintiff's possession, custody or control after the time of original production, Plaintiff shall

be required to produce such Documents within twenty (20) days of obtaining such possession.

> **PLEASE TAKE FURTHER NOTICE** that your default will result in an application

being made to the Court for appropriate relief with costs.

Dated: August 21, 2020
    New York, New York

                        KASOWITZ BENSON TORRES LLP


                    By:*/s/ Marc E. Kasowitz*
                        Marc E. Kasowitz
                        Christine A. Montenegro
                        Paul J. Burgo

                        1633 Broadway
                        New York, New York 10019
                        (212) 506-1700

                        *Attorneys for Defendant Donald J. Trump*

To:  Roberta A. Kaplan
      KAPLAN HECKER & FINK LLP
      350 5th Ave #7110
      New York, New York 10118
      (212) 763-0883

      *Attorneys for Plaintiff E. Jean Carroll*

A-1237

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| E. JEAN CARROLL<br><br>                          *Plaintiff*,<br>         v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>                          *Defendant*. | Index No. 160694/19<br><br>Hon. Verna L. Saunders<br><br>**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

Pursuant to Article 31 of New York's Civil Practice Laws and Rules ("CPLR"), Plaintiff E. Jean Carroll ("Carroll"), by and through her undersigned attorneys, hereby submits her Responses and Objections (the "Responses") to the First Set of Document Requests of Defendant Donald J. Trump ("Trump") dated August 21, 2020 (the "Requests").

## **GENERAL OBJECTIONS**

The following general responses and objections (the "General Objections") are incorporated into each specific respect and objection (the "Specific Objections") as if fully set forth therein:

A.      Carroll objects to any and all of these Requests on the ground that Carroll's Second Set of Document Requests were served on January 10, 2020, are now due, and Trump has refused to commit to producing a single document. Instead, Trump responded to Carroll's requests with assertions of blanket and inapplicable objections and overbroad claims of executive privilege thereby trying to achieve *de facto* what he couldn't achieve by motion practice, namely a stay of this Action.

B.      Carroll objects to Definition No. 3 on the ground that it purports to include Bergdorf
Goodman's "current or former subsidiaries, affiliates, parents, predecessors and successors,
divisions, departments and operating units, and includes, without limitation, each of their current
or former officers, directors, members, partners, shareholders, employees, agents, officials,
Representatives, and all Persons and entities acting or purporting to act on their behalf." In
responding to the Requests, Carroll will construe "Bergdorf" to refer to the store "Bergdorf
Goodman," as referenced in paragraph 22 of the Complaint.

C.      Carroll objects to Definition No. 10 on the ground that it purports to include *Elle*'s
"current or former subsidiaries, affiliates, parents, predecessors and successors, divisions,
distributors, publishers, departments and operating units, and includes, without limitation, each of
their current or former officers, directors, members, partners, shareholders, employees, agents,
officials, Representatives, and all Persons and entities acting or purporting to act on their behalf,
but not limited to Hearst." In responding to the Requests, Carroll will construe "*Elle*" to refer to
"*Elle* Magazine."

D.      Carroll objects to Definition No. 18 on the ground that it defines "You" to include
"plaintiff E. Jean Carroll and all persons and her Representatives and former Representatives,
including but not limited to, Kaplan Hecker & Fink, and Roberta Kaplan." Because this is solely
a dispute between two parties, Carroll with construe "You" to refer only to "E. Jean Carroll."

E.      Carroll objects to the Definitions and Instructions Requests insofar as they purport
to require unreasonable measures to locate and produce responsive information or seek documents
that are not within Carroll's possession, custody or control. In responding to the Requests, Carroll
will undertake a reasonable and diligent search of her accessible files, as required by the CPLR.

A-1240

F.      Carroll objects to the Requests to the extent that they purport to call for information or documents that: (a) are subject to attorney-client privilege; (b) constitute attorney work product; (c) contain information protected from disclosure based on common interest or a similar privilege; or (d) are otherwise protected from disclosure under any applicable privilege, law, or rule. Carroll will not produce such information or documents in response to the Requests, and any inadvertent production thereof shall not be deemed waiver of any privilege with respect to such information.

G.      These Responses to the Requests are made to the best of Carroll's present knowledge, information, and belief. These Responses are subject to changes based on additional facts that may come to light as a result of further discovery or investigation.

H.      Carroll reserves all objections or questions as to the competency, relevance, materiality, privilege, or admissibility of Carroll's responses herein, as evidence in any subsequent proceeding in, or trial of, this or any other action, for any purpose whatsoever. Carroll's Responses herein are not intended to be and shall not be construed as agreement or concurrence with Trump's characterization of any facts, circumstances, or legal obligations, and Carroll reserves the right to contest any such characterizations as appropriate.

I.      Carroll remains available to meet and confer with Trump in an effort to resolve any disputes that may arise concerning these Responses.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

1.      All Documents and Communications concerning the Statements.

**RESPONSE:**  Carroll will produce any non-privileged documents responsive to this Request *on the condition that Trump agrees to do the same*.

2.      All Documents and Communications concerning statements made by You that have been characterized by anyone as biased, bogus, concocted, counterfeit, deceptive, dishonest, erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented, misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.

3

**A-1241**

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the grounds that it is overbroad, unduly burdensome, and purports to require Carroll to understand the subjective views of other persons. Notwithstanding and without wavier of her General and Specific Objections, Carroll notes that Trump himself has characterized *What Do We Need Men For?: A Modest Proposal* and the excerpt of that book published in *The Cut* using the above or similar words. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents (if any) responsive to this Request, ***on the condition that Trump agrees to do the same***.

3.     All Documents and Communications concerning Defendant, President Trump's presidency and/or Mr. Trump's campaign.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope, unduly burdensome, and an infringement of her First Amendment rights as an American citizen. Carroll is further willing to stipulate that she did not vote for Trump as President and is highly critical of his actions and policies. Nonetheless, this case is about whether Trump sexually assaulted her in the mid-1990s and then lied about it more recently. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request that relate to any statements she has made relating both to Trump's presidency *and* this lawsuit.

4.     All Documents and Communications concerning the allegations in the Complaint.

**RESPONSE:**  Carroll will produce non-privileged documents responsive to this Request ***on the condition that Trump agrees to do the same***.

5.     All Documents and Communications with Defendant, his family members, or his agents or representatives.

4

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it seeks irrelevant information, is vague, and is unduly burdensome. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents (if any) responsive to this Request *on the condition that Trump agrees to produce communication with his family members about this case*.

6.      All Documents and Communications concerning this Action, including but not limited to all Documents concerning Communications with any non-party.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request *on the condition that Trump agrees to do the same*.

7.      All Documents and Communications concerning the purported incident or incidents described in paragraph 22 through 42 of the Complaint.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents *on the condition that Trump agrees to do the same*.

8.      All Documents and Communications concerning any discussions You had with any other Person concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint, including but not limited to, the Communications described in paragraph 43 through 54 of the Complaint.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request *on the condition that Trump agrees to do the same*.

5

9.      All Documents and Communication with Lisa Birnbach concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

10.      All Documents and Communication with Carol Martin concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.

**RESPONSE**: In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

11.      All Documents and Communication concerning any tests of clothing that have occurred related to the allegations in the Complaint, including all Documents and Communication with Carol Martin.

**RESPONSE**: Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents responsive to this Request including, but not limited to, the Expert Report of Nancy Wilson, M.S. and Alan Keel, dated January 8, 2020 to the extent that such disclosures are consistent with the CPLR and *on the condition that Trump submits to a DNA test as requested by Carroll in Carroll's First Notice to Submit Physical Examination to Defendant Donald J. Trump served on January 30, 2020.*

12.      All Documents and Communications concerning what You were wearing during the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

6

A-1244

**RESPONSE:** Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents (if any) responsive to this Request *on the condition that Trump agrees to do the same*.

13.     All Documents and Communications concerning the payment of attorneys' fees or other expenses, including but not limited to promises of payments for security expenses, relocation, or any other benefit, in connection with this Action or any statements, accusations or allegations concerning Defendant.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request insofar as it calls for the production of documents protected by attorney-client privilege, attorney work-product doctrine, and other applicable privileges. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action the production of which could further threaten Carroll's security. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce documents responsive to this Request subject to the entry of an appropriate confidentiality order and *on the condition that Trump agrees to provide information about who/what entity is paying his attorneys' fees in this action*. *See e.g.*, Eric Lipton, *How Trump Draws on Campaign Funds to Pay Legal Bills*, N.Y. TIMES, *available at* https://www.nytimes.com/2020/09/05/us/politics/trump-campaign-funds-legal-bills.html.

14.     All Documents and Communications concerning any funds, payments, donations, gifts, or consideration of any value, which have been made, provided, discussed, or offered to have been made or provided, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person, concerning the Defendant, any accusation or allegation concerning Defendant, this Action, and/or Defendant's presidency and or campaign, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request insofar as it is duplicative of Request No. 13 and calls for the production of documents protected by attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

7

Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce

non-privileged documents (if any) responsive to this Request subject to the entry of an appropriate

confidentiality order and ***on the condition that Trump agrees to provide information about

who/what entity is paying his attorneys' fees in this action***. *See e.g.*, Eric Lipton, *How Trump

Draws on Campaign Funds to Pay Legal Bills*, N.Y. TIMES, *available at*

https://www.nytimes.com/2020/09/05/us/politics/trump-campaign-funds-legal-bills.html.

15.     All Documents and Communications between You, on one hand, any member of
the media or press, reporter, blogger, website operator, and/or journalist, on the other hand,
concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's
presidency and or Mr. Trump's campaign.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the

ground that it is cumulative and overbroad as to time and scope and requires the production of

documents not reasonably calculated to lead to admissible evidence or proportional to the needs

of this case. While Carroll has certainly expressed opinions about what she thinks about Trump's

presidency (as she is entitled to do under the First Amendment), this case is *only* about whether

Trump defamed Carroll in connection with his prior sexual assault of her, as alleged in the

Complaint. Accordingly, notwithstanding and without waiver of her General and Specific

Objections, Carroll will produce non-privileged documents responsive to this Request to the extent

they relate to the issues in this case and **on the condition that Trump agrees to do the same**.

16.     All Documents and Communications concerning any quote attributed to You or
interview given by You in any newspaper, magazine, journal, news source, or other publication
concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's
presidency or Mr. Trump's campaign.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the

ground that it calls for the production of documents protected by attorney-client privilege, the

attorney work-product doctrine and other applicable privileges. Carroll also objects to this Request

as overbroad and unduly burdensome to the extent it calls for communications about "President Trump's Presidency or Mr. Trump's campaign" generally since Carroll has a right to speak about such issues under the First Amendment and they have nothing to do with this case. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents (if any) responsive to this Request to the extent they relate to the issues in this case and *on the condition that Trump agrees to do the same*.

17.     All Documents and Communications concerning any press conferences in which You or Your representatives appeared, attended and/or participated, concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it calls for the production of documents protected by attorney-client privilege, the attorney work-product doctrine and other applicable privileges. Carroll also objects to this Request as overbroad and unduly burdensome to the extent it calls for communications about "President Trump's Presidency or Mr. Trump's campaign" generally since Carroll has a right to speak about such issues under the First Amendment and they have nothing to do with this case. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents (if any) responsive to this Request to the extent they relate to the issues in this case and *on the condition that Trump agrees to do the same*.

18.     All Documents and Communications concerning publicity, public reports, interviews, or other media attention or "mentions" pertaining to You.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of prior Requests, overbroad as to subject matter and scope, and vague and ambiguous. Carroll does not understand what documents or information Trump is asking for in this Request.

19.     All Documents and Communications concerning your attendance at any politically-related meeting, event, conference, rally, phone-call, or march, including but not limited to any payment or consideration received in connection with such attendance.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it seeks information that is irrelevant to any claim or defense in this Action and infringes on her First Amendment rights as an American citizen. Carroll further objects to this Request on the ground that it is overbroad with respect to time and scope and unduly burdensome. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents (if any) relating to whether she was paid ever to attend any politically-related meeting, event, etc.

20.     All Documents and Communication with or concerning any witness or potential witness to any accusations or allegation concerning the Defendant or the allegations in the Complaint or this action.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it seeks information that it calls for the production of documents protected by attorney-client privilege, the attorney work-product doctrine and other applicable privileges. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents (if any) responsive to this Request ***on the condition that Trump agrees to do the same***.

21.     All Documents and Communications concerning the Article.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request ***on the condition that Trump agrees to do the same***.

A-1248

22.     All Documents and Communications concerning the Book, including but not limited to all drafts of the Book and communication with editors, publishers, distributors, or promoters concerning the Book.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

23.     All Documents and Communications concerning agreements related to the Book or the Article, including but not limited to any agreements as to indemnification, payment, royalties, or advances.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

24.     All Documents and Communications concerning any funds received as a result of the Book, including but not limited to Documents sufficient to show all funds received in connection with sale, distribution, or promotion of the Book or the Article.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

25.     All Documents and Communications concerning any public appearance concerning the allegations alleged in the Complaint, including but not limited to any payment, remuneration, reimbursement, or compensation, in exchange for in connection with any such appearances.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without

waiver of her General and Specific Objections, Carroll will produce non-privileged documents responsive to this Request.

     26.    All Documents and Communications concerning the Store.

     **RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is vague and ambiguous, because it requests documents pertaining to the "Store," a term nowhere defined in Trump's Requests. For purposes of efficiency, Carroll will construe the "Store" to refer to "Bergdorf Goodman." Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-privileged (if any) responsive to this Request ***on the condition that Trump agrees to do the same***.

     27.    All Documents and Communications concerning the Statements referenced in paragraphs 81 through 128 of the Complaint.

     **RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request ***on the condition that Trump agrees to do the same***.

     28.    All Documents and Communications concerning any alleged harm, injury, or damaged caused by the Statements.

     **RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

     29.    All Documents and Communications concerning damages related to your loss of employment or professional/reputational harm by the Statements.

     **RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without

waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

30.     All Documents and Communications with anyone associated with the Store concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency and Mr. Trump's campaign.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is vague and ambiguous because it requests Documents pertaining to the "Store" which is nowhere defined in Trump's Requests. Carroll, however, will construe the "Store" to refer to "Bergdorf Goodman." Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-privileged documents (if any) responsive to this Request *on the condition that Trump agrees to do the same*.

31.     All Documents and Communications concerning any attempts to mitigate any harm, injury, or damages allegedly caused by the Statements.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that the term "mitigate" is vague and ambiguous in the context of this case. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request.

32.     All Federal and state income tax returns (including K-1 statements from any entity) from the period 1995 to present.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks tax returns that predate any of the alleged harm in the Complaint. Notwithstanding Carroll's General and Specific Objections, however, Carroll will

produce non-privileged documents during the relevant time period responsive to this Request *on the condition that Trump agrees to do the same*.

33.    All partnership or employment records demonstrating Your financial compensation, including all pay stubs invoices, draws, carried interest, investment returns, W-2s or 1099s from any entity, for the period 1995 to the present.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks compensation records that predate any of the alleged harm in the Complaint. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant period responsive to this Request *on the condition that Trump agrees to do the same*.

34.    Documents and Communications sufficient to show all accounts, trusts, investments, companies, corporate interests, partnerships, or other vehicles, entities or enterprises in which You have a direct or indirect ownership or control interest, for the period 1995 to the present.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks financial records that predate any of the alleged harm in the Complaint. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time period responsive to this Request *on the condition that Trump agrees to do the same*.

35.    Documents and Communications sufficient to show all assets, including real estate, securities, cash, partnership or corporate interests, You directly or indirectly own or control.

**RESPONSE**:  In addition to her General Objections, Carroll objects to this Request on the ground that is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks financial records that predate any of the alleged harm in the Complaint. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time period responsive to this Request *on the condition that Trump agrees to do the same*.

36.     All Documents and Communications concerning Your personal finances, including all personal banking records, checking account statements, saving account statements, investment account statements or transaction records, trust records or statements, family office records or statements, and any records of payments or disbursements made by You or on Your behalf, for the period 2015 to the present.

**RESPONSE**:  In addition to her General Objections, Carroll objects to this Request on the ground that is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks financial records that predate any of the alleged harm in the Complaint. Notwithstanding Carroll's General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time period responsive to this Request *on the condition that Trump agrees to do the same*.

37.     All Documents and Communications concerning Your purported "reputational and other harm" caused by the Statements, as alleged in paragraphs 129 and 136 of the Complaint.

**RESPONSE:**  Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents responsive to this Request.

38.     All Documents and Communications concerning Your purported emotional harm caused by the Statements.

15

A-1253

**RESPONSE:**  Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents responsive to this Request.

39.     All Documents and Communications concerning any employment by or publishing agreement with, whether formal or informal, any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to copies of such agreement(s).

**RESPONSE**:  In addition to her General Objections, Carroll objects to this Request on the ground that is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, especially since it seeks employment and publishing agreements that predate any of the alleged harm in the Complaint. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time period responsive to this Request subject to the entry of an appropriate Confidentiality Order.

40.     All Documents and Communications concerning your termination, whether voluntary or involuntary, from any employer, whether as an employee or independent contractor, or including but not limited to with any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to *Elle*, including but not limited to the reasons for such termination, and any such performance reviews.

**RESPONSE**:  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, because it seeks wholly irrelevant information not tailored to the time period relevant to her claims. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time period responsive to this Request subject to the entry of an appropriate Confidentiality Order.

41.     Documents sufficient to show all employers for which You worked, whether as an employee or independent contractor, for the past 10 years, and any pay, salary, or remuneration received in connection with such employment or agreement.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope, unduly burdensome, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, because it seeks wholly irrelevant information not tailored to the time period relevant to this case. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents from the relevant time period responsive to this Request subject to the entry of an appropriate Confidentiality Order.

42.     All Documents and Communications concerning Your attempts to obtain employment, work, contracts, or other engagements or financial arrangements with any magazine, newspaper, website, publisher, blogger, distributor, or publication, following Your termination from *Elle*.

**RESPONSE:**  Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents responsive to this Request subject to the entry of an appropriate Confidentiality Order.

43.     All Documents and Communications concerning Your pay, salary, or any compensation or remuneration received, from *Elle*.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope, unduly burdensome, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and disproportionate to the needs of this case, because it seeks wholly irrelevant information including Carroll's compensation records that are not tailored to the time period relevant to her claims. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents from the relevant time period responsive to this Request subject to the entry of an appropriate Confidentiality Order.

44.     All Documents and Communications concerning Your decision to publish the Article in *New York Magazine*.

17

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request.

45.     All Documents and Communications concerning budget cuts at *Elle* or Hearst.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it seeks information that is almost entirely in the possession of third parties. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents (if any) responsive to this Request subject to the entry of an appropriate Confidentiality Order.

46.     All Documents and Communications concerning any meeting at the Russian Tea Room with editors of *Elle* or Hearst.

**RESPONSE:**  Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents (if any) responsive to this Request subject to the entry of an appropriate Confidentiality Order.

47.     All Documents and Communications concerning Your attribution of Your termination at *Elle* to the Statements.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request subject to the entry of an appropriate Confidentiality Order.

48.     All Documents and Communications concerning Your allegation in paragraph 134 of the Complaint, that Your column was impaired, and any reason therefor.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request.

49.     All Documents and Communications concerning any criticism or critique of Your column in *Elle*.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope and unduly burdensome because it encompasses documents and communications about Carroll's column in *Elle* without appropriate limitations on time, scope, or relevance to this case. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request.

50.     Documents sufficient to show the number of Communications received per month seeking advice in connection with Your column with *Elle*.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope and unduly burdensome because it encompasses documents and communications about Carroll's column in *Elle* without limitations on time, scope, or relevance to this case. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request.

51.     All Documents and Communications concerning the number of Communications received per month seeking advice in connection with Your column with *Elle*.

**RESPONSE:** In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad in time and scope and unduly burdensome because it encompasses documents and communications about Carroll's column in *Elle* without limitations on time, scope, or relevance to this case. Notwithstanding and without waiver of her General Objections, however, Carroll will produce non-privileged documents responsive to this Request.

52.     All Documents and Communications concerning all health-care providers (physical or mental) and services rendered to You from 1990 through the present, including al therapist, psychiatrist, treating physician or other doctor, hospital, and follow-on or supplementary health-care appointments and services scheduled and attended, and all prescriptions written and/or filled.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action since Carroll did not seek medical treatment as a result of Trump's sexual assault or his subsequent statements.

53.     All Documents and Communications concerning any accusations, charges, or inquiries by anyone concerning any actual unlawful acts or other criminal conduct by You during Your lifetime.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request *on the condition that Trump agrees to do the same*.

