# 23-793

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

Plaintiff-Appellee,

—against—

DONALD J. TRUMP,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE
## [REDACTED VERSION]

JOSHUA MATZ
KATE HARRIS
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883

ROBERTA A. KAPLAN
MATTHEW J. CRAIG
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................. 1

STATEMENT OF THE ISSUE ............................................................................ 2

COUNTER-STATEMENT OF THE CASE ........................................................... 2

   I.  PROCEDURAL HISTORY ......................................................................... 2

   II.  FACTUAL BACKGROUND .................................................................... 4

      A.  Carroll's Case ............................................................................... 4

      B.  Trump's Case ................................................................................ 10

      C.  Closing Arguments ....................................................................... 11

      D.  The Jury Verdict ........................................................................... 12

STANDARD OF REVIEW ................................................................................. 12

SUMMARY OF ARGUMENT ........................................................................... 13

ARGUMENT .................................................................................................. 15

   I.  THE COURT PROPERLY ADMITTED OTHER ACTS EVIDENCE .... 15

      A.  The Testimony of Natasha Stoynoff and Jessica Leeds ...................... 15

         1.  Carroll's Case Is "Based on" a Sexual Assault ............................... 17

         2.  This Testimony Evidenced "Sexual Assault" ................................. 19

            a.  Leeds's Testimony Satisfied Rules 413(d)(1) & (d)(5) ........... 19

            b.  Stoynoff's Testimony Satisfied Rule 413(d)(5) ...................... 24

         3.  Alternatively, The Leeds and Stoynoff Testimony Was Properly
            Admissible Under Rule 404(b) ....................................................... 26

4. The District Court Did Not Abuse its Discretion in Declining to Exclude This Testimony Under Rule 403 ........................................27

5. Trump's Remaining Arguments Are Meritless ..............................32

B. The Access Hollywood Tape ..................................................35

1. The Tape Was Properly Admitted Under Rule 415 ......................36

2. The Tape Was Evidence of Trump's *Modus Operandi* .................37

3. Rule 403 Did Not Require Exclusion of the Tape ..........................38

II. TRUMP'S OTHER EVIDENTIARY ARGUMENTS LACK MERIT .....39

A. Litigation Funding .............................................................39

B. The Stoynoff Transcript .......................................................43

C. DNA ............................................................................45

D. Not Reporting to the Police ..................................................48

E. Not Requesting Surveillance Video ..........................................49

III. TRUMP IS NOT ENTITLED TO A NEW TRIAL ..................................50

CONCLUSION ...........................................................................55

CERTIFICATE OF COMPLIANCE ..................................................56

CERTIFICATE OF SERVICE ..........................................................57

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*ABKCO Music, Inc. v. Sagan*,
    50 F.4th 309 (2d Cir. 2022)..............................................................33

*Beatty v. United States*,
    293 F.3d 627 (2d Cir. 2002)..............................................................44

*Benitez v. Lopez*,
    No. 17 Civ. 3827, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) ..................41

*Boyce v. Weber*,
    No. 19 Civ. 3825, 2021 WL 2821154 (S.D.N.Y. July 7, 2021) ........ 16, 17, 27

*Cameron v. City of New York*,
    598 F.3d 50 (2d Cir. 2010)................................................................51

*Carroll v. Trump*,
    66 F.4th 91, 92 (2d Cir. 2023)............................................................3

*Carroll v. Trump*,
    No. 20 Civ. 7311 (S.D.N.Y.)..............................................................3

*Carroll v. Trump*,
    88 F.4th 418 (2d Cir. 2023)..............................................................3

*Condit v. Dunne*,
    225 F.R.D. 100 (S.D.N.Y. 2004) .......................................................42

*Doe v. Gooding*,
    No. 20 Civ. 6569, 2023 WL 3805836 (S.D.N.Y. June 2, 2023).............. 16, 27

*In re Gen. Motors LLC Ignition Switch Litig.*,
    14 M.D. 2543, 2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015)..........................47

*Hill v. Quigley*,
    784 F. App'x 16 (2d Cir. 2019)..........................................................45

*Huddleston v. United States*,
    485 U.S. 681 (1988) ...................................................................................... 19

*Johnson v. United States*,
    520 U.S. 461 (1997) ...................................................................................... 32

*Jones v. Barnes*,
    463 U.S. 745 (1983) ........................................................................................ 1

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005)........................................................................ 37

*United States v. Larson*,
    112 F.3d 600 (2d Cir. 1997)........................................................................ 30

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
    833 F.3d 172 (2d Cir. 2016)........................................................................ 51

*Marcic v. Reinauer Transp. Cos.*,
    397 F.3d 120 (2d Cir. 2005)........................................................................ 50

*Old Chief v. United States*,
    519 U.S. 172 (1997) ...................................................................................... 44

*Rapp v. Fowler*,
    No. 20 Civ. 9586, 2022 WL 5243030 (S.D.N.Y. Oct. 6, 2022) ...................... 20

*Roe v. Howard*,
    917 F.3d 229 (4th Cir. 2019)........................................................................ 27

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*,
    467 F.3d 107 (2d Cir. 2006)........................................................................ 45

*Tesser v. Bd. of Educ. of City Sch. Dist. of N.Y.C.*,
    370 F.3d 314 (2d Cir. 2004)........................................................................ 53

*Tolbert v. Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001)...................................................................... 1, 42

*United States v. Delva*,
    858 F.3d 135 (2d Cir. 2017)................................................38

*United States v. Abair*,
    746 F.3d 260 (7th Cir. 2014)..............................................41

*United States v. Abel*,
    469 U.S. 45 (1984) ............................................... 42, 42

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010)................................................31

*United States v. Batton*,
    602 F.3d 1191 (10th Cir. 2010)....................................... 17, 22

*United States v. Bell*,
    584 F.3d 478 (2d Cir. 2009)........................................... 14, 51

*United States v. Benally*,
    500 F.3d 1085 (10th Cir. 2007)..........................................30

*United States v. Bird*,
    372 F.3d 989 (8th Cir. 2004)..............................................20

*United States v. Blazek*,
    431 F.3d 1104 (8th Cir. 2005)............................................22

*United States v. Brooks*,
    723 F. App'x 671 (11th Cir. 2018) ......................................17

*United States v. Cadet*,
    664 F.3d 27 (2d Cir. 2011)................................................27

*United States v. Carlton*,
    534 F.3d 97 (2d Cir. 2008)........................................ 26, 27, 33

*United States v. Cohen*,
    No. 07 Cr. 5561, 2008 WL 5120669 (2d Cir. Dec. 8, 2008) ................... 21, 24

*United States v. Crowley*,
    318 F.3d 401 (2d Cir. 2003)....................................................... 20, 23

*United States v. Cruz*,
    894 F.2d 41 (2d Cir. 1990)..............................................................44

*United States v. Davis*,
    624 F.3d 508 (2d Cir. 2010)...........................................................30

*United States v. DeFillipo*,
    590 F.2d 1228 (2d Cir. 1979).........................................................50

*United States v. Delva*,
    No. 12 Cr. 802, 2014 WL 4460360 (S.D.N.Y. Sept. 10, 2014).......................38

*United States v. Enjady*,
    134 F.3d 1427 (10th Cir. 1998).......................................................19

*United States v. Erramilli*,
    788 F.3d 723 (7th Cir. 2015)...................................................... 21, 24

*United States v. Figueroa*,
    548 F.3d 222 (2d Cir. 2008)...........................................................35

*United States v. Foley*,
    740 F.3d 1079 (7th Cir. 2014)..................................................... 17, 18

*United States v. Harvey*,
    547 F.2d 720 (2d Cir. 1976)...........................................................45

*United States v. Hayward*,
    359 F.3d 631 (3d Cir. 2004)...........................................................21

*United States v. Hunter*,
    273 F. App'x 52 (2d Cir. 2008).......................................................38

*United States v. LaFlam*,
    369 F.3d 153 (2d Cir. 2004)...........................................................31

*United States v. LeMay*,
    260 F.3d 1018 (9th Cir. 2001) .......................................................................22

*United States v. McPartland*,
    81 F.4th 101 (2d Cir. 2023) .........................................................................31

*United States v. Moye*,
    793 F. App'x 19 (2d Cir. 2019) ...................................................................26

*United States v. Norris*,
    428 F.3d 907 (9th Cir. 2005) .......................................................................19

*United States v. O'Connor*,
    650 F.3d 839 (2d Cir. 2011) ................................................................. 30, 36

*United States v. Pascal*,
    610 F. App'x 791 (10th Cir. 2015) ..............................................................21

*United States v. Rodriguez*,
    581 F.3d 775 (8th Cir. 2009) .......................................................................17

*United States v. Schaffer*,
    851 F.3d 166 (2d Cir. 2017) ................................................ 16, 28, 29, 31, 38

*United States v. Scott*,
    677 F.3d 72 (2d Cir. 2012) .........................................................................26

*United States v. Serrano*,
    No. 13 Cr. 58, 2014 WL 2696569 (S.D.N.Y. June 10, 2014) ........................38

*United States v. Shan*,
    361 F. App'x 182 (2d Cir. 2010) .................................................................34

*United States v. Sliker*,
    751 F.2d 477 (2d Cir. 1984) ........................................................................27

*United States v. Spoor*,
    904 F.3d 141 (2d Cir. 2018) ...................................................... 12, 27, 28, 29

*United States v. Spruill*,
    808 F.3d 585 (2d Cir. 2015)...................................................................34

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006)........................................................... 43, 47

*United States v. Stroming*,
    838 F. App'x 624 (2d Cir. 2021)................................................... 29, 30

*United States v. Thomas*,
    274 F.3d 655 (2d Cir. 2001)...................................................................32

*United States v. Tillem*,
    906 F.2d 814 (2d Cir. 1990)...................................................................42

*United States v. Vickers*,
    708 F. App'x 732 (2d Cir. 2017)...........................................................33

*United States v. Vonneida*,
    601 F. App'x 38 (2d Cir. 2015).............................................................30

*United States v. Wager*,
    651 F. Supp. 3d 594 (N.D.N.Y. 2023)..................................................17

*United States v. Williams*,
    756 F. App'x 73 (2d Cir. 2019).............................................................44

*United States v. Woods*,
    684 F.3d 1045 (11th Cir. 2012).............................................................36

*United States v. Zhong*,
    26 F.4th 536 (2d Cir. 2022)...................................................................41

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    7 F.4th 50 (2d Cir. 2021)......................................................................51

**STATUTES**

Cal. Penal Code § 242...............................................................................36

N.Y. CPLR § 214-j ................................................................................3

N.Y. Penal Law § 70.02(1)(c) ..........................................................36

18 U.S.C. § 7 ...................................................................................22

18 U.S.C. § 2241(a)(1) ...................................................................23

18 U.S.C. § 2244(a)(1) ...................................................................23

18 U.S.C. § 2244(b) ........................................................... 21, 22, 23

18 U.S.C. § 2246(2) .........................................................................23

18 U.S.C. § 2246(3) .........................................................................21

49 U.S.C § 46506(1) ........................................................................23

49 U.S.C. § 46501(2) .......................................................................23

**FEDERAL RULES**

Federal Rule of Evidence 401 ..........................................................41

Federal Rule of Evidence 403 ...................................................... *passim*

Federal Rule of Evidence 404 ........................................ 13, 26, 33, 37, 38

Federal Rule of Evidence 413 ...................................................... *passim*

Federal Rule of Evidence 415 ...................................................... *passim*

Federal Rule of Evidence 607 ..........................................................35

Federal Rule of Evidence 608(b) ................................................ 41, 45

Federal Rule of Evidence 611(a) ................................................ 45, 48

**OTHER AUTHORITIES**

Wright & Miller, 28 Fed. Prac. & Proc. Evid. § 6164 (2d ed.) ...............................50

## INTRODUCTION

In May 2023, a nine-person jury held Defendant-Appellant Donald J. Trump liable for sexually abusing and then defaming Plaintiff-Appellee E. Jean Carroll. A district judge with nearly three decades of experience presided. Carroll called eleven witnesses; Trump called none and did not appear in person. After hearing evidence for two weeks, including nearly three full days of testimony from Carroll herself, the jury reached a simple conclusion: Carroll was telling the truth and Trump was not.

