# 23-793

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP,

*Defendant-Appellant*.

On Appeal from the United States District Court
For the Southern District of New York

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## PRESIDENT DONALD J. TRUMP

<div style="display:flex">

Todd Blanche
Emil Bove
BLANCHE LAW
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

D. John Sauer
JAMES OTIS LAW GROUP, LLC
13321 N. Outer Forty Rd.
Suite 300
St. Louis, Missouri 63017
(314) 562-0031
john.sauer@james-otis.com

</div>

*Attorneys for Defendant-Appellant*
*President Donald J. Trump*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

    I.     A Reasonable Jury Could Not Conclude That the Leeds Testimony Satisfied Rule 413(d). ............................................................................. 1

    II.    A Reasonable Jury Could Not Conclude That the Stoynoff Testimony Satisfied Rule 413(d). ............................................................................. 9

    III.   A Reasonable Jury Could Not Conclude that the Access Hollywood Tape Satisfied Rule 413(d). ................................................................. 11

    IV.   The Leeds Testimony, the Stoynoff Testimony, and the Access Hollywood Tape Were Not Admissible Under Rule 404(b). .............. 13

    V.    The District Court Abused Its Discretion by Failing to Exclude the Leeds Testimony, the Stoynoff Testimony, and the Access Hollywood Tape Under Rule 403. ........................................................................ 18

    VI.   The Erroneous Admission of Other-Acts Evidence Affected President Trump's Substantial Rights. ............................................................... 21

    VII.  The Erroneous Exclusion of Evidence Undercutting Carroll's Credibility Warrants Reversal. ........................................................... 25

CONCLUSION ..................................................................................................... 28

CERTIFICATE OF SERVICE ................................................................................ 30

CERTIFICATE OF COMPLIANCE ....................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Beamon v. Dittmann*,
    720 F. App'x 772 (7th Cir. 2017)............................................................10, 12

*Benn v. Greiner*,
    402 F.3d 100 (2d Cir. 2005)..........................................................................27

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999).................................................................. 12-13

*Bond v. United States*,
    572 U.S. 844 (2014)........................................................................................4

*Cameron v. City of New York*,
    598 F.3d 50 (2d Cir. 2010).............................................................................21

*Chavez v. City of Albuquerque*,
    402 F.3d 1039 (10th Cir. 2005)....................................................................14

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010)........................................................................................3

*Hynes v. Coughlin*,
    79 F.3d 285 (2d Cir. 1996)............................................................................24

*Johnson v. Elk Lake Sch. Dist.*,
    283 F.3d 138 (3d Cir. 2002)....................................................2, 7, 11, 13, 19

*Keeley v. Whitaker*,
    910 F.3d 878 (6th Cir. 2018)...........................................................................9

*Lewis v. Velez*,
    149 F.R.D. 474 (S.D.N.Y. 1993)..................................................................27

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
    484 U.S. 97 (1987)..........................................................................................3

*People v. Weinstein*,
　　No. 24, 2024 WL 1773181 (N.Y. Apr. 25, 2024) .........................................28

*Perez-Gonzalez v. Holder*,
　　667 F.3d 622 (5th Cir. 2012)..................................................................... 8-9

*Rapp v. Fowler*,
　　20-CV-9586 (LAK), 2022 WL 5243030 (S.D.N.Y. Oct. 6, 2022) .................7

*Robert C. Herd & Co. v. Krawill Mach. Corp.*,
　　359 U.S. 297 (1959)........................................................................................4

*Rogers v. State*,
　　660 So.2d 237 (Fla. 1995) ...................................................................... 10-11

*Smith v. Baltimore City Police Dep't*,
　　840 F.3d 193 (4th Cir. 2016)........................................................................24

*United States v. Bass*,
　　404 U.S. 336 (1971)........................................................................................3

*United States v. Batton*,
　　602 F.3d 1191 (10th Cir. 2010) ......................................................................5

*United States v. Blazek*,
　　431 F.3d 1104 (8th Cir. 2005)........................................................................5

*United States v. Browne*,
　　834 F.3d 403 (3d Cir. 2016)..........................................................................26

*United States v. Carroll*,
　　207 F.3d 465 (8th Cir. 2000)........................................................................17

*United States v. Colomb*,
　　419 F.3d 292 (5th Cir. 2005)........................................................................27

*United States v. Cummings*,
　　858 F.3d 763 (2d Cir. 2017)..........................................................................19

*United States v. Danzey,*
    594 F.2d 905 (2d Cir. 1979).........................................................15

*United States v. Davis,*
    624 F.3d 508 (2d Cir. 2010).........................................................20

*United States v. Desposito,*
    704 F.3d 221 (2d Cir. 2013)....................................................6, 10

*United States v. Detrich*,
    865 F.2d 17 (2d Cir. 1988).........................................................26

*United States v. Dupree,*
    870 F.3d 62 (2d Cir. 2017).........................................................13

*United States v. Farhane,*
    634 F.3d 127 (2d Cir. 2011).........................................................5

*United States v. Fountain,*
    2 F.3d 656 (6th Cir. 1993).........................................................14

*United States v. Garcia,*
    291 F.3d 127 (2d Cir. 2002).........................................................24

*United States v. Hayward,*
    359 F.3d 631 (3d Cir. 2004).........................................................6

*United States v. Larson,*
    112 F.3d 600 (2d Cir. 1997).........................................................20

*United States v. LeMay,*
    260 F.3d 1018 (9th Cir. 2001).........................................................5

*United States v. Levy*,
    731 F.2d 997 (2d Cir. 1984).........................................................13

*United States v. Manley*,
    632 F.2d 978 (2d Cir. 1980).........................................................6

iv

*United States v. Mercado,*
    573 F.3d 138 (2d Cir. 2009)........................................................13

*United States v. Mills,*
    895 F.2d 897 (2d Cir. 1990)........................................................16

*United States v. Newsom,*
    452 F.3d 593 (6th Cir. 2006)........................................................18

*United States v. O'Connor,*
    650 F.3d 839 (2d Cir. 2011)........................................................20