54.     All Documents and Communications concerning any accusation You made against another Person of sexual assault or inappropriate sexual conduct, including but limited to any official complaints with employers, law enforcement agencies, or courts.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request, *on the condition that Trump agrees to produce documents concerning any and all accusations that he engaged in inappropriate sexual conduct or committed sexual harassment, assault, or rape*.

55.     All Documents and Communications concerning You and any alcohol or drug use or abuse.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

56.     All Documents and Communications concerning any incarcerations, fines paid, arrests, or other criminal conduct during Your lifetime.

**RESPONSE**:  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Carroll further objects to this Request on the ground that it is irrelevant because the only dispute in this case is whether Trump's Statements are defamatory. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

57.     All Documents and Communication concerning any disciplinary proceedings involving You, regardless of whether such proceeding resulted in any disciplinary action.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

58.     All Documents and Communications concerning or bearing on Your reputation for honesty.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action. It is Trump, not Carroll, who has a reputation for dishonesty. *See e.g.*, WASH. POST FACT CHECKER, last updated July 9, 2020, *available at* https://www.washingtonpost.com/graphics/politics/trump-claims-database/ (noting that in 1,267 days, Trump has made 20,055 false or misleading claims). Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

59.     All Documents and Communications concerning any polygraph examinations You have taken or been subject to during your lifetime.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party in this Action. It is Trump, not Carroll, who has a reputation for dishonesty. *See e.g.*, WASH. POST FACT CHECKER, last updated July 9, 2020, *available at* https://www.washingtonpost.com/graphics/politics/trump-claims-database/ (noting that in 1,267 days, Trump has made 20,055 false or misleading claims). Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

60.     All Diaries and journals you have kept during any portion of Your lifetime.

A-1260

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad and unduly burdensome since it seeks information not relevant to the claims or defenses of any party in this Action.  Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents during the relevant time periods responsive to this Request (if any), ***on the condition that Trump agrees to do the same***.

61.     Documents sufficient to identify all other litigations, arbitrations, or other formal disputes involving or concerning You.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any party to this Action. Notwithstanding and without waiver of her General and Specific Objections, however, since the credibility of both parties is at issue in this case, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

62.     All Documents and Communications regarding any oral or written statement by any of the parties to this Action concerning the allegations in the Complaint, irrespective of who obtained them or how they were obtained.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests. Carroll further objects to this Request on the ground that the vast bulk of the information it seeks is within Trump's possession, custody, or control. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request, ***on the condition that Trump agrees to do the same***.

63.     All Documents and Communications identifying any witness with knowledge of the purported matters at issue in this Action.

23

**A-1261**

**RESPONSE:**  Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents responsive to this Request *on the condition that Trump agrees to do the same*.

64.     All Documents and Communications between you and any third-party concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign, since the Complaint was filed, excluding privileged Communications with attorneys.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests, overbroad in scope, unduly burdensome, and infringes upon her First Amendment rights as an American citizen. Notwithstanding and without waiver of her General and Specific Objections, however, Carroll will produce non-privileged documents responsive to this Request to the extent they are relevant to the issues in this case and *on the condition that Trump agrees to do the same*.

65.     All Documents and Communications sent to, reviewed by or prepared by any expert retained by you in this case concerning You, Defendant, the Complaint, or this Action.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it seeks information protected by one or more privileges, including attorney-client, work product, and/or common interest privilege. Carroll further objects on the ground that the Request seeks information that is not subject to discovery in New York state courts. Notwithstanding these objections, however, Carroll, will fully comply with her expert disclosure obligations under the CPLR.

66.     All Documents and Communications consulted in responding to Defendant's interrogatories to You.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the grounds that it calls for information protected by one or more privileges, including attorney-client, work product, and/or common interest privilege. Notwithstanding and without waiver of her

A-1262

General and Specific Objections, however, Carroll will produce documents responsive to this Request.

67.     All Documents and Communications on which You intend to rely or use at trial in this Action.

**RESPONSE:**  In addition to her General Objections, Carroll objects to this Request on the ground that it is premature since not a single document has yet been produced in discovery and Carroll obviously is not in a position to determine which documents or communications she will seek to introduce at trial. Carroll, of course, will comply with all applicable obligations relating to pretrial disclosures under the CPLR.

Dated: New York, New York
       September 8, 2020

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

A-1263

# EXHIBIT F

A-1264

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>*Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

### DEFENDANT'S REQUEST FOR THE PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, Donald J. Trump ("Defendant"), subject to and reserving all rights to his immunity, under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") and any other applicable laws or doctrines, hereby requests that Plaintiff, E. Jean Carroll ("Plaintiff"), produce and permit inspection and copying of the following documents (the "Requests," and individually, a "Request") within twenty (20) days from the date of service at the law offices of Habba Madaio & Associates, LLP, located at 270 West 60th Street, New York, New York 10023.

### DEFINITIONS

1.       "Action" shall mean the above-captioned action, including but not limited to the allegations and filings herein.

2.       "Article" refers to the June 21, 2019, article written by Plaintiff on the New York magazine website, The Cut "*Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life.*"

3.       "Bergdorf" shall mean Bergdorf Goodman, the luxury department store on Fifth

1

Avenue in New York City, referenced in Paragraph 22 of the Complaint, including but not limited to each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

4.      "The Book" refers to the book written by Plaintiff: "*What Do We Need Men For?: A Modest Proposal*".

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, presentations, demonstratives, visual aids, packages, conversations, meetings, discussions, telephone calls, text messages, instant messages, electronic messaging, social media messages or postings, telegrams, telexes, telecopies, seminars, conferences, messages, notes, emails, and memoranda. The transmission of Documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of Communication.

6.      "Complaint" shall mean the complaint, dated November 4, 2019, in this Action.

7.      "Concerning" shall mean about, regarding, relating to, referring to, reflecting, describing, evidencing, or constituting, and shall be construed as necessary to bring within the scope of the Request all Documents that might otherwise be construed as outside of its scope.

8.      "Defendant" shall mean Defendant, Donald J. Trump.

9.      "Document(s)" and "all documents" shall mean the original and any copy differing from the original of any printed, written, typed, recorded, graphic, photographic, computerized printout, computer program, computer data base or other tangible matter from whatever source; whether produced or reproduced or stored on paper, cards, tapes, discs, belts, films, computer storage

2

devices, or any other material or device; whether in draft or otherwise; whether sent or received or neither; including, but not limited to, the original or a true copy (if the original is not available) and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise); and includes, without limitation, all writings, correspondence, letters, calendars, diaries, journals, notebooks, files, logs, time logs or other indications of work done or time spent, telephone message slips, drafts, charts, data sheets, statistics, telegrams, email messages, text messages, instant messages, electronic messaging, social media messages or postings including but not limited to Twitter, teletypes, telefaxes, telecopies, facsimile transmissions, cables, contracts, agreements, policies, studies, transcripts, summaries, newspaper or magazine materials, pamphlets, books, ledgers, registers, reports, financial statements, prospectuses, minutes, agendas, invoices, purchase orders, order confirmations, statements, checks, receipts, returns, estimates, projections, memoranda, notes, interoffice and intra-office communications, offers, notations of any sort of conversations, bulletins, pictures, photographs, videos, films, computer printouts, work papers, work sheets and all drafts, alterations, modifications, and changes and amendments of any kind. Documents shall include any associated ESI.

10.    "Elle" shall mean Elle magazine and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf, including but not limited to Hearst.

11.    "ESI" shall mean electronically stored information.

12.    "Hearst" shall mean Hearst Communications, Inc., and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers,

3

departments, and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

13.      "Kaplan Hecker & Fink" shall mean Kaplan Hecker & Fink LLP and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes, without limitation, each of their current or former officers, directors, members partners, shareholder, employees, agents, officials, Representatives, and all Persons and entities acting or purporting to act on their behalf.

14.      "Kaplan" shall mean Roberta A. Kaplan and her Representatives.

15.      "Person" shall mean any natural person or any business, legal or governmental entity, agency, service, or association.

16.      "Representative" shall mean, without limitation, any Person, including any current or former directors, officers, employees, agents, brokers, consultants, contractors, attorneys, partners, members, shareholders, intermediaries, subsidiaries and affiliates, who acts, has at any time acted, or has at any time by any Person been requested or solicited to act, at the Person's request, for the Person's benefit, or on the Person's behalf, or one who acts or has at any time acted on the Person's behalf or for the Person's benefit with the Person's knowledge, consent, or acquiescence.

17.      "Statements" shall mean the allegedly defamatory statements as described in the Complaint.

18.      "Carroll," "Plaintiff," "You," and "Your" shall mean Plaintiff, E. Jean Carroll and all Persons and her Representatives and former Representatives, including but not limited to, Kaplan Hecker & Fink, and Roberta Kaplan.

**INSTRUCTIONS**

4

A-1268

1.      Each Request calls for the production of the original Document or Documents. If the original is not available, then a copy shall be produced. In addition, any copy of a Document shall be produced if it differs in any respect from the original (e.g., by reason of handwritten notes or comments having been added to the copy which do not appear on the original or otherwise).

2.      Each Request calls for the production of Documents in the possession, custody or control of You or Your representatives.

3.      To the extent that You object to any of the Requests, whether in whole or in part, on the ground that responsive Documents are privileged or otherwise immune from discovery:

    a.   identify the Document, including title, date, name of author(s), and name of recipient(s) (including addressees and cc's), attachments or appendices, and the subject matter;

    b.   identify each Person to whom any part of the content of any such Document has been communicated; and

    c.   state the factual basis on which privilege or immunity is claimed in sufficient detail to permit the Court to judge the validity of the claim.

19.      In the event that any Document responsive to the Requests has been lost or destroyed, identify the Document as follows: title, date, name of author(s), name of recipient(s) (including addressees and cc's), indicated or blind copies, subject matter, number of pages and attachments or appendices, as well as the date, place, manner, reason, and circumstances of the Document's destruction, Person or Persons authorizing destruction, Persons destroying the Document, and the paragraph of this request to which the Document relates.

20.      Each Request calls for the production of ESI associated with responsive Documents and any ESI that is otherwise responsive. ESI should be produced in the following format: As Group

IV, single-page TIFF images, at 300 dot-per-inch, with an Opticon load file and a Concordance/Relativity delimited dataload file (*.DAT). All spreadsheets responsive to these Requests that are maintained in the usual course of business in electronic format shall be produced in their native format (along with the TIFF images, linked using NATIVEPATH field.). Documents that cannot be converted to TIFF format should be produced in native format. Extracted text of a Document must be delivered on a Document level. All text for a single Document should be contained within one file. If there is non-searchable ESI and the text cannot be extracted, You must provide Optical Character Recognition text for those Documents.

21.    If You contend that any Document or ESI responsive to the Requests cannot be produced for any other reason, state with specificity the basis for Your contention.

22.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all Documents that might otherwise be construed as outside of its scope.

23.    The terms "any" and "all" include each other within their meaning, whether both are referenced or otherwise.

24.    Unless otherwise indicated below, the time period for the Requests is January 1995 to the present.

**<u>DOCUMENTS REQUESTED</u>**

1.    All Documents and Communications concerning the Statements.

2.    All Documents and Communications concerning statements made by You that have been characterized by anyone as biased, bogus, concocted, counterfeit, deceptive, dishonest, erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented,

A-1270

misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.

3.     All Documents and Communications concerning Defendant's presidency and/or Mr. Defendant's campaign.

4.     All Documents and Communications concerning the allegations in the Complaint.

5.     All Documents and Communications with Defendant, his family members, or his agents or representatives.

6.     All Documents and Communications concerning this Action, including but not limited to all Documents concerning Communications with any non-party.

7.     All Documents and Communications concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

8.     All Documents and Communications concerning any discussions You had with any other Person concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint, including but not limited to, the Communications described in paragraphs 43 through 54 of the Complaint.

9.     All Documents and Communications with Lisa Birnbach concerning the allegations made in the Complaint, this Action, Defendant's presidency and/or Defendant's campaign.

10.     All Documents and Communications with Carol Martin concerning the allegations made in the Complaint, this Action, Defendant's presidency and/or Defendant's campaign.

11.     All Documents and Communications concerning any tests of clothing that have occurred related to the allegations in the Complaint, including all Documents and Communications with Carol Martin.

12.     All Documents and Communications concerning what You were wearing during the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

A-1271

13.     All Documents and Communications concerning the payment of attorneys' fees or other expenses, including but not limited to promises of payments for security expenses, relocation, or any other benefit, in connection with this Action or any statements, accusations or allegations concerning Defendant.

14.     All Documents and Communications concerning any funds, payments, donations, gifts or consideration of any value, which have been made, provided, discussed, or offered to have been made or provided, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person, concerning the Defendant, any accusation or allegation concerning Defendant, this Action, and/or Defendant's presidency or campaign, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees.

15.     All Documents and Communications between You, on one hand, and any member of the media or press, reporter, blogger, website operator, and/or journalist, on the other hand, concerning Defendant, this Action, the allegations in the Complaint, and/or Defendant's presidency or Defendant's campaign.

16.     All Documents and Communications concerning any quote attributed to You or interview given by You in any newspaper, magazine, journal, news source, or other publication concerning Defendant, this Action, the allegations in the Complaint, and/or Defendant's presidency or Defendant's campaign.

17.     All Documents and Communications concerning any press conferences in which You or Your representatives appeared, attended and/or participated, concerning Defendant, this Action, the allegations in the Complaint, and/or Defendant's presidency or Defendant's campaign.

18.     All Documents and Communications concerning publicity, public reports, interviews,

or other media attention or "mentions" pertaining to You.

19.     All Documents and Communications concerning your attendance at any politically-related meeting, event, conference, rally, phone-call, or march, including but not limited to any payment or consideration received in connection with such attendance.

20.     All Documents and Communications with or concerning any witness or potential witness to any accusation or allegation concerning the Defendant or the allegations in the Complaint or this Action.

21.     All Documents and Communications concerning the Article.

22.     All Documents and Communications concerning the Book, including but not limited to all drafts of the Book and communications with editors, publishers, distributors, or promoters concerning the Book.

23.     All Documents and Communications concerning agreements related to the Book or the Article, including but not limited to any agreements as to indemnification, payment, royalties, or advances.

24.     All Documents and Communications concerning any funds received as a result of the Book, including but not limited to Documents sufficient to show all funds received in connection with sale, distribution, or promotion of the Book or the Article.

25.     All Documents and Communications concerning any public appearances concerning the allegations alleged in the Complaint, including but not limited to any payment, remuneration, reimbursement, or compensation, in exchange for or in connection with any such appearances.

26.     All Documents and Communications concerning the Store.

27.     All Documents and Communications concerning the Statements referenced in paragraphs 81 through 128 of the Complaint.

28.    All Documents and Communications concerning any alleged harm, injury or damages caused by the Statements

29.    All Documents and Communications concerning damages related to Your loss of employment or professional/reputational harm caused by the Statements.

30.    All Documents and Communications with anyone associated with the Store concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or Defendant's presidency or Defendant's campaign.

31.    All Documents and Communications concerning any attempts to mitigate any harm, injury, or damages allegedly caused by the Statements.

32.    All Federal and state income tax returns (including K-1 statements from any entity) for the period 1995 to the present.

33.    All partnership or employment records demonstrating Your financial compensation, including all pay stubs, invoices, draws, carried interest, investments return, W-2s or 1099s from any entity, for the period 1995 to the present.

34.    Documents and Communications sufficient to show all accounts, trusts, investments, companies, corporate interests, partnerships, or other vehicles, entities, or enterprises in which You have a direct or indirect ownership or control interest, for the period 1995 to the present.

35.    Documents and Communications sufficient to show all assets, including real estate, securities, cash, partnership, or corporate interests, You directly or indirectly own or control.

36.    All Documents and Communications concerning Your personal finances, including all personal banking records, checking account statements, savings account statements, investment account statements or transaction records, trust records or statements, family office records or statements, and any records of payments or disbursements made by You or on Your behalf, for the

A-1274

period 2015 to the present.

37.     All Documents and Communications concerning Your purported, "reputational and other harm," caused by the Statements, as alleged in paragraphs 129 and 136 of the Complaint.

38.     All Documents and Communications concerning Your purported emotional harm caused by the Statements.

39.     All Documents and Communications concerning any employment by or publishing agreement with, whether formal or informal, any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to copies of such agreement(s).

40.     All Documents and Communications concerning your termination, whether voluntary or involuntary, from any employer, whether as an employee or independent contractor, including but not limited to with any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to Elle, including but not limited to the reasons for such termination, and any performance reviews.

41.     Documents sufficient to show all employers for which You worked, whether as an employee or independent contractor, for the past ten (10) years, and any pay, salary, or remuneration received in connection with such employment or agreement.

42.     All Documents and Communications concerning Your attempts to obtain employment, work, contracts, or other engagements or financial arrangements with any magazine, newspaper, website, publisher, blogger, distributor, or publication, following Your termination from Elle.

43.     All Documents and Communications concerning Your pay, salary, or any compensation or remuneration received, from Elle.

44.     All Documents and Communications concerning Your decision to publish the Article

11

in New York Magazine.

45.     All Documents and Communications concerning budget cuts at Elle or Hearst.

46.     All Documents and Communications concerning any meetings at the Russian Tea Room with editors of Elle or Hearst.

47.     All Documents and Communications concerning Your attribution of Your termination at Elle to the Statements.

48.     All Documents and Communications concerning Your allegation in paragraph 134 of the Complaint, that Your column was impaired, and any reasons therefor.

49.     All Documents and Communications concerning any criticism or critique of Your column in Elle.

50.     Documents sufficient to show the number of Communications received per month seeking advice in connection with Your column with Elle.

51.     All Documents and Communications concerning the number of Communications received per month seeking advice in connection with Your column with Elle.

52.     All Documents and Communications concerning all health-care providers (physical or mental) and services rendered to You from 1990 through the present, including all therapist, psychiatrist, treating physician or other doctor, hospital, and follow-on or supplementary health- care appointments and services scheduled and attended, and all prescriptions written and/or filled.

53.     All Documents and Communications concerning any accusations, charges, or inquiries by anyone concerning any actual or alleged unlawful acts or other criminal conduct by You during Your lifetime.

54.     All Documents and Communications concerning any accusation You made against another Person of sexual assault or inappropriate sexual conduct, including but not limited to any

official complaints with employers, law enforcement agencies, or courts.

55.    All Documents and Communications concerning You and any alcohol or drug use or abuse.

56.    All Documents and Communications concerning any incarcerations, fines paid, arrests, or other criminal conduct during Your lifetime.

57.    All Documents and Communications concerning any disciplinary proceedings involving You, regardless of whether such proceeding resulted in any disciplinary action.

58.    All Documents and Communications concerning or bearing on Your reputation for honesty.

59.    All Documents and Communications concerning any polygraph examinations You have taken or been subject to during your lifetime.

60.    All diaries or journals you have kept during any portion of Your lifetime.

61.    Documents sufficient to identify all other litigations, arbitrations, or other formal disputes involving or concerning You.

62.    All Documents and Communications regarding any oral or written statement by any of the parties to this Action concerning the allegations in the Complaint, irrespective of who obtained them or how they were obtained.

63.    All Documents and Communications identifying any witness with knowledge of the purported matters at issue in this Action.

64.    All Documents and Communications between You and any third-party concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or Defendant's presidency or Defendant's campaign, since the Complaint was filed, excluding privileged Communications with attorneys.

A-1277

65.　　All Documents and Communications sent to, reviewed by, or prepared by any expert retained by you in this case concerning You, Defendant, the Complaint, or this Action.

66.　　All Documents and Communications consulted in responding to Defendant's Interrogatories to You.

67.　　All Documents and Communications on which You intend to rely or use at trial in this Action.

PLEASE TAKE NOTICE that this shall be deemed to be a continuing demand and should any of the Documents or things designated for discovery and inspection in this notice come into Plaintiff's possession, custody, or control after the time of original production, Plaintiff shall be required to produce such Documents within twenty (20) days of obtaining such possession.

PLEASE TAKE FURTHER NOTICE that Your default will result in an application being made to the Court for appropriate relief with costs.

Dated: May 27, 2022
　　　　New York, New York

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
　　　　　　-and-
270 West 60th Street, 17th, and 18th Floors
New York, New York 10023
Phone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

14

A-1278

# EXHIBIT H

A-1279

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>　　　　　　*Plaint.if,*<br><br><br>　　v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>　　　　*D∈fendant.* | No. 20 Civ. 7311 (LAK) (JLC) |

### PLAINTIFF E. JEAN CARROLL'S RESPONSES AND OBJECTIONS
### TO DEFENDANT DONALD J. TRUMP'S
### <u>REQUEST FOR THE PRODUCTION OF DOCUMENTS</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules for the Southern District of New York (together, the "Rules"), Plaintiff E. Jean Carroll ("Carroll"), by and through her attorneys, submits these responses and objections to Defendant Donald J. Trump's Request for the Production of Documents dated May 27, 2022 (the "Requests").