Trump now demands a do-over, asserting that the district court erred in certain evidentiary determinations—and that these errors resulted in a miscarriage of justice. Apparently in hopes of bolstering that claim, Trump riddles his brief with drive-by assertions of error and sweeping complaints of unfairness. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). He then raises fourteen separate legal objections to the district court's exercise of discretion in admitting and excluding evidence. *See Jones v. Barnes*, 463 U.S. 745, 752 (1983) ("Legal contentions, like the currency, depreciate through over-issue.").

Separately and together, these objections are empty. Many have been waived. The rest rely on distortions of the record, misstatements or misapplications of the law, and a steadfast disregard of the district court's reasoning. There was no error here, let alone a violation of Trump's substantial rights. This Court should affirm.

## STATEMENT OF THE ISSUE

Whether the district court committed such extreme abuses of discretion in its evidentiary rulings as to affect Trump's substantial rights and require a new trial.

## COUNTER-STATEMENT OF THE CASE[1]

There is a substantial difference between the record below and the account of that record presented in Trump's brief. We will recount the procedural history of this litigation and then summarize the evidence at trial. Although Trump's narrative is littered with cursory, inaccurate complaints—not to mention improper *ad hominem* attacks on counsel—we will focus on the few issues that Trump actually seeks to raise on appeal. To be clear, there is a reason why Trump does not develop most of his drive-by grievances into appellate arguments: they wither upon minimal scrutiny.

## I. PROCEDURAL HISTORY

More than two decades ago, Trump sexually assaulted Carroll. In June 2019, Carroll spoke publicly about that assault for the first time when *New York* magazine excerpted a partly autobiographical book she had written. A.2859-78. Over the next four days, Trump issued a series of statements in which he denied assaulting Carroll, asserted that she is "not my type," threatened her, and claimed that she had fabricated her account to make money, sell books, or as part of a political conspiracy. A.2839-

---

[1] Citations to "Br. __" are to Appellant's brief, "A.__" are to the Joint Appendix, "SPA.__" are to the Special Appendix, "SA.__" are to the Sealed Appendix, and "ASA.__" are to Appellee's Supplemental Appendix.

57. To restore her reputation and remedy the harm that Trump had inflicted with these statements, Carroll sued him for defamation in November 2019 ("*Carroll I*").[2]

*Carroll I* proceeded slowly due to Trump's obstructionist tactics and attempts to invoke various federal immunities. *See* SPA.90; *see also Carroll v. Trump*, 88 F.4th 418, 422-24 (2d Cir. 2023); *Carroll v. Trump*, 66 F.4th 91, 92 (2d Cir. 2023) (*per curia*m). These delays afforded Trump an opportunity to again target Carroll. On October 12, 2022, Trump posted a message on Truth Social where he repeated his defamatory, insulting claims about Carroll. A.2858. One month later, Carroll filed this case ("*Carroll II*"). She alleged two claims: (1) defamation for the October 12 statement; and (2) battery for the underlying assault. (This otherwise time-barred battery claim had been revived by the Adult Survivors Act, N.Y. CPLR § 214-j.)

*Carroll II* proceeded more quickly than *Carroll I*—in part because the parties agreed to limit discovery in *Carroll II* to issues not already addressed in *Carroll I*. SPA.85-86. Following summary judgment and pre-trial motions, as well as assorted stall tactics by Trump, *Carroll II* was tried to a nine-person jury from April 25 to May 9, 2023. A.52-54. After deliberating for less than three hours, the jury returned a verdict finding Trump liable on both claims and awarding Carroll a total of $5 million in damages. A.3095-97. The district court subsequently denied Trump's post-trial motions, which did not concern the issues now on appeal. SPA.163-221.

---

[2] *See* No. 20 Civ. 7311 (S.D.N.Y.).

3

In September 2023, the district court granted summary judgment to Carroll in *Carroll I*, based in substantial part on collateral estoppel from the *Carroll II* jury verdict. A.30. *Carroll I* went to trial in January 2024, and a jury unanimously awarded Carroll $83.3 million in total damages on her defamation claim. ASA.107.

## II.    FACTUAL BACKGROUND

At the two-week trial in this case, Carroll (who is now 80 years old) testified for a full day on direct and for nearly two full days on cross-examination. Carroll then called eight fact witnesses and two expert witnesses to support her case. Trump, for his part, chose not to call any witnesses, not to appear at the trial, and not to testify in his own defense. However, the jury heard excerpts of recorded testimony from Trump's deposition, including his videotaped denial of the sexual assault.

### A.    Carroll's Case

Carroll's case was built principally on her own testimony and that of two "outcry" witnesses: Lisa Birnbach and Carol Martin.

In 1996, Carroll had a daily advice television talk show called "Ask E. Jean." At trial, Carroll testified that one evening that spring, after filming her show, she encountered Trump at the 58th Street entrance of Bergdorf Goodman. A.1589, 1746. Trump recognized Carroll as the "advice lady": they had met once before, and Carroll's then0boss was Trump's friend Roger Ailes. A.1573-76, 1589-90, 2903. At Bergdorf's, Trump asked Carroll to help him pick a gift for a woman—and Carroll

obliged, thinking it would make for a great story about a "funny New York scene." A.1590. As she explained at trial, "I'm a born advice columnist. I love to give advice, and here was Donald Trump asking me for advice about buying a present." *Id.*

Trump eventually suggested they go to the lingerie department on the sixth floor, which was noticeably empty. A.1591-92. Once there, Trump picked up a piece of lingerie and suggested that Carroll try it on. A.1595. She responded, "You put it on. It's your color." *Id.* After some back-and-forth—which she thought was funny— he took her arm and maneuvered her toward an open dressing room. A.1595-96.

Inside the dressing room, Trump "immediately shut the door and shoved [Carroll] up against the wall," banging her head. A.1596. Carroll pushed him back, but Trump "thrust [her] back against the wall again, banging [her] head again." A.1597. Then, Trump pinned Carroll against the wall with his shoulder—"his whole weight came against [her] chest and held [her] up there." A.1597-98. He pushed his mouth against hers. A.1598. All the while, Carroll was fighting, but couldn't overpower Trump: "I was almost too frightened to think if I was afraid or not … My whole reason for being alive in that moment was to get out of that room." A.1599.

Trump then "pulled down [Carroll's] tights." A.1599. Carroll testified: "His fingers went into my vagina, which was extremely painful, extremely painful. It was a horrible feeling because he curved, he put his hand inside of me and curved his finger. As I'm sitting here today, I can still feel it." A.1599-1600. Carroll stated that

Trump then "inserted his penis," though she added, "he was against me, his whole shoulder—I couldn't see anything." A.1600. Finally, Carroll managed to get her knee up. A.1601. She pushed him back and rushed out of the store. *Id.*

Out on the street, in a state of shock, Carroll called Birnbach and described what had happened. A.1603-05. Birnbach urged Carroll to "go to the police," but Carroll responded, "No way." A.1605. As she explained: "I had done—I thought it was—I was ashamed. I thought it was my fault … It was high comedy. It was funny. And then to have it turn into …" A.1606. Several days later, Carroll told her friend Martin about the assault while sitting in Martin's kitchen. Martin said, "do not go to the police" or tell anyone because Trump would "bury you." A. 1609. Carroll heeded Martin's advice for the next twenty-five years. A.1610, A.1669. She explained her thinking to the jury: "Roger Ailes would have fired me … I would have lost my job at *Elle*. I was frightened of Donald Trump. I thought he would retaliate. I was ashamed. I thought it was my fault … I knew how others would react. Women who are raped are looked at as soiled goods. They are looked at as less." A.1610-11.

After detailing the assault, Carroll walked the jury through her life since that point. She discussed her career, the ways in which Trump's assault continued to affect her, her experience seeing Trump get elected President, her decision to come forward about the assault (and to do so in a book), and how Trump's response to that revelation shattered her life and reputation. A.1635-58, 1662-72, 1681-93. Trump's

counsel then spent nearly two full days cross-examining Carroll. Through these questions, he sought to disprove her claims, to establish that she had not behaved the way a rape victim is supposed to act, and to show that she had conspired with Martin and Birnbach to falsify an accusation for financial and political gain. A.1720-2002.

Birnbach and Martin both testified. Birnbach testified about the phone call she received from Carroll one night while feeding her kids dinner. A.2047. Birnbach then explained her own decision to publicly corroborate Carroll's account when it was published in June 2019.A.2058-64. Trump's cross-examination of Birnbach focused on her politics and her decision not to speak up sooner. A.2075-91.

Martin, for her part, testified that Carroll approached her one day at work and asked if they could talk. Martin could see that Carroll was upset, so the two arranged a private conversation at Martin's home. A.2386-88. There, Carroll told her about what Trump had done. A.2388-92. Martin told the jury that she was "completely floored" by Carroll's account—and confirmed that she had advised Carroll not to report the assault to anyone out of fear that Trump would use his power to "bury" Carroll. A.2388-94. Martin faced extensive cross-examination about her politics, as well as about texts where she vented about receiving unwanted attention from "a simple chat with a friend 25 years ago." A.2424-64. Defense counsel sought to use these texts to prove a supposed conspiracy between Carroll, Birnbach, and Martin.