*United States v. Purcell,*
    967 F.3d 159 (2d Cir. 2020)................................................. 12-13

*United States v. Richardson,*
    597 F. App'x 328 (6th Cir. 2015)........................................................25

*United States v. Sampson,*
    385 F.3d 183 (2d Cir. 2004)................................................. 16-17

*United States v. Scott,*
    677 F.3d 72 (2d Cir. 2012)........................................................15, 18, 21

*United States v. Smith,*
    574 F.2d 988 (9th Cir. 1978)........................................................8

*United States v. Smith,*
    725 F.3d 340 (3d Cir. 2013)........................................................18

*United States v. Song,*
    436 F.3d 137 (2d Cir. 2006)........................................................25

*United States v. Stallworth,*
    543 F.2d 1038 (2d Cir. 1976)........................................................6, 10

*United States v. Stewart,*
    907 F.3d 677 (2d Cir. 2018)........................................................24

*United States v. Thomas,*
    321 F.3d 627 (7th Cir. 2003) ............................................ 17-18, 25

*United States v. Vonneida,*
    601 F. App'x 38 (2d Cir. 2015) ...........................................20

*United States v. Welch,*
    822 F.2d 460 (4th Cir. 1987) ...........................................8

*United States v. Williams,*
    930 F.3d 44 (2d Cir. 2019) ...........................................15, 18

*United States v. Williams,*
    985 F.2d 634 (1st Cir. 1993) .......................................14

*United States v. Zhong,*
    26 F.4th 536 (2d Cir. 2022) .....................................18, 23

## Statutes and Rules

18 U.S.C. § 115(b)(1)(B)(iv) ...........................................3

18 U.S.C. § 2119(2) ...........................................3

18 U.S.C. § 2199(2) ...........................................3

18 U.S.C. § 2244(a) .........................................2, 4

18 U.S.C. § 2426(b)(1)(A) ...........................................3

18 U.S.C. § 2426(b)(1)(B) ...........................................3

34 U.S.C. § 12113(b)(1) ...........................................3

49 App. U.S.C. § 1472(k)(1) (1990) ...........................................8

49 U.S.C. § 46506 ...........................................3

Fed. R. Evid. 403 ...........................................27

vi

Fed. R. Evid. 404(b).................................................................. 13-14

Fed. R. Evid. 413(d)...................................................... 1-2, 7, 10-11

Fed. R. Evid. 415(a) ..............................................................1, 8

Fed. R. Evid. 801(c) ..................................................................25

Fed. R. Evid. 801(d)(2)(A) ........................................................26

Fla. Stat. § 794.011 .................................................................10

Pub. L. 99-646, 100 Stat. 3624, § 87 (1986).................................8

Pub. L. 103-272, 108 Stat. 1245 (July 5, 1994)...........................7

**Other Authorities**

1 McCormick on Evid. § 190.3 (8th ed.) .................................16

2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
    § 404.22[5][c] (Joseph M. McLaughlin ed., 2d ed.2004) ...........................16

23 WRIGHT & MILLER, FED. PRACTICE & PROC. § 5384 (2d ed.) ...........................1

29 Am. Jur. 2d Evidence § 447 ...............................................14

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)...................................2

WRIGHT & MILLER, FED. PRACTICE AND PROC. § 6721 ...........................................26

# INTRODUCTION

Appellee E. Jean Carroll's Brief of Appellee ("Carroll Br.") provides no plausible defense of the wrongful judgment. The district court erred as a matter of law in admitting the Leeds testimony, the Stoynoff testimony, and the Access Hollywood tape, because this other-acts evidence does not fall within the definitions of admissible evidence in Rule 415. Rule 404(b) does not provide an alternative basis for admission, because the other-acts evidence was not offered for a proper purpose under Rule 404(b), and because it lacked sufficient similarity to the conduct alleged by Carroll. These errors were not harmless; Carroll's own counsel repeatedly emphasized the other-acts evidence in her opening statement and closing argument. Instead, the district court's errors allowed Carroll to prop up an empty "he said, she said" case with highly inflammatory, inadmissible evidence.

# ARGUMENT

## I. A Reasonable Jury Could Not Conclude That the Leeds Testimony Satisfied Rule 413(d).

Rule 415(a) permits the admission of "evidence that [a] party committed any other sexual assault." Fed. R. Evid. 415(a). To qualify as "sexual assault" under Rule 413(d), the conduct must be "a crime under federal law or under state law," and that crime must have involved a form of conduct described in Rule 413(d)(1)-(5). Fed. R. Evid. 413(d); *see also* 23 WRIGHT & MILLER, FED. PRACTICE & PROC. § 5384

1

(2d ed.) (cleaned up); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 154-55 (3d Cir. 2002). Neither criterion is satisfied here.

Carroll argues that President Trump's alleged conduct falls within subsections (d)(1) and (d)(5). *See* Carroll Br. at 19-23. With respect to subsection (d)(1), she claims that the provision "asks only whether the party previously committed a crime involving 'conduct' prohibited by chapter 109A, not whether that conduct also met the federal jurisdictional hook." Carroll Br. at 22.

This interpretation contradicts the plain meaning of the Rule. Rule 413(d)(1) refers to "conduct *prohibited by* 18 U.S.C. chapter 109A." Fed. R. Evid. 413(d)(1) (emphasis added). To "prohibit" means to "forbid by authority or command: enjoin, interdict." Webster's Third New International Dictionary 1813 (2002). The crimes created by Chapter 109A apply only to conduct performed under specific circumstances creating federal jurisdiction over the crime—usually "in the special maritime and territorial jurisdiction of the United States or in a Federal prison." *See, e.g.*, 18 U.S.C. § 2244(a). If the conduct does not meet these jurisdictional requirements, Chapter 109A does not purport to "forbid by authority or command," "enjoin," or "interdict" that conduct. Webster's Third, at 1813.