### GENERAL OBJECTIONS AND RESPONSES

The following general objections and responses (the "General Objections") are incorporated into each specific objection and response (the "Specific Objections") as if fully set forth therein:

1.　　　Carroll objects to the Requests to the extent they are duplicative or cumulative or seek information that has been or will be provided through other means of discovery.

2.　　　Carroll objects to the Requests to the extent they are vague, ambiguous, overly broad, unduly burdensome, seek information not relevant to the claims or defenses of any party, or are not proportional to the needs to the case.

3.      Carroll objects to the Requests to the extent they purport to call for information or documents that: (a) are subject to the attorney-client privilege; (b) constitute attorney work product; (c) contain information protected from disclosure based on common interest or a similar privilege; or (d) are otherwise protected from disclosure under applicable privilege, law, or rule. Carroll will not produce such information or documents in response to the Requests, and any inadvertent production thereof shall not be deemed a waiver of any privilege with respect to such information.

4.      Carroll objects to each Request to the extent it calls for documents that: (a) are already in Defendant's possession, custody, or control; (b) are publicly available; or (c) are otherwise independently available to Defendant or his counsel.

5.      Carroll objects to the Requests to the extent they require unreasonable measures to locate and produce responsive documents. Carroll will construe the Requests to require a reasonable and diligent search of its reasonably-accessible files where it would reasonably expect to find information, documents, or things related to the Requests, and specifically states that it will limit its search for electronic mail by use of identified search terms and custodians to be agreed upon by the Parties.

6.      Carroll objects to the Definitions and Instructions to the extent that they purport to impose obligations greater than those imposed by the Rules or any case law interpreting them. Carroll will respond to the Requests in a manner consistent with the Rules.

7.      Carroll objects to Definition No. 3 on the ground that it purports to include Bergdorf Goodman's "current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials,

2

Representatives, and all Persons and entities acting or purporting to act on their behalf." Subject to this General Objection, in responding to the Requests, Carroll will construe "Bergdorf" to refer only to "Bergdorf Goodman" and no other entity.

8.      Carroll objects to Definition No. 5 on the grounds that it is broader than the uniform definition of "communication" in Local Rule 26.3(c)(1). Subject to this General Objection, in responding to the Requests, Carroll will use the definition of "communication" set forth in that Rule.

9.      Carroll objects to Definition No. 7 on the grounds that it is broader than the uniform definition of "concerning" in Local Rule 26.3(c)(7). Subject to this General Objection, in responding to the Requests, Carroll will use the definition of "concerning," and its subsumed term "relating to," set forth in that Rule.

10.     Carroll objects to Definition No. 9 on the grounds that it is broader than the uniform definition of "document" in Local Rule 26.3(c)(2) and Federal Rule of Civil Procedure 34(a)(1)(A).  Subject to this General Objection, in responding to the Requests, Carroll will use the definition of "document" set forth in those Rules.

11.     Carroll objects to Definition No. 10 on the ground that it purports to include *Elle*'s "current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, distributors, publishers, departments and operating units, and includes, without limitation, each of their current or former officers, directors, members, partners, shareholders, employees, agents, officials, Representatives, and all persons and entities acting or purporting to act on their behalf, but not limited to Hearst." Subject to this General Objection, in responding to the Requests, Carroll will construe "*Elle*" to refer only to "*Elle* Magazine" and no other entity.

12.     Carroll objects to Definition No. 18 on the ground that it defines "Carroll," "Plaintiff," "You," and "Your" as "E. Jean Carroll and her Representatives and former Representatives, including but not limited to, Kaplan Hecker & Fink, and Kaplan." Because this is solely a dispute between two parties, Carroll will construe "Plaintiff," "You," and "Your" to refer only to "E. Jean Carroll."

13.     Carroll objects to Instruction No. 3 to the extent it seeks to impose obligations greater than those imposed by Local Rule 26.2.  For all claims of privilege, Carroll will identify only that information that it is required to be identified under Local Rule 26.2.

14.     Carroll objects to Instruction No. 19 and Instruction No. 21 insofar as they seek to impose obligations greater than those imposed by Federal Rule of Civil Procedure 34(b)(2). For all objections, Carroll will state only the information that it is required to be stated under Federal Rule of Civil Procedure 34(b)(2).

15.     Carroll objects to Instruction No. 24 to the extent it encompasses information that is overbroad, unduly burdensome, disproportionate to the needs of the case, and irrelevant.

16.     Plaintiff's Responses to the Requests are made to the best of Carroll's present knowledge, information, and belief.  These Responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Carroll's knowledge and investigation, are subject to such additional knowledge of facts as may result from Carroll's further discovery or investigation.

17.     Carroll objects to the Requests to the extent they contain express or implied assumptions of fact or law with respect to matters at issue in this case. Carroll's Responses to the Requests are not intended to be and shall not be construed as an agreement or concurrence with

4

Defendant's characterization of any facts, circumstances, or legal obligations. Carroll reserves the right to contest any such characterization as inaccurate.

18.   The fact that Carroll has responded to a particular Request shall not be interpreted as implying that Carroll acknowledges the propriety of that Request.

19.   Carroll reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to the Requests but discovered subsequent to the date of these Responses, including, but not limited to, any such information obtained in discovery herein.

20.   Carroll reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of Carroll's responses herein, as evidence in any subsequent proceeding in, or trial of, this or any other action, for any purpose whatsoever.

21.   If so designated, Carroll's Responses to the Requests will be subject to the confidentiality protections of any Protective Order entered by the Court.

22.   Carroll will produce responsive documents pursuant to her General and Specific Objections on a rolling basis.

23.   Counsel for Carroll is available to meet and confer with respect to any of her Responses and Objections.  Carroll reserves the right, but does not assume the obligation, to amend or supplement her Responses and Objections.

<div align="center">

**SPECIFIC OBJECTIONS AND RESPONSES TO
DEFENDANT'S REQUEST FOR PRODUCTION**

</div>

<u>**REQUEST NO. 1**</u>

**All Documents and Communications concerning the Statements.**

<u>**RESPONSE TO REQUEST NO. 1**</u>

In addition to her General Objections, Carroll objects to this Request on the grounds that it is overbroad, unduly burdensome, and disproportionate. Notwithstanding and without waiver of

her General and Specific Objections, Carroll will conduct a reasonable search and produce responsive non-privileged documents and communications concerning whether the Statements were true or false, and concerning the harms she suffered as a result of the Statements.

**REQUEST NO. 2**

**All Documents and Communications concerning statements made by You that have been characterized by anyone as biased, bogus, concocted, counterfeit, deceptive, dishonest, erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented, misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.**

**RESPONSE TO REQUEST NO. 2**

In addition to her General Objections, Carroll objects to this Request on the grounds that it is overbroad, unduly burdensome, and disproportionate. Carroll further objects on the ground that this Request purports to require Carroll to understand the subjective views of other persons, and purports to require Carroll to trace all characterizations by third parties of all statements she has made. Carroll further objects to this Request on the ground that it seeks documents and information not within Carroll's possession, custody, or control. Notwithstanding and without wavier of her General and Specific Objections, Carroll notes that Defendant himself has characterized various statements by Carroll as untrue. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 3**

**All Documents and Communications concerning Defendant, President Trump's presidency and/or Mr. Trump's campaign.**

**RESPONSE TO REQUEST NO. 3**

In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad, unduly burdensome, and disproportionate. Notwithstanding and without waiver of

A-1285

her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her.

## REQUEST NO. 4

**All Documents and Communications concerning the allegations in the Complaint.**

## RESPONSE TO REQUEST NO. 4

In addition to her General Objections, Carroll objects to this Request on the grounds that it is overbroad, unduly burdensome, disproportionate, and duplicative of other discovery requests. Carroll further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product protection, or other privileges or protections from disclosure. Notwithstanding Carroll's General and Specific Objections, Carroll will conduct a reasonable search and produce responsive non-privileged documents and communications reasonably related to the allegations in the Complaint.

## REQUEST NO. 5

**All Documents and Communications with Defendant, his family members, or his agents or representatives.**

## RESPONSE TO REQUEST NO. 5

In addition to her General Objections, Carroll objects to this Request on the grounds that it is vague, and that it purports to require Carroll to determine the relationships between Defendant and various non-parties when such information is more readily available to Defendant. Carroll further objects to this Request to the extent that it seeks documents and communications already, equally and/or more readily available to Defendant than to Carroll. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents and

A-1286

communications with Trump, his immediate family members, and/or Trump's agents or representatives known by Ms. Carroll to be such.

**REQUEST NO. 6**

All Documents and Communications concerning this Action, including but not limited to all Documents concerning Communications with any non-party.

**RESPONSE TO REQUEST NO. 6**

In addition to her General Objections, Carroll objects to this Request on the ground that it is overbroad, unduly burdensome, and disproportionate (including because it seeks Documents, Communications, and Documents concerning Communications), as well as on the ground that it is duplicative of other discovery requests. Carroll further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product protection, or other privileges or protections from disclosure. Notwithstanding Carroll's General and Specific Objections, Carroll will conduct a reasonable search and produce responsive non-privileged documents and communications.

**REQUEST NO. 7**

All Documents and Communications concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.

**RESPONSE TO REQUEST NO. 7**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications.

**REQUEST NO. 8**

All Documents and Communications concerning any discussions You had with any other Person concerning the purported incident or incidents described in paragraphs 22 through 42 of the Complaint, including but not limited to, the Communications described in paragraphs 43 through 54 of the Complaint.

8

**RESPONSE TO REQUEST NO. 8**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications reasonably related to the allegations in the Complaint.

**REQUEST NO. 9**

**All Documents and Communications with Lisa Birnbach concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.**

**RESPONSE TO REQUEST NO. 9**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications with Lisa Birnbach concerning the Statements, this Action, and Trump's sexual assault of Carroll as alleged in the Complaint.

**REQUEST NO. 10**

**All Documents and Communications with Carol Martin concerning the allegations made in the Complaint, this Action, Defendant, President Trump's presidency and/or Mr. Trump's campaign.**

**RESPONSE TO REQUEST NO. 10**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of other Requests herein. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and

A-1288

communications with Carol Martin concerning the Statements, this Action, and Trump's sexual assault of Carroll as alleged in the Complaint.

**REQUEST NO. 11**

**All Documents and Communications concerning any tests of clothing that have occurred related to the allegations in the Complaint, including all Documents and Communications with Carol Martin.**

**RESPONSE TO REQUEST NO. 11**

In addition to her General Objections, Carroll objects to this Request insofar as it calls for the production of documents protected by attorney-client privilege, attorney work-product doctrine, and other applicable privileges. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications in which she makes statements concerning any tests of clothing that have occurred related to the allegations in the Complaint.

**REQUEST NO. 12**

**All Documents and Communications concerning what You were wearing during the purported incident or incidents described in paragraphs 22 through 42 of the Complaint.**

**RESPONSE TO REQUEST NO. 12**

Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents and communications responsive to this Request.

**REQUEST NO. 13**

**All Documents and Communications concerning the payment of attorneys' fees or other expenses, including but not limited to promises of payments for security expenses, relocation, or any other benefit, in connection with this Action or any statements, accusations or allegations concerning Defendant.**

**RESPONSE TO REQUEST NO. 13**

In addition to her General Objections, Carroll objects to this Request insofar as it calls for the production of documents protected by attorney-client privilege, attorney work-product doctrine, and other applicable privileges. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action—the production of which could threaten Carroll's security. Carroll further objects to this request on the grounds of overbreadth, disproportionality, and undue burden. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 14**

**All Documents and Communications concerning any funds, payments, donations, gifts or consideration of any value, which have been made, provided, discussed, or offered to have been made or provided, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person, concerning the Defendant, any accusation or allegation concerning Defendant, this Action, and/or Defendant's presidency or campaign, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees.**

**RESPONSE TO REQUEST NO. 14**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action— the production of which could threaten Carroll's security. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, as well as non-privileged documents concerning the harms she suffered as a result of the Statements.

11

**REQUEST NO. 15**

All Documents and Communications between You, on one hand, and any member of the media or press, reporter, blogger, website operator, and/or journalist, on the other hand, concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

**RESPONSE TO REQUEST NO. 15**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning this Action, the allegations in the Complaint, her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, and the harms she suffered as a result of the Statements.

**REQUEST NO. 16**

All Documents and Communications concerning any quote attributed to You or interview given by You in any newspaper, magazine, journal, news source, or other publication concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

**RESPONSE TO REQUEST NO. 16**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning this Action, the allegations

in the Complaint, her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, and the harms she suffered as a result of the Statements.

**REQUEST NO. 17**

All Documents and Communications concerning any press conferences in which You or Your representatives appeared, attended and/or participated, concerning Defendant, this Action, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.

**RESPONSE TO REQUEST NO. 17**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control. Carroll further objects to this Request insofar as it calls for the production of documents protected by attorney-client privilege, attorney work-product doctrine, and other applicable privileges. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning this Action, the allegations in the Complaint, her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, and the harms she suffered as a result of the Statements.

**REQUEST NO. 18**

All Documents and Communications concerning publicity, public reports, interviews, or other media attention or "mentions" pertaining to You.

**RESPONSE TO REQUEST NO. 18**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the

13

ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Carroll further objects to this Request on the ground that it is duplicative. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control. Carroll will not produce documents or communications in response to this Request.

## REQUEST NO. 19

**All Documents and Communications concerning your attendance at any politically-related meeting, event, conference, rally, phone-call, or march, including but not limited to any payment or consideration received in connection with such attendance.**

## RESPONSE TO REQUEST NO. 19

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Carroll further objects to this Request on the ground that it is duplicative. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her.

## REQUEST NO. 20

**All Documents and Communications with or concerning any witness or potential witness to any accusation or allegation concerning the Defendant or the allegations in the Complaint or this Action.**

**RESPONSE TO REQUEST NO. 20**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects to this Request on the ground that it requires her to speculate about who may qualify as a "witness" or "potential witness" to any accusation or allegation concerning the Defendant or the allegations in the Complaint or this Action. Carroll will not produce documents or communications in response to this Request as formulated.

**REQUEST NO. 21**

**All Documents and Communications concerning the Article.**

**RESPONSE TO REQUEST NO. 21**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications constituting drafts of the Article, as well as responsive non-privileged documents and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her.

**REQUEST NO. 22**

**All Documents and Communications concerning the Book, including but not limited to all drafts of the Book and communications with editors, publishers, distributors, or promoters concerning the Book.**

15

**RESPONSE TO REQUEST NO. 22**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications constituting drafts of chapters of the Book that discuss Trump, as well as responsive non-privileged documents and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her.

**REQUEST NO. 23**

**All Documents and Communications concerning agreements related to the Book or the Article, including but not limited to any agreements as to indemnification, payment, royalties, or advances.**

**RESPONSE TO REQUEST NO. 23**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications constituting her final contracts or agreements with publishers respecting the publication of the Book and the Article, as well as responsive non-privileged documents and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her.

**REQUEST NO. 24**

All Documents and Communications concerning any funds received as a result of the Book, including but not limited to Documents sufficient to show all funds received in connection with sale, distribution, or promotion of the Book or the Article.

**RESPONSE TO REQUEST NO. 24**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests, which address the terms of her agreement(s) to publish the Book and the Article. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 25**

All Documents and Communications concerning any public appearances concerning the allegations alleged in the Complaint, including but not limited to any payment, remuneration, reimbursement, or compensation, in exchange for or in connection with any such appearances.

**RESPONSE TO REQUEST NO. 25**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning news media appearances in which she discussed the Action or the allegations in the Complaint concerning Trump's Statements.

**REQUEST NO. 26**

All Documents and Communications concerning the Store.

**RESPONSE TO REQUEST NO. 26**

In addition to her General Objections, Carroll objects to this Request on the ground that it is vague and ambiguous, because it requests documents pertaining to the "Store," a term nowhere defined in Defendant's Requests. For purposes of efficiency, Carroll will construe the "Store" to refer to "Bergdorf Goodman." Carroll further objects on the ground that this Request is overbroad, unduly burdensome, and disproportionate to the needs of the case. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications with the Store (or its owners, managers, employees, or agents) concerning this Action or the allegations in the Complaint.

**REQUEST NO. 27**

**All Documents and Communications concerning the Statements referenced in paragraphs 81 through 128 of the Complaint.**

**RESPONSE TO REQUEST NO. 27**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning the truth or falsity of the Statements or concerning the harms she suffered as a result of the Statements.

**REQUEST NO. 28**

**All Documents and Communications concerning any alleged harm, injury or damages caused by the Statements.**

18

**RESPONSE TO REQUEST NO. 28**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Carroll further objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents responsive to this Request.

**REQUEST NO. 29**

**All Documents and Communications concerning damages related to your loss of employment or professional/reputational harm caused by the Statements.**

**RESPONSE TO REQUEST NO. 29**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Carroll further objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents responsive to this Request.

**REQUEST NO. 30**

**All Documents and Communications with anyone associated with the Store concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign.**

**RESPONSE TO REQUEST NO. 30**

In addition to her General Objections, Carroll objects to this Request on the ground that it is vague and ambiguous, because it requests documents pertaining to the "Store," a term nowhere defined in Defendant's Requests. For purposes of efficiency, Carroll will construe the "Store" to refer to "Bergdorf Goodman." Carroll further objects on the ground that this Request is overbroad,

A-1298

unduly burdensome, and disproportionate to the needs of the case. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-privileged documents and communications with the Store (or its owners, managers, employees, or agents) concerning this Action or the allegations in the Complaint.

**REQUEST NO. 31**

**All Documents and Communications concerning any attempts to mitigate any harm, injury, or damages allegedly caused by the Statements.**

**RESPONSE TO REQUEST NO. 31**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests herein. Carroll further objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 32**

**All Federal and state income tax returns (including K-1 statements from any entity) for the period 1995 to the present.**

**RESPONSE TO REQUEST NO. 32**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects to this Request on the ground that it seeks documents through a time period that largely predates any of the harms alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-

**A-1299**

privileged documents and communications concerning any alleged harm, injury or damages caused by the Statements, and is available to meet and confer further concerning the response to this Request.

## REQUEST NO. 33

**All partnership or employment records demonstrating Your financial compensation, including all pay stubs, invoices, draws, carried interest, investments return, W-2s or 1099s from any entity, for the period 1995 to the present.**

## RESPONSE TO REQUEST NO. 33

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request seeks documents through a time period that largely predates any of the harms alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-privileged documents and communications concerning any alleged harm, injury or damages caused by the Statements.

## REQUEST NO. 34

**Documents and Communications sufficient to show all accounts, trusts, investments, companies, corporate interests, partnerships, or other vehicles, entities or enterprises in which You have a direct or indirect ownership or control interest, for the period 1995 to the present.**

## RESPONSE TO REQUEST NO. 34

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request

A-1300

seeks documents through a time period that largely predates any of the harms alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce non-privileged documents and communications concerning any alleged harm, injury or damages caused by the Statements.

**REQUEST NO. 35**

**Documents and Communications sufficient to show all assets, including real estate, securities, cash, partnership or corporate interests, You directly or indirectly own or control.**

**RESPONSE TO REQUEST NO. 35**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged harm, injury or damages caused by the Statements.

**REQUEST NO. 36**

**All Documents and Communications concerning Your personal finances, including all personal banking records, checking account statements, savings account statements, investment account statements or transaction records, trust records or statements, family office records or statements, and any records of payments or disbursements made by You or on Your behalf, for the period 2015 to the present.**

**RESPONSE TO REQUEST NO. 36**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request

A-1301

seeks documents through a time period that largely predates any of the harms alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged harm, injury or damages caused by the Statements.

## REQUEST NO. 37

**All Documents and Communications concerning Your purported "reputational and other harm" caused by the Statements, as alleged in paragraphs 129 and 136 of the Complaint.**

## RESPONSE TO REQUEST NO. 37

Notwithstanding and without waiver of her General Objections, Carroll will produce responsive non-privileged documents and communications.

## REQUEST NO. 38

**All Documents and Communications concerning Your purported emotional harm caused by the Statements.**

## RESPONSE TO REQUEST NO. 38

Notwithstanding and without waiver of her General Objections, Carroll will produce responsive non-privileged documents and communications.

## REQUEST NO. 39

**All Documents and Communications concerning any employment by or publishing agreement with, whether formal or informal, any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to copies of such agreement(s).**

## RESPONSE TO REQUEST NO. 39

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request

23

A-1302

seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements.

**REQUEST NO. 40**

**All Documents and Communications concerning your termination, whether voluntary or involuntary, from any employer, whether as an employee or independent contractor, including but not limited to with any magazine, newspaper, website, publisher, distributor, or publication, including but not limited to Elle, including but not limited to the reasons for such termination, and any performance reviews.**

**RESPONSE TO REQUEST NO. 40**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint. Carroll further objects to this Request to the extent it seeks "all" documents or communications. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements—including responsive documents and communications concerning her termination from Elle.