Two former Bergdorf employees confirmed key details of Carroll's account. Former store manager Cheryl Beall explained that Carroll's account was consistent with the store's layout, A.1539-43, 2880-81; confirmed that employees often left dressing room doors open, A.1545; stated that it was not uncommon for the lingerie department to be unattended in the evenings, A.1543-45; and testified that it was store policy to leave high-profile individuals alone while they shopped, A.1547-48. Robert Salerno, the former Vice President of Administration, echoed some of these points and confirmed that he had personally seen Trump shopping at Bergdorf's before, undermining Trump's claim that he never went there. A.2150-61.

Because the defense described Carroll's account as false—and her silence for twenty-five years as implausible—Carroll called her sister, Cande, who testified that she and Carroll had been raised (as women of a certain time and place) to always put on a smile and to never, never speak of negative things, especially sexual assault. A.2332-35. Carroll also called Robbie Myers, her former boss at *Elle*, who testified to Carroll's integrity as a journalist and popularity as an advice columnist. A.2527-2531. Myers explained how Carroll's readers saw her as a "truth-teller." A.2530.

Beyond all this evidence, Carroll presented testimony from Jessica Leeds and Natasha Stoynoff—both of whom Trump had sexually assaulted in a strikingly similar fashion. Leeds testified that Trump assaulted her on a flight to New York in 1978 or 1979. A.2101-02. Stoynoff testified that Trump assaulted her in 2005 at

Mar-a-Lago when she was on an assignment to interview him and his wife. A.2348-52. When Leeds and Stoynoff testified, the jury saw videos in which Trump denied their claims, accused them of fabrication, and disparaged their appearance—again, in ways remarkably similar to what he had said about Carroll. A.2888-90. The jury also saw the "Access Hollywood tape," in which Trump was caught stating: "You know I'm automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star they let you do it. You can do anything, … grab them by the pussy. You can do anything." A.2883.

In addition, Carroll played designated portions of Trump's deposition. There, Trump doubled down on his defamatory statements about Carroll—and repeatedly attacked her as a "[whack] job" and "sick." A.2905-85. He admitted that he had never read Carroll's article or book describing the assault, A.2926-27, and that neither he nor his staff had taken any efforts to check the accuracy of his claims about her, A.2937-38, 2943-46. When pressed on his assertion that Carroll was too unattractive for him to have assaulted her, Trump stated: "Physically she's not my type. … And that's 100 percent true." A.2948, 2963. However, when shown a photograph depicting him and Carroll from a party in the late 1980s, Trump *twice* misidentified Carroll as his ex-wife, Marla Maples. A.2939-42. Later in the deposition, Trump confirmed that he made the statements in the Access Hollywood tape. When asked if it was "[t]rue with stars that they can grab women by the

pussy?", he responded, "Well, that's what – if you look over the last million years, I guess that's been largely true. Not always, but largely true. Unfortunately or fortunately." A.2973. Trump then agreed that he considers himself to be a star. *Id.*

Finally, Carroll presented two expert witnesses. Leslie Lebowitz, a clinical psychologist, testified that Carroll suffered from conditions consistent with her account of being sexually assaulted. Lebowitz explained the "three dominant ways that [she] felt that [Carroll] had been harmed": (1) "painful, intrusive memories"; (2) "diminishment in how she thought and felt about herself"; and, (3) "very notable avoidance symptoms which have curtailed her romantic and intimate life." A.2189-90. On cross, defense counsel asked Dr. Lebowitz if she believed Carroll was fabricating the assault and associated symptoms; Dr. Lebowitz answered that she did not. A.2256-57. Carroll's other expert, Professor Ashlee Humphreys, testified about the harm to Carroll's reputation from Trump's October 2022 statement. A.2475-502.

## B. Trump's Case

Trump elected not to attend any part of the trial. The district court gave him until the Sunday night before closing arguments to change his mind about testifying; he did not. A.2546-57. Trump did not put on a single witness as part of his defense.

## C.    Closing Arguments

The parties presented directly opposed theories of the case. In summation, Carroll maintained that her account of the sexual assault was credible; that it was confirmed by Birnbach and Martin; that it matched testimony from Beall and Salerno about the store; that it was consistent with Carroll's upbringing and outlook as described by Cande; that it was supported by expert testimony from Lebowitz; and that it reflected a pattern evidenced by Trump's assaults on Leeds and Stoynoff. A.2582-626. Carroll added that Trump's deposition testimony, his failure to testify at trial, and his comments on the Access Hollywood video further indicated that he was lying when he denied sexually assaulting Carroll. A.2585-88, 2632.

Trump, in contrast, maintained that Carroll had fabricated the whole thing. He argued that Carroll's testimony about the sexual assault, and her decision not to come forward sooner, proved she was lying. A.2644-50. More fundamentally, he accused Carroll—and Birnbach and Martin—of having nefarious motives to fabricate an accusation of sexual assault: "She has abused this system by bringing a false claim for, amongst other things, money, status, political reasons." A.2644. Building on this theme, Trump accused Carroll of lying to sell books, to acquire status and media exposure, and (most important) to damage Trump politically. A.2644-702.

In rebuttal, Carroll's counsel emphasized the powerful and credible evidence supporting Carroll's allegation—as well as the lack of evidence supporting Trump's

claim of a conspiracy theory, and the absurdity of his argument that Carroll must be disbelieved because she did not act like a "perfect rape victim." A.2739-58, 2767.

## D. The Jury Verdict

After deliberating for less than three hours, the jury returned a verdict "almost entirely in favor of Carroll." SPA.165. On the battery claim, the district court had provided the jury with a special verdict form to clarify the basis (if any) on which the jury found Carroll's claim to have been revived under the Adult Survivors Act (which required evidence of one or more sex crimes under New York law). The jury found Trump liable for battery on a theory of sexual abuse. A.3095. As the district court explained, the jury found that Trump had "deliberately and forcibly penetrated Ms. Carroll's vagina with his fingers." SPA.167. On the battery claim, the jury awarded Carroll $2.02 million in compensatory and punitive damages. A.3095.

The jury also found for Carroll on her defamation claim and it awarded $2.98 million in compensatory and punitive damages. A.3095.

## STANDARD OF REVIEW

A district court's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Spoor*, 904 F.3d 141, 153 (2d Cir. 2018). "An evidentiary error is grounds for reversal only if it affects a substantial right—that is, the error had a substantial and injurious effect or influence on the jury's verdict." *Id.*

# SUMMARY OF ARGUMENT

**I.** The district court did not abuse its discretion in admitting testimony from Leeds and Stoynoff as "other acts" evidence. Federal Rule of Evidence 415 provides that, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault …, the court may admit evidence that the party committed any other sexual assault." This case is "based on" a sexual assault because Carroll had to prove that Trump assaulted her in order to succeed on her claims. And a reasonable jury could find that the Leeds and Stoynoff testimony met the relevant definition of "sexual assault." *See* Rule 413(d). In any event, this evidence would have been admissible under Rule 404(b). Although Trump claims that Rule 403 required exclusion of the Leeds and Stoynoff testimony, the district court carefully weighed the relevant factors and found otherwise. That decision (which Trump ignores on appeal) was correct—and assuredly was not arbitrary or irrational. Trump's remaining attacks on the admission of this evidence are largely waived and, in all events, meritless.

Trump also contends that the district court abused its discretion in admitting the Access Hollywood tape. He is mistaken. That tape falls squarely under Rule 415 and, independently, was admissible under Rule 404(b)(2) as evidence of his *modus operandi*. Trump briefly raises a Rule 403 objection to admission of this evidence, but that argument was not raised below, is hardly developed here, and is baseless.

**II.** Trump separately contends that the district court abused its discretion in rulings on five topics: (1) litigation funding; (2) a transcript of Carroll interviewing Stoynoff; (3) DNA; (4) a question about Carroll's decision not to file a police report; and (5) a question about Carroll not seeking security footage from Bergdorf. Each of these contentions mischaracterizes the record and fails when tested against a more accurate account of the facts. Many of these arguments are further afflicted by legal error, a failure to address the district court's reasoning, or straightforward waiver.

**III.** Finally, and fundamentally, Trump fails to demonstrate that any alleged evidentiary error (or combination of alleged errors) "was so clearly prejudicial to the outcome of the trial" as to render the verdict "a seriously erroneous result" or a "miscarriage of justice." *United States v. Bell*, 584 F.3d 478, 486 (2d Cir. 2009). In attempting to meet that demanding standard, Trump presents a series of contentions that fail on their own terms. Moreover, he utterly fails to address the overall strength of Carroll's case—including not only Carroll's extensive testimony, but also testimony from Birnbach and Martin, which required Trump to argue that all three of them had conspired to fabricate this assault allegation (an argument that clearly did not persuade the jury). When viewed in the context of Carroll's case as a whole, the evidence cited by Trump was at most secondary, and Trump offers no reason to believe that decisions on these evidentiary matters affected the ultimate verdict.

# ARGUMENT

Trump raises an astonishing number of arguments for why the district court erred in admitting or excluding certain evidence at trial—and, even then, concedes that none of those alleged errors standing alone caused him substantial prejudice. As discussed below, Trump cannot show any abuse of discretion in the district court's careful evidentiary rulings. And even if he could, Trump would not be entitled to a new trial given the overwhelming evidence supporting the verdict in Carroll's favor.

## I.    THE COURT PROPERLY ADMITTED OTHER ACTS EVIDENCE

In seeking to show a violation of his substantial rights, Trump principally claims that the district court abused its discretion in admitting the testimony of Leeds and Stoynoff. Secondarily, he asserts that the district court erred in admitting the Access Hollywood video. These contentions are both legally and factually meritless.

### A.    The Testimony of Natasha Stoynoff and Jessica Leeds

The district court ruled correctly—and certainly did not abuse its discretion—in admitting testimony from Stoynoff and Leeds under Rule 415. In relevant part, Rule 415(a) provides: "In a civil case involving a claim for relief based on a party's alleged sexual assault … the court may admit evidence that the party committed any other sexual assault …. The evidence may be considered as provided in Rules 413 and 414." Rule 413(a), in turn, states that "the evidence may be considered on any

matter to which it is relevant."[3] Rule 413(d) separately provides a definition of "sexual assault" that applies to evidence offered for admission under Rule 415.

Putting this all together, evidence may be admitted under Rule 415 in a civil case—and considered on any matter to which it is relevant—if three criteria are met: (a) the claim for relief is "based on a party's alleged sexual assault"; (b) a reasonable jury could find that the party's prior conduct meets the definition of "sexual assault" set forth in Rule 413(d); and (c) Rule 403 does not require exclusion of the evidence. *See* SPA.19-20 (applying this standard). Notably, Rule 415 (like Rules 413 and 414) reflects a Congressional judgment to authorize evidence of a party's "pattern or propensity for committing sexual assault." *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017). In passing these rules, Congress "considered knowledge that the defendant has committed [sex crimes] on other occasions to be critical in assessing the relative plausibility of sexual assault claims and accurately deciding cases that would otherwise become unresolvable swearing matches." *Id.* (cleaned up).