In essence, Carroll wrongfully contends that the phrase "prohibited by" in Rule 413(d)(1) actually refers to conduct that *would be* prohibited by 18 U.S.C. chapter 109A, had it occurred within the special maritime and territorial jurisdiction

2

of the United States. But Congress did not use that formulation in Rule 413(d)(1), and the absence of that language in Rule 413(d) contrasts starkly with the many statutes where Congress *did* employ such a formulation. *See, e.g.*, 18 U.S.C. § 2426(b)(1)(A), (B); 34 U.S.C. § 12113(b)(1); 49 U.S.C. § 46506; *see also, e.g.*, 18 U.S.C. §§ 115(b)(1)(B)(iv), 2119(2), 2199(2). For example, in 34 U.S.C. § 12113(b)(1), Congress defined the term "dangerous sexual offense" to include "any offense under State law for conduct that would constitute an offense under chapter 109A of Title 18 *had the conduct occurred in the special maritime and territorial jurisdiction of the United States or in a Federal prison*." (Emphasis added.) Similarly, in 18 U.S.C. § 2426(b)(1)(B), Congress defined the term "prior sex offense conviction" to include "offense[s] consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) [which expressly includes Chapter 109A] if the conduct had occurred within the special maritime and territorial jurisdiction of the United States." These provisions "make[] clear that Congress knows how to" achieve the result sought by Carroll—but Congress did not do so. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 106 (1987).

Moreover, under Article I of the Constitution and the doctrine of federalism, Congress lacks a general police power, and thus Congress cannot prohibit conduct that does not satisfy federal jurisdictional requirements. *See, e.g., United States v.*

*Bass*, 404 U.S. 336, 350 (1971) ("Absent proof of some interstate commerce nexus in each case, § 1202(a) dramatically intrudes upon traditional state criminal jurisdiction."). To do so would exceed Congress's enumerated powers and impermissibly alter the federal-state balance, and thus the Supreme Court has repeatedly adopted narrow readings of federal criminal statutes to avoid such concerns. *See id.*; *Bond v. United States*, 572 U.S. 844, 856 (2014). Rule 413(d), like provisions of federal criminal law, "must be read consistent with principles of federalism inherent in our constitutional structure." *Bond*, 572 U.S. at 856.

Most of the crimes created by Chapter 109A apply only to conduct performed "in the special maritime and territorial jurisdiction of the United States or in a Federal prison." *See, e.g.*, 18 U.S.C. § 2244(a). An act that does not meet these criteria—or another federal jurisdictional criterion not relevant here—is not "prohibited" by Chapter 109A, and the Chapter assigns no consequences to it.

Moreover, Rule 413(d) represents a radical departure from the longstanding common-law rule against the admission of propensity evidence. Statutes in derogation of longstanding common-law rules must be narrowly, not broadly, construed. *See, e.g., Bond*, 572 U.S. at 857 ("[W]e presume that a criminal statute derived from the common law carries with it the requirement of a culpable mental state—even if no such limitation appears in the text…."); *Robert C. Herd & Co. v.*

*Krawill Mach. Corp.*, 359 U.S. 297, 304 (1959) ("Any such rule of law, being in derogation of the common law, must be strictly construed….").

The cases cited by Carroll do not alter this conclusion. *Blazek* and *Batton* provide only cursory analysis, failing even to address the import of the statutory phrase "prohibited by." *See United States v. Blazek*, 431 F.3d 1104, 1109 (8th Cir. 2005); *United States v. Batton*, 602 F.3d 1191, 1196-97 (10th Cir. 2010). Because *Blazek* and *Batton* fail to address key issues that dictate the interpretation of Rule 413(d)(1), they do not provide persuasive authority. As for *LeMay*, the Ninth Circuit was not even presented with the interpretive question at issue here. *See United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001). The plain text of Rule 413(d)(1)— buttressed by Congress's consistent usage in other statutes—demonstrates that conduct falls within the Rule's scope only if the conduct would meet the location requirements imposed by Chapter 109A.

Invoking subparagraph (d)(5), Carroll claims that President Trump's alleged conduct, which did not occur, reflects an attempt to engage in non-consensual touching of Leeds's genitals, which (if accomplished) would fall within subsection (d)(2). This argument is meritless. An "attempt" requires that the "defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011). The substantial step must be "strongly corroborative of the

firmness of the defendant's criminal intent." *United States v. Desposito*, 704 F.3d 221, 231 (2d Cir. 2013) (quotation omitted). Conduct can constitute an attempt only if it is "of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980). This requirement derives from the fact that attempt liability exists to "enable[] society to punish malefactors who have *unequivocally* set out upon a criminal course." *United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976) (emphasis added).

Here, even if it had occurred—which it did not—the conduct Leeds attributed to President Trump raises no "unequivocal" inference of intent to touch her genitals. Far from it—Leeds merely alleged that President Trump touched her leg before she broke off the supposed contact. Leeds claimed that "it was when he started putting his hand up my skirt that that kind of gave me a jolt of strength, and I managed to wiggle out of the seat and I went storming back to my seat in the coach." Carroll Br. at 19 (quoting A.2102). This testimony falls far short of "strongly corroborati[ng]" an intent to perform prohibited conduct, or showing that President Trump "unequivocally set out" to perform prohibited conduct. *Compare United States v. Hayward*, 359 F.3d 631, 640 (3d Cir. 2004) ("The ambiguous and equivocal act of pushing a victim's head toward one's clothed penis … does not constitute a

6

substantial step toward achieving 'contact between the mouth and the penis' … .").

Here, Leeds testified that she exited her seat almost immediately after the supposed touching "started" and the entire encounter lasted "just a few seconds." A.152. Leeds's testimony provides no basis for a jury to infer any intent to non-consensually touch her genitals, as opposed to an intent to touch her leg, which plainly would not fall within subsection (d)(2). *See, e.g., Rapp v. Fowler*, 20-CV-9586 (LAK), 2022 WL 5243030, at *2 (S.D.N.Y. Oct. 6, 2022) (determining that testimony that the defendant placed his "'hand … on [the deponent's] leg . . . about two inches above [his] knee' and remained there for 'maybe 30 to 45 seconds'" is "not evidence of an 'other sexual assault' within the meaning of Rule 415(a).").  Thus, Leeds's testimony does not fall within subsection (d)(5).