**REQUEST NO. 41**

**Documents sufficient to show all employers for which You worked, whether as an employee or independent contractor, for the past 10 years, and any pay, salary, or remuneration received in connection with such employment or agreement.**

**A-1303**

**RESPONSE TO REQUEST NO. 41**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint, and seeks information about employment or independent contactor relationships devoid of any relationship to the claims and defenses in this litigation. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements.

**REQUEST NO. 42**

**All Documents and Communications concerning Your attempts to obtain employment, work, contracts, or other engagements or financial arrangements with any magazine, newspaper, website, publisher, blogger, distributor, or publication, following Your termination from Elle.**

**RESPONSE TO REQUEST NO. 42**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements.

**REQUEST NO. 43**

All Documents and Communications concerning Your pay, salary, or any compensation or remuneration received, from Elle.

**RESPONSE TO REQUEST NO. 43**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Carroll further objects that this Request seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint, and seeks information about employment or independent contactor relationships devoid of any relationship to the claims and defenses in this litigation. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements.

**REQUEST NO. 44**

All Documents and Communications concerning Your decision to publish the Article in New York Magazine.

**RESPONSE TO REQUEST NO. 44**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it is duplicative of other Requests. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents

26

and communications concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, and concerning her decision to publish the Article in New York Magazine.

**REQUEST NO. 45**

    **All Documents and Communications concerning budget cuts at Elle or Hearst.**

**RESPONSE TO REQUEST NO. 45**

    In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and seeks information in the custody, control, or possession of third parties. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements—including documents and communications concerning her termination from Elle.

**REQUEST NO. 46**

    **All Documents and Communications concerning any meetings at the Russian Tea Room with editors of Elle or Hearst.**

**RESPONSE TO REQUEST NO. 46**

    In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning the meeting at the Russian Team Room where Carroll disclosed to Elle editors that the Book addressed the fact that Trump had sexually assaulted her.

**A-1306**

**REQUEST NO. 47**

**All Documents and Communications concerning Your attribution of Your termination at Elle to the Statements.**

**RESPONSE TO REQUEST NO. 47**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements—including documents and communications concerning her termination from Elle.

**REQUEST NO. 48**

**All Documents and Communications concerning Your allegation in paragraph 134 of the Complaint, that Your column was impaired, and any reasons therefor.**

**RESPONSE TO REQUEST NO. 48**

Notwithstanding and without waiver of her General Objections, Carroll will produce responsive non-privileged documents and communications.

**REQUEST NO. 49**

**All Documents and Communications concerning any criticism or critique of Your column in Elle.**

**RESPONSE TO REQUEST NO. 49**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and seeks documents and communications through a time period that largely predates any of the

harms or conduct alleged in the Complaint. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning any alleged professional or economic harm, injury or damages caused by the Statements—including documents and communications concerning her termination from Elle.

## REQUEST NO. 50

**Documents sufficient to show the number of Communications received per month seeking advice in connection with Your column with Elle.**

## RESPONSE TO REQUEST NO. 50

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control, including analytics regarding a column run by *Elle* magazine. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications.

## REQUEST NO. 51

**All Documents and Communications concerning the number of Communications received per month seeking advice in connection with Your column with Elle.**

## RESPONSE TO REQUEST NO. 51

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action,

A-1308

and seeks documents and communications through a time period that largely predates any of the harms or conduct alleged in the Complaint. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control, including analytics regarding a column run by *Elle* magazine. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications.

**REQUEST NO. 52**

   **All Documents and Communications concerning all health-care providers (physical or mental) and services rendered to You from 1990 through the present, including all therapist, psychiatrist, treating physician or other doctor, hospital, and follow-on or supplementary health- care appointments and services scheduled and attended, and all prescriptions written and/or filled.**

**RESPONSE TO REQUEST NO. 52**

   In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action. Notwithstanding Carroll's General and Specific Objections, Carroll will produce responsive non-privileged documents and communications concerning the emotional and psychological harm that Trump caused her by publishing the Statements.

**REQUEST NO. 53**

   **All Documents and Communications concerning any accusations, charges, or inquiries by anyone concerning any actual or alleged unlawful acts or other criminal conduct by You during Your lifetime.**

**RESPONSE TO REQUEST NO. 53**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and is calculated to harass and annoy, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 54**

**All Documents and Communications concerning any accusation You made against another Person of sexual assault or inappropriate sexual conduct, including but not limited to any official complaints with employers, law enforcement agencies, or courts.**

**RESPONSE TO REQUEST NO. 54**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and is calculated to harass and annoy, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 55**

**All Documents and Communications concerning You and any alcohol or drug use or abuse.**

**RESPONSE TO REQUEST NO. 55**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action,

A-1310

and is calculated to harass and annoy, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 56**

**All Documents and Communications concerning any incarcerations, fines paid, arrests, or other criminal conduct during Your lifetime.**

**RESPONSE TO REQUEST NO. 56**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and is calculated to harass and annoy, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 57**

**All Documents and Communications concerning any disciplinary proceedings involving You, regardless of whether such proceeding resulted in any disciplinary action.**

**RESPONSE TO REQUEST NO. 57**

In addition to her General Objections, Carroll objects to this Request on the ground that the undefined terms "disciplinary proceedings" and "disciplinary action" are vague and ambiguous. Carroll further objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and is calculated to harass and annoy, and on the ground that it seeks information from within a timeframe

far beyond the scope of this case. Carroll will not produce documents or communications in response to this Request.

**REQUEST NO. 58**

**All Documents and Communications concerning or bearing on Your reputation for honesty.**

**RESPONSE TO REQUEST NO. 58**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any Party in this Action, including insofar as it seeks information from within a timeframe far beyond the scope of this case. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control, including documents relating to the opinions of third parties. Carroll further notes that it is Trump, not Carroll, who has a reputation for dishonesty. *See e.g.*, WASH. POST FACT CHECKER, last updated Jan 20, 2021, *available at* https://www.washingtonpost.com/graphics/politics/trump-claims-database (noting that in 1,461 days, Trump has made 30,573 false or misleading claims). Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents and communications from July 1, 2017 through July 1, 2019 concerning her reputation for honesty.

**REQUEST NO. 59**

**All Documents and Communications concerning any polygraph examinations You have taken or been subject to during your lifetime.**

**RESPONSE TO REQUEST NO. 59**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any Party in this Action, including insofar as it seeks information from within a timeframe far beyond the scope of this case. Carroll further objects to this Request on the ground that it is inconsistent with the Rules because it seeks documents and information not within Carroll's possession, custody, or control, including opinions of third parties. Carroll further notes that it is Trump, not Carroll, who has a reputation for dishonesty. *See e.g.*, WASH. POST FACT CHECKER, last updated Jan 20, 2021, *available at* https://www.washingtonpost.com/graphics/politics/trump-claims-database (noting that in 1,461 days, Trump has made 30,573 false or misleading claims). Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce non-privileged documents and communications responsive to this Request.

**REQUEST NO. 60**

**All diaries or journals you have kept during any portion of Your lifetime.**

**RESPONSE TO REQUEST NO. 60**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive excerpts from any diaries or journals concerning Trump sexually assaulting her, concerning the Statements, or concerning this Action or the allegations in the Complaint.

34

**REQUEST NO. 61**

Documents sufficient to identify all other litigations, arbitrations, or other formal disputes involving or concerning You.

**RESPONSE TO REQUEST NO. 61**

In addition to her General Objections, Carroll objects to this Request on the grounds of overbreadth, disproportionality, and undue burden. Carroll further objects to this Request on the ground that it seeks information not relevant to the claims or defenses of any Party in this Action, and on the ground that it seeks information from within a timeframe far beyond the scope of this case. Notwithstanding and without waiver of her General and Specific Objections, Carroll is available to meet and confer about a reasonable reciprocal and mutual approach to the production of responsive information by both parties.

**REQUEST NO. 62**

All Documents and Communications regarding any oral or written statement by any of the parties to this Action concerning the allegations in the Complaint, irrespective of who obtained them or how they were obtained.

**RESPONSE TO REQUEST NO. 62**

In addition to her General Objections, Carroll objects to this Request on the ground that it is duplicative of numerous other Requests. Carroll further objects to this Request on the ground that the vast bulk of the information it seeks is within Trump's possession, custody, or control. Notwithstanding and without waiver of her General and Specific Objections, Carroll will produce responsive non-privileged documents and communications regarding any statement by any of the parties to this Action concerning Trump sexually assaulting Carroll, concerning her decision to reveal publicly in June/July 2019 that Trump had sexually assaulted her, concerning the truth or falsity of the Statements, or concerning the harms she suffered as a result of the Statements.

A-1314

**REQUEST NO. 63**

**All Documents and Communications identifying any witness with knowledge of the purported matters at issue in this Action.**

**RESPONSE TO REQUEST NO. 63**

In addition to her General Objections, Carroll objects to this Request on the ground that it is unduly burdensome, and duplicative of other discovery requests, and seeks information provided in Carroll's Initial Disclosures. Carroll further objects to this Request on the grounds that it seeks documents and information not in Carroll's possession, custody, or control, and purports to require Carroll to determine the knowledge of unspecified non-parties.  Carroll also objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product protection, or other applicable privileges or protections from disclosures. Notwithstanding and without waiver of her General and Specific Objections, Carroll reiterates that she will produce responsive non-privileged documents and communications (including with non-parties) reasonably related to the allegations in the Complaint, as set forth in her responses to (among others) Requests 1-12.

**REQUEST NO. 64**

**All Documents and Communications between you and any third party concerning Defendant, this Action, the Statements, the allegations in the Complaint, and/or President Trump's presidency or Mr. Trump's campaign, since the Complaint was filed, excluding privileged Communications with attorneys.**

**RESPONSE TO REQUEST NO. 64**

In addition to her General Objections, Carroll objects to this Request on the ground that it is unduly burdensome and duplicative of other Requests, and to the extent that it seeks information protected by work product protection and other applicable privileges or protections from disclosure. Notwithstanding and without waiver of her General and Specific Objections, Carroll

A-1315

reiterates that she will produce responsive non-privileged documents and communications (including with non-parties) reasonably related to the allegations in the Complaint, as set forth in her responses to (among others) Requests 1-12, and is available to meet and confer concerning an appropriate (and mutual) date range for electronic searches and production.

**REQUEST NO. 65**

**All Documents and Communications sent to, reviewed by, or prepared by any expert retained by you in this case concerning You, Defendant, the Complaint, or this Action.**

**RESPONSE TO REQUEST NO. 65**

Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents and communications.

**REQUEST NO. 66**

**All Documents and Communications consulted in responding to Defendant's Interrogatories to You.**

**RESPONSE TO REQUEST NO. 66**

Notwithstanding and without waiver of her General Objections, Carroll will produce non-privileged documents and communications.

**REQUEST NO. 67**

**All Documents and Communications on which You intend to rely or use at trial in this Action.**

**RESPONSE TO REQUEST NO. 67**

In addition to her General Objections, Carroll objects to this Request on the ground that it is premature at this stage of the proceedings. Carroll will comply with all applicable rules and requirements concerning pretrial disclosures.

A-1316

Dated: New York New York
         June 27, 2022

By:

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

Joshua A. Matz
KAPLAN HECKER & FINK LLP
1050 K Street, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaint,j f E. Jean Carroll*

38

A-1317

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E. JEAN CARROLL,<br><br>                    *Plaintiff,*<br><br><br>        v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>        *Defendant.* | No. 20 Civ. 7311 (LAK) (JLC) |

### CERTIFICATE OF SERVICE

I hereby certify that on this day, June 27, 2022, I served a true and correct copy of Plaintiff E. Jean Carroll's Responses and Objections to Defendant's Requests for the Production of Documents by e-mail upon counsel for Defendant Donald J. Trump and by overnight delivery service to:

Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921

*Attorney for the Defendant Donald J. Trump*

Dated: June 27, 2022
New York, New York

By:  _____

Joshua Matz

39

A-1318

# EXHIBIT J

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>Defendant. | No. 22 Civ. 10016 (LAK) |

## PLAINTIFF E. JEAN CARROLL'S RESPONSES AND OBJECTIONS TO DEFENDANT DONALD J. TRUMP'S REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff E. Jean Carroll, by and through her attorneys, submits these responses and objections to Defendant Donald J. Trump's Request for the Production of Documents dated January 9, 2023 (the "Requests").

### GENERAL RESPONSES AND OBJECTIONS

The following general responses and objections (the "General Objections") are incorporated into each specific response and objection (the "Specific Objections") as if fully set forth therein:

1.      Plaintiff objects to the Requests to the extent they purport to call for information or documents that: (a) are protected from disclosure by the attorney-client privilege; (b) constitute attorney work product; or (c) are otherwise protected from disclosure by applicable privilege, law, or rule. Plaintiff will not produce such documents in response to the Requests, and any inadvertent production thereof shall not be deemed a waiver of any privilege with respect to such information.

2.      Plaintiff objects to Definition Nos. 5, 7, and 10 to the extent they purport to impose obligations broader than or otherwise inconsistent with the Federal Rules of Civil Procedure and

the Local Rules for the Southern District of New York. Plaintiff will use the definitions for "Communication," "Concerning," and "Document" set forth at Local Rule 26.3(c)(1), (2), and (7).

3.      Plaintiff objects to Definition No. 17 on the ground that it is vague and ambiguous to the extent the definition of "Statement" or "Statements" could be read to include statements other than the defamatory statement that Defendant issued on October 12, 2022. Consistent with the limitations on discovery that the Court has imposed in this action, *see* ECF 19, Plaintiff will interpret all references to "Statement" or "Statements" to refer only to Defendant's October 12, 2022 Statement, set forth at paragraph 92 of the Complaint.

4.      Plaintiff objects to Definition No. 18 on the ground that it defines "Carroll," "You," and "Your" as "her Representatives, and her former Representatives, including but not limited to, Kaplan Hecker & Fink." Because this is solely a dispute between two parties, Plaintiff will construe "Carroll," "Plaintiff," "You," and "Your" to refer only to "E. Jean Carroll."

5.      Plaintiff's Responses are made to the best of her present knowledge, information, and belief. These Responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Plaintiff's knowledge and investigation, are subject to such additional knowledge of facts as may result from Plaintiff's further discovery or investigation.

6.      Plaintiff will produce responsive documents pursuant to her General and Specific Objections on a rolling basis, and her counsel is available to meet and confer with respect to any of her Responses and Objections.

7.      Plaintiff reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to the Requests but discovered subsequent to the date of these Responses, including, but not limited to, any such information obtained in discovery herein.

2

8.      Plaintiff reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of Plaintiff's Responses herein, as evidence in any subsequent proceeding in, or trial of, this or any other action.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST NO. 1

**All Documents and Communications concerning the Statement.**

### RESPONSE TO REQUEST NO. 1

In addition to her General Objections, Plaintiff objects to Request No. 1 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 1 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement. Subject to her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys and accompanying disclosures, which contain substantial information regarding such damages. Plaintiff states that she will not produce other documents in response to this Request.

### REQUEST NO. 2

**All Documents and Communications concerning statements made by You that have been characterized by anyone as biased, bogus, concocted, counterfeit, deceptive, dishonest,**

**erroneous, exaggerated, fabricated, fake, fallacious, false, feigned, fictitious, flawed, forged, fraudulent, hyperbolic, impartial, imprecise, inaccurate, inconsistent, incorrect, inexact, invented, misleading, perfidious, phony, specious, spurious, unfounded, unreliable, untrue, or wrong.**

## RESPONSE TO REQUEST NO. 2

In addition to her General Objections, Plaintiff objects to Request No. 2 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 2 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it would require Plaintiff to trace all characterizations by third parties of all statements that she has ever made without limitation. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

## REQUEST NO. 3

**All Documents and Communications concerning the allegations in the Complaint.**

## RESPONSE TO REQUEST NO. 3

In addition to her General Objections, Plaintiff objects to Request No. 3 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 3 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time

period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding Defendant's October 12, 2022 Statement. Subject to her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the sexual assault and the Statement as well as those documents identified in the Responses to Request Nos. 11 and 12. Plaintiff further directs Defendant to the discovery record in *Carroll I*, which exhaustively covered Defendant's sexual assault and Plaintiff's reasons for publicly revealing it, as well as to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys, and the materials accompanying and cited in those reports that are already available to Defendant. Plaintiff states that she will not produce other documents in response to this Request.

## REQUEST NO. 4

**All Documents and Communications with Defendant, his family members, or his agents or Representatives.**

## RESPONSE TO REQUEST NO. 4

In addition to her General Objections, Plaintiff objects to Request No. 4 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 4 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because it contains no subject matter limitation that would connect the requested documents to issues relevant to this action; and because responding to the Request would require Plaintiff to

5

A-1324

make determinations regarding the persons who qualify as Defendant's "agents" or "Representatives." Finally, Plaintiff objects to Request No. 4 on the ground that it is vague and ambiguous, including because it requests "[a]ll Documents and Communications" with Defendant's "agents" in addition to "[a]ll Documents and Communications" with his "Representatives," a defined term that encompasses agents. Plaintiff will interpret Request No. 4 as seeking communications with Defendant, his family members, or his Representatives, as defined in Definition No. 16. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

## REQUEST NO. 5

**All Documents and Communications concerning this Action, including but not limited to all Documents concerning Communications with any non-party.**

## RESPONSE TO REQUEST NO. 5

In addition to her General Objections, Plaintiff objects to Request No. 5 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 5 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications concerning this Action" irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

6

**A-1325**

**REQUEST NO. 6**

 **All Documents and Communications concerning the payment of attorneys' fees or other expenses, including but not limited to promises of payments for security expenses, relocation, or any other benefit, in connection with this Action or any statements, accusations or allegations concerning Defendant.**

**RESPONSE TO REQUEST NO. 6**

 In addition to her General Objections, Plaintiff objects to Request No. 6 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 6 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because it seeks documents that bear on undisputed issues, including that Plaintiff received compensation when she published her Book; and because Plaintiff's retention of counsel and litigation-related expenses have no bearing on whether the sexual assault occurred or Plaintiff was harmed by the assault or the October 12, 2022 Statement. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff directs Defendant to the discovery concerning her publishing contract for the Book in *Carroll I*. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 7**

 **All Documents and Communications concerning any funds, payments, donations, gifts or consideration of any value, which have been made, provided, discussed, or offered to have been made or provided, in connection with this Action or in connection with any media or public appearances, press interviews, or consultations with any legal counsel or any other person, concerning the Defendant, any accusation or allegation concerning Defendant, this Action, including but not limited to for security expenses, relocation, expenses, consulting, or attorneys' fees.**

## RESPONSE TO REQUEST NO. 7

In addition to her General Objections, Plaintiff objects to Request No. 7 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 7 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement; and because Plaintiff's retention of counsel and litigation-related expenses have no bearing on whether sexual assault occurred. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff directs Defendant to the discovery concerning her publishing contract for the Book in *Carroll I.* Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

## REQUEST NO. 8

**All Documents and Communications between You, on one hand, and any member of the media or press, reporter, blogger, website operator, and/or journalist, on the other hand, concerning Defendant, this Action, and/or the allegations in the Complaint.**

## RESPONSE TO REQUEST NO. 8

In addition to her General Objections, Plaintiff objects to Request No. 8 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully

8

explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to

Request No. 8 on the grounds that it seeks irrelevant information and is disproportionate to the

needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time

period; because it seeks documents irrespective of whether they are duplicative of information

disclosed in *Carroll I*; and because it seeks documents that bear on undisputed issues, including

the content of and circumstances surrounding the Statement. Subject to her General and Specific

Objections, Plaintiff states that she will not produce documents in response to this Request.

**REQUEST NO. 9**

> **All Documents and Communications concerning any press conferences in which You or Your representatives appeared, attended and/or participated, concerning Defendant, this Action, or the allegations in the Complaint.**

**RESPONSE TO REQUEST NO. 9**

> In addition to her General Objections, Plaintiff objects to Request No. 9 on the ground that

it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully

explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to

Request No. 9 on the grounds that it seeks irrelevant information and is disproportionate to the

needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time

period. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff

states that, to the best of her knowledge, she has no non-privileged documents responsive to this

Request in her possession, custody, or control.