Here, the district court properly articulated and applied that legal standard. In asserting otherwise, Trump raises four contentions: (1) Carroll's claim for relief was not "based on" a sexual assault; (2) the testimony from Stoynoff and Leeds was not evidence of any other "sexual assault" by Trump; (3) this evidence should have been

---

[3] *See Doe v. Gooding*, No. 20 Civ. 6569, 2023 WL 3805836, at *1 (S.D.N.Y. June 2, 2023); *Boyce v. Weber*, No. 19 Civ. 3825, 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021).

excluded under Rule 403; and (4) the district court should have limited the testimony and provided a separate instruction. None of these arguments holds water.

### 1.  Carroll's Case Is "Based on" a Sexual Assault

Trump first contends that Carroll's defamation claim was not "based on" a sexual assault, as determined through a "categorical approach" that considers only the "elements and nature" of her claim. Br. 21. This proposed "categorical approach" derives from a civil procedure treatise (which does not itself cite any cases applying a categorical analysis to Rule 415) and a criminal sentencing appeal (which had nothing to do with Rule 415 and instead addressed whether a state offense properly qualified as a predicate for a federal mandatory minimum sentence). Br. 20-21.

Every court to consider the issue has concluded that Rule 415 does not depend upon the abstractions of a categorical analysis. *See, e.g.*, *United States v. Wager*, 651 F. Supp. 3d 594, 600-01 (N.D.N.Y. 2023) (collecting cases); *Boyce v. Weber*, No. 19 Civ. 3825, 2021 WL 2821154, at *9 (S.D.N.Y. July 7, 2021) (same). Instead, as Judge Furman held in *Boyce v. Weber*, Rule 415 requires a court to assess "whether an alleged sexual assault constitutes a factual premise of plaintiff's claim." *Id.* That fact-based approach reflects a broad judicial consensus. *See, e.g.*, *United States v. Brooks*, 723 F. App'x 671, 681 (11th Cir. 2018); *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014); *see also United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010); *United States v. Rodriguez*, 581 F.3d 775, 784, 796 (8th Cir. 2009).

And this view is supported by common sense. *See Foley*, 740 F.3d at 1087 ("The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted.").

Carroll's case illustrates the point. At trial, her defamation and sexual battery claims both turned on whether Trump sexually assaulted her: her battery claim was time-barred unless the jury found that Trump had committed certain sex crimes, *see* A.2775-82; and her defamation claim required her to establish that Trump's October 2022 statement was false, which meant (among other things) she had to "prove that Mr. Trump sexually assaulted her," SPA.23; *see also* A.2790-91. It would make no sense to hold that Rule 415 applied to one of Carroll's claims, but not the other (in which case the jury would still have heard all the evidence to which Trump objects). The plain text and policy of Rule 415 firmly support treating a claim as "based on" sexual assault when a sexual assault must in fact be proven as a premise of the claim.[4]

_____

[4] In all events, Trump fails to address the district court's conclusion that the "nature of the alleged defamation" in this proceeding means that Carroll's defamation claim might well satisfy Trump's proposed categorical approach. SPA.23.

## 2. This Testimony Evidenced "Sexual Assault"

Trump next argues that the testimony offered by Leeds and Stoynoff was not evidence of a "sexual assault" under Rule 415(a). Br. 22-28. He is again mistaken.

The meaning of "sexual assault" for purposes of Rule 415(a) is set forth in Rule 413(d), which defines "sexual assault" as any "crime under federal law or under state law" involving one of five categories of conduct. *See* Rule 413(d)(1)-(5). In considering whether this definition is met, the Court must ask whether, "in light of all the evidence in the case," the jury could reasonably find the defendant committed the alleged sexual assault "by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988); *see United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). Here, the district court correctly concluded that Rules 413 and 415 were satisfied.

### a. Leeds's Testimony Satisfied Rules 413(d)(1) & (d)(5)

Leeds testified that she was sitting next to Trump in the business class section of a plane when he suddenly "decided to kiss me and grope me." A.2101. She added: "[H]e was trying to kiss me, he was trying to pull me towards him. He was grabbing my breasts, he was—it's like he had 40 zillion hands, and it was a tussling match between the two of us. And it was when he started putting his hand up my skirt that that kind of gave me a jolt of strength, and I managed to wiggle out of the seat and I went storming back to my seat in the coach." A.2101-02. Finally, Leeds testified that

she saw Trump years after this incident at a charity event, where Trump said to her: "I remember you. You're that cunt from the airplane." A.2122. The district court did not abuse its discretion in holding a jury could reasonably find this conduct satisfied Rule 413(d) and thus constituted "sexual assault" under Rule 415(a). SPA.27.

The first issue is whether Trump's conduct implicated at least one of the five categories set forth in Rule 413(d)(1)-(5). Here, his conduct implicated two of them, either of which would be sufficient to support the district court's determination.

*First*, Trump's assault on Leeds is covered by Rule 413(d)(5): "An attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4)." The federal attempt standard is met when a person "(1) had the intent to commit the crime, and (2) engaged in conduct amounting to a 'substantial step' towards" its commission. *United States v. Crowley*, 318 F.3d 401, 407 (2d Cir. 2003). And Rule 413(d)(2) covers "contact, without consent, between any part of the defendant's body … and another person's genitals or anus." Here, according to Leeds, Trump grabbed her, kissed her, groped her breasts, and started putting his hand up her skirt. That course of conduct plainly constituted an attempt to contact her genitals without consent.

Although Trump resists this conclusion, the cases he cites do not support him. Br. 25-26. In those cases, a defendant promptly withdrew when consent was denied, *see United States v. Bird*, 372 F.3d 989, 991-92 (8th Cir. 2004), or touched a person two inches above his knee for less a minute, *Rapp v. Fowler*, No. 20 Civ. 9586, 2022

WL 5243030, *2 (S.D.N.Y. Oct. 6, 2022), or pushed a person's head toward his fully clothed penis, *United States v. Hayward*, 359 F.3d 631, 641 (3d Cir. 2004). Here, in stark contrast, Trump kissed Leeds, grabbed her breasts, pulled her toward him, and (in her words) "put his hand *up my skirt*" (emphasis added). This conduct—leading directly toward attempted, nonconsensual vaginal contact *inside Leeds's skirt*—was an attempt to engage in conduct covered by Rule 413(d)(2).

*Second*, alternatively, Trump's conduct is covered by Rule 413(d)(1), which reaches "conduct prohibited by 18 U.S.C. chapter 109A." Chapter 109A enumerates "Sexual Abuse" offenses, including a prohibition on abusive sexual contact. *See* 18 U.S.C. § 2244(b). "Sexual contact," in turn, is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). Here, Leeds testified that Trump grabbed her breasts and put his hand up her skirt. A.2101-02. That conduct plainly violated chapter 109A. *See, e.g.*, *United States v. Cohen*, No. 07 Cr. 5561, 2008 WL 5120669, at *1 (2d Cir. Dec. 8, 2008) (touching victim's thigh and groin during domestic flight); *see also United States v. Erramilli*, 788 F.3d 723, 726 (7th Cir. 2015) ("[S]lid[ing] … hand up [woman's] shorts and squeez[ing] her inner thigh"); *United States v. Pascal*, 610 F. App'x 791, 794 (10th Cir. 2015) (touching "bottom of [a woman's] back to the top of [her] buttocks").

Trump objects that Leeds did not specify in her testimony where exactly his mid-flight assault occurred. Br. 22-24. Chapter 109A outlaws conduct—including sexual abuse, *see* 18 U.S.C. § 2244(b)—only if that conduct occurs in "the special maritime and territorial jurisdiction of the United States" (a term defined in 18 U.S.C. § 7). But Rule 413(d) asks only whether the party previously committed a crime involving "conduct" prohibited by chapter 109A, not whether that conduct also met the federal jurisdictional hook. Thus, the Eighth Circuit held that Rule 413(d) was satisfied in a case involving § 2423(b), a provision that criminalizes traveling in interstate commerce with the intent to engage in conduct that would have violated chapter 109A if it had "occurred in the special maritime and territorial jurisdiction of the United States," § 2423(g)(1). Because "Rule 413 does not require that the defendant be charged with a chapter 109A offense, only that the instant offense involve conduct proscribed by chapter 109A," the Eighth Circuit held that the charge satisfied Rule 413(d). *United States v. Blazek*, 431 F.3d 1104, 1109 (8th Cir. 2005). Similarly, other courts have held that Rule 413(d)(1) could be satisfied by a *state* criminal conviction where the underlying sexual assault "clearly fit the conduct" covered by chapter 109A, even though that conduct did not take place in one of the locations listed in 18 U.S.C. § 7. *See, e.g.*, *Batton*, 602 F.3d at 1196-97; *United States v. LeMay*, 260 F.3d 1018, 1022-24, 1031 (9th Cir. 2001).

Because Trump's assault involved conduct covered by Rule 413(d)(1)-(5), it is a "sexual assault" for purposes of Rule 415(a)—and thus properly admissible under that rule—so long as it was also a crime under state or federal law. *See* Rule 413(d). The district court correctly found that it was. SPA.27 n.12. Trump assaulted Leeds on a domestic flight. A.2098. Under 49 U.S.C § 46506(1), it is a crime to commit an act "on an aircraft in the special aircraft jurisdiction of the United States" where that act, "if committed in the special maritime and territorial jurisdiction of the United States … would violate … chapter 109A of title 18." *See* 49 U.S.C. § 46501(2) (defining "special aircraft jurisdiction of the United States"). Here, that provision covers Trump's violation of 18 U.S.C. § 2244(b) (abusive sexual contact), as well as his attempt to engage in such conduct, *see Crowley*, 318 F.3d at 406.

Trump seeks to escape that result by arguing that his conduct was not a "sexual act" as defined by 18 U.S.C. § 2246(2). *See* Br. 25 (discussing the offenses set forth at 18 U.S.C. §§ 2241(a)(1) and 2244(a)(1)). But Trump fails to recognize that his conduct qualifies as an *attempt* to engage in a "sexual act," for the same reasons it is covered by Rule 413(d). *See supra* at 20-21. In all events, conduct need not raise to the level of a "sexual act" under § 2246(2) to be conduct that chapter 109A prohibits: § 2244(b) covers "sexual contact" and, as discussed, Trump's conduct toward Leeds meets that definition, § 2246(3). *See supra* at 21. This sexual contact prohibition applies to conduct committed on domestic flights. *See* 49 U.S.C § 46506(1). And

people have been convicted under § 2244(b) for conduct like that alleged by Leeds. *See Cohen*, 2008 WL 5120669, at *1-2; *Erramilli*, 788 F.3d at 726, 731.