Moreover, even if the conduct alleged by Leeds fell within Rule 413(d)(1)-(5), which it does not, Rule 415 *still* would not authorize the admission of Leeds's testimony.  To constitute a "sexual assault," a defendant's conduct must also constitute "a crime under federal law or under state law." Fed. R. Evid. 413(d); *see also Johnson*, 283 F.3d at 158 n.17 (describing this as a "threshold requirement"); Carroll Br. at 23.  The only criminal statute that Carroll claims President Trump violated is 49 U.S.C. § 46506. Carroll Br. at 23.  But § 46506 was not enacted until 1994—approximately 15 years *after* the alleged event occurred. *See* Pub. L. 103-272, 108 Stat. 1245 (July 5, 1994); A.2098.  President Trump could not have

"committed" a crime that did not exist at the time of his alleged conduct. Fed. R. Evid. 415(a).

Carroll has not identified any other statute that President Trump allegedly violated, and that should end the inquiry. But even if Carroll had looked to statutes in effect at the time of the alleged incident, she would not prevail. Section 46506 was preceded by now-repealed 49 U.S.C. § 1472(k), which similarly criminalized conduct "while aboard an aircraft within the special aircraft jurisdiction of the United States" that would violate Chapter 109A had it occurred within the special maritime and territorial jurisdiction. 49 App. U.S.C. § 1472(k)(1) (1990). However, prior to 1986, rather than cross-referencing Chapter 109A, § 1472(k)(1) instead cross-referenced 18 U.S.C. § 2031, the federal rape statute. *See* Pub. L. 99-646, 100 Stat. 3624, § 87 (1986). That iteration of § 1472(k) was in effect at the time of the alleged incident described by Leeds.

The crime of rape under § 2031 was considerably narrower than the conduct now prohibited by Chapter 109A. *See Perez-Gonzalez v. Holder*, 667 F.3d 622, 626-27 (5th Cir. 2012). In particular, § 2031 only applied to the "penetration of the female sex organ by the male sex organ," *id.* at 626, and only if that penetration had to be obtained by force or threat of force, *United States v. Welch*, 822 F.2d 460, 463 (4th Cir. 1987); *United States v. Smith*, 574 F.2d 988, 990 (9th Cir. 1978). There is no plausible argument that Leeds's testimony would permit a jury to find that

President Trump engaged in—or even attempted—conduct that would have violated § 2031. Carroll does not even make such a claim. Instead, she falsely contends that President Trump "attempt[ed] to contact [Leeds's] genitals without consent." Carroll Br. at 20; *see also id.* at 21. Even under Carroll's inaccurate characterization, the alleged goal of the conduct plainly would not have violated § 2031. *See, e.g.,* *Keeley v. Whitaker*, 910 F.3d 878, 883 (6th Cir. 2018) (explaining that neither "the common-law crime of rape" nor "the federal crime of rape (extant until 1986) … include[d] digital penetration"); *Perez-Gonzalez*, 667 F.3d at 626-27 (similar). Because President Trump's alleged conduct would not have violated any criminal law in effect at the time, that alleged conduct is not admissible under Rule 415.

## II.    A Reasonable Jury Could Not Conclude That the Stoynoff Testimony Satisfied Rule 413(d).

Carroll claims that a reasonable jury could conclude, by a preponderance of the evidence, that Stoynoff's testimony reflected an attempt to engage in non-consensual touching of her genitals under Rule 413(d)(2). This argument has no merit. The theory rests on Stoynoff's false claim that President Trump invited her into a room, shut the door, and initiated physical contact with her. Carroll Br. at 24. According to Stoynoff's allegation, "by the time I turn around, he has his hands on my shoulders and he pushes me against the wall and starts kissing me, holding me against the wall." *Id.* (quoting A.2350).

Carroll claims that this testimony would permit a reasonable jury to conclude that President Trump somehow engaged in an attempt to non-consensually touch Stoynoff's genitals. *Id.* at 24-25. Not so. As noted above, an attempt requires that the defendant engage in a substantial step toward the commission of the underlying crime, one that is "strongly corroborative of the firmness of the defendant's criminal intent." *Desposito*, 704 F.3d at 231 (quotation omitted). That substantial-step requirement exists to sweep in "malefactors who have *unequivocally* set out upon a criminal course." *Stallworth*, 543 F.2d at 1040 (emphasis added). Here, the falsely alleged conduct does not "strongly corroborat[e]" any intent to touch Stoynoff's genitals. If it had occurred, which it did not, the alleged conduct would not fall within the scope of Rule 413(d). *See* Fed. R. Evid. 413(d)(1)-(5). Any inference of supposed intent to engage in non-consensual touching of Stoynoff's genitals would rest on pure speculation. "[A] reasonable jury does not base its decision on speculation." *Beamon v. Dittmann*, 720 F. App'x 772, 776 (7th Cir. 2017).

A leading case involving the Florida sexual-battery statute, on which the district court relied to satisfy Rule 413(d)'s first requirement, reinforces that conclusion. *See* Fla. Stat. § 794.011. In *Rogers v. State*, 660 So.2d 237 (Fla. 1995), the Florida Supreme Court reversed a conviction for attempt to commit sexual battery under § 794.011. The facts of *Rogers* far exceeded the conduct alleged here: While in a car with the victim, Rogers pulled a gun and demanded that she remove

her clothes. *Id.* at 238. He then grabbed her breast. *Id.* Notwithstanding these facts, the Florida Supreme Court reversed his conviction for attempted sexual battery. The court explained that "[w]hile [the defendant] may have touched [the victim's] breast and ordered her to remove her clothes, these acts do not rise to the level of an overt act toward the commission of a sexual battery." *Id.* at 241. Given that the facts of *Rogers* did not support an inference of non-consensual sexual conduct, neither do Stoynoff's far more ambiguous, equivocal false allegations.