**REQUEST NO. 10**

> **All Documents and Communications concerning publicity, public reports, interviews, or other media attention or "mentions" pertaining to You.**

9

**RESPONSE TO REQUEST NO. 10**

In addition to her General Objections, Plaintiff objects to Request No. 10 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 10 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because it contains no subject matter limitation that would connect the requested documents to issues relevant to this action; and because it seeks documents that bear on undisputed issues, including that Defendant's Statement has been widely covered in the press and that such coverage necessarily mentions Plaintiff. Subject to her General and Specific Objections, Plaintiff will produce those news articles concerning Defendant's October 12, 2022 Statement about Plaintiff that are cited in her Complaint, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys and accompanying disclosures, which contain substantial information responsive to this Request. Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 11**

**All Documents and Communications concerning the Statements referenced in Paragraphs 91 through 100 of the Complaint.**

**RESPONSE TO REQUEST NO. 11**

In addition to her General Objections, Plaintiff objects to Request No. 11 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 11 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement and the fact that Defendant's Statement has been widely covered in the press. Finally, Plaintiff objects to Request No. 11 on the ground that it is vague and ambiguous in that it refers to "the Statements referenced" in a subset of the paragraphs of the Complaint. Consistent with General Objection No. 3, Plaintiff will interpret Request No. 11 as seeking documents concerning Defendant's October 12, 2022 Statement and therefore as duplicative of Request No. 1 above. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce copies of the materials cited in footnotes 18-22, 24, and 25 of the Complaint, and further directs Defendant to the transcript of his sworn deposition taken in *Carroll I*. Plaintiff otherwise directs Defendant to her Response to Request No. 1.

**REQUEST NO. 12**

     **All Documents and Communications concerning the Statements referenced in Paragraphs 101 through 115 of the Complaint.**

**RESPONSE TO REQUEST NO. 12**

     In addition to her General Objections, Plaintiff objects to Request No. 12 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 12 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement, as well as the content of and circumstances surrounding other public statements made by Defendant. Finally, Plaintiff objects to Request No. 12 on the ground that it is vague and ambiguous in that it refers to "the Statements referenced" in a subset of the paragraphs of the Complaint. Consistent with General Objection No. 3, Plaintiff will interpret Request No. 12 as seeking documents concerning Defendant's October 12, 2022 Statement and therefore as duplicative of Request No. 1 above. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce copies of the materials cited in footnotes 26 and 27 of the Complaint, and further directs Defendant to the transcript of his sworn deposition taken in *Carroll I*. Plaintiff otherwise directs Defendant to her Response to Request No. 1.

**REQUEST NO. 13**

**All Documents and Communications concerning the Statements referenced in Paragraphs 116 through 120 of the Complaint.**

**RESPONSE TO REQUEST NO. 13**

In addition to her General Objections, Plaintiff objects to Request No. 13 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*.

Plaintiff further objects to Request No. 13 on the ground that it is vague and ambiguous in that it refers to "the Statements referenced" in a subset of the paragraphs of the Complaint. Consistent with General Objection No. 3, Plaintiff will interpret Request No. 13 as seeking documents concerning Defendant's October 12, 2022 Statement and therefore as duplicative of Request No. 1 above. Subject to her General and Specific Objections, Plaintiff directs Defendant to her Response to Request No. 1.

<u>**REQUEST NO. 14**</u>

**All Documents and Communications concerning the Statements referenced in Paragraphs 121 through 126 of the Complaint.**

<u>**RESPONSE TO REQUEST NO. 14**</u>

In addition to her General Objections, Plaintiff objects to Request No. 14 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 14 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it seeks documents "concerning the Statements" in a paragraph of the Complaint that incorporates by reference all preceding paragraphs. Finally, Plaintiff objects to Request No. 14 on the ground that it is vague and ambiguous in that it refers to "the Statements referenced" in a subset of the paragraphs of the Complaint. Consistent with General Objection No. 3, Plaintiff will interpret Request No. 14 as seeking documents concerning Defendant's October 12, 2022 Statement and therefore as duplicative of Request No. 1 above. Notwithstanding

13

and without waiver of her General and Specific Objections, Plaintiff directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz and otherwise directs Defendant to her Response to Request No. 1.

**REQUEST NO. 15**

**All Documents and Communications concerning the Statements referenced in Paragraphs 127 through 135 of the Complaint.**

**RESPONSE TO REQUEST NO. 15**

In addition to her General Objections, Plaintiff objects to Request No. 15 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 15 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it seeks documents "concerning the Statements" in a paragraph of the Complaint that incorporates by reference all preceding paragraphs. Finally, Plaintiff objects to Request No. 15 on the ground that it is vague and ambiguous in that it refers to "the Statements referenced" in a subset of the paragraphs of the Complaint. Consistent with General Objection No. 3, Plaintiff will interpret Request No. 15 as seeking documents concerning Defendant's October 12, 2022 Statement and therefore as duplicative of Request No. 1 above. Subject to her General and Specific Objections, Plaintiff directs Defendant to her Response to Request No. 1.

**REQUEST NO. 16**

**All Documents and Communications concerning any alleged harm, injury or damages caused by the Statement(s).**

**RESPONSE TO REQUEST NO. 16**

In addition to her General Objections, Plaintiff objects to Request No. 16 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" irrespective of whether they are duplicative of information disclosed in *Carroll I*. Subject to her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys and accompanying disclosures, which contain substantial information regarding such damages. Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 17**

**All Documents and Communications concerning damages related to Your loss of employment or professional/reputational harm caused by the Statement(s).**

**RESPONSE TO REQUEST NO. 17**

In addition to her General Objections, Plaintiff objects to Request No. 17 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because Plaintiff does not allege loss of employment as a result of Defendant's October 12, 2022 Statement. Subject to her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys

and accompanying disclosures, which contain substantial information regarding such damages. Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 18**

All Documents and Communications concerning any attempts to mitigate any harm, injury, or damages allegedly caused by the Statement(s).

**RESPONSE TO REQUEST NO. 18**

Subject to her General Objections, Plaintiff will produce non-privileged documents concerning damages caused by the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys and accompanying disclosures, which contain substantial information regarding such damages.

**REQUEST NO. 19**

All Federal and state income tax returns (including K-1 statements from any entity) for the period of 2018 to the present.

**RESPONSE TO REQUEST NO. 19**

In addition to her General Objections, Plaintiff objects to Request No. 19 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 19 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because tax returns from 2018 through the present do not bear on Plaintiff's damages as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because tax returns for the tax period postdating Defendant's October 12, 2022 Statement are not yet due. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the sexual assault or the Statement, and further directs Defendant

to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report

of Professor Ashlee Humphreys, and the materials accompanying and cited in those reports that

are already available to Defendant, which contain substantial information regarding Plaintiff's

damages. Subject to her General and Specific Objections, Plaintiff states that she will not produce

other documents in response to this Request.

**REQUEST NO. 20**

      **All partnership or employment records demonstrating Your financial compensation,
including all pay stubs, invoices, draws, carried interest, investments return, W-2s or 1099s
from any entity, for the period of 2018 to the present.**

**RESPONSE TO REQUEST NO. 20**

      In addition to her General Objections, Plaintiff objects to Request No. 20 on the ground

that it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 20 on the grounds

that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks

"[a]ll . . . records demonstrating Your financial compensation" irrespective of whether they are

duplicative of information disclosed in *Carroll I*, and because such records dating back to 2018

through the present do not bear on Plaintiff's damages as a result of the sexual assault or

Defendant's October 12, 2022 Statement. Notwithstanding and without waiver of her General and

Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused

by the sexual assault or the Statement, and further directs Defendant to the January 9, 2023 Expert

Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys,

and the materials accompanying and cited in those reports that are already available to Defendant,

which contain substantial information regarding Plaintiff's damages. Subject to her General and

Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

## REQUEST NO. 21

**Documents and Communications sufficient to show all accounts, trusts, investments, companies, corporate interests, partnerships, or other vehicles, entities, or enterprises in which You have a direct or indirect ownership or control interest, for the period of 2018 to the present.**

## RESPONSE TO REQUEST NO. 21

In addition to her General Objections, Plaintiff objects to Request No. 21 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 21 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because "Documents and Communications sufficient to show all accounts, trusts, investments," etc., from 2018 through the present do not bear on Plaintiff's damages as a result of the sexual assault or Defendant's October 12, 2022 Statement. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the sexual assault or the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys, and the materials accompanying and cited in those reports that are already available to Defendant, which contain substantial information regarding Plaintiff's damages. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 22**

  **Documents and Communications sufficient to show all assets, including real estate, securities, cash, partnership, or corporate interests, You directly or indirectly own or control.**

**RESPONSE TO REQUEST NO. 22**

  In addition to her General Objections, Plaintiff objects to Request No. 22 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 22 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks documents regarding "all assets" from an unlimited time period, and because Plaintiff's ownership of assets do not bear on Plaintiff's damages as a result of the sexual assault or Defendant's October 12, 2022 Statement. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the sexual assault or the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys, and the materials accompanying and cited in those reports that are already available to Defendant, which contain substantial information regarding Plaintiff's damages. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 23**

  **All Documents and Communications concerning Your personal finances, including all personal banking records, checking account statements, savings account statements, investment account statements or transaction records, trust records or statements, family office records or statements, and any records of payments or disbursements made by You or on Your behalf, for the period of 2018 to the present.**

**RESPONSE TO REQUEST NO. 23**

In addition to her General Objections, Plaintiff objects to Request No. 23 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 23 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" extending from 2018 through the present irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it seeks document that do not bear on Plaintiff's damages as a result of the sexual assault or Defendant's October 12, 2022 Statement. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the sexual assault or the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys, and the materials accompanying and cited in those reports that are already available to Defendant, which contain substantial information regarding Plaintiff's damages. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 24**

**Documents sufficient to show all employers for which You worked, whether as an employee or independent contractor, for the past ten (10) years, and any pay, salary, or remuneration received in connection with such employment or agreement.**

**RESPONSE TO REQUEST NO. 24**

In addition to her General Objections, Plaintiff objects to Request No. 24 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 24 on the grounds

that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks

documents from a ten-year period irrespective of whether they are duplicative of information

disclosed in *Carroll I*, and because Plaintiff does not allege loss of employment as a result of

Defendant's October 12, 2022 Statement. Notwithstanding and without waiver of her General and

Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused

by the sexual assault or the Statement, and further directs Defendant to the January 9, 2023 Expert

Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys,

and the materials accompanying and cited in those reports that are already available to Defendant,

which contain substantial information regarding Plaintiff's damages. Subject to her General and

Specific Objections, Plaintiff states that she will not produce other documents in response to this

Request.

## REQUEST NO. 25

**All Documents and Communications concerning Your attempts to obtain employment, work, contracts, or other engagements or financial arrangements with any magazine, newspaper, website, publisher, blogger, distributor, or publication, following the publication of the Statement.**

## RESPONSE TO REQUEST NO. 25

In addition to her General Objections, Plaintiff objects to Request No. 25 on the ground

that it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement.  Notwithstanding and without waiver of her General and

Specific Objections, Plaintiff states that, to the best of her knowledge, she has no non-privileged

documents responsive to this Request in her possession, custody, or control.

21

**REQUEST NO. 26**

All **Documents and Communications concerning Your pay, salary, or any compensation or remuneration received, from Elle.**

**RESPONSE TO REQUEST NO. 26**

In addition to her General Objections, Plaintiff objects to Request No. 26 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 26 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because her employment with Elle ended long before Defendant's October 12, 2022 Statement. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

**REQUEST NO. 27**

All **Documents and Communications concerning all health-care providers (physical or mental) and services rendered to You from 1990 through the present, including all therapist, psychiatrist, treating physician or other doctor, hospital, and follow-on or supplementary health care appointments and services scheduled and attended, and all prescriptions written and/or filled.**

**RESPONSE TO REQUEST NO. 27**

In addition to her General Objections, Plaintiff objects to Request No. 27 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to

Request No. 27 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from a time period extending from 1990 to the present and because Plaintiff did not seek medical treatment as a result of Defendant's sexual assault. Finally, Plaintiff objects to Request No. 27 on the ground that it is vague and ambiguous in that it requests "Documents and Communications concerning all health-care providers (physical or mental) and services." Plaintiff will interpret Request No. 27 as seeking medical records created by a health-care provider in connection with the provision of health-care services. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request. Plaintiff further states that, to the best of her knowledge, she has no non-privileged documents concerning mental health providers or services in her possession, custody, or control because she has never sought treatment from a psychiatrist, psychologist, or mental health professional.

## REQUEST NO. 28

**All Documents and Communications concerning any gynecological records from the period of 1995 to the present.**

## RESPONSE TO REQUEST NO. 28

In addition to her General Objections, Plaintiff objects to Request No. 28 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 28 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from a time period extending from 1995 to the present and because Plaintiff did not seek medical treatment as a result

of Defendant's sexual assault. Finally, Plaintiff objects to Request No. 28 on the ground that it is vague and ambiguous in that it requests "Documents and Communications concerning gynecological records." Plaintiff will interpret Request No. 28 as seeking medical records created by a physician in connection with the provision of gynecological services. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

**REQUEST NO. 29**

**All Documents and Communications concerning any pharmacy records from the period of 1995 to the present.**

**RESPONSE TO REQUEST NO. 29**

In addition to her General Objections, Plaintiff objects to Request No. 29 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 29 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from a time period extending from 1995 to the present and because Plaintiff did not seek medical treatment as a result of Defendant's sexual assault. Finally, Plaintiff objects to Request No. 29 on the ground that it is vague and ambiguous in that it requests "Documents and Communications concerning any pharmacy records." Plaintiff will interpret Request No. 29 as seeking pharmacological records created by a pharmacist in connection with the provision of prescription medication. Subject to her

General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

**REQUEST NO. 30**

**All diaries or journals you have kept during any portion of Your lifetime.**

**RESPONSE TO REQUEST NO. 30**

In addition to her General Objections, Plaintiff objects to Request No. 30 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 30 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll diaries or journals" from an unlimited time period, because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*, and because it contains no subject matter limitation that would connect the requested documents to issues relevant to this action. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce excerpts from any diaries or journals concerning the sexual assault or Defendant's October 12, 2022 Statement, but states that, to the best of her knowledge, she has no such documents in her possession, custody, or control.

**REQUEST NO. 31**

**Documents sufficient to identify all other litigations, arbitrations, or other formal disputes involving or concerning You.**

**RESPONSE TO REQUEST NO. 31**

In addition to her General Objections, Plaintiff objects to Request No. 31 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement. Plaintiff further objects to Request No. 31 on the ground that it is vague and ambiguous, including because it uses the undefined phrase "other formal disputes." Plaintiff will interpret the Request as seeking information about litigations and arbitrations to which she is or was a party. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff states has twice been divorced, and the only other litigation or arbitration to which she has been a party is *Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.).

## REQUEST NO. 32

**All Documents and Communications regarding any oral or written statement(s) by any of the parties to this Action concerning the allegations in the Complaint, irrespective of who obtained them or how they were obtained.**

## RESPONSE TO REQUEST NO. 32

In addition to her General Objections, Plaintiff objects to Request No. 32 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 32 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because it requires Plaintiff to trace all "oral and written statement(s)" by both parties; and because it seeks documents that bear on undisputed issues, including the content

A-1345

of and circumstances surrounding the Statement. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

## REQUEST NO. 33

**All Documents and Communications identifying any witness with knowledge of the purported matters at issue in this Action.**

## RESPONSE TO REQUEST NO. 33

In addition to her General Objections, Plaintiff objects to Request No. 33 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 33 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period; because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*; because innumerable unidentifiable persons have knowledge of issues in this action, including as readers of Defendant's October 12, 2022 Statement; and because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff directs Defendant to her Rule 26(a) Disclosures, dated January 9, 2023, and to the substantial documents and communications with witnesses that Plaintiff produced in *Carroll I*. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 34**

    **All Documents and Communications between You and any third-party concerning Defendant, this Action, the Statement, and/or the allegations in the Complaint, since the Complaint was filed, excluding privileged Communications with attorneys.**

**RESPONSE TO REQUEST NO. 34**

    In addition to her General Objections, Plaintiff objects to Request No. 34 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 34 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks documents that bear on undisputed issues, including the content of and circumstances surrounding the Statement. Subject to her General and Specific Objections, Plaintiff states that she will not produce documents in response to this Request.

**REQUEST NO. 35**

    **All Documents and Communications sent to, reviewed by, or prepared by any expert retained by you in this case concerning You, Defendant, the Complaint, or this Action.**

**RESPONSE TO REQUEST NO. 35**

    In addition to her General Objections, Plaintiff objects to Request No. 35 on the ground that it seeks documents that Plaintiff disclosed as part of her January 9, 2023 expert disclosures or otherwise produced in *Carroll I.* Subject to her General and Specific Objections, Plaintiff will produce copies of the 10 articles identified on pages 5 and 6 of the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, and otherwise directs Defendant to the Expert Report of Dr. Leslie Lebowitz, the January 9, 2023 Expert Report of Professor Ashlee Humphreys, and the materials

accompanying and cited in those reports that are already available to Defendant. Plaintiff states

that she will not produce other documents in response to this Request.

**REQUEST NO. 36**

**All Documents and Communications consulted in responding to Defendant's Interrogatories to You.**

**RESPONSE TO REQUEST NO. 36**

Notwithstanding and without waiver of her General Objections, Plaintiff states that she will

produce non-privileged documents and communications Responsive to this Request that are not

otherwise being produced in response to other Requests or were not produced in *Carroll I*, to the

extent any such documents or communications exist.

**REQUEST NO. 37**

**Identify all Persons who have any knowledge or information about any of the allegations in the Complaint, and for each Person identified, describe the subject matter of the knowledge that each Person possesses.**

**RESPONSE TO REQUEST NO. 37**

In addition to her General Objections, Plaintiff objects to Request No. 37 on the ground

that it exceeds the limitations on discovery that the Court has imposed because it seeks information

that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or

Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully

explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to

Request No. 37 on the ground that it is vague and ambiguous in that it is a document request that

purportedly requires Plaintiff to "identify" people meeting certain criteria. Notwithstanding and

without waiver of her General and Specific Objections, Plaintiff directs Defendant to her Rule

26(a) Disclosures, dated January 9, 2023, and to the substantial documents and communications

A-1348

with other persons that Plaintiff produced in *Carroll I*. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

**REQUEST NO. 38**

**All Documents and Communications concerning the allegations that "Trump's underlying sexual assault secretly injured Carroll, causing significant pain and suffering, lasting psychological harms, loss of dignity, and invasion of privacy," as set forth in Paragraph 11 of the Complaint.**

**RESPONSE TO REQUEST NO. 38**

In addition to her General Objections, Plaintiff objects to Request No. 38 on the ground that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I*. Plaintiff further objects to Request No. 38 on the ground that it is duplicative of Requests No. 40 and 45. Finally, Plaintiff objects to Request No. 38 on the ground that it misquotes paragraph 11 of the Complaint. Subject to her General and Specific Objections, Plaintiff directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, which contains substantial information responsive to this Request. Plaintiff further states that, to the best of her knowledge, she has no other non-privileged responsive documents in her possession, custody, or control.

**REQUEST NO. 39**

**All Documents and Communications concerning the allegations that "[Trump's] recent defamatory statement has only added to the harm that Carroll had already suffered," as set forth in Paragraph 11 of the Complaint.**

**RESPONSE TO REQUEST NO. 39**

In addition to her General Objections, Plaintiff objects to Request No. 39 on the ground that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it seeks documents irrespective of

whether they are duplicative of information disclosed in *Carroll I.* Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce non-privileged documents concerning damages caused by the Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee Humphreys and accompanying disclosures, which contain substantial information regarding such damages. Subject to her General and Specific Objections, Plaintiff states that she will not produce other documents in response to this Request.

## REQUEST NO. 40

**All Documents and Communications pertaining to Plaintiff's allegations that "Trump's sexual assault of Carroll has caused her, and continues to cause her, significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity and self-esteem, and invasion of her privacy," as set forth in Paragraph 54 of the Complaint.**

## RESPONSE TO REQUEST NO. 40

In addition to her General Objections, Plaintiff objects to Request No. 40 on the ground that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I.* Plaintiff further objects to Request No. 40 on the ground that it is duplicative of Requests No. 38 and 45. Subject to her General and Specific Objections, Plaintiff directs Defendant to the January 9, 2023 Expert Report of Dr. Leslie Lebowitz, which contains substantial information responsive to this Request. Plaintiff further states that, to the best of her knowledge, she has no other non-privileged responsive documents in her possession, custody, or control.

## REQUEST NO. 41

**Any and all Documents and Communications in response to the Statement.**

**RESPONSE TO REQUEST NO. 41**

In addition to her General Objections, Plaintiff objects to Request No. 41 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ny and all Documents and Communications" irrespective of whether they bear on undisputed issues, including the content of and circumstances surrounding the Statement. Plaintiff further objects to Request No. 41 on the ground that it is vague and ambiguous in that it requests documents "in response to the Statement." Plaintiff will interpret Request No. 41 as seeking public statements in which Plaintiff responded to and cited Defendant's October 12, 2022 Statement. Subject to her General and Specific Objections, Plaintiff states that, to the best of her knowledge, she has no non-privileged documents responsive to this Request in her possession, custody, or control.