### b. Stoynoff's Testimony Satisfied Rule 413(d)(5)

Stoynoff testified that Trump attacked her in 2005 while she was in Florida conducting an interview with Trump and his wife, Melania. During a break, Trump asked if Stoynoff would like to see a "painting in this really great room." A.2349. Trump then led her to a different part of the residence. Stoynoff testified as to what happened next: "We walked into a room, and I'm looking in this room, and I went in first and … I hear the door shut behind me. And by the time I turn around, he has his hands on my shoulders and he pushes me against the wall and starts kissing me, holding me against the wall." A.2350. Stoynoff shoved Trump away, but then Trump "came toward [her] again." A.2351. This unwanted interaction lasted a few more minutes before a butler came into the room and interrupted the struggle, allowing Stoynoff to leave. A.2351. Later, Trump referred to having "an affair" with Stoynoff and suggested she would experience the "best sex she ever had." A.2352.

The district court concluded that Trump's actions would have qualified as criminal assault and sexual battery—and as attempts toward such offenses—under Florida law (where the interview occurred). SPA.30-31. Trump does not dispute this.

Trump instead focuses on the second requirement under Rule 413(d): namely, that his conduct involve one of the five enumerated categories of conduct. He claims

that his conduct did not involve an attempt (under Rule 413(d)(5)) to bring any part

of his body into contact with Stoynoff's genitals or anus (under Rule 413(d)(2)).[5]

Trump is mistaken. As the district court rightly found, a reasonable jury could

conclude that Trump intended—and took substantial steps toward—that outcome.

SPA.32-33. Trump isolated Stoynoff in an unoccupied room and shut the door,

"actions indicative of a desire for privacy." *Id.* Without her consent, he then

immediately "began kissing Ms. Stoynoff and pressed on as she resisted his

advances." *Id.* "These actions are suggestive of a plan, formed before Mr. Trump

invited Ms. Stoynoff to the unoccupied room and closed the door behind her, to take

advantage of that privacy and to do so without regard to Ms. Stoynoff's wishes."

SPA.32-33. The inference that this plan included making contact with her "most

private parts" is only bolstered his subsequent comments that they would have an

"affair" and "the best sex." A.2352. Indeed, Trump ceased assaulting Stoynoff only

because a butler unexpectedly interrupted him shortly after he began. See A.2356

(Stoynoff testifying that, before the butler came into the room, Trump had not done

anything to suggest that he was going to stop on his own). Given all this evidence,

as well as other evidence in the record—including Leeds's testimony—the district

---

[5] Trump also claims that the district court improperly invited Carroll to lay a "better
foundation at trial." Br. 27. The district court did no such thing; instead, it simply
described the governing standard and noted that the burden was on Trump to show
that "the evidence is clearly inadmissible on all potential grounds." SPA.32 n.25.

court did not err in holding that the jury could reasonably decide (in its own sound discretion) that "there was a sexual assault on her, actual or attempted." A.2373.[6]

### 3. Alternatively, The Leeds and Stoynoff Testimony Was Properly Admissible Under Rule 404(b)

Independent of Rule 415, the Leeds and Stoynoff testimony was admissible under Rule 404(b), which provides that other wrongs or acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." This Court takes an "inclusionary" approach to other-acts evidence under Rule 404(b) and allows such evidence to be admitted for any purpose other than to demonstrate propensity, so long as the evidence is relevant and satisfies Rule 403. *United States v. Scott*, 677 F.3d 72, 77 (2d Cir. 2012).

Here, Leeds and Stoynoff testified for a proper purpose: to demonstrate *modus operandi*. *See United States v. Carlton*, 534 F.3d 97, 101-02 (2d Cir. 2008); *accord United States v. Moye*, 793 F. App'x 19, 21 (2d Cir. 2019). As their testimony shows, Trump engaged in a pattern of abruptly lunging at a woman in a semi-public place, pressing his body against her, kissing her, and sexually touching her without consent, and later categorically denying the allegations and declaring that the accuser was too

---

[6] Trump asserts that the district court improperly considered the Access Hollywood tape in this analysis Br. 26-27. According to him, the Access Hollywood tape was admitted under Rule 404(b), not Rule 415, preventing a propensity inference. *Id.* at 27. But Trump is mistaken concerning the basis for admission of the tape. *See infra* at 35-37. Regardless, as demonstrated, Stoynoff's testimony was proper under Rules 413 and 415 independent of any inference based on the Access Hollywood tape.

unattractive for him to have assaulted her. Together, the accounts of Carroll, Leeds, and Stoynoff contain "sufficiently idiosyncratic" characteristics "to permit a fair inference of a pattern's existence." *Carlton*, 534 F.3d at 102; *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984); *see United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) (explaining the need for "substantial relevancy," not "synonymity").

Moreover, Leeds and Stoynoff testified about a material issue in dispute. Trump's *modus operandi* makes it more likely that he sexually assaulted Carroll and then lied when he denied having done so. Courts regularly admit analogous evidence in this context. *E.g.*, *Gooding*, 2023 WL 3805836, at *2 ("The prior acts are sufficiently similar to Plaintiff's allegations because all involve sudden sexual assaults or attempted sexual assaults connected with the Defendant and victims' presence in social settings prominently featuring drinking like festivals, bars, nightclubs, and restaurants."); *Boyce*, 2021 WL 2821154, at *5; *accord Roe v. Howard*, 917 F.3d 229, 246 (4th Cir. 2019) (admitting testimony that defendant was an "intimidating boss with a particular *modus operandi* in making sexual overtures to female subordinates").

### 4. The District Court Did Not Abuse its Discretion in Declining to Exclude This Testimony Under Rule 403

The district court correctly determined that Rule 403 did not require excluding this evidence; this decision was not "arbitrary" or "irrational." *United States v. Spoor*, 904 F.3d 141, 153 (2d Cir. 2018). The "practical effect of Rule 413 is to

create a presumption that evidence of prior sexual assaults is relevant and probative in a prosecution for sexual assault." *Schaffer*, 851 F.3d at 180. Still, courts must assess: "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." *Spoor*, 904 F.3d at 154 (cleaned up).

Here, the district court carefully considered each of those factors in its Rule 403 analysis. SPA.33-36. It found Trump had "not demonstrated persuasive reason to believe that there is any risk of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence,' let alone any risks that would substantially outweigh the probative value of the evidence." SPA.36. On appeal, Trump largely ignores that reasoning. Br. 35-38. He also fails to address several of the factors articulated in *Spoor*. *See* 904 F.3d at 153. And the scattershot arguments he makes do not show arbitrary district court action.

*First*, Trump contends that this evidence lacks probative value because it was "tenuous" and testimonial. Br. 35-36. As explained above, however, this testimony satisfied the requirements of Rule 415(a). *See Schaffer*, 851 F.3d at 180 (noting that

Congress believed evidence satisfying Rule 415 would generally be probative). And it was for the jury—not the district court—to assess the reliability of the witnesses.[7]

As the district court recognized, moreover, evidence of Trump's propensity to engage in sexual assault—and to do so in markedly similar ways across time—would have probative value if believed by the jury. SPA.35. That was particularly true here given the nature of the case and given that Trump's "alleged acts are far more similar than different in the important respects." *Id.*; *see United States v. Stroming*, 838 F. App'x 624, 626 (2d Cir. 2021) (holding prior assaults can be admitted under *Spoor* even if not "nearly identical"). Of course, this "similarity of the prior acts to the acts charged" supports admission under Rule 403. *Spoor*, 904 F.3d at 154. So does the fact that the conduct described by Leeds and Stoynoff "was not more inflammatory than the conduct for which [Trump] was being tried." *Shaffer*, 851 F.3d at 183.

*Second*, Trump asserts his sexual assaults against Leeds and Stoynoff were too remote in time from his assault against Carroll. Br. 36-37. The district court acknowledged this argument, referring to it as the "best" reason for excluding this evidence. SPA.36. But the district court ultimately disagreed that this point tipped the scale in Trump's favor. In so doing, it noted that "unlike other provisions of the Rules of Evidence," Rule 415 "contains no temporal limits on the admissibility of

---

[7] The cases that Trump cites do not support his sweeping assertion that first-person testimony of a sexual assault is of minimal probative value. *See* Br. 36.

evidence of other sexual assaults," and "[t]he legislative history makes clear that this was no accident." *Id.* Consistent with that understanding, courts regularly admit testimony about events of a similar age as those here. *See United States v. O'Connor*, 650 F.3d 839, 853-54 (2d Cir. 2011) (30 years); *United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (19 years); *Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (20 years); *United States v. Vonneida*, 601 F. App'x 38, 41 (2d Cir. 2015) (24 years).[8]

*Third*, whereas Trump "effectively concede[d]" this point below, SPA.35, A.77, on appeal he now insists that the 2020 presidential election is an "intervening circumstance[]" that cut against allowing testimony from Leeds and Stoynoff. Br. 37-38. Trump is incorrect. An "intervening circumstances" analysis looks to events *between the assaults* that may disfavor admission of a prior sexual assault; it does not concern events *after all the assaults* that may explain why victims chose to come forward to reveal a defendant's prior sexual misconduct. *Cf. Stroming*, 838 F. App'x at 626. Moreover, Leeds and Stoynoff both testified about their decision to speak publicly after Trump announced his candidacy, allowing the jury to weigh that timing in assessing their credibility. *See United States v. Benally*, 500 F.3d 1085,

---

[8] Trump's closeness-in-time argument also effectively criticizes Carroll for not filling in the temporal gaps between Carroll, Stoynoff, and Leeds with accounts from some of the many other women who have publicly accused Trump of sexual misconduct. A.158-60. Had Carroll called those women, of course, Trump would have instead raised an objection that such testimony was unduly cumulative.

1093 (10th Cir. 2007) (intervening circumstance did not require exclusion when jury could consider the circumstance in assessing the weight of the evidence).

At bottom, the district court engaged in a thorough weighing of the evidence and concluded that Rule 403 did not require the exclusion of Leeds's and Stoynoff's testimony. That decision was correct as a matter of first principles and most certainly constituted a permissible exercise of discretion. *See United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023) ("We accord great deference to a district court in ruling as to the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence."); *United States v. LaFlam*, 369 F.3d 153, 155-56 (2d Cir. 2004) ("[A]ppellate courts reviewing a district court's evaluation of evidence under Federal Rule of Evidence 403 "generally maximize its probative value and minimize its prejudicial effect." (cleaned up)). Moreover, the court further mitigated any potential prejudice by instructing the jurors that they could consider the Leeds and Stoynoff testimony only if they first found that the alleged sexual assaults had occurred and, even then, could not base liability on that testimony alone. A.2803-04; *see Shaffer*, 851 F.3d at 175 (approving similar instruction as reducing potential for undue prejudice); *United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (limiting instruction can mitigate undue prejudice).