## III.  A Reasonable Jury Could Not Conclude that the Access Hollywood Tape Satisfied Rule 413(d).

Rule 415 also did not permit the admission of the Access Hollywood tape. As noted above, "a trial court considering evidence offered under Rule 415 must decide under Rule 104(b) whether a reasonable jury could find by a preponderance of the evidence that the past act was an 'offense of sexual assault' under Rule 413(d)'s definition and that it was committed by the defendant." *Johnson*, 283 F.3d at 154-55. Under Rule 413(d), a "sexual assault" necessarily "means a crime under federal law or under state law." Fed. R. Evid. 413(d).

No reasonable jury could find that the Access Hollywood tape satisfies this standard. Carroll has not identified any specific incident described in the Access Hollywood tape. She has not identified any specific alleged victim of such an incident. She has not identified (even approximately) the time or location of such an alleged incident. She has not identified any particular provision of law violated

by such an alleged incident. She has not provided any description (however general) of the circumstances under which such an incident occurred. In the absence of *any* of these critical details, any inference from the Access Hollywood tape that President Trump had committed a sex crime, which did not happen, would be based on pure speculation. Where a theory is "speculative," no reasonable jury could adopt it by a preponderance of the evidence. *United States v. Purcell*, 967 F.3d 159, 189 (2d Cir. 2020). "[A] reasonable jury does not base its decision on speculation." *Beamon*, 720 F. App'x at 776; *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) (emphasizing that courts must "carefully distinguish between evidence that allows for a reasonable inference … and evidence that gives rise to mere speculation and conjecture"). These omissions underscore the fact that the tape contains abstract speculation, rather than a recounting of any actual conduct.

Moreover, even if the statements in the tape had been tied to a particular incident, which was not the case, those statements are so ambiguous and equivocal that a reasonable jury could not infer from them that anyone committed a crime. *See, e.g.,* Carroll Br. at 36 (quoting SPA.24) (brackets omitted). Neither Carroll nor the district court explain how a jury could infer—*reasonably*, rather than based on pure speculation—from such statements that President Trump had engaged in a sex crime. Nothing in the statements implies criminal conduct. Only through speculation could a jury draw the inference that these statements describe a sex crime. Pure speculation

does not satisfy the reasonable-jury standard. *See Purcell*, 967 F.3d at 189; *Bickerstaff*, 196 F.3d at 448. A reasonable jury could not find that the Access Hollywood tape evidenced a "sexual offense" under Rule 413(d), and it should not have been admitted into evidence and allowed to confuse the jury. *Johnson*, 283 F.3d at 154-55.

## IV. The Leeds Testimony, the Stoynoff Testimony, and the Access Hollywood Tape Were Not Admissible Under Rule 404(b).

As a fallback position, Carroll incorrectly claims that Leeds's and Stoynoff's testimony, along with the Access Hollywood tape, were admissible under Rule 404(b). This position is meritless. Rule 404(b) permits the introduction of other acts only if it "was offered for a proper purpose … [and] was relevant to a disputed issue." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (quotation omitted). The proponent of Rule 404(b) evidence "must explain in detail the purposes for which the evidence is sought to be admitted." *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984). She must also "identify the fact or issue to which the evidence is relevant." *United States v. Mercado*, 573 F.3d 138, 143 (2d Cir. 2009) (Droney, J., dissenting in part).

The only rationale provided by Carroll for admitting this evidence under Rule 404(b) was to show "*modus operandi*." Carroll Br. at 26-27, 37-38. But "*modus operandi*" is not, on its own, a "proper purpose." *See* Fed. R. Evid. 404(b) (enumerating permitted uses of prior-act evidence). Instead, *modus operandi*

13

evidence is one way to accomplish an otherwise permissible purpose. Most often, *modus operandi* evidence is used to establish "identity," one of Rule 404(b)'s recognized purposes. *See* 29 Am. Jur. 2d Evidence § 447. This use of *modus operandi* evidence rests on the inference "that since the defendant acted in a similar and unusual or distinctive manner previously, therefore it is more likely that the defendant (rather than someone else) did the act on the occasion of the charged crime." *Id.* In other cases, *modus operandi* evidence can be used to show "lack of accident." Fed. R. Evid. 404(b). For example, if a defendant in an arson case claims to have started a fire at his workplace by accident, evidence that he had intentionally started numerous other fires in a similar way at prior places of employment would bear on whether the current fire was actually a mistake.

But in every case, *modus operandi* evidence is admissible only if used for a proper purpose and relevant to an issue actually in dispute. Where those requirements are not satisfied, *modus operandi* evidence is not admissible. *See, e.g.*, *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (excluding *modus operandi* evidence, explaining that "proof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity," and noting that there was no claim of accident or mistake); *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993) (holding that *modus operandi* testimony was inadmissible, because identity was not in dispute); *United States v. Williams*, 985 F.2d 634, 637

(1st Cir. 1993) (holding that *modus operandi* evidence was inadmissible, because "identity is not disputed in this case"); *United States v. Danzey,* 594 F.2d 905, 913-14 (2d Cir. 1979) (holding that *modus operandi* evidence is admissible "if the evidence is relevant to identity" but not if it is "relevant merely to intent.").

Here, Carroll has not articulated any proper purpose for which she seeks to use *modus operandi* evidence or to what disputed issue that proper use would relate. This case did not involve disputed questions of identity, intent, or absence of mistake. President Trump did not argue that Carroll had misidentified him or that he had made contact with her by accident. He has continuously and steadfastly denied that the incident had ever occurred. None of the recognized purposes for *modus operandi* evidence applies here, and none would be relevant to any disputed issue in this case.

Instead, Carroll introduced this evidence to try to argue that if President Trump had engaged in similar conduct on other occasions, it was more likely that he would have engaged in the conduct alleged by Carroll. That is quintessential "propensity" evidence. Rule 404(b) "cannot support the admission of such propensity evidence." *United States v. Scott*, 677 F.3d 72, 80 (2d Cir. 2012). "Rule 404(b) bars the admission of defendant's uncharged crimes to prove propensity to commit the crime charged." *United States v. Williams*, 930 F.3d 44, 62 (2d Cir. 2019) (quotation omitted). Because Carroll cannot articulate a proper purpose for the

*modus operandi* evidence or tie it to a relevant issue in dispute, that evidence was not admissible.