**REQUEST NO. 42**

**All Documents and Communications that the Statement that Trump made about Plaintiff on October 12, 2022, was published with "actual malice" and with "knowledge of its falsity and/or with reckless disregard for the truth," as set forth in Paragraphs 108 and 109 of the Complaint.**

**RESPONSE TO REQUEST NO. 42**

In addition to her General Objections, Plaintiff objects to Request No. 42 on the ground that it exceeds the limitations on discovery that the Court has imposed because it seeks information that does not bear on the damages suffered by Plaintiff as a result of the sexual assault or Defendant's October 12, 2022 Statement, and because it seeks information concerning the "fully explored" question of whether Defendant sexually assaulted Plaintiff. Plaintiff further objects to Request No. 42 on the ground that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and Communications" from an unlimited time period, and because it seeks documents irrespective of whether they are duplicative of information disclosed in *Carroll I.*

Finally, Plaintiff objects to Request No. 42 on the ground that it is duplicative of Request No. 46.

Notwithstanding and without waiver of her General and Specific Objections, Plaintiff directs

Defendant to the content of his October 12, 2022 Statement as well as the discovery record in

*Carroll I*, including the transcript of Defendant's sworn deposition taken in that action. Subject to

her General and Specific Objections, Plaintiff states that, to the best of her knowledge, she has no

other non-privileged responsive documents in her possession, custody, or control.

## REQUEST NO. 43

**All Documents and Communications that "[Trump] created and used his own powerful social media platform to attack her integrity, demean her appearance, condemn her as a liar, and accuse her of fabricating a rape allegation to promote a book," as set forth in Paragraph 118 of the Complaint.**

## RESPONSE TO REQUEST NO. 43

Notwithstanding and without waiver of her General Objections, Plaintiff will produce

copies of the material cited in footnotes 17 and 18 of the Complaint, and further directs Defendant

to the content of his October 12, 2022 Statement as well as the transcript of his sworn deposition

taken in *Carroll I*.

## REQUEST NO. 44

**All Documents and Communications concerning the allegations that "Trump has injured the reputation on which she makes her livelihood as a writer, advice columnist, and journalist," as set forth in Paragraph 120 of the Complaint.**

## RESPONSE TO REQUEST NO. 44

In addition to her General Objections, Plaintiff objects to Request No. 44 on the ground

that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and

Communications" from an unlimited time period; because it seeks documents irrespective of

whether they are duplicative of information disclosed in *Carroll I*; and because it seeks documents

that bear on undisputed issues, including the fact that Plaintiff makes her livelihood as a writer,

advice columnist, and journalist. Notwithstanding and without waiver of her General and Specific

Objections, Plaintiff will produce non-privileged documents concerning damages caused by the

Statement, and further directs Defendant to the January 9, 2023 Expert Report of Professor Ashlee

Humphreys and the accompanying disclosures, which contain substantial information regarding

such damages, as well as to the discovery record in *Carroll* I, including the depositions of Plaintiff

and Roberta Myers. Subject to her General and Specific Objections, Plaintiff states that she will

not produce other documents in response to this Request.

### REQUEST NO. 45

**All Documents and Communications concerning the allegations that "Trump's conduct was the direct and proximate cause of Carroll's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy," as set forth in Paragraph 124 of the Complaint.**

### RESPONSE TO REQUEST NO. 45

In addition to her General Objections, Plaintiff objects to Request No. 45 on the ground

that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and

Communications" from an unlimited time period, and because it seeks documents irrespective of

whether they are duplicative of information disclosed in *Carroll I*. Plaintiff further objects to

Request No. 45 on the ground that it is duplicative of Requests No. 38 and 40. Subject to her

General and Specific Objections, Plaintiff directs Defendant to the January 9, 2023 Expert Report

of Dr. Leslie Lebowitz, which contains substantial information responsive to this Request. Plaintiff

further states that, to the best of her knowledge, she has no other non-privileged responsive

documents in her possession, custody, or control.

### REQUEST NO. 46

**All Documents and Communications concerning the allegations that "Trump made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for**

34

**its injurious effects on Carroll and Carroll's rights,"** as set forth in Paragraph 134 of the **Complaint.**

**RESPONSE TO REQUEST NO. 46**

In addition to her General Objections, Plaintiff objects to Request No. 46 on the ground

that it is disproportionate to the needs of the case because it seeks "[a]ll Documents and

Communications" from an unlimited time period, and because it seeks documents irrespective of

whether they are duplicative of information disclosed in *Carroll I*. Plaintiff further objects to

Request No. 46 on the ground that it is duplicative of Request No. 42. Notwithstanding and without

waiver of her General and Specific Objections, Plaintiff directs Defendant to the content of his

October 12, 2022 Statement as well as the discovery record in *Carroll I*, including the transcript

of Defendant's sworn deposition taken in that action. Subject to her General and Specific

Objections, Plaintiff states that, to the best of her knowledge, she has no other non-privileged

documents in her possession, custody, or control.

**REQUEST NO. 47**

**Executed HIPAA-compliant medical authorizations from the Plaintiff for any mental health treatment professionals, including any and all psychologists and psychiatrists, that provided treatment and/or consultation(s) for the Plaintiff from 1993 to the present.**

**RESPONSE TO REQUEST NO. 47**

In addition to her General Objections, Plaintiff objects to Request No. 47 on the ground

that it exceeds the limitations on discovery that the Court has imposed, including because the only

possible use of "HIPAA-compliant medical authorizations" would be to pursue non-party

discovery that the Court had not permitted either party to pursue. Plaintiff further objects to

Request No. 47 on the grounds that it seeks irrelevant information and is disproportionate to the

needs of the case because it seeks "authorizations" from a time period extending from 1993 to the

present and because Plaintiff did not seek mental health treatment as a result of Defendant's sexual

assault. Finally, Plaintiff objects to Request No. 47 on the ground that it is vague and ambiguous in that it uses the undefined term "[e]excited HIPAA-compliant medical authorizations." Plaintiff will interpret Request No. 47 as seeking forms authorizing the release of medical information by a mental health professional that were created by that mental health professional and have been executed by Plaintiff. Notwithstanding and without waiver of her General and Specific Objection, Plaintiff states that, to the best of her knowledge, she has no non-privileged documents responsive to this Request in her possession, custody, or control, including because she has never sought treatment from a psychiatrist, psychologist, or mental health professional.

**REQUEST NO. 48**

**Executed HIPAA-compliant medical authorizations from the Plaintiff for any gynecologists, that provided treatment and/or consultation(s) for the Plaintiff from 1993 to the present.**

**RESPONSE TO REQUEST NO. 48**

In addition to her General Objections, Plaintiff objects to Request No. 48 on the ground that it exceeds the limitations on discovery that the Court has imposed, including because the only possible use of "HIPAA-compliant medical authorizations" would be to pursue non-party discovery that the Court had not permitted either party to pursue. Plaintiff further objects to Request No. 48 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "authorizations" from a time period extending from 1993 to the present and because Plaintiff did not seek medical treatment as a result of Defendant's sexual assault. Finally, Plaintiff objects to Request No. 48 on the ground that it is vague and ambiguous in that it uses the undefined term "[e]xecuted HIPAA-compliant medical authorizations." Plaintiff will interpret Request No. 48 as seeking forms authorizing the release of medical information by a gynecologist that were created by that gynecologist and have been executed by Plaintiff.

Notwithstanding and without waiver of her General and Specific Objection, Plaintiff states that, to the best of her knowledge, she has no non-privileged documents responsive to this Request in her possession, custody, or control.

## REQUEST NO. 49

**Executed HIPAA-compliant medical authorizations from the Plaintiff for any other physician or health care professional that provided treatment and/or consultation(s) for the Plaintiff from 1993 to the present.**

## RESPONSE TO REQUEST NO. 49

In addition to her General Objections, Plaintiff objects to Request No. 49 on the ground that it exceeds the limitations on discovery that the Court has imposed, including because the only possible use of "HIPAA-compliant medical authorizations" would be to pursue non-party discovery that the Court had not permitted either party to pursue. Plaintiff further objects to Request No. 49 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "authorizations" from a time period extending from 1993 to the present and because Plaintiff did not seek medical treatment as a result of Defendant's sexual assault. Finally, Plaintiff objects to Request No. 49 on the ground that it is vague and ambiguous in that it uses the undefined term "[e]xecuted HIPAA-compliant medical authorizations." Plaintiff will interpret Request No. 49 as seeking forms authorizing the release of medical information by a physician that were created by that physician and have been executed by Plaintiff. Notwithstanding and without waiver of her General and Specific Objection, Plaintiff states that, to the best of her knowledge, she has no non-privileged documents responsive to this Request in her possession, custody, or control.

## REQUEST NO. 50

**All Documents and Communications concerning any other pecuniary loss purportedly sustained as a result of the Statement.**

**RESPONSE TO REQUEST NO. 50**

In addition to her General Objections, Plaintiff objects to Request No. 50 on the ground

that it is duplicative of other Requests, including Requests No. 16, 17, 39 and 44. Plaintiff further

objects to Request No. 50 as vague and ambiguous because it is not clear what "other" in "any

other pecuniary loss" refers to. Notwithstanding and without waiver of her General and Specific

Objections, Plaintiff directs Defendant to her Responses to Requests No. 16, 17, 39 and 44.

**REQUEST NO. 51**

**All Documents and Communications concerning any other pecuniary loss purportedly sustained as a result of the purported sexual assault alleged in the Complaint.**

**RESPONSE TO REQUEST NO. 51**

In addition to her General Objections, Plaintiff objects to Request No. 51 on the ground

that it is duplicative of other Requests, including Requests No. 38, 40, and 45. Plaintiff further

objects to Request No. 51 as vague and ambiguous because it is not clear what "other" in "any

other pecuniary loss" refers to. Notwithstanding and without waiver of her General and Specific

Objections, Plaintiff directs Defendant to her Responses to Requests No. 38, 40, and 45.

**REQUEST NO. 52**

**All Documents and Communications concerning any other emotional loss purportedly sustained as a result of the Statement.**

**RESPONSE TO REQUEST NO. 52**

In addition to her General Objections, Plaintiff objects to Request No. 52 on the ground

that it is duplicative of other Requests, including Requests No. 16, 39 and 44. Plaintiff further

objects to Request No. 52 as vague and ambiguous because it is not clear what "other" in "any

other emotional loss" refers to. Notwithstanding and without waiver of her General and Specific

Objections, Plaintiff directs Defendant to her Responses to Requests No. 16, 39, and 44.

**REQUEST NO. 53**

All Documents and Communications concerning any other emotional loss purportedly sustained as a result of the purported sexual assault alleged in the Complaint.

**RESPONSE TO REQUEST NO. 53**

In addition to her General Objections, Plaintiff objects to Request No. 53 on the ground that it is duplicative of other Requests, including Requests No. 38, 40, and 45. Plaintiff further objects to Request No. 53 as vague and ambiguous because it is not clear what "other" in "any other emotional loss" refers to. Notwithstanding and without waiver of her General and Specific Objections, Plaintiff directs Defendant to her Responses to Requests No. 38, 40, and 45.

**REQUEST NO. 54**

Any and all letters, e-mails, and correspondence received by You in the Statement.

**RESPONSE TO REQUEST NO. 54**

In addition to her General Objections, Plaintiff objects to Request No. 54 on the grounds that it seeks irrelevant information and is disproportionate to the needs of the case because it seeks "[a]ny and all letters, e-mails, and correspondence" irrespective of whether they bear on undisputed issues, including the content of and circumstances surrounding the Statement. Plaintiff further objects to Request No. 54 on the ground that it is vague and ambiguous because it requests documents "received" by Plaintiff "in the Statement." Notwithstanding and without waiver of her General and Specific Objections, Plaintiff will produce those news articles concerning Defendant's October 12, 2022 Statement that are cited in her Complaint, and directs Defendant to his Truth Social post in which he publicly made his Statement about Plaintiff.

**REQUEST NO. 55**

All Documents and Communications on which You intend to rely or use at trial in this Action.

**RESPONSE TO REQUEST NO. 55**

In addition to her General Objections, Plaintiff objects to Request No. 55 on the ground that it is premature at this stage of the proceedings. Plaintiff will identify and exchange trial exhibits in accordance with the schedule that has been set by the Court.

Dated: New York, New York
      January 23, 2023

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Telephone: (212) 742-2661
Facsimile: (212) 564-0883
jmatz@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*

A-1359

# EXHIBIT K

Page 1

1                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
2
     E. JEAN CARROLL,                )
3                                    )
             Plaintiff,              )
4                                    )
     v.                              )Case No. 1:22-cv-10016
5                                    )
     DONALD J. TRUMP,                )
6                                    )
             Defendant.              )
7

8

9           *********************************
                 VIDEOTAPED DEPOSITION OF
10                  EDGAR P. NACE, MD
                    March 15, 2023
11          *********************************

12

13           EDGAR P. NACE, MD, produced as a witness at

14      the instance of the Plaintiff, was duly sworn and

15      deposed in the above-styled and numbered cause on

16      March 15, 2023, from 9:12 a.m. to 5:06 p.m. CST,

17      stenographically reported, at the offices of

18      Burns Charest, LLP, 900 Jackson Street, Suite 500,

19      Dallas, Texas, pursuant to the Federal Rules of

20      Civil Procedure and the provisions stated on the

21      record.

22

23      Reported by:   Rebecca A. Graziano, CSR, RMR, CRR
                       Texas CSR 9306
24                     California CSR 14407
                       Illinois CSR 084.004659
25      Job No. 223427

A-1361

Page 108

```
 1                    Dr. E. Nace - 3/15/23

 2   A      No, I don't.

 3   Q      Would it have been in February when you

 4   testified that you reviewed materials such as

 5   deposition transcripts?

 6   A      Yes.

 7   Q      And do you recall that on January 25th,

 8   2023, you informed defendant's counsel that you

 9   had to withdraw from serving as an expert in this

10   case?

11   A      That I had to withdraw?

12   Q      Correct.

13   A      I don't recall withdrawing.  I recall some

14   concern about the time frames that were being put

15   forth.

16          MR. DeOREO:  I'll object to any

17       further questions and instruct him not to

18       answer with his communications with

19       counsel.  It's protected by Rule 26.

20   BY MR. CRAIG:

21   Q      Without getting into questions that you've

22   had with counsel for Donald Trump in this case,

23   did there come a point where you were no longer

24   able to perform your role as a rebuttal expert in

25   this case?
```

A-1362

Page 109

```
 1                Dr. E. Nace - 3/15/23

 2    A      Not that I was aware of.

 3    Q      Did there come a point where you

 4   understood that you were no longer retained or no

 5   longer serving as an expert for Donald Trump in

 6   this case?

 7    A      I wasn't aware of that.

 8    Q      Were you aware that Donald Trump informed

 9   the Court in a letter that you would no longer be

10   serving as an expert in this case in early

11   February 2023?

12    A      No.

13    Q      Were you aware that Donald Trump retained

14   the services of two other experts in this case?

15    A      No.

16    Q      Okay.  Are you familiar with the names

17   Dr. Ian Lamoureux and Dr. Jill Hayes?

18    A      No.

19    Q      Are you hearing those names for the first

20   time today?

21    A      I think so.

22    Q      Do you have any awareness at all about

23   interactions with the Court with respect to your

24   service as an expert in this matter?

25                MR. DeOREO:  Objection.
```

Page 114

1                     Dr. E. Nace - 3/15/23

2    Q      Did you understand that your expert report

3    was originally due on January 30th, 2023?

4    A      I don't think so, because no one demanded

5    that.  So I didn't --

6    Q      So when you testified previously that you

7    expected to be able to meet the deadlines that the

8    Court had set for this case, you were unaware that

9    the Court had set a January 30th, 2023, deadline

10   for your expert report?

11   A      I don't remember that being a deadline.

12   Maybe it was posed to me.  I'm not sure.  And I

13   don't recall whether I said, "Okay, fine," or --

14   but I -- certainly something happened and I didn't

15   get materials or I didn't hear from anybody for a

16   while.

17   Q      And did there come a time after

18   January 9th, 2023 -- and I'm sorry to have to ask

19   about this -- that your wife's health condition

20   changed your capacity to complete your expert work

21   in this case?

22   A      No.

23   Q      Have there any -- been any changes to your

24   wife's health condition since January 9th, 2023?

25   A      Since when?

Page 115

1                    Dr. E. Nace - 3/15/23

2     Q      January 9th, 2023.

3     A      I'd say things are stable.  I mean,

4   there's always little ups and downs along the way.

5     Q      And can you tell me what -- what condition

6   your wife is currently treating or dealing with?

7     A        End-stage renal disease.

8     Q      And between January 9th and the time you

9   submitted your report, were you ever -- did you

10   ever stop working on this case for a period of

11   time?

12    A      I started working on the case when

13   materials arrived for me to look at.

14    Q      And you testified that was in -- sometime

15   in early February 2023?

16    A      As best I recall.  I have billing records

17   that would specify a date that I reviewed

18   something.  I don't have them here, but my

19   guess -- best guess is it must have been somewhere

20   in February.

21              I mean, I could be wrong.  Maybe I got

22   records in January.  I just don't recall when they

23   arrived.

24    Q      Do you recall the total amount of time, in

25   terms of days or weeks, that you spent doing your

Case 1:22-cv-10016-LAK   Document 109-11   Filed 04/13/23   Page 7 of 8

```
                                                        Page 142
 1                    Dr. E. Nace - 3/15/23

 2   she had experienced on January 17th?

 3              MR. DeOREO:  Objection; misstates

 4        the letter.

 5              MR. CRAIG:  I'm not misstating the

 6        letter.

 7              THE WITNESS:  I don't --

 8   BY MR. CRAIG:

 9    Q      Do you understand my question?

10    A      I -- I don't remember what I said and I

11   don't remember who I talked to.

12              MR. SEIGEL:  It doesn't say at that

13        moment they're moving forward.  I know

14        where you're going with this, but I'm just

15        giving you a heads-up --

16              MS. KAPLAN:  This is inappropriate

17        objection for a deposition.

18              MR. SEIGEL:  Fair enough.  I'm

19        trying to move things along.

20   BY MR. CRAIG:

21    Q      So on January 17th, your wife had a

22   surgery; correct?

23    A      Yes.

24    Q      She went back to the hospital on

25   January 18th?
```

Page 143

1                    Dr. E. Nace - 3/15/23

2    A       Uh-huh.

3    Q       And they reversed the procedure from

4    January 17th --

5    A       On the 19th.

6    Q       -- on January 19th?

7    A       Right.

8    Q       And after that, you testified previously

9    that she was stable until present, and that the

10   next surgery she had was on February 14th relating

11   to her catheter; correct?

12   A       Well, I was a little off on that, because

13   I didn't -- now looking at this, she was in the

14   hospital after the 19th.  She didn't go home until

15   maybe Sunday -- I don't remember, Saturday or

16   Sunday.  So they kept her a couple days to watch

17   her.  And so by the end of that weekend, she was

18   home.

19   Q       And Sunday was January 22nd?

20   A       Yeah.  Right.

21   Q       So on January 24th, did you report that

22   she needed immediate surgery in face of real risk

23   of death?

24   A       I don't remember what day I talked to

25   anybody.  But if it -- if I said "immediate

A-1367

# tacopina seigel trial lawyers
TACOPINA SEIGEL & DEOREO

**JOSEPH TACOPINA**
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

April 22, 2023

**FILED BY ECF**

Hon. Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**   **<u>Carroll v. Trump</u>, 22 Civ. 10016 (LAK) ("Carroll II")**

Your Honor:

      We write on behalf of Defendant Donald J. Trump to request clarification of Your Honor's March 10, 2023 Memorandum Opinion on one issue relating to Natasha Stoynoff's testimony, along with a proposed solution to an evidentiary issue.

      You will recall that Ms. Stoynoff testified in her deposition that Defendant escorted her into a room, and then grabbed her shoulders and pushed her against a wall and started kissing her. Then someone allegedly came into the room and the incident ceased. Defendant's motion *in limine* sought to exclude this testimony under Federal Rule of Evidence 413(d). Your Honor denied our Motion; however, we request clarification with a proposed solution.

      Your Honor correctly observed that Trump, according to Ms. Stoynoff, did not touch Ms. Stoynoff's genitals. Also, Your Honor correctly observed that Defendant's merely kissing Ms. Stoynoff (according to Ms. Stoynoff) would not satisfy Rule 413(d). Your Honor did, however, note Ms. Stoynoff's testimony that Defendant lied when he denied groping her, which perhaps implied that he did grope her. However, Your Honor correctly observed that "the portion of Ms. Stoynoff's deposition does not specify what part of her anatomy she claims Mr. Trump groped or attempted to grope." Your Honor then observed that " . . . if Ms. Stoynoff's account of the parts of her body that Mr. Trump allegedly touched were the only relevant evidence, it would be debatable whether that conduct alone would satisfy Rule 413(d) and 415." Your Honor then performed additional analysis of other evidence which might be suggestive of a plan by Defendant to go further towards touching

A-1368

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
April 22, 2023
Page 2

Ms. Stoynoff's private parts, and thus denied the motion *in limine*.