### 5. Trump's Remaining Arguments Are Meritless

Trump raises a few other arguments concerning the testimony of Leeds and Stoynoff. Most of these arguments were waived; all of them are meritless.

***Necessity of a separate instruction.*** Trump offhandedly suggests that the jury should have been instructed to consider the Rule 415 evidence only for Carroll's battery claim and not her defamation claim. Br. 34. Because Trump never raised this issue below, plain error review applies. Under that standard, an appellate court may correct an error not raised at trial only if there is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (cleaned up); *accord United States v. Thomas*, 274 F.3d 655, 667 (2d Cir. 2001) (en banc). Where all three conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467. Here, there was no error at all: evidence admitted under Rule 415 may be considered on any matter to which it is relevant. *See supra* at 15-16. Regardless, Trump does not even attempt to demonstrate plain error in the jury instruction here.

***Campaign videos.*** Trump next argues that the district court erred—during testimony by Leeds and Stoynoff—by admitting two videos where Trump denies their accounts. Br. 32-33. The district court initially denied Trump's motion *in limine* to exclude the videos and reserved the issue. SPA.37-38. It was therefore Trump's

burden to renew his specific objections at trial; otherwise, they were deemed waived. *See ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 323-24 (2d Cir. 2022). Under that standard, most (if not all) of Trump's arguments on appeal are waived. A.2114-16.

Regardless, the district court did not abuse its discretion in admitting the videos as evidence of Trump's *modus operandi* under Rule 404(b)(2). *Carlton*, 534 F.3d at 101-02. Together, the videos show that when a woman accuses Trump of sexual assault, he unconditionally denies the allegations, insists that the woman fabricated her entire story, and publicly states that she was too ugly for him to have sexually assaulted her. A.2888, 2890. This is a specific, idiosyncratic pattern—and it is the exact same approach he took when he responded to Carroll's accusations. A.2853. On appeal, Trump claims that his statements were too generic to constitute a modus operandi. Br. 33. He is mistaken. In any event, he did not raise this objection at trial, A.2114-16. The argument is therefore waived, *ABKCO Music*, 50 F.4th at 324, and even if it were considered by the Court, Trump cannot show plain error.[9]

---

[9] Nor could Trump show that 403 required the exclusion of this evidence. Br. 39. His *modus operandi* in denying accusations of sexual assault and then publicly insulting his accusers' appearance was highly probative of a fact in dispute. *See United States v. Vickers*, 708 F. App'x 732, 736 (2d Cir. 2017). Trump contends that his responses in these three circumstances were generic for anyone "facing such false claims … in the midst of a national campaign." Br. 33. But Trump offers no support for that startling claim. Nor does Trump show that the probative value of this evidence is significantly outweighed by any of the Rule 403 considerations.

***Additional testimony.*** Finally, Trump asserts that the district court erred in permitting testimony that—in his telling—went beyond the prior sexual assaults. Br. 31-34. This testimony concerned the credibility of Leeds and Stoynoff, as well as the circumstances and reasons that led them to reveal what Trump had done to them.

As an initial matter, Trump did not raise these objections below. *See* A.2104-10, 2118-22, 2352-59, 2362-68. In many instances, moreover, that decision was strategic. For example, Trump now contests Leeds's testimony regarding Trump's answer to 2016 presidential debate question, A.2109, her decision to reveal his assault around the same time, A.2104, and his comment that she was "that cunt from the airplane," A.2122. *See* Br. 31-34. But Trump himself solicited testimony related to all these topics on cross-examination, and did so while trying to undermine Leeds's credibility. A.2124-26, A.2139. Trump also complains that Leeds and Stoynoff were permitted to discuss their reactions to comments that Trump made about them at campaign rallies. Br. 32. But Trump strategically relied on some of that very same testimony about Trump's comments in seeking to argue that the videos of Trump's denials need not be played for the jury. *See* A.2111, 2115-16. Because Trump waived these arguments—and did so strategically—he is not now entitled to appellate review. *See, e.g.*, *United States v. Spruill*, 808 F.3d 585, 596-97 (2d Cir. 2015); *United States v. Shan*, 361 F. App'x 182, 184 (2d Cir. 2010).

For his remaining unpreserved contentions, Trump must still overcome plain error review. *Spruill*, 808 F.3d at 596. He cannot do so. A witness testifying to a prior sexual assault is not prohibited from addressing attacks on her credibility—or from being questioned on that point by the party that called her. *See* Rule 607. Thus, Carroll was free to impeach Leeds and Stoynoff on issues related to their credibility as witnesses and their accusations in general, including issues related to any potential bias. *See United States v. Figueroa*, 548 F.3d 222, 229 (2d Cir. 2008). Indeed, if Leeds and Stoynoff were barred from such testimony, Trump would have protested: attacking their credibility and motives was his main defense. A.2651-53.

### B.     The Access Hollywood Tape

Trump also disputes the admission of the Access Hollywood tape. Br. 28-31, 38-39. That tape captured Trump boasting about forcing himself on women without consent: "I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything, grab them by the pussy. You can do anything." A.2883. In the deposition designations played at trial, Trump was pressed on his claim that "you can do anything, grab them by the pussy." A.2973. He responded that "if you look over the last million years, I guess that's been largely true. Not always, but largely true. Unfortunately or fortunately." *Id.* Trump then confirmed that the considers himself to be a star. *Id.*

### 1. The Tape Was Properly Admitted Under Rule 415

The district court did not abuse its discretion when it admitted the Access Hollywood tape under Rule 415. This case is "based on" a sexual assault for purposes of Rule 415(a). *Supra* at 17-18. Turning to the definition of "sexual assault" in Rule 413(d), the conduct that Trump describes is a crime in every state.[10] And a reasonable jury—one that simply took Trump at his word—could find that the tape evidenced the conduct (or attempted conduct) of contacting, without consent, "part of [Trump's] body" and "another person's genitals." Rule 413(d)(2) & (5); SPA.25

This conclusion flows directly from the video's content. In it, "Trump stat[es] that he 'moved on' a woman named Nancy 'like a bitch,' that he 'tried to fuck her.'" SPA.24. As summarized by the district court, Trump also says "that he just starts kissing beautiful women, he does not first obtain consent, that the women just let one do it when one is a 'star,' and that a 'star' can 'grab' beautiful women by their genitals or do anything the 'star' wants." *Id.* This satisfies Rule 413(d). *See United States v. O'Connor*, 650 F.3d 839, 853 (2d Cir. 2011) (admission in autobiography); *United States v. Woods*, 684 F.3d 1045, 1065 (11th Cir. 2012) (recorded admission).

Trump denies that a jury could reasonably infer from the Access Hollywood tape that he had committed sexual assault. Br. 28-29. This argument hinges partly

---

[10] All states criminalize touching or attempting to touch a person's genitals without their consent. *See, e.g.*, N.Y. Penal Law § 70.02(1)(c); Cal. Penal Code § 242.

on a cherry-picked account of the video. More fundamentally, it depends on his characterization of the tape as "abstraction speculation" about the "things that one 'can do.'" *Id.* at 29. But that is just a lawyerly way of dismissing the tape as "locker-room talk." And it is squarely at odds with the nature of Trump's statements on the tape—including Trump's claim that he "just start[s] kissing them" and does not "even wait," as well as his insistence that "you can do anything. … [g]rab them by the pussy" (which is not how people usually recount consensual sexual interactions). SPA.21. At minimum, it was a permissible exercise of the district court's discretion to find that a jury might reasonably take Trump's statements seriously.

## 2. The Tape Was Evidence of Trump's *Modus Operandi*

In a post-trial opinion, the district court identified a second, alternative basis on which admission of the tape was proper: namely, Rule 404(b). SPA.180-81 n.20. Trump suggests that the district court thereby disclaimed reliance on Rule 415—a claim at odds with the text of the opinion, as the district court itself later recognized. *Compare* Br. 10, 38 *with* ASA.97 n.50. In all events, Trump does not explain on appeal why Rule 404(b) was not a proper basis for admitting the tape, and has therefore waived any such objection. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). To the extent the Court considers the issue, the district court acted within its sound discretion: on the Access Hollywood tape, Trump confesses to a clear and specific *modus operandi*, which fit

perfectly with Carroll's own allegations at trial (as well as the testimony from Leeds). *See, e.g.*, *United States v. Delva*, No. 12 Cr. 802, 2014 WL 4460360, at *1, *9 (S.D.N.Y. Sept. 10, 2014), *aff'd*, 858 F.3d 135 (2d Cir. 2017); *United States v. Serrano*, No. 13 Cr. 58, 2014 WL 2696569, at *7-8 (S.D.N.Y. June 10, 2014).[11]

### 3. Rule 403 Did Not Require Exclusion of the Tape

Trump briefly argues that the tape should have been excluded under Rule 403. Br. 38-39. Because he did not raise this argument below, plain error review applies. And Trump cannot meet that demanding standard because there was no error: the video had meaningful probative value with respect to his propensity (under Rule 415) and *modus operandi* (under Rule 404(b)), and that probative value was not substantially outweighed by its potential prejudicial effects. *See Schaffer*, 851 F.3d at 182-83. To the extent Trump claims that the tape could not have been considered for propensity, Br. 38, he is mistaken because the tape was admitted under Rule 415.

---

[11] The district court held that the Access Hollywood tape was also admissible because one of the people Trump referred to in the video could have been Carroll and therefore the video might have captured his "confession." SPA.181 n.20. In *United States v. Hunter*, this Court upheld the admission of the defendant's statement where he said he was a "drug guy": "[t]he statement, made in 2002 in response to questioning about his behavior in 2000, was an admission of his drug-related conduct in 2000 … and was not impermissible propensity evidence within the meaning of Rule 404(b)." 273 F. App'x 52, 54 (2d Cir. 2008). The same is true here.

## II. TRUMP'S OTHER EVIDENTIARY ARGUMENTS LACK MERIT

Trump next raises a volley of complaints about the district court's evidentiary rulings. None succeeds. Trump's arguments mischaracterize or exclude key parts of the trial record, disregard the district court's reasoning, reflect a waiver of numerous contentions, and fail to establish any legal error (let alone an abuse of discretion).

### A. Litigation Funding

Trump first claims that he was improperly precluded from cross-examining Carroll about a "lie[] at her deposition regarding who was paying for her case." Br. 43. Although Trump notes that the district court did permit targeted discovery into litigation funding, Br. 41, he ignores most of the facts that discovery revealed. Those facts undercut his position and support the district court's ruling. *See* A.1659.