Even if Carroll had identified a proper purpose for the *modus operandi* evidence, she has not shown sufficient distinctiveness and similarity among the alleged events. *Modus operandi* evidence must involve "a 'signature crime,' *i.e.*, a *modus operandi* where the crimes are so nearly identical in method as to ear-mark them as the handiwork of the accused." *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (quotation omitted). "Much more is demanded than the mere repeated commission of crimes of the same class…. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." 1 McCormick on Evid. § 190.3 (8th ed.). This requirement derives in part from the prohibition against propensity evidence. If other-acts evidence merely showed that a defendant "has at other times committed the same garden variety criminal act," "this would be identification based on the forbidden inference of propensity." *United States v. Sampson*, 385 F.3d 183, 192 n.7 (2d Cir. 2004) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.22[5][c], at 404–122 (Joseph M. McLaughlin ed., 2d ed.2004)).

Carroll claims that the other-acts evidence reflects "a pattern of abruptly lunging at a woman in a semi-public place, pressing his body against her, kissing her, and sexually touching her without consent, and later categorically denying the

allegations and declaring that the accuser was too unattractive for him to have assaulted her." Carroll Br. at 26-27. This description of the falsely alleged incidents is inaccurate to the extent that it claims the alleged Leeds, Stoynoff, and Carroll incidents all occurred "in a semi-public place." Leeds alleged that the supposed incident occurred in a non-secluded seat on an airplane; Stoynoff alleged conduct in a private room in President Trump's residence; and Carroll alleged an incident in a changing room at a department store. There is no consistency of location among these alleged incidents.

The remainder of the "pattern" formulated by Carroll simply provides a generic description of sexual assault and denial thereafter. "If a pattern so generic can establish *modus operandi*, this fairly limited exception to Rule 404(b) would gut the Rule, rendering it useless as a check on character evidence that would otherwise be inadmissible." *United States v. Thomas*, 321 F.3d 627, 635 (7th Cir. 2003); *see also Sampson*, 385 F.3d at 192 n.7. Moreover, the long gaps of time between the alleged incidents further undermines the existence of a "pattern," generic or otherwise. *See United States v. Carroll*, 207 F.3d 465, 470 (8th Cir. 2000) (holding that *modus operandi* evidence was inadmissible where two incidents occurred ten years apart). Because Carroll failed to establish the requisite distinctiveness and specificity, the other acts were not admissible under Rule 404(b).

## V. The District Court Abused Its Discretion by Failing to Exclude the Leeds Testimony, the Stoynoff Testimony, and the Access Hollywood Tape Under Rule 403.

Even if the other-acts evidence were admissible under Rule 415 or Rule 404(b), which it was not, the district court abused its discretion by failing to exclude it under Rule 403. As an initial matter, Carroll's Rule 403 arguments simply do not apply if the other-acts evidence was admitted under Rule 404(b) rather than Rule 415. "[A] district court may admit [Rule 404(b)] evidence only if it satisfies the probative-prejudice balancing test of Rule 403." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quotation omitted). Here, the only probative value claimed, wrongfully, by Carroll is "evidence of [President] Trump's *propensity* to engage in sexual assault." Carroll Br. at 29 (emphasis added); *see also id.* at 38.[1] As explained above, Rule 404(b) cannot be used to smuggle in propensity evidence. *Scott*, 677 F.3d at 80; *Williams*, 930 F.3d at 62. Thus, if the other-acts evidence were admitted under Rule 404(b), it would have no legally permissible probative value at all. As a result, *any* risk of prejudice would clearly tip the balance against admissibility under Rule 403. *See United States v. Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006).

---

[1] With regard to the Access Hollywood tape, Carroll claims that the evidence has probative value as to "*modus operandi*." Carroll Br. at 38. As explained above, Carroll's "*modus operandi*" theory is nothing more than an appeal to propensity. *See Thomas*, 321 F.3d at 637. "[T]he proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference." *United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013).

As described in the opening brief and in Part VI below, the admission of the other-acts evidence created a substantial risk of unfair prejudice against President Trump, and confusion of the issues. That is particularly true given that, as Carroll concedes, the evidence was used to show an alleged propensity to engage in sexual assault. "Propensity evidence, like other evidence that poses a risk of causing unfair prejudice, tends to distract the jury from the issues in the case … . The effect in such a case might be to arouse the jury's passions to a point where they would act irrationally in reaching a verdict." *United States v. Cummings*, 858 F.3d 763, 775 (2d Cir. 2017) (cleaned up). Here, if the other-acts evidence was admitted under Rule 404(b), the Rule 403 balance plainly and unmistakably tips against admission of that evidence.

Rule 403 would also dictate the exclusion of the other-acts evidence if that evidence were admissible under Rule 415. As described in the opening brief, that other-acts evidence has extremely limited probative value while creating a significant risk of unfair prejudice and confusion of the issues. *See* Opening Br. at 34-39; *Johnson*, 283 F.3d at 153 n.8. Among other things, the remoteness in time of the other alleged incidents severely undermines their probative value. In response to this issue, Carroll cites several irrelevant cases involving the admission of decades-old sexual assaults. Carroll Br. at 30. But in two of those cases—*Davis* and *Vonneida*—the prior sexual assaults were introduced via earlier, contemporaneous

criminal convictions. *See United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010); *United States v. Vonneida*, 601 F. App'x 38, 41 (2d Cir. 2015). Because the other-acts evidence in those cases was a contemporaneous conviction, with criminal charges proved beyond a reasonable doubt, there was considerably less doubt about the "reliability" of that evidence and "whether the memories of the witnesses has likely become too frail." *United States v. O'Connor*, 650 F.3d 839, 853 (2d Cir. 2011) (quotation omitted). Here, in contrast, there were no criminal investigations, let alone convictions, and the alleged incidents involving Leeds and Stoynoff were introduced through the uncorroborated oral testimony of witnesses who did not disclose the incidents until decades after they allegedly occurred. Under these circumstances, there are substantial doubts about the reliability of their accounts.