Upon further reflection, we believe that there exists a true threshold issue of exactly what parts of Ms. Stoynoff's body Defendant actually touched or attempted to touch, according to her. If Defendant, according to Ms. Stoynoff, only touched her shoulders and kissed her, and never touched or attempted to touch her genitals, then Your Honor's conclusion that such evidence is not enough for her testimony to be allowed should be conclusive. Because the second part of Your Honor's analysis based on other evidence seems grounded in the uncertainty of whether Defendant actually "groped" Ms. Stoynoff, we propose the following before Ms. Stoynoff is allowed to testify: Defendant's counsel simply asks a few questions of the witness *voir dire* and outside the presence of the jury as to exactly what parts of her body Defendant allegedly touched or attempted to touch. If she testifies that he only touched her shoulders and attempted to kiss her, we would ask that Your Honor reconsider the prior March 10th ruling and not allow her to testify.

A germane piece of evidence in this regard is the verbatim transcript (written by Plaintiff herself of from a recording) of an interview between Plaintiff and Ms. Stoynoff dated June 20, 2020, which took place more than seven months after *Carroll I* was filed and Plaintiff was in full litigation mode against Trump. Although Ms. Stoynoff repeatedly told Plaintiff that Defendant never "grinded" against her, Plaintiff – *possibly after being educated about the requirements of Rule 413(d)* – repeatedly attempted to get Ms. Stoynoff to say that he had done so. (*See* Exhibit A hereto at Carroll_027327-28, 29-30). Instead Ms. Stoynoff is resolute that "As it was it was kissing." and in fact she says "I feel as though if he had done anything more serious – more sexual, that had to do with sex parts – I would have told my superiors." (*Id.* at 027329-30)

Thus, despite Plaintiff's clear efforts to coach and influence on of her key trial witnesses (one with highly prejudicial testimony as argued in Trump's *in limine* motions in *Carroll I* and *II* ) it appears that all that ever existed, if anything, was mere kissing, and Ms. Stoynoff has denied in the past that the alleged conduct had anything to do with "sex parts."

Accordingly, again we believe her testimony is inadmissible *in toto* and we should have the opportunity to *voir dire* her about the accuracy of the above statements that the alleged incident did not involve or relate to genitalia.

A-1369

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
April 22, 2023
Page 3

We greatly appreciate the Court's consideration of this matter.

Respectfully submitted,

Joseph Tacopina

cc:     All counsel by ECF

A-1370

# EXHIBIT A

A-1371

NATASHA STOYNOFF
Interviewed, Monday, June 22 , 2020 at 5pm.


E-Am I recording?

N-Yes.

E- I am?

N- On the top of my screen (shifting her eyes to the left and pointing) it says it's recording. The button is flashing.

E-(peering, peering, peering at the screen) Oh!' (screeching happily).  Ok. Here is my idea. I have read all these compilations.  (The accuser compilations).You and I have talked about this. there must be what? 50 compilations? Business Insider, (making a big beach ball with her arms, speaking out of the left side of her mouth---but REALLY, waaaay on the left side of her mouth, Jesus!) Huffington Post, NBC news, ABC news, CNN, waving the beach ball....everybody's got a compilation.

N-Yup.

E-But compilations do not speak to the heart of the reader.  Compilations are just "And then the bad man did this, and then the bad man did that."

N- It is like a roundup of a serial killer's victims.

NATASHA sits in a brown-rose alcove with a cream colored door behind her and a bend-backed chair. and a window with white blinds. She has wonderful strong, widely spaced eyebrows----arching at the temples, and  Blue Grey? eyes, a fighter's nose, an oval face, rosy cheeks, high broad forehead with long champagne hair with darkish roots.

 She is wearing a black blouse.

Confidential

CARROLL_027308

A-1372

2

N-It doesn't tell you what's behind the face . . . and those snippets.

E-Eggzactly. it is like a serial killer hit list. Here are the victims. And Natasha, (afraid of what I am about to ask and holding both hands up to my mouth before I speak to stop myself, and turning away from the camera----because I am a little afraid she will disagree with my theory----) Do you see any of these women as victims?

N-Uh. (Pause.) Only in the sense he did something to harm them. And they have not gotten any justice for it, or apology.  And they were harmed. So in that way---I don't know if the word victim is right, but in that way I see them "victimized by him." BUT, (and a smile begins spreading over her face) the strength to come forward, the strength of all these women who came forward, (she raises her hands, and rolls them almost like patty cake) TURNS THE TABLE ON THAT, and makes them victors, instead of victims.

E. Yes!

N-No matter the result, the speaking out against someone like him---before the election or after---I would have been more afraid to speak out AFTER the election---shows a lot of strength and a gathering of one's own integrity, well, *strength* is the best word. (Laughing.)  See. I could put that better in writing.

E-please. (rolling eyes).  You are extremely articulate off the cuff.  I refer to this (the compilations) because I want to know: Do you see yourself as a victim?

N- No. I definitely don't.  I feel he did something wrong to me (You notice she NEVER mentions Trump by name---it's a thing with women who confront him---I have difficulty doing it. I call him "Sir," for instance on Twitter.)  But I don't feel vulnerable to him. (I just realized with Natasha's pronunciation that VULNERABLE and VULVA....must have the same root.) I was vulnerable at the time, but I overcame it. Like you did.
(She looks up, thinking. . . .) You know-------(pause pause) sorry! I'm so used to ----especially in these last few years, when the women really banded together, and the strength of the MeToo movement, and the Cosby women,

A-1373

3

and the Weinstein women, the coming of all these women together, it makes me feel we are more like an army!

E. yes!!

N-An army! Not the serial killer victim list, but an army! Like the Guardian Angels on the subway. A grassroots army! Trying to make lives change. Just like Black Lives Matter. It's a similar thing

Break for Natasha telling a Tony Schwarz twitter story.

E. (bored with Tony Schwarz who insisted once a month during Trump's first year in the white house that trump was "about to quit.")
Now.....Natasha. Where were you born?

N-I was born in Toronto.

E -and you have older brothers?

N. I have a twin brother and an older brother.

E- Were you raised in the country? In the city?

N-We were in the city of Toronto, technically but a little out of it in a suburb, in a middle class area.

E-And what were you like as a little girl.. (Now I am leaning into the computer, finally getting to the interview I want to do. Behind me on the blue wall, is my grandfather's Spanish-American war Cavalry Hat,  the Lincoln Family Currier and Ives, my father's arrow head collection (mounted) The Presidents....from 1833.  and a photograph of me in deep in the mountains on the Papua New Guinea--Irian Jaya Border with men wearing penis gourds.)

N- I've never been asked these questions! These are the questions *I've* been asking  people for 30 years.

Confidential

A-1374

4

E. The tables have turned, Woman, watch out!

N-When people were asking you questions, wasn't it shocking to you? I just want to know if I think of something better, I can email to you.

E. You can send me 15,000 emails.

N-Ok. Ok. What was I like. You know,  There was a part of me that was a feisty fighter, and there was a part of me that was very shy. Now. (she raises her hand to make a point, pulls it back to her chin, then thrusts it out again----her hand making the very motion of the concept of the shy--feisty dichotomy she is describing) The part that is shy was taught to be polite and to not make waves like a Canadian. THAT IS THE PART THAT COULD NOT PUNCH HIM!  (She makes fists with *both* hands)

E. Right.  You are very tall, very sportive girl.

N- I'm a boxer.

E. You could have *really* punched him. (It is so odd! Neither of us say his name!!)

N- I could have hurt him.  I grew up fighting with two brothers.  Both over 6'4". So I can *fight*. But as a female, with a bit of a shyness and the Canadian thing----I couldn't react.  That is a problem for a lot of women.

E- how much older are your brothers than you are?

N-My older brother is two years older and my other brother is my twin.

E-(totally missing that she said she had a twin) And they are taller.

N-One is 6'4" one is 6'2"

E-and you are like seven feet tall.  (I have walked down many New York streets with Natashia and it is like walking next to a Sequoia.)  You are a

CARROLL_027311

A-1375

5

giantess.  So when you were growing up, you had to hold your own against older brothers.

(I see the sun light glinting off my pan in the background. )

N. Yeah. I was constantly fighting them. And winning. And playing hockey. Body-checking all sorts of guys. I can body check any guy.  I can----she raises her arm and thumbs the direction---push them across the room. I am very strong. (a merry grin.)

E- (Oh! I am excited. My mouth opens like a tailgate on a 95 ford pickup. I raise both my hands as if I want to ward off any more stunning news, else I will faint from happiness)
And I screech: You played HOCKEY!?

N-Not ice hockey. Road hockey.

E- (I start waving my arms...like I'm an all-star guard.  Spread my hands. I want her to shut up so I can take it in.) Wait. I want DETAILS.  This is what I want.  I want to talk about sports.

N-I can see that. (laughing).

E- What are your sports.

N-Well, I was excellent in road hockey.

E. (Hands clasped in front of me and held under my chin in delight)  WHAT is road hockey, Natasha?

N. This is Canadian. Canadians play road hockey.  So. In the summer. Everybody had a net. So when you grew up, you would put your net in the street and you played hockey. I grew up playing road hockey. I played with the guys. I'm strong. Very strong shoulders. And I'm muscular. So I could knock *any* guy----she glances to the side showing where she would knock a guy---across the room.

Confidential

CARROLL_027312

A-1376

6

E. Did you play with sticks?

N. Hockey sticks. And a ball.  It was "Get the sticks! Get the Net!  Let's play!"  And we didn't really have any rules.  We just got up there and shoved each other around.

(She takes a sip of ---tea?) from a large orange mug)  This was from the age of 8, onward. And even when I a a journalist at the Toronto Star, one year we had a strike, and all us journalist had to block the trucks from leaving the plant.  So I suggested: "We should play Hockey! (Laughing, remembering, her face turning pink with enjoyment of the memory).  So we played hockey out there and knocking them all around.  I just WISH (she leans into the frame and raises both fists) I could have arrayed this talent into some sort of Olympic success.

E-Well, you're built like an Olympian. Your figure is phenomenal. You got a great figure. (rocking back and forth davening).  So you played Hockey.  What other athletics, besides wrestling with your brothers probably all day long, right?

N-Actually, I had the idea of becoming a wrestler.

E- screeching

N-You know, in our era---because I'm such a good fighter---

N-You know, in our era---because I'm such a good fighter---I can *really* fight. And I *love* it. It's why I love boxing. I started boxing when I was 40. And my boxing trainer said to me, "You know, you could really compete---

E. (frowning) Wait a minute. You *trained* as a boxer? I know you got into the ring with---

N- (smiling, dimpling, lowering her head shyly and modestly) with Mike Tyson.

Confidential

CARROLL_027313

E- With our man, Mike Tyson. You sparred with him.

When Natasha is tickled about something, she glances down, and her checks crinkle with TWO dimples each.

N-He was doing something, I can't remember, and I went to do him for People Magazine and I took my gloves, and we did a little bit of a----she spars with the screen with a jolly smile on her face.

E-Was Tyson pretty amazed that you could defend yourself and throw a punch?

N-Any time I hit anybody---you know, they put their hands up (assuming a boxing defense stance while sitting in her chair, hard to do, but she manages) and I punch (Punching) and they're a little bit-----she closes her eyes and smiles at a fleeting and delicious memory known only to herself----I didn't knock him over, I must admit. (She drops her head and smiles.) He's stronger than me. But usually people are amazed.  When I train, my trainers are always surprised at how hard I can hit. And When I start with a *new* boxing trainer, they are always shocked at how hard I can hit.  And they all say, "You should do this professionally. And then they ask how old I am.......and they go, Oh, forget it. (laughing with dismay, but good cheer).

E. You're still training.

N. I live in the Canadian woods. I found a gym and hour away. And I was going, until ....until  Covid closed down the gyms.

E. Take me through it. How do you train for boxing.

N. (whispering) I love hitting. I *love* it.

E. (Making gestures to the gods with arms raised) I want to go down on my knees.

N. I have a relative. A Macedonian Freedom Fighter. He was 6 feet 7. My whole family are like giants.  He fought for the Macedonian people and

CARROLL_027314

A-1378

8

apparently the Greeks cut off his head and carried it through town, but he was like this fierce, fierce, *fierce* guy. So, my father used to say I inherited his ferocity. So, when I hit----the very first time I hit a punching bag, I remember thinking, "Any upset, anything that was done to harm me..." (she looks up and smiles, lifts her hand and runs her fingers across an imaginary list) "I had this whole list of people, I put it right in the punch. And I'm hitting them. (She leans into the screen) this is so good for women because we are so taught not to do this. Also if someone grabs me in an ally I want to be able to fight. (Although it is very difficult for me to think of anyone having the temerity to grab this giantess in an alley) And though---AGAIN--- I did not expect it with Trump. but to answer your question, you usually do an hour with the trainer. He wears these gloves (Holding her hands up on either side of her head in front of her) And he teaches you the moves by moving his hands, and you hitting them. You do the heavy bag.  (She looks up, spreads her hands and steadies an imaginary heavy bag)   And the light bag (Looking up higher and punching, a rolling boom, boom boom.) And you're just learning how to move and hit.  And I just know that every boxing trainer I've had tells me I have tons of force.


A lot of force when I hit.

E-Did they like your punching style.

N. I have a nick name.

E. What is it?

N. Boom Boom.

E. (unable to bear it) NO!

N- (laughing as she watches me dying and going to heaven and sipping her tea/coffee)

E. So. Here's the thing. I know why you didn't strike at Trump. First of all, he was your friend. You were the Trump Person at People. Trump was your

CARROLL_027315

A-1379

9

beat. You had done five or six stories about him before your run-in at Mar-a-logo---

N-At least.

E. You were the Go-to Trump writer.  So I am putting on the record right now: You could have taken him out!

N-Oh yeah. Oh. For sure. (absolutely means it).

E. He weighed---at that time--probably two hundred and  . . . what would you say? ten? twenty? He was not obese, yet.

N-I'm not good at guessing that kind of things.

E- Oh, come on.

N. He says he's six three, but I think he's six-two. I think he lied by an inch. (Like nearly every guy on dating sites---I know I founded one of the biggest). But definitely, obviously, he was over two hundred pounds. This was 2005. I would guess he was twenty or thirty pounds lighter then.  So whatever he is now..... (shaking her head and frowning slightly.)

E. So he's probably about . . . OFFICIALLY, his doctors say, 240-250. Please. he's close to 300 now. Probably over 300.

N. You're going to ask me how much I weigh, I just know it.

E- No. You're a very strong female.  You don't have to tell me. Or your age. I don't want to know how much you weigh, or how old you are.  I'll put it into the story when Trump sends me his tax returns. What is Trump's workout routine? We know you're in the gum.  In 2005 was he working out?  Did you, in any interviews ask him about that? I've never heard of anyone interviewing him about that.

N. I can't remember if I ever asked him that.  I know his classic quotes about exercise.  He doesn't believe in exercise because he thinks you have a finite

Confidential

CARROLL_027316

A-1380

10

amount of energy in your body and if you use it up----it's gone.  So he golfs. That time at Mar-a-Lago, I saw him golfing. But I don't think he does anything else

(except attack women, stumble down ramps and require two hands to sip a bottle of water.)

E. I just want to know one thing. COULD . .. YOU . . . HAVE . . . BEAT . . . THE . . . CRAP. . . OF  .. .HIM?

N-I would love to meet him in the ring right now.

E. Could you beat him?

N-I think I could have beat him then, I think I could beat him now.  For sure. (She pauses and ruminates.....)  I don't see any reason why not. I've fought guys his size before.

E. Yeah, you grew up wrestling guys his size.

N. That's the scary thing. In that *moment*---and you only have the moment to react---and there's the freeze or the fight....

E. Well, you did push him back.

N. Yes. But I wish I had socked him.  I mean as soon as I left, my whole body was ready to fight.  But it was too late.

E. Did your mother raise you to be lady-like?

N. She would have liked to have.  (smiling tenderly) She was very ladylike. But I never was.

E. Your mother was American?  Or your father?

N. My mom. She was born in the old country. She was born in Macedonia. And was there till she was 15. But her father was in world war 1 as an

Confidential

CARROLL_027317

American soldier, so she was American from birth. My father came here (Canada) as a baby. From Bulgaria. I am 100 per cent, Slavic, eastern Bloc.

E. You can do the best Russian Accent of anyone I know.

N-I did the Ancestry. I'm like 99.1 from this ONE region...holding an imaginary globe in her hand and pin-point it) Just that little radius, all my genetic material comes right from there.

 (we discuss Macedonia....let's move on)

N. My mother wore dresses and heels and was very ladylike in everything she did.
And I fought to be the opposite. She didn't have a full grasp of the English language. My father was an English teacher. She had wanted to be a doctor. My elder brother became a doctor. (Her twin is a musician) She was very people smart. and very wise. She passed away in 1993. Very, very very beautiful. And very sweet, sweet, sweet. A very nurturing, wise, old-country mom. And very lady like. She grew up in the era of Grace Kelly. She used to dress like that and she was very lady like. So I----smiling-----was not like that AT ALL.

E  Did the other girls on your block play road hockey.

N. (pondering)  I don't remember them doing that. I remember I used to play football with the guys at school too, you know throw the ball around. I was on all the girl's teams. The basketball team, ("I had a great layup shot," I rarely missed a lay-up." the volley ball team. I was on all those teams.

E. (SCREEEEECHING to a halt. holding up both hands)  Wait. Stop.

N. Field Hockey. I loved Field Hockey.

E (waving arms---the no-touch down motion of an umpire.)  Stop! You were on the (holding up my fingers and counting off)  Basketball team,

Confidential

A-1382

12

N. Yes.  And definitely Volley ball. And I excelled at Field hockey. But the thing I REALLY excelled at, by the way---I don't think they even have it in the united states---is (laughing with just enormous amounts of pleasure) Teether ball.  Do you know what that is?

E. Yeah. (Swinging my arm around my head) It's a ball connected to a rope which swings around a pole.

N. Me and my two brothers were the Teether ball stars of Toronto at this time. Nobody could beat us.  We had one in our back yard.

E. (SCREAMING. Running around the kitchen) I am in heaven!

Natasha cracks up.

E. I surprised you didn't haul back and knock his----just knock him on the chin.


E. I surprised you didn't haul back and knock his----just knock him on the chin. You were a boxer!

N- And bear in mind, I had to continue my interview with the guy. We were interrupted by the butler and then Melania was coming down (from changing wardrobe) I had to come back FOR THE STORY.  All that was part of why I couldn't do anything. Do I come back and do the story? Or do I hit him?

Silence.

N. All these questions I'm dying to ask you.  All of these questions.

(I lay my head down on the table and we get a marvelous shot of my dark roots.)

Confidential

CARROLL_027319

E-So you showed strength. You came back, sat down, and Melania, if I remember correctly is an acquaintance of yours.

N. I had interviewed her.

E- you had met her several times, right?

N. I was at their wedding and she came up and hugged me---I had interviewed just her (without trump) for something, but through the years, I'd interviewed them both. And been in their home. Both their homes. I remember their incredible view at Trump Tower----all-round the top. But kind of gawdy for my taste.

I talk about him calling Birnbach and pitching her stories she could write about him.

N-After Mar-a-Lago, I took myself off interviewing him for ANYTHING.  But I saw him after that at Oleg Cassini's funeral.

E. Oh yeah, you did a eulogy.

N. Yeah, I did a speech.  I think he went (he also gave a speech) right before me or just  after me.  I stayed away.   (Mar-a-Lago happened in 2005, Cassini was 2006)

WE talk about Cassini.....her good friend.

E. Natasha, you are a very likable woman. Very likable. I can't imagine someone NOT liking you.   You're just likable. I don't ever hear you talking bad about people, you're just friendly, outgoi8ng, a little shy, yeah, but you're likable. And Trump like you.

N--I think so.  That's the feeling I got.

E. But you never picked up on anything predatory....?

N-Here's the problem. When you're a-------

CARROLL_027320

E. (I start shaking my head. ) I know. . . a girl journalist.

N- yeah. Three things came to my mind.  If you're a girl (she laughs and corrects herself), if you're a female who smiles and is nice to a certain kind of guy, they think that means you *like* them.  Add to that that you're a journalist interviewing them and you're asking questions and you're interested----I have no idea if that played into it, but, to answer your question, I had NEVER been alone in a room with him until that moment.  Any other time I was interviewing him throughout those several years There was always someone in the room----a publicist, Melania---- Usually more than one. And he specifically took me away from the group to take me into another room to be alone.