In September 2020—fourteen months after Carroll revealed that Trump had sexually assaulted her, and ten months after she first sued him for defaming her—Carroll's counsel secured funding from a nonprofit to offset certain costs. A.1214; ███████████████████████████ Carroll was not involved in securing funding, has never met anyone associated with the funder, and was never party to any communications with the funder. A.1214; ██████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

█████ Because the case was structured as a contingency, Carroll never received an invoice either before or after her counsel obtained this outside support. A.1188.

Two years later, at Carroll's deposition, this exchange occurred:

> Q. Are you presently paying your counsel's fees?
>
> A. This is a contingency case.
>
> Q. So you're not paying expenses or anything out of pocket to date; is that correct?
>
> A. I'm not sure about expenses. I have to look that up.
>
> Q. Is anyone else paying your legal fees, Ms. Carroll?
>
> A. No.

A.1188.

███████████████████████████████████████

███████████████████████████████████████

█████ Out of an abundance of caution, Carroll's counsel disclosed Carroll's refreshed recollection to defense counsel and supplied additional information at their request. A.1191-92, 1194-95, 1214. The district court then ordered supplemental document discovery and an additional deposition, which revealed the facts above. SPA.159. Following full briefing, ████████ the district court granted Carroll's motion to preclude evidence or argument about litigation funding, A.1659.

The district court did not abuse its discretion.

*First*, litigation funding obtained by counsel in September 2020 was irrelevant to assessing Carroll's motives for publicly revealing in June 2019 that Trump had sexually assaulted her. The existence of that funding does not make it more or less probable that Trump sexually assaulted Carroll in the mid-1990s or that Carroll lied in June 2019. SPA.159. District courts regularly exclude evidence of this kind under Rule 401. *E.g.*, *Benitez v. Lopez*, No. 17 Civ. 3827, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019). Trump did not argue otherwise below. ASA.147.

*Second*, Carroll's deposition testimony regarding funding is not relevant to her credibility. Under Rule 608(b), a court "may" allow specific instances of a witness's conduct "to be inquired into" on cross-examination, but only "if they are probative of the [witness's] character for truthfulness or untruthfulness." This rule is "intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." 4 Weinstein's Fed. Evid. § 608.22; *see also United States v. Zhong*, 26 F.4th 536, 554-55 (2d Cir. 2022); *United States v. Abair*, 746 F.3d 260, 265 (7th Cir. 2014). Here, as the district court found, "there [was] virtually nothing there as to credibility." A.1659. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████ she had never met, communicated, or interacted with the funder; and she never received any invoices either before or after funding was obtained.[12]

*Finally*, the district court properly found that Rule 403 required exclusion. A.1659. On appeal, Trump makes no real argument otherwise and has thus waived this contention. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, the probative value of evidence related to funding, if any, was slight—and to the extent Trump hoped it would show Carroll's purported political hostility, it would also be cumulative, as evidenced by the extensive discussion of that point in his summation.[13] *See* A.2690-2732; *see also United States v. Tillem*, 906 F.2d 814, 827-28 (2d Cir. 1990). Accordingly, as the district court found, "the unfair prejudicial effect of going into the subject would very substantially outweigh any probative value whatsoever." A.1659; *see also*

---

[12] Nor was Carroll's testimony in October 2022 proof of "[b]ias," which refers to "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel*, 469 U.S. 45, 51 (1984). Carroll had no relationship with the funder.

[13] This case is decidedly unlike the two cited by Trump. *See* Br. 43. In one, the court permitted cross-examination on an allegedly false statement the plaintiff made under oath that went directly to the truth or falsity of the defamatory statement at issue. *Condit v. Dunne*, 225 F.R.D. 100, 111 (S.D.N.Y. 2004). In the other, the Supreme Court held that bias (arising from membership in a racist, murderous prison gang) could be relevant to credibility. *Abel*, 469 U.S. at 47, 51. As explained above, there is no evidence here of an intentional lack of truthfulness on Carroll's part.

ASA.84-86. To be intelligible, an exploration of litigation funding at trial would have required an airing of the full background given above, including the nature and circumstances of the funding, the identity and activities of the funder, █████ ████████████████████████████████████ and the details of the original and supplemental discovery processes. This convoluted detour would have led the jury far from the merits and confused the issues in dispute. *See United States v. Stewart*, 433 F.3d 273, 313 (2d Cir. 2006). It also would have been an enormous waste of time—███████████████████████████████████████████████████ ███████████████████████████████████████████████████ [14]

## B.  The Stoynoff Transcript

Trump next argues that district court abused its discretion by not admitting portions of a transcript of an interview between Carroll and Stoynoff. Br. 46-47.

---

[14]  Trump separately asserts that the court "foreclosed meaningful cross-examination" regarding an interaction that Carroll had with an attorney named George Conway. Br. 42. But Trump offers no legal argument on this point—and he acknowledged below that Conway has nothing to do with "litigation funding at all." A.1494.

Regardless, Carroll's interaction with Conway was irrelevant to the issues in dispute (she met him a month *after* revealing Trump had assaulted her, A.1705-06); defense counsel was still able to cross-examine Carroll about Conway without objection and to include that point in summation, A.1886-88, 2709-10; and the only limitation relating to Conway arose during opening arguments, when defense counsel began to discuss "plaintiff's choice of counsel," which had been ruled off limits following an unopposed motion *in limine*, SPA.134; *see also* A.1487, 1494, 2638-41, 2724-26.

Carroll interviewed Stoynoff in 2020 for a magazine article, and a transcript of the interview was produced in discovery. A.1701, 1371-1415. Defense counsel wanted to use a heavily redacted version of the transcript at trial, contending that it showed Carroll pushing Stoynoff to overstate Trump's sexual assault. A.1900-02. During an extended sidebar, the district court determined that the exhibit contained hearsay and found the defense's intended use of the exhibit to be confusing. A.1903-08, 1912. The court excluded the transcript exhibit as originally proposed—but ruled that defense counsel could ask Carroll and Stoynoff about the interview and could use the transcript to refresh or impeach as ultimately warranted. A.1904-05, 1914.

This was not an abuse of discretion. *First*, the transcript contained hearsay: namely, Stoynoff's statements. A.1906; *contra* Br. 47 (focusing only on Carroll's statements). "Each hearsay statement within multiple hearsay statements must have a hearsay exception in order to be admissible." *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990). The transcript was thus inadmissible and Trump has waived any argument to the contrary. *Beatty v. United States*, 293 F.3d 627, 632 (2d Cir. 2002).

*Second*, the transcript was properly excluded under Rule 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence … may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). A prior statement is "of marginal use to the jury" where it is "consistent with [] trial testimony." *United States v. Williams*, 756 F. App'x 73, 75-76 (2d Cir. 2019);

*accord Hill v. Quigley*, 784 F. App'x 16, 20 (2d Cir. 2019). Here, Trump got Carroll to confirm the exchanges with Stoynoff he wanted to put before the jury. *Compare* A.1918-21, *with* A.1390-92, 1407; *see also* A.1908-10, 1913. The record was so clear, in fact, that Trump declined to cross-examine Stoynoff on this point. A.2369.

*Finally*, the district court acted within its discretion to "control[] 'the mode and order' of its presentation to promote the effective ascertainment of the truth." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 119 (2d Cir. 2006). The district court spent nearly 30 minutes trying to grasp how defense counsel intended to use the proposed transcript exhibit. A.1912; *see also* A.1907, 1914. Under Rule 611(a), it was proper to require defense counsel to ask questions of the witness before making targeted use of a confusing, hearsay-laden exhibit.[15]

## C.    DNA

Trump argues that the district court "improperly precluded cross-examination of Plaintiff regarding her false, public claim that she possessed President Trump's DNA." Br. 48. This argument rests on a stark mischaracterization of the record.

---

[15] Trump cites *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976), which held that the bar on using extrinsic evidence in attacking a witness's character for truthfulness under Rule 608(b) does not apply to evidence of bias or motive. Br. 47. But the possibility that an exhibit may relate to bias or motive under *Harvey* does not eliminate other limits on admissibility—as *Harvey* recognized. *See* 547 F.2d at 723. Here, those additional limits justified the approach directed by the district court.

For starters, Trump largely excludes the parties' extensive litigation of DNA-related issues. Early in the case, Carroll requested that Trump provide a DNA sample to be compared against unidentified male biological material recovered from the dress that Carroll wore when Trump assaulted her. SPA.77-86. For years, Trump refused. *Id.* Only shortly before trial, following a series of bad faith delay tactics, did Trump claim to change his mind. SPA.86-87. At that point, he proposed to provide a DNA sample, but only if Carroll turned over an appendix to her initial DNA report, even though Trump had possessed that report for years. SPA.74. When Carroll rejected this stall tactic, Trump confirmed his dilatory purpose by moving to reopen discovery. *See id.* The district court denied his motion, finding that Trump lacked justification for his belated request. SPA.73-93. Carroll then moved under Rule 403 to preclude evidence relating to DNA from being put before the jury. SPA.127; ASA.37-40. Trump did not disagree that there should be a general bar on the admission of DNA evidence at the trial, but instead argued that he should be allowed to "cross-examine Plaintiff on her prior representations to the public that she had somehow obtained Defendant's DNA." ASA.71; *see also* ASA.117-19.

The district court's rejection of that proposed carve-out was not an abuse of its discretion under Rule 403. *See* SPA.126-30 (opinion denying Trump's request).

In asserting otherwise, Trump claims that Carroll's statements were highly probative because she "lied when she said she had President Trump's DNA." Br. 49.

But as the district court found, SPA.127 n.42, Carroll never said that—which may explain why Trump does not include the text of her statements in his brief or appendix. In one tweet, Carroll referred only to her possession of a dress; in another, she referred to her possession of a dress containing DNA; and in the last one, Carroll explicitly stated that she did *not* have Trump's DNA because he refused to provide it. ASA.117-18. None of Carroll's tweets "refer to her having 'obtained' his DNA." SPA.127 n.42. Her statements thus had minimal probative value. SPA.127-129.