*O'Connor* is similarly distinguishable. In that case, the other-acts evidence was introduced via the defendant's own autobiography. *O'Connor*, 650 F.3d at 853. The Court emphasized that fact, noting that "the present case does not involve the usual concerns as to memory or reliability; the passages had been written by [defendant] himself." *Id.* at 853-54. As for *Larson*, the other-acts testimony involved highly specific and repeated conduct that recurred over the course of four years, conduct that "closely paralleled" the charged conduct. *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997). The incidents falsely alleged by Leeds and Stoynoff each supposedly occurred on a single occasion decades apart. Those

alleged incidents lack distinctive and specific similarity to Carroll's allegations and thus bear no resemblance to the other-acts testimony in *Larson*. In any event, the testimony in *Larson* involved conduct occurring 16-20 years before trial, *id.*, and thus was less than half as distant in time as the four-decades-old conduct alleged by Leeds. The remoteness in time of the alleged incidents, the fact that they were supported only by oral testimony, and the fact that such testimony is uncorroborated by any contemporaneous evidence strongly support the conclusion that the evidence should have been excluded under Rule 403.

## VI.   The Erroneous Admission of Other-Acts Evidence Affected President Trump's Substantial Rights.

Carroll claims that the erroneous admission of the other-acts evidence was harmless and did not affect President Trump's substantial rights. On the contrary, as her own arguments attest, the erroneously admitted testimony was absolutely central to Carroll's trial strategy, allowing her to bolster her inherently weak and implausible case through a series of uncorroborated character smears.

An evidentiary error is harmless if "the evidence was unimportant in relation to everything else the jury considered on the issue in question." *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (cleaned up). "An error in the admission of evidence may be deemed harmless only if it is highly probable that the error did not contribute to the verdict." *Scott*, 677 F.3d at 85 (quotation omitted). Here, the errors *did* contribute to the wrongful verdict.

Carroll claims that the other-acts "evidence played only a supportive (not a central or significant role) in Carroll's presentation to the jury." Carroll Br. at 52. The record belies this claim. As Carroll's counsel made clear below, the other-acts evidence was essential to addressing a critical weakness in her case: the lack of contemporaneous evidence supporting Carroll's false account. Instead, the jury had to believe Carroll's uncorroborated account of the event, relayed in both her in-court testimony and her alleged prior out-of-court statements to friends. Carroll claimed the incident occurred; President Trump denied that the incident occurred. The case presented a quintessential "he said, she said" scenario.

Carroll clearly recognized the risk that this posed to her case. Early in her opening statement, Carroll's counsel rushed to preempt the issue, claiming: "But this is not a he-said, she-said case. It's not a he-said, she-said case. Ms. Carroll is not the only person that you are going to hear from at this trial." A.1445. That is the definition of "she doth protest too much." In the same vein, she later emphasized: "But let me be clear. This case does not rest solely on Ms. Carroll's testimony." A.1451. These statements by Carroll's counsel make clear that, in Carroll's own assessment, the testimony of other witnesses was essential to lend credibility to Carroll's uncorroborated allegations, which did not emerge until decades after the alleged incident.

The other-acts evidence was an essential part of this attempt to bolster Carroll's uncorroborated testimony. Carroll's counsel repeatedly emphasized each of the alleged other acts in both opening and closing. *See* A.1446, 1460-62, 2585-87, 2623-25, 2631. In her opening statement, Carroll's counsel described in detail the anticipated testimony of both Leeds and Stoynoff. A.1461-62. Emphasizing the perceived significance of that testimony, counsel stated: "Three women, one clear pattern. ... This is what Donald Trump did to Natasha Stoynoff, what he did to Jessica Leeds, what he did to E. Jean Carroll." A.1462. As for the Access Hollywood tape, Carroll's counsel portrayed it as an antidote for the contention that "Ms. Carroll is lying, that she made this whole thing up." A.1460. Similarly, in closing argument, Carroll's counsel again described in detail the Leeds and Stoynoff testimony. A.2623-25; *see also* A.2585-86. Carroll's counsel also played portions of the Access Hollywood tape and repeatedly emphasized its contents. A.2585-86, 2631. Speaking of the other-acts evidence, counsel stated "[y]ou also heard that he did almost the exact thing he did to Ms. Carroll to other women. You heard him say it in his own words." A.2585.

Carroll's repeated emphasis on the other-acts evidence in her opening and closing demonstrates the significant impact that the evidence was intended to have—and did have—on the jury's deliberation. *See, e.g.*, *Zhong*, 26 F.4th at 558-59 (holding that erroneous admission of evidence was not harmless where "[t]he

government mentioned these events multiple times in its opening and its closing"); *United States v. Stewart*, 907 F.3d 677, 689-90 (2d Cir. 2018) (finding evidentiary error not to be harmless based on the significant emphasis placed on the evidence during opening and closing). "[W]hether or not the evidence was emphasized in arguments to the jury" constitutes an important "barometer" of whether erroneously admitted evidence impacted the verdict. *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir. 1996). As explained above, the other-acts evidence played a central role in Carroll's arguments to the jury and thus had a significant impact on the verdict. This conclusion is particularly true here, where the case turned almost entirely on the credibility of Carroll's account of the alleged incident. *Compare Smith v. Baltimore City Police Dep't*, 840 F.3d 193, 204 (4th Cir. 2016).

The nature of the other-acts evidence also demonstrates its likely impact on the jury. As Carroll now concedes on appeal, she intended the jury to view the other-acts evidence as evidence of President Trump's nonexistent propensity to commit sexual assault. *See* Carroll Br. at 29 (emphasizing the probative value of these incidents as "evidence of Trump's propensity to engage in sexual assault"). Unless evidence is properly admitted under Rules 413-415, proving a defendant's propensity to engage in misconduct is a plainly improper purpose. Other-acts evidence used improperly for propensity purposes is highly prejudicial and likely to influence a jury. *See, e.g.*, *United States v. Garcia*, 291 F.3d 127, 144-45 (2d Cir.