E. What did he say to you?

N. (Ruminating) He either wanted to show me the room.....or something in the room. I can't remember.  "Have you seen the bla bla bla?"  I just can't remember what it was.  If I could see pictures of the room, I could remember what it was.  It must be something he shows people---a painting? something? I remember what room it was.  So yeah, he either wanted to show me the room, the beautiful room (gesturing trying to grasp what it is), or something in the room.

E. It never occurred to you, did it?

(shaking my head violently back and forth---as Natasha takes a sip from her big mug.)

N. No.  I'm there with many people---photographers, photographer's assistants, his handlers, the whole place was buzzing with people------except for that room.

E. Natasha! It didn't occur to you that was a stupid thing to do?

Confidential

CARROLL_027321

A-1385

15

N. Going to the room with him? No!   Not at all! I mean (laughing in disbelief) I just ....I mean *No.* I mean what he did took me so off guard. I would *never* have expected that.  I had never really heard of him doing that.

E. that's the thing. I walked right into that dressing room---it never had *occurred* to me.  We had been laughing, and quipping, and it was totally off my mind. I NEVER FUCKING OCCURED TO ME.

N. Right

E. So maybe you can help me explain why....I walked in that dressing room after fifteen minutes of the greatest badinage......Which was hysterically funny....

N-And by the way, everything you describe about your back and forth with him is exactly what I would have done.  I would have joked around with him.

E. (Throwing both arms in the air) Of Course!

N-Especially as a writer. I would have been thinking "This is a great scene."

E. "This is *gold,"* I kept thinking.

N- And don't forget, the wife was in the other room.  Like she was upstairs changing.  NOTHING led me to think that he would do that.

E. Now women know not to be alone with him.

N. Yeah.

E. I don't think he'd be able to do that today, do you?

N. I think that there are many women who still want him to do that to him. I think (a laughing sneer) I mean we see these women wearing these t-shirts that saying "You can grab my pussy, Mr. Trump,"

E. Oh (turning away disgusted) I forgot about those women.

Confidential

N. I think there are women who like him. And would welcome it. I do.

E- (making face like ) I know. He's like the Beatles. they are like young girls throwing their bras on the stage at Elvis when he comes in.

N (Shifting in her chair wanting to leave) That comparison to the Beatles makes me sick.

E. Where was the interview being conducted?

N. Outside. Right behind the main house, there's a little patio. And Melania was doing a photo shoot by the pool. They were shooting her, and I was interviewing him. Then she had to go upstairs to change. And when she did that, he said, "hey, have you seen the such and such? I'd really like to show it to you. And I say, "No, I haven't seen it," and we went in, (holding her sharpie and drawing a blue print in the air) and turned to the right, and there's this room. (She drops her arm and laughs at the ridiculousness of life---) Should I keep going? (I nod) He led me into that room---

E- What were you wearing?

N- You can see in the picture, I'm just wearing, I've got a black shirt, very basic, and black pants and boots.

E- you didn't get all gussied up?

N-No. I'm not showing cleavage (although HOW a woman with this magnificent bosom, doesn't think she is "not showing cleavage" is beyond me. The blouse was very high, (ravishing her and to her chin.)

E and were the boots flat?

N-Maybe two inches. (Holding up two inches with her fingers)

E- You're almost as tall as he is in those pictures. You're six feet at least.

Confidential

A-1387

17

N- Really?

E. Well he says he's six three and he's wearing lifts.....so -----

N- laughing

E. And your hair is down and you're wearing your career-girl makeup.....

N-not much . .

E. (shaking head, doesn't know what else to say throws up hands an shrugs)

(cross talk about whether Melanie's boobs are real)

N- You know who taught me some moves? Norman Mailer taught me some of my boxing moves. On the back porch of their place in Province town. He gave me training.

E-(leaving the room screaming) Get the hell out of here! Get out! Get out!

N-And you know what he used to say to me? Every time. Because he trained.

E-years.

N-And he did the whole thrilla in Manilla.  Yeah. So he would train me. He would teach me how to do----(demonstrating weaving back and forth)---my neck.  Every time I saw him! He would take me outside and show me a few moves.

E- You were friends with ahh.....

N-With Norman and Norris, his wife.  She passed away 2010. And by the way, she told me that trump made a pass at her. He made a pass at her in a hotel. She told me about that. I sent her an email right after I got back from Mar-a-Lago. I said, "You're not going to believe what happened with Trump! And then I added, Oh, yes, maybe you WILL believe it." She was walking down a

Confidential

A-1388

18

hotel corridor and he put her up against the wall and kissed her. Very much like mine.  But she never told Norman.

E-If she had told Norman, he would have beaten hell out of him.

N. Oh. Forget it.(Putting her hands on her hips) He would not be alive today. Norman is famous for being pugnacious https://www.thedailybeast.com/mailer-loved-getting-punched-in-the-face  So, Norman, every time he saw me, and this is just apropos me and my chest, he would say, but Natasha, "I'm very worried I'm going to harm your chest. You need some sort of breast plate."  He taught me some good moves.

N-Norris  and I were very close friends

E- so you have been trained by Norman Mailer, and by Mike Tyson, you still train to day

N-when to college in Toronto York university with a BA in English,  and then to Ryerson for Journalism https://www.ryerson.ca/

E- Then you went to work at The Toronto Star?

N-Yes, I went to work at the Toronto star, then the Toronto Sun and then People Magazine, while still in Toronto.  And then People Magazine in New York. I said, "I want to be HERE." 46:14 And they said "we're just putting together a New York Bureau---this is 1997---and that would be a perfect time to come."  So within a few weeks (joyfully bouncing her hand up and down as she names the organizing of her life) I got my passport done,(she has Canadian and us passports) all my paper work, found an apartment, *and I was there*. Oh, yeah. It was great. This pandemic. I'm in Canada right now. I miss New York. I miss New York so much.

E-Ok. Now you're heading towards the room. Do you remember what he's wearing?

Confidential

A-1389

19

N- (Looking up---imagining it in her memory) I think just a suit and tie. It's in the photo.https://www.nbcnews.com/storyline/sexual-misconduct/people-magazine-publishes-photo-trump-accuser-he-claims-he-never-n828856  His usual. His usual suit and tie.

E-There were a lot of people in that shot.

N-Yeah! I don't even remember taking that picture.  And they found it when he started saying I never met any of these women.  (YOU NOTICE NEITHER OF US MENTION HIM BY NAME often)

E. That gets my goat. He met you over and over and over.  Do you have a list of the stories you did about him?

N- Not in front of me, but......

E-But you can e-mail three or four?

N-Yeah. Apprentice Cover, The wedding,  The Baby and Anniversary. I was the Apprentice Person. I was the (People Magazine) Trump Person.

E-When Tara Reade came forward with her Biden Accusation, President Trump spoke to the press and said....he ADVISES Biden to deny deny deny. Trump said, That's what  he always does.https://www.politico.com/news/2020/05/01/trump-advice-joe-biden-assault-claims-229182
https://nypost.com/2020/05/01/trump-tells-biden-to-fight-tara-reades-sexual-assault-charges/
https://www.cnbc.com/2020/05/01/trump-tells-biden-to-fight-tara-reade-sexual-assault-allegation.html

N-I remember something like that. Which is amazing that he even addressed it.

E- He did it twice!  So no matter what happens Trump's go-to thing is to Deny. That's it.

Confidential

CARROLL_027326

A-1390

20

N-Always. For anything.

E-So, you go in this room. it's daylight.

N-Yup.

E-Are there lights on?

N-I remember it being a dark room. But there were windows . . . so not too dark.

E-And he's chatting to you on the way to the room.

N-I can't remember if he's chatting. (When Natasha is running the scene through her head she looks up and ponders---I can almost see her seeing it.) We go in. I am looking around. Like there is something he is showing me.  I hear the door close (she points behind her). I turn around. He's closed the door and a minute later---she presses her hand to her chest-, still holding her pen--he is right at me, pushing me against the wall.

E- Wait---it was less than a minute. Wasn't it? Less than a minute?

N-Yeah. Less than a minute.  I meant "minute" as an expression. It was (raising her hand, pausing and making a rolling chopping motion) quick.

E-Did you hit your head.

N-She looks off towards the side and pauses. I don't recall hitting my head.

E-do you recall him grinding against you?

N- (leaning closer to the screen and tilting her head) Riding?

E-Grinding.

N-(leaning back, repulsed) Grinding....(closing hr. eyes) Oh God.

Confidential

CARROLL_027327

A-1391

21

E-He was pushing you said.

N-That is a question I never thought I'd hear.

E-He had me pressed up against the wall and I was aware of it.

N-Right.  (Closing her eyes).  I don't recall (opening her eyes and looking off and up) him doing that.


E- Stop and think about it. (Trying to climb through screen, leaning so far in----like Alice through the looking glass.)

N-Here's why I don't recall it. First of all, there are things that I told my relatives right after it happened, that I now don't remember.  But I'm sure whatever I told them happened, because I had just gotten back, and I told my family.  My professor remembers me saying he chased me around a table.

E- Professor?

N-Oh, I meant to show you that.  I spoke with my journalism professor *that night.*  The next day, I was going to Toronto to speak to his class.  I was set to talk to him.  So when I talked to him, I said: You won't believe what happened.  And he was advising me. He later gave an interview to Lawrence O'Donnell, and a couple of other places about it.

E-Wait. your professor went on Lawrence O'Donnell and talked about it?

N-Yes, he told the story. He talked about my conversation with him that night.

E-How did Lawrence find him---he has great producers, but come on.

N-When my story came out, my professor tweeted.  "Natasha is telling the truth."  And so producers got in touch with him.  Also my friend who was with me on the street when I ran into Melania who had Barron (a

A-1392

22

baby).....she also spoke about it to.  (Melanie and her lawyers are denying they saw and spoke with one another.) Well, I had a friend with me that day.

E-So your professor remembers....

N-That he chased me around the table.

E-But that part is gone from your memory.

N-(Shaking head) I don't remember it.  And my cousin told me I told her he said something much more crude to me than I reported. She told me I had told her he said something to me like: (lowering her voice): I'm going to fuck you.

E-That sounds more like him.

N-Did he say anything like that to you? I don't remember.

E-No. no. I'm laughing the whole time.  If he was talking (which I don't think he was) I didn't hear him.

N-You laugh because at first it just seems so ridiculous, what he's doing. You think he's joking. (back-swatting her hand).

E- I thought I could kill the whole erotic thing by laughing.

N-Because if it is anything more serious, (she rolls her hand under her long, champagne-frosted hair and lifts it---holds it up for an instant and lets it drop over her left shoulder.) you are trying to defuse the situation. I was kinda like (fake ha-ha-ha-ing and pushing her hand back back back and shaking her head and ending with a  frown)

E. You shook your head and pushed back.  Now think. Did he grind against you?

N-I don't remember if he did. And the reason I don't think he did is because I feel as though if he had done anything more serious---more sexual, that

CARROLL_027329

had to do with sex parts--I would have told my superiors. It was just at the line of I'm not going to tell anybody.  I mean I told my friends and my immediate boss, but I didn't tell the managing editor. And I feel if he had done something like that I would have said something. Had it been a LITTLE BIT MORE directly sexual. As it was it was kissing. (and we discover later it was more than kissing.

E-Where were his hands.

N- I remember them ---(she crosses her arms and grabs both her shoulders and rocks back) him grabbing my shoulders and pushing me back.  And I was kinda like THIS (she raises her hands and pushes back, back, back.)

E-Right. Right. And you pushed him back and he . . . did he come forward again?

N-He came forward again, and the second time, I pushed him harder.  First time, probably, NOT ENOUGH, you know. The first time (laughing daintily, holding up a modest hand) don't be ridiculous. Then he came at me again, I pushed him back again, and the door opened.

E. Oh! right. The butler came in.  Can I go get my wine?

N-Absolutely!

E. Jesus. (yelling from off-camera) Hang on Natasha!  Are you going to join me?

N- No, I'm drinking tea. And I gotta write until like 2 in the morning, so if I drink now? Forget it.

E- (Raises a toast to the Accusers) ....And  so now we get to the part where he says to you, "You and I are going to have an affair." And when does he say that?

N- He says it outside. The butler interrupts everything. 57:48  "Melanie's ready."  He leads us outside back to our original interview position

CARROLL_027330

N- He says it outside. The butler interrupts everything. 57:48 "Melanie's ready." He leads us outside back to our original interview position on the couch. (Thinking, reaching back with her left hand and lifting her hair from the back and pulling it forward over her right shoulder, and a little over the left) and after we sit down, and the butler leaves, he says, (lowering her voice) "You know we're going to have an affair."

E- So like him (which disagrees with what I said earlier when I said with the cruder version sounded like him.)

N-I don't know if I've told you this....(smiling) Can I just tell you something and you don't use it?

E-Yes.

N-So--------------------- CUT----

E-So then he said something about Peter Luger or something.

N-Yup we gotta go have steak at Peter Lugers, that was his big thing. He's said that to me a couple of times. "You ever been to Petr Lugers? You gotta go to Peter Lugers" (Imitating him she raises her right eyebrow) and uh, what was he second wife's name? Marla! And he said, "Well you know what Marla said, the Cover of the New York Post, Best sex she ever had..." He said the affair thing *several* times. I was just like (she squishes her face) so flummoxed. The butler's just left. Melanie's on her way. He's saying all this and I am still in shock.

E-What tone of voice is he using? He's needs to get all this in before his wife gets there, he needs to get a few points in....that you're going to have an affair. That you will eat steak at Peter Lugers and that it will be the best sex you ever had.

CARROLL_027331

N. His tone is . . . totally . . . . certain. Like how he speaks at a press conference. He's not waiting for me to say yes. You know we're going to have an affair. Just like it's a done deal. I felt like I was watching a crazy reality show. And bear in mind. I am there to write a story about their happy one year anniversary! And I've been asking questions about how happy they are! how excited they are about the baby, and meanwhile he's telling me, we are going to have an affair. [I shout something about oh my god]The two extremes were so baffling to my psych, because THEN when Melanie sits down and I start asking these questions (making the food falling out of her mouth gesture) and it is a complete lie. I mean everything he is saying now in the interview, I know, is a complete lie.

N-So when I got back to the hotel I had so many emotions, and I finally got to the anger, and I think I was angry when I finally spoke to my professor.  I went through all the levels: (and she starts with her hand high and the drops it as she names the levels) Did I do something to MAKE him do that?  Did I ENCOURAGE him in any way? And I go through all those questions, and I finally get to anger, and I'm like HOW CAN HE DO THAT? Why would he do that to ME, who is writing about him? Why would he do that to a journalist?

E-That's where you and I differ, Natasha. I am older than you. Come from a different generation.  I would have *expected* him to do it. I just expect men like him to make a move. I always have. I grew up expecting it, and I have not seen anything to make me change my mind.  I not only would NOT have been surprised, I would not have been angry. I would have laughed about it.  (And this is where I am wrong.  Women from my generation laughed and moved on. IT CHANGED NOTHING.)

N-You know what made me most angry: Two things. 1. This was a very prestigious assignment for me.

E-People was at the top of its game---3 million subscribers or something.

N-And being "the Trump person," was a prestigious position to be in.  And this took me away from that. And Number two: When you work hard, and

you think you're doing a good job, and people are telling you you're doing a good job.. He spoiled my hard work. AND I AM ANGRY I DIDN'T RESPOND.

E- That's it!

N- (Punches at the screen)

E-Natasha! You are built like a boxer. You trained as a boxer. You're tall. You're strong. You throw a great punch

N. And I'm angry.

E. And you're sexy as hell. I mean your bosom alone, could knock out half of New York,

N- chuckling. What am I going to do with them?

E. (Just shakes her head in awe)

N-I mean that's why I dressed in a very conservative way . She makes covering motions with her hand.

E- Any time I've seen you, you've been shelled up to here (holding my hand under my chin)

N-So I was angry because I had to tell my immediate boss that I didn't want to interview him EVER AGAIN. So they took me off the beat. So the next time there was an interview to do with him, someone else was sent. I think they sent a few guys.

E. You told your boss soon after?

N-The next day when I arrived at the office. It was unusual because I had been interviewing them for years. And all of a sudden, I'm not. So I saw Melanie on the street many months later. I think it was around Halloween because my friend remembers Baron being in a little Halloween outfit. He

Confidential

A-1397

27

was just a little baby. And she was walking out with him and we saw each other and she said: "Where have you been? We missed you!" I remember thinking. "Does she get it?" I don't understand in situations like that, if they know or not.

E- We don't know what she knows.  But she says later she never ran into you, or what?

N-Well, why would she remember it?  It was ten years later. (Melanie ONLY disputed the fact that they ran into each other, she didn't say a word about Natasha's accusation.)  My friend remembers it because she talked about it at parties for years! "We were on the street! We bumped int Melanie! She's got the kid! Blah blah blah., " yeah.  My friend was visiting me from Canada, so running into Melanie was a big deal.

E. But BOTH of them (Melanie and Trump) both said they never met you, had no idea who you were.

N- He gave that statement: I've never met any of those women." https://thehill.com/homenews/administration/364506-footage-shows-trump-with-accusers-after-he-claimed-he-never-met-them

E-What does that feel like when someone denies your truth as a woman. (Jesus, Jean, get it together "you're truth as a woman," Christ!)

N- Well, Melanie then went on TV and saying this could never have happened, she's lying, and this was before the election. So I thought she's trying to save her family, help her husband, she's gonna lie for him, whatever.  And maybe she doesn't really believe that it happened. I thought, this is a mother fighting for her kid. To me a European mom is going to do everything she can to protect her kid and not want anything bad to happen to their child. So, that was my first thought.  But since then, I've lost respect for her. As a woman, you can't lie about these things.

E-Wait. Have you ever been married?

N-Yes.

Confidential

A-1398

28

E- How many times?

N-once (laughing) holding up one finger.

E. And .....(laughing) is your husband right there?

N- Yes (giggling with delight)  He likes to keep a low profile.

E-So you have insight into the role of a wife.

N- I'm not a mom, but I understand---I assume---she felt that she had to defend him.

E-So do we even include her in this discussion?

N-Well....

E- I hate her. She's a birther.

N-So does she just believe everything he tells her?
(Like Fox news) I mean people say she's smart.

E. I think *he's*  smart.  I think he is super smart.

N- I know you do. I don't think he's smart.

E- you can't become President of the United states without being super smart.  He's *super smart.* He's smarter than a lot of people realize, because so many people hate him so much.

N-But is it so smart to be impeached?

E-He was so smart he had every republican except one on his side. That takes brains.

Confidential                                                                 CARROLL_027335

A-1399

29

N- Yes, but *they* want power.  What else are they gonna do? They're gonna back anybody who's got it.

---

(we talk about scheduling part two of our interview for the next day... and I ask her to send me pictures because "every picture of every accuser on the internet is horrible."

N- Ok! I'll see you tomorrow at five!
E-Bye Natasha!  )Both of us waving to beat the band)
N-Chow
E-(waving) Bye!
N- Chow Bella!


NATASHA THE NEXT DAY. .


N-(looking rosy and rested) I saw the chiropractor today! He unlocked all my stress. Ohhhhhhhhahhhh!  (she rolls her shoulders) Don't you have neck-shoulder stuff from writing? and Writing and writing?

E-I'm an elderly unlettered woman with arthritis who lives in a cabin on an island in the mountains. EVERY BONE IN MY BODY ACHES.

N- her twin brother is a musician in Toronto. They were inseparable when they were little. And to this day we have the psychic thing together ---from thousands of miles away, I can feel if anything is wrong.  15 minutes older...

STUFF ABOUT BEING born prematurely.....05:24

Both parents dead. 05:41 Dad like a jack lalane type...

The ZOOM FREEZES.....I send her a new invite.

Confidential

NATASHA  TEN MINUTES LATER
ZOOM #3

Allyssa's piece in The Cut.

E- You have more Corroboration  than anyone who's come forward. Now. I am going to take that Natasha brain and put it through a pea-shooter.

Dinner with Molly and George 02:17
We walked to my car. 10-15 minutes
walking and chatting.
Black pants and white high-heeled sneakers converse three inch heels. That's why I think of you as the giantess.  Black fitted top with a black diaphanous blouse.


N-I haven't seen 135 since the summer of 1988.  I know exactly what I weighed at every point in my life.

E-You have an unbelievably beautiful figure.

N-Right now I have Trump weight and Pandemic Weight.

E-You said his name!! You know what I discovered.  In our first interview we really mentioned him by name. We weren't doing it on purpose. It's just how we converse.

N-I don't even write his name usually.

E- You used it this time because you were naming an era.

N-An issue: Trump weight. This is like a well-known issue that other women have experienced.