And even if they were somehow probative, that value would be "outweighed substantially by the likelihood of unfair prejudice coupled with the risk of confusion of the issues and a waste of time." SPA.128. As the district court reasoned, allowing only Trump's proposed discussion of DNA could cause substantial undue prejudice to Carroll; curing that prejudice, however, would require the full context of the DNA issue to be set before the jury, producing substantial delay and confusion without usefully illuminating the issues in dispute. SPA. 128-130. In these circumstances, denying Trump's proposed carve-out was an appropriate exercise of discretion under Rule 403. *See, e.g.*, *Stewart*, 433 F.3d at 313 (holding Rule 403 was properly invoked to avoid a confusing "mini-trial" on a side issue); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14 M.D. 2543, 2015 WL 8130449, at *4-*5 (S.D.N.Y. Dec. 3,

2015) (evidence about discovery conduct has "limited or no probative value," and "the dangers of unfair prejudice, jury confusion, and waste of time are quite real").[16]

## D. Not Reporting to the Police

Trump next argues that the "district court improperly prevented [him] from questioning Plaintiff regarding her failure to file a police report." Br. 50. But Trump declines to mention that the district court permitted extensive cross-examination and extrinsic evidence about Carroll's decision not to go to the police. *E.g.*, A.1757, 1818, 1821, 1824-25, 1827-29, 1838-39. Indeed, Carroll's so-called failure to report was a principal theme of Trump's summation. A.2679-81, 2728, 2730. Here, Trump complains only that the district court sustained an objection to a single follow-up question concerning an interview from 2019. Br. 51. But in the context of Trump's repetitious cross-examination, the district court acted well within its discretion in stating that "[w]e have been up and down the mountain on the question of whether she went to the police, so let's move on," A.1840; *accord* Fed. R. Evid. 403, 611(a).[17]

---

[16] Trump suggests that the district court's decision was a penalty for his refusal to provide a DNA sample. Br. 50. But the district court was clear that "[b]oth sides have had years in which to make DNA an issue in this case. For their own reasons, each did not do so." SPA.76. The court's ruling held each side to its own decision, "exclud[ing] any evidence or argument by either party concerning DNA." SPA.130.

[17] The confusing nature of Trump's questions further justified this ruling. *See* A.1834-36 (ruling that defense counsel could not imply that Carroll could bring

### E.    Not Requesting Surveillance Video

Finally, Trump argues that the district court abused its discretion when it did not permit the question to Carroll "[d]id you go back the next day to … ask for the video camera footage?" Br. 53. Here, too, Trump fails to provide the full picture.

Three witnesses offered relevant testimony on this issue. Beall testified that cameras were not her responsibility, although she thought the store "[f]or sure" had them at the employee entrances and possibly in fine jewelry, but not in the lingerie section or other areas of the sixth floor. A.1557-59. Salerno testified that there were cameras at the employee entrance and loading dock, and possibly in fine jewelry and furs, but not on the sixth floor or at the public entrances. A.2155-56, 2173-75. And Carroll (on cross) stated that she had "guess[ed]" in her book that cameras captured the two together, though she "never had been able to verify if there were cameras in the dressing room or in the lingerie department." A.1840-41. No witness testified that there were cameras in the lingerie section or at the store's public entrance.

Thus, when defense counsel asked Carroll a question that "assume[d]" the existence of "video camera footage," the Court sustained an objection. A.1842. This was not an abuse of discretion: trial judges may properly "preclude questions that obscure truth because they are ambiguous, confusing, misleading, argumentative,

_____

criminal charges in 2019); A.1840 (noting that Carroll did not have power to bring charges).

compound, or assume facts not in evidence." Wright & Miller, 28 Fed. Prac. & Proc. Evid. § 6164 (2d ed.); *see also United States v. DeFillipo*, 590 F.2d 1228, 1239-40 (2d Cir. 1979) (noting the "traditional evidentiary rule" that questions which assume a fact in evidence may be "improper on cross-examination"). Here, that rule applies with full force. In fact, the specific cameras that defense counsel had asked Carroll about just before asking about "*the* video camera footage" were "cameras in the dressing room or in the lingerie department," A.1841-42 (emphasis added), and there was no evidence that any such cameras existed, A.1559, 1841, 2155.[18]

## III. TRUMP IS NOT ENTITLED TO A NEW TRIAL

Trump contends that he is entitled to a new trial based on the cumulative effect of these evidentiary errors that he ascribes to the district court. As set forth above, that argument fails at the outset: the district court did not abuse its substantial discretion in assessing which evidence to admit or exclude at the trial.

Regardless, Trump fails to demonstrate that any alleged error (or combination of errors) requires a new trial. To make that showing, he would need to establish errors that "affected [his] substantial rights." *Marcic v. Reinauer Transp. Cos.*, 397

---

[18] Trump suggests that the district court more broadly prevented him from "cross-examin[ing] Plaintiff regarding whether she ever tried to obtain the videos." Br. 53. But the district court disallowed the single question that Trump identifies on much narrower grounds. A.1842. Trump was not barred from establishing that Carroll did not obtain surveillance videos from Bergdorf—as confirmed by the fact that defense counsel made that very argument during summation. *Compare* Br. 52, *with* A.2681.

F.3d 120, 124 (2d Cir. 2005). Only if an error led the jury to "a seriously erroneous result" or a "miscarriage of justice" will this Court reverse. *United States v. Bell*, 584 F.3d 478, 486 (2d Cir. 2009). "Thus, an evidentiary error in a civil case is harmless unless the appellant demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 62–63 (2d Cir. 2021) (cleaned up). This requires "assessing the error in light of the record of the whole," *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 189 (2d Cir. 2016), including the "overall strength of the [appellee's] case," *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010).

Trump comes nowhere close to making such a showing. In this section of his brief, he focuses almost exclusively on the "other acts" evidence, advancing three arguments: *first*, that the jury rejected Carroll's "core theory"; *second*, that Carroll emphasized the "other acts" evidence in her arguments to the jury; and *finally*, that the district court's jury instructions were allegedly faulty in several respects. These arguments fail on their own terms and, even more significantly, say nothing about the overall strength of Carroll's case (which is hardly mentioned in Trump's brief).

Trump first contends that the jury rejected Carroll's "core theory" by finding "sexual abuse" rather than "rape" (as those terms are defined by New York penal law) as the Adult Survivors Act predicate. Br. 55. That is incorrect. The jury found

that Trump had "deliberately and forcibly penetrated Ms. Carroll's vagina with his fingers." SPA.167. Carroll testified in extremely vivid detail about that fact on both direct and cross-examination. A.1599-A.1600; A.1796. It was the very heart of her testimony, whereas she referred only briefly and less certainly to penile penetration. By ruling in her favor, the jury made clear that it believed her account. *See* SPA.203 n.67 ("It is not entirely surprising that the jury did not file penile penetration but … implicitly found digital penetration. Ms. Carroll testified about the specific physical memory and excruciating pain of the digital penetration at great length and in greater detail than the penile penetration. She acknowledged that she could not see exactly what Mr. Trump inserted but testified on the basis of what she felt.").[19]

Trump next observes that Carroll cited "other acts" evidence in her opening and closing. Br. 56-57. But as this Court can see for itself in the transcripts, and as described below, this evidence played only a supportive (not a central or significant role) in Carroll's presentation to the jury. A.1441-66; A.2582-A.2634; A.2739-69.

Finally, Trump objects to aspects of the "other acts" jury instructions. *See* Br. 57-58. As explained above, these arguments are all waived or meritless (or both). The reality is that these instructions substantially mitigated any prejudice that Trump may perceive from the "other acts" evidence: they stated that the jury could consider

---

[19] Trump highlights the references to "rape" by Carroll's counsel. Br. 55. But as the district court has correctly explained, the jury's finding confirms that Trump *did* rape Carroll in the commonplace and widely accepted sense of that term. SPA.164-67

testimony from Leeds and Stoynoff only if it first found by a preponderance of the evidence that Trump had indeed sexually assaulted them, and that the jury could not find for Carroll based solely on that "other acts" testimony. A.2803-04; *see Tesser v. Bd. of Educ. of City Sch. Dist. of N.Y.C.*, 370 F.3d 314, 318-20 (2d Cir. 2004).

Trump's three arguments for reversal thus fall short on their own terms. But even more fundamentally, they fail because they rest on a profound distortion of the trial record. This case was not close—and the "other acts" evidence (contrary to Trump's characterization) figured only secondarily in Carroll's jury argument.

You would not know it from reading Trump's brief, but Carroll presented overwhelming evidence in support of her position. That included her own testimony over nearly three days—which, by any measure, was the most significant evidence in the case. It also included extensive testimony from Birnbach and Martin: they were surely the most important witnesses after Carroll (and they were ferociously cross-examined by the defense), but they are virtually unmentioned in Trump's brief. By virtue of the Birnbach and Martin testimony, Trump had to prove not only that Carroll was fabricating her account of being assaulted, but also that she had formed a conspiracy with two other women to do so. That transformed the case from "he said / she said" into "he said / they said." It also diminished the relative importance of the "other acts" evidence, since Carroll's sworn testimony was backed by two contemporaneous accounts, which in combination the jury found to be credible.

Even apart from this testimony (which took center stage at trial), Carroll's account was backed by several secondary streams of evidence. That included two former Bergdorf employees, who confirmed key parts of her account of the store and undermined major defense themes about the implausibility of this assault occurring at Bergdorf. It also included Lebowitz, an expert clinician, who (upon probing from defense counsel) delivered extremely powerful testimony that she believed Carroll was telling the truth. Carroll's account was also backed by Trump himself: not only his astonishing refusal to attend trial or testify in person, but also his deposition, which gutted his credibility (particularly when he mistook Carroll for his own ex-wife in a clear photograph). Finally, Carroll's account drew support from the "other acts" evidence, which reflected a pattern of behavior and (in the case of the Access Hollywood video) an unintentional confession of Trump's conduct toward women. And against all this evidence, Trump did not call any witnesses in his own defense.

Viewing the trial record as a whole, there is no merit whatsoever to Trump's contention that the district court's rulings—which were all correct, in any event—so extremely distorted the result of the trial as to violate Trump's substantial rights.[20]

---

[20] For the same reason—and for the reasons given in Part II of this brief concerning the marginal probative value of these points—Trump's five additional objections to the district court's evidentiary rulings (addressed in just a single, glancing page at the very end of his brief) fail to demonstrate the need for a new trial. Br. 59.

## CONCLUSION

For all the reasons set forth above, the judgment below should be affirmed.

Dated: Washington, D.C
March 20, 2024

Respectfully submitted,

*/s/ Joshua Matz*
Joshua Matz
Kate Harris
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com
kharris@kaplanhecker.com

Roberta A. Kaplan
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com

*Counsel for Plaintiff-Appellee*
*E. Jean. Carroll*

# CERTIFICATE OF COMPLIANCE

This brief complies with the length limits requirements of Local Rule 32.1(a)(4) because this brief contains 13,972 words, excluding the parts of the document excluded by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

Dated: Washington, D.C
   March 20, 2024

*/s/ Joshua Matz*
Joshua Matz

*Counsel for Plaintiff-Appellee*
*E. Jean. Carroll*

# CERTIFICATE OF SERVICE

I, Joshua Matz, counsel for Plaintiff-Appellee and a member of the Bar of this Court, certify that, on March 20, 2024, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated: Washington, D.C              */s/ Joshua Matz*
      March 20, 2024            Joshua Matz

                                         *Counsel for Plaintiff-Appellee*
                                         *E. Jean. Carroll*