2002) (finding erroneous admission of 404(b) evidence not harmless, because "[i]t portrayed [defendant] as a convicted felon and a repeat drug dealer"); *Thomas*, 321 F.3d at 637 (finding erroneous admission of 404(b) to warrant reversal, because the evidence was used for propensity purposes). "When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can." *United States v. Richardson*, 597 F. App'x 328, 337 (6th Cir. 2015) (quotation omitted). The erroneous admission of the other-acts evidence was not harmless and thus necessitates a new trial.

## VII. The Erroneous Exclusion of Evidence Undercutting Carroll's Credibility Warrants Reversal.

Carroll defends the district court's exclusion of the transcript of Carroll's interview with Stoynoff on three bases. Carroll Br. at 43-45. Each of those arguments lacks merit. First, Carroll contends that "the transcript contained hearsay: namely, Stoynoff's statements." *Id.* at 44. A statement constitutes hearsay only if it is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Where a statement is not offered to prove the truth of the matter asserted, it does not constitute hearsay. *United States v. Song*, 436 F.3d 137, 139 (2d Cir. 2006). Here, President Trump did not seek to admit the transcript to prove the truth of the matter asserted. Stoynoff's allegations in the transcript, if true, would reflect poorly on

President Trump. There can be no plausible argument that President Trump sought to introduce the transcript with the hope that the jury would find the allegations to be true. *See United States v. Detrich*, 865 F.2d 17, 20 (2d Cir. 1988) ("Whether or not a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it."). Therefore, those statements do not constitute hearsay.

President Trump instead sought to introduce the transcript for non-hearsay purposes. Because the transcript reflects Carroll's efforts to pressure Stoynoff into changing her story in a way that would bolster Carroll's, the transcript constitutes compelling evidence of Carroll's bias, her improper motive, and her state of mind. Carroll's statements, as statements of a party opponent, do not constitute hearsay. *See* Fed. R. Evid. 801(d)(2)(A). "Statements are typically properly admitted for the non-hearsay purpose of providing context when admissible hearsay, such as opposing party statements, are intermixed in a conversation with statements that do not qualify for admission under a hearsay exception or exemption." WRIGHT & MILLER, FED. PRACTICE AND PROC. § 6721. Stoynoff's statements in the transcript "were not offered into evidence to prove the truth of the matter asserted; rather, they were introduced to put [Carroll's] statements into perspective and make them intelligible to the jury and recognizable as admissions." *United States v. Browne*, 834 F.3d 403, 416 n.10 (3d Cir. 2016) (quotation omitted). Thus, Stoynoff's statements in the transcript do not constitute hearsay.

Second, Carroll claims that the district court properly excluded the transcript under Rule 403. Carroll Br. at 44-45. But Rule 403 authorizes the exclusion of evidence only if "its probative value is substantially outweighed by" certain enumerated risks. Fed. R. Evid. 403. In her brief, Carroll does not identify *any* risk of undue prejudice or any other harm enumerated by Rule 403. *See* Carroll Br. at 44-45. Where there is no risk of prejudice or other harm, that non-existent risk cannot "substantially outweigh" the probative value of evidence, even if the probative value is slight—whereas here, it is weighty. *See Lewis v. Velez*, 149 F.R.D. 474, 482 (S.D.N.Y. 1993).

Third, Carroll claims that Rule 611(a) permitted the district court to exclude the transcript. Carroll Br. at 45. However, "Rule [611(a)] does not provide an independent ground for excluding otherwise-admissible evidence." *United States v. Colomb*, 419 F.3d 292, 297 (5th Cir. 2005). The district court could not have properly relied on Rule 611(a) to exclude the transcript. Carroll has not identified any basis for the district court to have excluded the Stoynoff interview transcript. Moreover, that error was not harmless. In a case that turned principally on the credibility of Carroll's uncorroborated account, evidence of her bias and improper motives very reasonably could have impacted the weight given by the jury to her testimony. *See Benn v. Greiner*, 402 F.3d 100, 106 (2d Cir. 2005) (finding exclusion of evidence harmless because the "case did not present a 'he said, she said'

scenario"). Furthermore, the error was not harmless because it was cumulative of several other errors restricting President Trump's ability to present highly probative evidence undermining Carroll's credibility—including the erroneous restrictions on (1) evidence of Carroll's politically motivated litigation funding, App.Br.41-44; (2) cross-examination about Carroll's public, false claim that she supposedly had President Trump's DNA on her dress, App.Br.48-50; (3) cross-examination about Carroll's failure to file a police report of the supposed incident, App.Br.50-52; and (4) cross-examination about Carroll's failure to seek surveillance footage of the incident, App.Br.52-53.

*  *  *

In sum, the verdict against President Trump was based on "irrelevant, prejudicial, and untested allegations of prior bad acts." *People v. Weinstein*, No. 24, 2024 WL 1773181, at *1 (N.Y. Apr. 25, 2024). "The synergistic effect of these errors was not harmless." *Id.* "The only evidence against the defendant was [Carroll's] testimony, and the result of the [district] court's rulings … was to bolster [her] credibility and diminish defendant's character before the jury." *Id.* "The remedy for these egregious errors is a new trial." *Id.*

## CONCLUSION

The Court should reverse the district court and remand for a new trial.

Dated: May 1, 2024

Todd Blanche
Emil Bove
BLANCHE LAW
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

Respectfully submitted,

*/s/ D. John Sauer*
D. John Sauer
JAMES OTIS LAW GROUP, LLC
13321 N. Outer Forty Rd.
Suite 300
St. Louis, Missouri 63017
(314) 562-0031
john.sauer@james-otis.com

*Attorneys for Defendant-Appellant*
*President Donald J. Trump*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 1, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Circuit Rule 32.1(a)(4) because it contains 6,922 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f), according to Microsoft Word.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Times New Roman font.

*/s/ D. John Sauer*