MENASHI, *Circuit Judge*, joined by PARK, *Circuit Judge*, dissenting from the denial of rehearing *en banc*:

The panel opinion embraced a series of anomalous holdings to affirm the judgment of the district court. This is a defamation case involving public figures, but the district court excluded evidence of the defendant's contemporaneous state of mind, ensuring that the plaintiff easily met the actual malice standard. The panel opinion neglected to justify that exclusion. But it upheld the admission of propensity evidence on the dubious theory that evidence of prior acts of sexual assault could "prove the *actus reus*," meaning whether the defendant acted in accordance with the propensity on a later occasion. On top of its evasion of the bar on propensity evidence, the panel opinion interpreted Rule 415 to override the requirement of Rule 403 to balance the probative value of evidence against its prejudicial effect, permitting stale witness testimony about a brief encounter that allegedly occurred forty-five years earlier. And it read Rule 413(d), which authorizes the admission of evidence that the defendant committed a "crime" of "sexual assault," to allow testimony about prior acts that were neither crimes nor sexual assaults.

These holdings conflict with controlling precedents and produced a judgment that cannot be justified under the rules of evidence that apply as a matter of course in all other cases. In my view, the same rules should apply equally to all defendants.[1] The panel opinion sanctioned striking departures from those rules to justify the irregular judgment in this case, but the consequences of those holdings will not be limited to a single defendant. I would rehear the case *en banc* to "maintain uniformity of the court's decisions" and to resolve these important questions in line with

---

[1] *See* Judiciary Act of 1789, ch. 20, § 8, 1 Stat. 73, 76, 28 U.S.C. § 453.

longstanding principles. Fed. R. App. P. 40(b)(2)(A). I dissent from the decision of the court not to do so.

# I

After E. Jean Carroll announced that she would sue him, President Trump said that the lawsuit was a "Hoax" and a "con job" that was "just like all the other Hoaxes that have been played on me for the past seven years." App'x 2858. To impose liability on Trump for defamation based on that statement, the jury needed to find that Carroll had proved, by clear and convincing evidence, that Trump had spoken with "actual malice," meaning he "made the statement knowing that it was false or acted in reckless disregard of whether or not it was true." *Carroll v. Trump*, 683 F. Supp. 3d 302, 320 (S.D.N.Y. 2023); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).[2]

A hoax, like a con job, is an act of fabrication intended to promote some belief. At trial, Trump sought to introduce evidence and to question Carroll about facts that could lead a reasonable observer to believe that the lawsuit was fabricated to advance a

---

[2] In a footnote, the district court dismissed the argument that the statement was a non-actionable expression of opinion, *see Carroll v. Trump*, 650 F. Supp. 3d 213, 226 n.57 (S.D.N.Y. 2023), even though that is how denials of wrongdoing in response to high-profile lawsuits have been treated in other cases, *see, e.g., Hill v. Cosby*, 665 F. App'x 169, 175-76 (3d Cir. 2016) (holding that a statement by Bill Cosby's attorney characterizing allegations as "unsubstantiated, fantastical stories" and "ridiculous" characterized the accuser as a liar but nevertheless was a non-actionable opinion); *Pecile v. Titan Cap. Grp., LLC*, 947 N.Y.S.2d 66, 67 (1st Dep't 2012) ("The statement, made to the media, that plaintiffs' suit was without merit constituted mere opinion, and was therefore nonactionable. The use of the term 'shakedown' in the statement did not convey the specificity that would suggest that the … defendants were seriously accusing plaintiffs of committing the crime of extortion.") (internal quotation marks, citation, and alteration omitted).

political agenda. Carroll had testified, for example, that she was disinclined to bring a lawsuit until a political opponent of President Trump had "crystallized" the stakes for her. App'x 1705. Despite her initial testimony that no one else was funding the lawsuit, Carroll eventually admitted that "one of the largest donors to the Democratic [P]arty"—a "vocal critic of [President Trump] and his political policies" who had "been funding groups to create a bulwark against Mr. Trump's agenda"—was financing the nonprofit that paid her legal fees. *Id.* at 1177 (internal quotation marks omitted). Carroll had "stated in the public" that she "had DNA" from the purported encounter with Trump, but in the litigation she never produced a DNA report and abandoned the effort to obtain a DNA sample. *Id.* at 468-69. She was asked on television if she "would consider bringing a rape charge" and said she would not do so because it would be "disrespectful" to victims of rape. *Id.* at 3027-28. She wrote in a published book that surveillance cameras captured Trump on the day of the incident, but she did not seek to obtain the footage to support her lawsuit. *Id.* at 1840-41. Prior to filing the lawsuit, Carroll sought out another witness, Natasha Stoynoff, and created a transcript of an interview that suggests Carroll was coaching her on what to say.[3]

This evidence makes it more likely that President Trump believed that the lawsuit had been concocted by his political opposition—and therefore that he was not speaking with actual

---

[3] Stoynoff denied that Trump had "grind[ed]" against her. App'x 1390-92. Carroll responded with statements such as "You shook your head and pushed back. Now think. Did he grind against you?," *id.* at 1392, and "[A]re you quite sure he didn't grind against you[?] … I think his pelvis was against you," *id.* at 1407.

malice when he called it a hoax.[4]  Indeed, Trump argued to the district court that the evidence "strikes at the heart" of "whether the instant action is a 'hoax' that was commenced and/or continued to advance a political agenda." App'x 1177. And he argued to our court that the district court improperly "precluded admissible evidence and cross-examination of witnesses on core issues relating to … President Trump's truth defense on Plaintiff's defamation claim." Appellant's Br. 40; *see also* App'x 553 (asserting the defense that "Defendant did not publish with actual malice").

The district court excluded the evidence and limited cross-examination even though it never addressed this argument. Our court affirmed the judgment without addressing the relevance of the excluded evidence to the issues of actual malice or President Trump's truth defense. The panel opinion considered whether the evidence was probative of "credibility" or "bias and motive," 124 F.4th at 171,[5]

---

[4]  Because the purported conduct underlying the lawsuit had allegedly occurred almost thirty years earlier and "lasted just a few minutes," *Carroll v. Trump*, 124 F.4th 140, 151 (2d Cir. 2024), at the time of his statement President Trump might not have even remembered any interaction—even assuming one occurred—let alone still regarded a lawsuit based on such long-ago events as a politically motivated hoax. Normally, the statute of limitations would have prevented such a suit, but New York suspended the statute of limitations and Carroll sued "nine minutes after the [suspension] became effective." 650 F. Supp. 3d at 218.

[5]  Those holdings were also questionable. The Supreme Court has said that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). Yet the district court restricted the defense's ability to make arguments and to ask questions about the political organization behind the lawsuit. *See* App'x 1487, 2032.

but it said nothing about how the excluded evidence "had significant probative value" with respect to "President Trump's truth defense," Appellant's Br. 43, and how the exclusion therefore undermined Trump's ability to establish that he did not speak with actual malice.

The actual malice standard famously raises "the plaintiff's burden of proof to an almost impossible level." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 771 (1985) (White, J., concurring in the judgment). In fact, "the actual malice standard has evolved from a high bar to recovery into an effective immunity from liability." *Berisha v. Lawson*, 141 S. Ct. 2424, 2428 (2021) (Thomas, J., dissenting from the denial of certiorari). Even if a speaker were to spread an obvious falsehood, a jury still cannot find actual malice unless "there is sufficient evidence" to establish "the speaker's subjective doubts about the truth of the publication." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001). [6] And evidence "may negative actual malice by showing that [the] defendant, though mistaken, had reasonable grounds for belief in the

---

The panel opinion concluded that such evidence had "minimal, if any probative value." 124 F.4th at 173. But "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives" is "especially 'important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be … motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.'" *Fuentes v. Griffin*, 829 F.3d 233, 247-48 (2d Cir. 2016) (emphasis omitted) (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

[6] *See also Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) ("[A]ctual malice 'relates to whether the defendant published without believing the truth of the publication.'") (quoting Robert D. Sack, Sack on Defamation § 5.5.1.1, at 5-68 (3d ed. 2005)).

truth of the charge contained in the publication." *Crane v. N.Y. World Telegram Corp.*, 308 N.Y. 470, 476 (1955).[7]

In this case, the evidence of the political organization behind the lawsuit would have made it more difficult to conclude that President Trump subjectively "entertained serious doubts as to the truth" of his description of the lawsuit as a hoax that was part of a larger organized political effort. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). But the district court prevented the jury from seeing that evidence without explaining why it did not undercut the defense that almost always provides "immunity from liability" even when the purportedly defamatory statements are less clearly part of political debates. *Berisha*, 141 S. Ct. at 2428 (Thomas, J.). The exclusion allowed Carroll to argue in rebuttal that "Trump needs you to believe that everyone is lying because they're in this grand conspiracy to take him down" but "there is just no evidence of that." App'x 2740-41. The panel opinion did not explain why the exclusion of that evidence did not undermine President Trump's truth defense—or otherwise why this case looks so different from the typical one in which the actual

---

[7] *See also Sharon v. Time, Inc.,* 103 F.R.D. 86, 94 (S.D.N.Y. 1984) ("[T]he same concerns which motivated the state courts' treatment of 'common law' actual malice seem applicable to the admissibility of evidence of past acts on the question of 'constitutional' actual malice as well. TIME may well be able to argue that its knowledge of General Sharon's prior 'vicious brutality toward Arab civilians' tends to negate any inference of actual malice because its knowledge of these past instances shows that TIME personnel could reasonably have believed the truth of the information published in the article involved in this case.").

malice standard applies. [8] I would reconsider this outcome-determinative question *en banc*.

## II

The exclusion of evidence relevant to actual malice becomes even more conspicuous when contrasted with the permissive approach of the panel opinion to the admission of character evidence under Rule 404(b).

The panel said that evidence of a prior bad act—the *Access Hollywood* tape—was "sufficiently similar" to "the conduct alleged by Ms. Carroll" that it was admissible "to show the existence of a pattern tending to prove the *actus reus*, and not mere propensity." 124 F.4th at 169. And the tape could "corroborate witness testimony" on the ultimate question of "whether the assault of Ms. Carroll actually occurred." *Id.* at 169-70. The panel's use of Latin terminology might obscure the import of this holding: If evidence of past conduct was introduced to prove or to corroborate the *actus reus*—that is, the

---

[8] The statement in support of the denial of rehearing *en banc* asserts that the issue of actual malice "was not raised" in this case because President Trump's "principal defense at trial was … that his statements about Plaintiff … were true." *Post* at 3. The appellate brief argued that the district court improperly "precluded admissible evidence and cross-examination of witnesses on core issues relating to … President Trump's truth defense on Plaintiff's defamation claim." Appellant's Br. 40. In the context of a defamation claim, a "truth defense" is precisely the argument that the defendant believed the statement was true and therefore did not speak with actual malice. But even if a "truth defense" were distinct from an "actual malice defense," the panel opinion still failed to explain why the evidence could be excluded despite its relevance to the truth defense. The panel opinion did not mention the "truth defense" at all. The evidence that tended to show that President Trump subjectively believed his description to be true also tended to show that the description was true.

ultimate question of whether he did it—that means the jury was invited to find that President Trump had committed the alleged acts because he had purportedly done something similar in the past. But "[e]vidence of any other crime, wrong, or act is *not admissible* to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (emphasis added).

The panel opinion erroneously sanctioned the admission of evidence of prior conduct not to prove identity or knowledge—or to corroborate any fact in dispute aside from the ultimate question of guilt or innocence—but to show that the defendant had a propensity for engaging in culpable conduct.

## A

In order to admit evidence of other acts "to establish a pattern of conduct," the "extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)). Such evidence may be admitted only when the other acts are "so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Benedetto*, 571 F.2d at 1249 (quoting McCormick on Evidence § 190, at 449 (2d ed. 1972)).[9] Only that way will the evidence be offered for a

---

[9] *See also* 1 McCormick on Evidence § 190.3 (9th ed. 2025) ("Uncharged crimes by the accused may be admissible when they are so nearly identical in method as to earmark them as the handiwork of the accused. The phrase

permissible purpose such as proving "preparation, plan," or "identity." Fed. R. Evid. 404(b)(2).

We have further explained that "other-crime evidence is only admissible for the purpose of corroboration if 'the corroboration is direct and the matter corroborated is significant,'" *United States v. Mohel*, 604 F.2d 748, 754 (2d Cir. 1979) (quoting *United States v. Williams*, 577 F.2d 188, 192 (2d Cir. 1978)), such as when a witness has testified that the defendant claimed to have "prior experience" at robbing banks, *Williams*, 577 F.2d at 192.

The danger against which these doctrines guard is that "[i]f defined broadly enough, *modus operandi* evidence can easily become nothing more than the character evidence that Rule 404(b) prohibits." *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996).[10] For that reason, courts "construe the *modus operandi* exception narrowly." *United States v. Griffith*, No. 89-CR-50581, 1992 WL 231087, at *4 (9th Cir. Sept. 18, 1992) (emphasis added).

In this case, there was no fact to which Carroll testified that the prior acts corroborated aside from the ultimate question of guilt. The panel opinion did not explain "how the challenged testimony corroborated any consequential testimony except insofar as it tended to show that appellant was a bad man likely to have committed the

---

of which authors of detective fiction are fond, modus operandi, may be employed. Much more is demanded than the mere repeated commission of crimes of the same class, such as serial murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.") (footnotes omitted).

[10] *See also United States v. Carroll*, 207 F.3d 465, 469 (8th Cir. 2000) ("[W]here [the] alleged *modus operandi* is really just [a] garden variety criminal act any inference of identification would be based on [the] forbidden inference of propensity.") (internal quotation marks omitted).

crimes charged in the indictment—a clearly impermissible use." *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978).[11] When the panel opinion said that the evidence of prior acts could show "a pattern tending to prove the *actus reus*"—and thereby "to confirm that the alleged sexual assault actually occurred," 124 F.4th at 169-70—it meant that a jury would be more likely to conclude that President Trump committed the alleged acts after it heard that he allegedly attempted a similar assault in the past.[12] That is propensity evidence, and it is not admissible under Rule 404(b). *See* Fed. R. Evid. 404(b)(1); *Mohel*, 604 F.2d at 755.

In fact, the district court recognized that it was admitting propensity evidence. It explained that "the evidence that Mr. Trump seeks to keep from the trial jury is to the effect that Mr. Trump allegedly has abused or attempted to abuse women other than Ms. Carroll in ways that are the comparable to what he allegedly did to Ms. Carroll. In other words, Ms. Carroll offers the evidence to show that Mr. Trump has a propensity for such behavior." *Carroll v. Trump*,

---

[11] *See United States v. Bailey*, 319 F.3d 514, 520 (D.C. Cir. 2003) ("To decide if Rule 404(b) evidence is admissible for corroboration, the court must determine what is being corroborated and how.").

[12] *But see United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) ("[T]here is no such corroboration here, except to the impermissible extent it suggests that, since Scott had been up to no good before, the detectives were right to think that he was up to no good again. … The government here has failed to show to how the recognition testimony was relevant to corroborating the detectives' other testimony."); *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019) ("[A]fter a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate purpose through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.") (internal quotation marks omitted).

660 F. Supp. 3d 196, 199 (S.D.N.Y. 2023) (emphasis omitted). The district court said that "Mr. Trump almost certainly is correct in arguing that the quoted statements on the *Access Hollywood* tape are offered by plaintiff for only one purpose: to suggest to the jury that Defendant has a propensity for sexual assault and therefore the alleged incident with Ms. Carroll must have in fact occurred." *Id.* at 201 (internal quotation marks and alteration omitted).

Because "the Federal Rules of Evidence ordinarily preclude propensity evidence," *id.*, the district court initially decided that the propensity evidence was admissible not under Rule 404 but pursuant to Rule 415. The district court later retreated from that decision with respect to the *Access Hollywood* tape, concluding that "reliance on Rule 415 was unnecessary because the video was offered for a purpose other than to show the defendant's propensity." 683 F. Supp. 3d at 314 n.20. The district court thought that the *Access Hollywood* tape amounted to "a confession" because "one of the women he referred to in the video could have been Ms. Carroll." *Id.* For that reason, the district court "did not include the *Access Hollywood* tape in its instructions to the jury on the evidence" admitted under Rule 415. *Id.*

The panel opinion could not defend the eccentric conclusion of the district court that the tape was admissible as a confession.[13] But in place of that erroneous conclusion the panel opinion adopted a rationale for admitting the propensity evidence under Rule 404 that just as clearly conflicts with applicable precedent.

---

[13] *See* 124 F.4th at 167 ("We are not fully persuaded by the district court's second basis for admitting the recording—that the tape captured a 'confession.'") (quoting 683 F. Supp. 3d at 326).

**B**

Even on its own terms, the argument of the panel opinion does not make sense. The *Access Hollywood* tape does not describe the purported pattern that the panel opinion identified. According to the panel, the tape reflected a pattern of conduct in which President Trump "engaged in an ordinary conversation with a woman he barely knew, then abruptly lunged at her in a semi-public place and proceeded to kiss and forcefully touch her without her consent." 124 F.4th at 169.

In the tape, Trump recounts an interaction with Nancy O'Dell, a co-host of *Access Hollywood*, with whom he went furniture shopping when she was visiting Palm Beach. At some unspecified time and place after the shopping excursion, he "moved on her" but "couldn't get there." App'x 2883. Then later in the tape he states that "I'm automatically attracted to beautiful" women and will "start kissing them" because "when you're a star they let you do it." *Id.*

There is no indication in the tape that this was a woman he barely knew, that he was engaged in "ordinary conversation" before he "abruptly lunged at her," that he "lunged" at her at all, that he did so in a "semi-public place," or that he forcefully touched her without her consent. On this last point, the panel opinion at least acknowledged that the tape specifies that "they let you do it" but the panel concluded that the jury could still determine that some conduct was nonconsensual. *See* 124 F.4th at 167-68. The panel opinion did not explain how the *Access Hollywood* tape reflects the other features of the purported pattern.

Even if the tape had reflected the purported pattern—of conversing in a semi-public place and then making an unwanted advance—it still would qualify as propensity evidence. Our

"inclusionary approach" to Rule 404(b) "does not invite the government 'to offer, carte blanche, any prior act of the defendant in the same category of crime.'" *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002)). Evidence of prior acts "is admissible" to "prove other like crimes by the accused" only when those crimes are "so nearly identical in method as to earmark them as the handiwork of the accused." *Benedetto*, 571 F.2d at 1249. We demand "much more … than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts," and require that the conduct "be so unusual and distinctive as to be like a signature." *Id.*

The *Access Hollywood* tape does not describe the defendant making an unwanted advance with a new acquaintance in a semi-public place. But even if it did, that conduct would not be "so unusual and distinctive as to be like a signature." *Id.* And even if that indistinctive conduct amounted to a *modus operandi*, it still would qualify as propensity evidence because it was not offered for a permissible purpose such as proving "preparation, plan," or "identity." Fed. R. Evid. 404(b)(2). As in other cases in which we have held the admission of prior acts evidence to be impermissible, "identity had not been placed in issue here." *O'Connor*, 580 F.2d at 42. The trial focused on whether an assault had occurred; if it had, there was no question about the identity of the assailant.[14]

If the panel opinion remains a precedent of our court, a future plaintiff or the government will be able to introduce evidence of prior

---

[14] *See Benedetto*, 571 F.2d at 1249 ("Defendant did not claim that he took the money from the four companies named in the indictment innocently or mistakenly. He claimed that he did not take the money at all. Knowledge and intent, while technically at issue, were not really in dispute.").

conduct in which a defendant went on a mundane outing and sometime thereafter made a sexual advance. If that generic description of misconduct is "so unusual and distinctive," *Benedetto*, 571 F.2d at 1249, that it may be introduced "to prove the *actus reus*, and not mere propensity," *Carroll*, 124 F.4th at 169, then the panel opinion will have dramatic effects with respect to a range of alleged conduct. Such a low bar for the distinctiveness of prior conduct under Rule 404(b) effectively eliminates the prohibition on propensity evidence. I would rehear the case to reaffirm the precedents that establish the prohibition.

## III

Our court has decided that Rules 413-15 create "an exception to the general 'ban against propensity evidence.'" *United States v. Schaffer*, 851 F.3d 166, 177 (2d Cir. 2017) (quoting *United States v. Enjady*, 134 F.3d 1427, 1432 (10th Cir. 1998)). We have done so based largely on legislative history that purportedly shows that, "[i]n passing Rule 413, Congress considered 'knowledge that the defendant has committed rapes on other occasions to be critical in assessing the relative plausibility of sexual assault claims and accurately deciding cases that would otherwise become unresolvable swearing matches.'" *Id.* at 178 (quoting *Enjady*, 134 F.3d at 1431 (quoting in turn 140 Cong. Rec. S12990-01, S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Robert Dole))). It is a questionable method of interpretation to employ legislative history to override the express requirements of the rules, but at least we have identified a possible textual basis for the same conclusion.[15]

---

[15] *See Schaffer*, 851 F.3d at 177-78 ("Unlike Federal Rule of Evidence 404(b), which allows prior bad act evidence to be used for purposes *other than* to

The panel opinion, however, extended the reliance on legislative history to exempt Rules 413-15 even from the normal requirements of Rule 403. We have said that "[b]oth Rule 609 and Rule 403 … oblige the trial court to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment." *United States v. Jacques*, 684 F.3d 324, 327 (2d Cir. 2012) (quoting *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980)). As a result, when testimony concerns events that are remote in time, that "remoteness reduces the reliability of testimony as to the events' occurrences." *Id.*

We have specifically held that Rule 403 applies to "evidence offered under Rule 414," which "does not mandate the admission of the evidence or eliminate the need for the court to conduct the analysis required under Rule 403." *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997). In this case—which involved witness testimony about events that purportedly occurred in 1978 and 2005— one would expect Rule 403 to require the standard evaluation of the probative value of the evidence in light of its remoteness.

But the panel opinion held that it did not. The panel announced that it would "apply Rules 413-415 in a manner that effectuates Congress's intent," and it followed the district court in recounting that "[o]ne of the original sponsors of the legislation proposing Rules 413-415 explained that 'evidence of other sex offenses by the defendant is often probative and properly admitted, *notwithstanding very substantial lapses of time in relation to the charged offense or offenses*.'"

---

show a defendant's propensity to commit a particular crime, Rule 413 permits the jury to consider the evidence 'on any matter to which it is relevant.' In other words, a prosecutor may use evidence of prior sexual assaults precisely to show that a defendant has a pattern or propensity for committing sexual assault.").

124 F.4th at 170 (emphasis in original) (quoting 140 Cong. Rec. 23603 (1994) (remarks of Rep. Molinari)). Based on "this express intent" of an individual legislator, the panel opinion concluded that "the time lapse between the alleged acts does not negate the probative value of the evidence of those acts to the degree that would be required to find an abuse of discretion in admitting them for the jury's consideration." *Id.*

## A

This approach—of relying on statements in the congressional record to alter the effect of the rules—represents a departure from how the rules are normally applied. The Supreme Court has told us that "[t]here is no need to consult extratextual sources when the meaning of a statute's terms is clear" and that "extratextual sources" may not "overcome those terms." *McGirt v. Oklahoma*, 591 U.S. 894, 916 (2020). As in statutory interpretation, "[w]e give the Federal Rules of Civil Procedure [and of Evidence] their plain meaning, and generally with them as with a statute, when we find the terms unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (internal quotation marks, alterations, and citation omitted).[16] In applying the plain meaning of the rules, we cannot override the text with expressions of legislative intent. "Like a judicial opinion and like a statute, the promulgated Rule says what it says, regardless of the intent of its drafters." *Tome v. United States*, 513 U.S. 150, 168 (1995) (Scalia, J., concurring in part and concurring in the judgment). "The text of a rule thus proposed and

---

[16] *See also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-41 (1991) ("As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."); *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("[W]e must also accord the rules their plain meaning.").

reviewed limits judicial inventiveness," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), because "[w]e have no power to rewrite the Rules by judicial interpretations," *Harris v. Nelson*, 394 U.S. 286, 298 (1969).

We and other courts have emphasized that the Rule 403 analysis is especially important—and, if anything, should be *more* rigorous—when evidence is offered pursuant to Rules 413-15. "[T]he protections provided in Rule 403, which we … explicitly hold apply to evidence being offered pursuant to Rule 413, effectively mitigate the danger of unfair prejudice resulting from the admission of propensity evidence in sexual-assault cases" because "[w]here in a particular instance the admission of evidence of prior sexual assaults would create 'undue prejudice' and threaten due process, district courts can and should, by operation of Rule 403, exclude that evidence and ensure the defendant's right to a fair trial." *Schaffer*, 851 F.3d at 180. "Because of the inherent strength of the evidence that is covered by Fed. R. Evid. 415, when putting this type of evidence through the Fed. R. Evid. 403 microscope, a court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268-69 (9th Cir. 2000) (quoting *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).

Appellate courts have emphasized that "a court must perform the *same* 403 analysis that it does in any other context … with careful attention to both the significant probative value and the strong prejudicial qualities inherent in all evidence submitted under 413." *Guardia*, 135 F.3d at 1330 (emphasis added).

The panel opinion, by contrast, held that the Rule 403 analysis must be *different* and *weaker* when evidence is offered pursuant to

17

Rules 413-15. In fact, the panel opinion did not conduct the remoteness analysis that Rule 403 requires at all. The panel considered only whether "the time lapse *between the alleged acts*" could "negate the probative value of the evidence of those acts." 124 F.4th at 170 (emphasis added).[17] But President Trump argued that Rule 403 required the exclusion of testimony based on the remoteness in time between the underlying incident and the testimony describing the incident.[18] That is the whole point of the remoteness analysis under Rule 403: Because memories fade and evidence is lost, prior acts may be "too remote in time to have any probative value"; even if testimony about those events "would be admissible under Rule 414," the "probative value is substantially outweighed by the resulting danger of unfair prejudice to [the defendant] in having to defend allegations so remote in time." *Larson*, 112 F.3d at 602 (describing the reasoning of the district court in excluding testimony that "would have described acts that occurred 'more than 21 years ago'").

---

[17] The statement suggests that the "full context" of the panel opinion would show that it "properly analyzed … the lapse in time between the alleged acts and the testimony." *Post* at 9 n.8. It does not. The panel opinion quoted legislative history addressing the probative value of "evidence of other sex offenses by the defendant … *notwithstanding very substantial lapses of time in relation to the charged offense or offenses*." 124 F.4th at 170 (emphasis in original). It concluded that "the time lapse *between the alleged acts* does not negate the probative value of the evidence of those acts" and cited three cases in support of that proposition. *Id.* (emphasis added). None of those cases sanctioned the admission of testimony from forty-five years before trial. One held it was appropriate to exclude testimony that "would have described acts that occurred more than 21 years ago." *Larson*, 112 F.3d at 602 (internal quotation marks omitted).

[18] *See* Appellant's Br. 37 ("The remoteness of the alleged events that Leeds and Stoynoff described undercut the relevance and reliability of this evidence.") (internal quotation marks omitted).

In this case, the district court admitted testimony about events that occurred as much as forty-five years before the testimony was delivered at trial—over objections that those events were too remote under Rule 403. The panel opinion did not even address that argument, compounding its error of creating a novel exception to Rule 403.

## B

In fact, there is every reason to believe that testimony in this case would have failed the standard Rule 403 analysis if either the district court or the appellate panel had been willing to apply it. Jessica Leeds testified that, approximately forty-five years earlier, she sat next to President Trump on an airplane, and he "grabbed [her] with his hands, tried to kiss [her], grabbed [her] breasts, and pulled [her] towards him." App'x 2131. She said that the entire encounter lasted "just a few seconds." *Id.* at 2103. The district court did not address Trump's argument that the Leeds testimony was inadmissible under Rule 403 because it was "subject to memory distortion" given that "the alleged events occurred so long ago." *Id.* at 80. Instead, the district court invoked the legislative history behind Rule 415 to conclude that the normal "limitations of Rule 403" do not apply to evidence admitted pursuant to Rule 415. 660 F. Supp. 3d at 208; *see also id*. at 208 n.30 (citing 140 Cong. Rec. at S12990 (statement of Sen. Robert Dole)). Rule 403, according to the district court, "must be applied with due regard for Congress's deliberate failure to impose temporal limits." *Id.* at 208.

When courts apply the normal rules of evidence, Rule 403 excludes testimony that has "become 'too attenuated' to be relevant or too remote to render the witness's memory reliable." *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (quoting *Larson*, 112 F.3d at

605). Leeds could not remember the year in which the airplane encounter occurred. She said it was "I think 1979 or '8." App'x 2098. When asked if she could identify a more precise date so that President Trump might be able to check his travel records, she said that she "really can't" because "[i]t's too far" in the past. *Id.* at 2130. She could not even remember the city in which she boarded the airplane. *See id.* at 2098.

We have never held that Rule 403 permits witness testimony based on an incomplete memory of a brief interaction that occurred forty-five years earlier. We have suggested that a district court properly *excluded* testimony—which was otherwise admissible under Rule 414—that "would have described acts that occurred more than 21 years ago" and therefore concerned events "too remote in time to have any probative value" and that would create a "danger of unfair prejudice to [a defendant] in having to defend allegations so remote in time." *Larson*, 112 F.3d at 602 (internal quotation marks omitted). In that case, Rule 403 required the exclusion of the testimony because the remoteness of the underlying events meant that the risk of unfair prejudice outweighed the probative value. *Id.* At the same time, we said that a district court could permissibly allow testimony that "covered events 16-20 years prior to trial" based on "strong indicators of the reliability of the witness's memory," such as "the traumatic nature of the events and their repetition over a span of four years." *Larson*, 112 F.3d at 605.

In this case, there were no strong indicators that the witness's memory was reliable. The events were not repeated over the course of four years but allegedly occurred within a few seconds on a flight coming from somewhere the witness could not remember in a year the witness could not remember but that was over four decades earlier. The lack of a full memory of the events created prejudice

20

because Trump could not introduce evidence of his whereabouts at that time or challenge the characterization of his conduct in the half-remembered encounter.

We have upheld the exclusion under Rule 403 of testimony about conduct "alleged to have occurred almost, or over, twenty-five years ago" because "[s]uch remoteness reduces the reliability of testimony as to the events' occurrences" and "the danger of unreliability is somewhat enhanced by the lack of a relatively contemporaneous adjudication." *Jacques*, 684 F.3d at 327. In this case, the remoteness was much greater and there was no contemporaneous adjudication.

If the district court had conducted the analysis that Rule 403 requires, it either would have excluded the testimony or it would have issued a decision at the outer boundary of when remote testimony has been put before a jury. *Cf. Doe v. Lima*, No. 15-CV-2953, 2020 WL 728813, at *6 (S.D.N.Y. Feb. 13, 2020) (excluding evidence of "robbery offenses" that "occurred more than 30 years ago" because "none of the prior offenses satisfies Rule 403"). But the district court did not even conduct that analysis, and our court has now excused the district courts in our circuit from applying the analysis that Rule 403 normally requires to evidence admitted under Rules 413-15. The panel opinion conflicts with our precedent holding, "like the Eighth, Ninth, and Tenth Circuits before us, that the protections provided in Rule 403 … apply to evidence being offered pursuant to Rule 413" and must be enforced to "mitigate the danger of unfair prejudice resulting from the admission of propensity evidence in sexual-assault cases." *Schaffer*, 851 F.3d at 180.

This is an important protection. "Exclusion of proof of other acts that are too remote in time caters principally to the dual concerns

for relevance and reliability." *Larson*, 112 F.3d at 605. Rule 403 requires an evaluation to address "these concerns" that "must be made on a case-by-case basis to determine whether the significance of the prior acts has become too attenuated and whether the memories of the witnesses has likely become too frail." *Id.* I would rehear this case *en banc* to restore our precedent holding that Rule 403 requires this evaluation and to remand to the district court to conduct it.

## IV

The panel opinion treated Rules 413-15 anomalously in another way. The district court recognized that "[i]n order to be admissible under Rule 415, evidence of a sexual assault of a person other than the plaintiff must also have been a federal or state crime." 660 F. Supp. 3d at 203 n.12. Rule 413(d) defines "sexual assault" for the purposes of Rules 413 and 415 as a "crime under federal law or under state law … involving" (1) "any conduct prohibited by 18 U.S.C. chapter 109A," (2) "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus," (3) "contact, without consent, between the defendant's genitals or anus and any part of another person's body," (4) "deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person," or (5) "an attempt or conspiracy to engage in" the enumerated conduct. Fed. R. Evid. 413(d).

The plain language of Rule 413(d) provides that a crime of sexual assault must involve the violation of a statute that criminalizes conduct constitutive of sexual assault. "When choosing among interpretations of a statutory definition, the 'ordinary meaning' of the 'defined term' is an important contextual clue." *Delligatti v. United States*, 145 S. Ct. 797, 808 (2025) (quoting *Bond v. United States*, 572 U.S. 844, 861 (2014)). In Rule 413(d), the defined term is "sexual assault,"

so we must "prefer interpretations" of the definition that "encompass prototypical '[sexual assaults]' over those that do not." *Id.* If the definition "is to have a reasonable relationship to the term it defines, it must encompass cases where the offender" engages in conduct that violates a federal or state law criminalizing (1) the sexual misconduct enumerated in Rule 413(d)(1)-(4), or (2) the attempts or conspiracies to violate such laws that Rule 413(d)(5) identifies. The words "attempt" and "conspiracy," moreover, are terms of art referring to legal standards. For that reason, the terms have an established legal meaning.[19]

The panel opinion, however, held that the federal or state law "crime" of "sexual assault" need not "involv[e]" sexual assault at all. The panel said that the testimony concerning the airplane encounter was admissible under Rule 415 because "[i]n 1978 and 1979, just as it is now, it was a federal crime to commit a simple assault on an airplane. And on this record a jury could have reasonably found that Mr. Trump committed a simple assault." 124 F.4th at 160 (citing 18 U.S.C. § 113(e) (1976)). The panel opinion concluded that "a simple assault on an airplane" qualified as a sexual assault under Rule 413(d) because a jury could conclude that the alleged simple assault—which did not involve the touching of another's sexual organs—in fact involved an *attempt* to engage in a sexual touching. 124 F.4th at 160. In this way, the attempted sexual assault on which the panel relied to

---

[19] *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012) ("Sometimes context indicates that a technical meaning applies. … And when the law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning."); *see also Hall v. Hall*, 584 U.S. 59, 73 (2018) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.") (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

23

satisfy Rule 413(d) was a completed simple assault. The panel opinion did not require a showing that the "attempt" under Rule 413(d)(5) qualified as a "crime under federal law or under state law" that criminalizes the attempted sexual assault.

Thus, even if a defendant did not commit an attempted sexual assault under any federal or state law, the panel opinion would still conclude that the defendant committed a "sexual assault" under Rule 413(d) based on speculation that he might have wanted to reach for other body parts while committing a simple assault.

That is a bizarre way to apply the definition of "sexual assault" in Rule 413(d). It means that a crime that does not prototypically involve the enumerated conduct nevertheless qualifies as a sexual assault. And even though Rule 413(d)(5) identifies the legal standard of attempt, the panel opinion allowed conduct which does not meet that standard to qualify as an attempted sexual assault.

## A

Under no reasonable understanding of the definition of "sexual assault" in Rule 413(d) would committing a simple assault under § 113(e) qualify as a sexual assault. The conduct that § 113(e) proscribed did not involve the enumerated conduct defining a sexual assault crime in Rule 413(d). The district court did not rely on this "simple assault" theory,[20] and the panel opinion provided no explanation for introducing its counterintuitive conclusion that a simple assault on an airplane qualifies as a "crime" of "sexual assault" under the Federal Rules of Evidence.

---

[20] *See* 124 F.4th at 161 n.13 ("The district court did not base its decision to admit the Leeds testimony on these specific statutes.").

24

Neither the panel opinion nor the underlying trial that it approved can be reconciled with the plain language of the federal rules. The district court admitted the Stoynoff testimony and the Leeds testimony pursuant to Rule 415. The district court did not rely on Rule 415 to admit the *Access Hollywood* tape, but the panel opinion held that it could have. Yet none of this evidence plausibly qualifies as "evidence that the party committed any other sexual assault" under the rule. Fed. R. Evid. 415(a).

The panel opinion and the district court admitted evidence that—those courts speculated—might have been an "attempt" to engage in the sort of conduct Rule 413(d) describes. But Rule 415 does not allow the admission of evidence of a freestanding "attempt" to engage in such conduct. The evidence must show that the party "committed" a "crime under federal law or under state law … involving" an "attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4)." Fed. R. Evid. 415(a), 413(d). In other words, the evidence must show an attempt that is itself the commission of a crime.[21] Neither the panel opinion nor the district court required the evidence to show the commission of a crime involving attempted sexual assault.

The statement suggests that other circuits "have rejected precisely the argument that the dissent advances." *Post* at 4. But the

---

[21] The statement insists that an "attempt" under Rule 413(d)(5) does not itself need to be a crime. *Post* at 6. But that ignores the language of Rule 413(d) providing that the enumerated conduct in all five subsections, including an attempt, must be a "crime under federal law or under state law." As the statement itself explains, "[t]o qualify as a sexual assault under Rule 413(d)," the prior conduct "must be (i) 'a crime under federal law or under state law' that (ii) involves any conduct matching at least one of five listed descriptions." *Id.* at 4 n.3 (citing Fed. R. Evid. 413(d), 413(d)(1)-(5)).

cases it cites all address prior charged crimes that prototypically—
and did—involve criminal sexual assault.[22] Here, the panel opinion
did not require that the prior uncharged conduct shown to the jury
involve a criminal sexual assault. The statement invokes a familiar
objection to the "categorical approach" to classifying criminal
conduct according to enumerated elements—an approach on which
this dissent does not rely. That approach sometimes leads to the
counterintuitive result that a crime which prototypically involves the
use of force will not be considered a "crime of violence" based on the
possibility that its elements could be met without the use of force. *See*

---

[22] *See United States v. Ahmed*, 119 F.4th 564, 567-68 (8th Cir. 2024) (holding,
when the defendant was indicted for kidnapping two women for "sexual
gratification," that for Rule 413 "to apply, Ahmed need not have been
charged with any particular offense. What matters is whether the offense
he was charged with involved conduct that Rule 413(d) deems to be sexual
assault. Ahmed's kidnapping offenses did involve that kind of conduct.");
*United States v. Foley*, 740 F.3d 1079, 1086-87 (7th Cir. 2014) ("Foley was
charged with child pornography production, distribution, and possession
under 18 U.S.C. chapter 110, as well as transporting a minor across state
lines to engage in a sex act under 18 U.S.C. § 2423(a) …. [T]he government
explained that Foley's child pornography crimes that were charged under
18 U.S.C. chapter 110 involved his molestation of Minor Male A on several
occasions. For purposes of its Rule 413 analysis, the district court found that
although Foley was charged under 18 U.S.C. chapter 110, his crimes
involved conduct that was also prohibited under 18 U.S.C. chapter 109A, so
his crimes would satisfy the first definition of 'sexual assault' under Rule
413(d)(1)."); *United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010)
("Batton is charged with knowingly transporting J.D. across state lines with
the intent of engaging in illicit sexual activity. The illicit sexual activities
involv[ed] genital contact …. Moreover, the charged sexual activity also
meets Rule 413's internal definition of sexual assault."); *United States v.
Blazek*, 431 F.3d 1104, 1108 (8th Cir. 2005) ("At trial … the government
introduced evidence of his 1997 conviction for Abusive Sexual Contact with
a Minor in violation of 18 U.S.C. § 2244(a)(1).").

26

*post* at 5-6; *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (Park, J., concurring). The problem here, however, is that the approach of the panel opinion generates counterintuitive results in the opposite direction: crimes that neither prototypically nor actually involved criminal sexual assault still qualify as admissible evidence of sexual assault.

## B

The district court admitted the Stoynoff testimony based on its conclusion that the testimony qualified as evidence of a sexual assault under Rule 415. The district court provided two reasons for that conclusion. In its view, the Stoynoff testimony described conduct that a reasonable jury could find was (1) a crime under Florida law, and (2) an attempt to engage in the sexual conduct that Rule 413(d)(2) describes. *See* 660 F. Supp. 3d at 205-07. Neither conclusion is defensible.

Stoynoff testified that President Trump put "his hands on my shoulders and he pushe[d] me against the wall and start[ed] kissing me, holding me against the wall" in a room at Mar-a-Lago. App'x 2350. The district court decided that the testimony described an attempt to violate the Florida sexual battery statute. *See* 660 F. Supp. 3d at 205 n.19 (citing Fla. Stat. § 794.011(5)(b)).[23] But Stoynoff never mentioned an attempt to touch her genitals. The district court nevertheless concluded that the alleged conduct could qualify as an

---

[23] *See also* 660 F. Supp. 3d at 205 ("Florida law defines 'sexual battery' as 'oral, anal, or female genital penetration by, or union with, the sexual organ of another or the anal or female genital penetration of another by any other object.'") (quoting Fla. Stat. § 794.011(1)(j)).

attempted sexual battery under Florida law.[24]  But the Florida courts disagree. In *Rogers v. State*, the Florida Supreme Court reversed a conviction for attempted sexual battery in which an armed defendant grabbed the victim's breast and ordered her to remove her clothes. The Florida Supreme Court explained that "these acts do not rise to the level of an overt act toward the commission of a sexual battery." 660 So. 2d 237, 241 (Fla. 1995). The Florida courts have warned that evidence of "improper touching," even on "multiple occasions," does not establish an attempted sexual battery. *Ellis v. State*, 754 So. 2d 887, 887 (Fla. 5th D.C.A. 2000). If such conduct were sufficient to establish attempt, "every case of improper touching can be prosecuted as an attempted sexual battery." *Id.* at 888.

Even the case on which the district court relied for the attempt standard under Florida law explains that "[t]he act referred to is 'an overt act' and 'must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime.'" *Lockley*, 632 F.3d at 1244 n.6 (citation omitted) (quoting *Morehead v. State*, 556 So. 2d 523, 524 (Fla. 5th D.C.A. 1990)). Under that standard—rather than the truncated version that appears in the district court opinion—the conduct Stoynoff described does not amount to an attempted sexual battery.

The district court decided in the alternative that the Stoynoff testimony described a violation of the Florida general battery statute because "Mr. Trump's alleged kissing and groping of Ms. Stoynoff"

---

[24] *See* 660 F. Supp. 3d at 205 ("[A]ttempt under Florida law requires the defendant to commit 'any act toward the commission of such [crime], but fails in the perpetration or is intercepted or prevented in the execution thereof.'") (quoting *United States v. Lockley*, 632 F.3d 1238, 1245 n.6 (11th Cir. 2011) (quoting in turn Fla. Stat. § 777.04(1))).

amounted to touching her "against her will." 660 F. Supp. 3d at 205.[25] And Trump might have acted to commit that battery "for the purpose of committing a state crime involving contact, without consent, between any part of Mr. Trump's body and Ms. Stoynoff's genitals." 660 F. Supp. 3d at 205 (internal quotation marks and alterations omitted). But a violation of the general battery statute is not plausibly "a crime under federal law or under state law" of "sexual assault." Fed. R. Evid. 413(d). And despite the requirement of Rules 415 and 413(d) that evidence of an "attempt" must show the commission of a "crime under federal law or under state law"—in other words, an attempted sexual assault crime—the district court endorsed the theory that a completed general battery might also serve as a freestanding "attempt" to engage in the type of conduct that Rule 413(d) describes.[26]

---

[25] *See* 660 F. Supp. 3d at 205 ("It is a crime under Florida law 'actually and intentionally to touch or strike another person against the will of the other.'") (alterations omitted) (quoting Fla. Stat. § 784.03(1)(a)).

[26] To satisfy that questionable theory, the district court engaged in further questionable reasoning. The district court noted Stoynoff's pre-trial statement that Trump was "lying when he denied 'groping' her without her consent—in other words, that he 'groped' her." 660 F. Supp. 3d at 205. But the district court acknowledged that "Rule 413(d) is not that broad" as to allow evidence of any "groping" because the rule requires contact "only with particular parts of the anatomy." *Id.* at 206. The district court nevertheless concluded that a jury could consider evidence of *other prior acts* to supplement Stoynoff's testimony: "the *Access Hollywood* tape and the testimony of Ms. Leeds are additional evidence that a jury would be entitled to consider in deciding whether to infer that the ultimate goal of Mr. Trump's alleged actions with Ms. Stoynoff was to bring his hands or other parts of his anatomy into contact with Ms. Stoynoff's most private [parts]." *Id.* Thus, even under the district court's tendentious interpretation of Rule 415, the Stoynoff testimony still did not qualify as "evidence that

29

The panel opinion upheld the admission of the Stoynoff testimony based on the district court's theory that the testimony described "a crime under Florida law" and a separate, freestanding "attempt, under Rule 413(d)(5), to engage in conduct described in Rule 413(d)(2)." 124 F.4th at 163. It bears reiterating that Rule 413(d) does not allow the admission of evidence that a court speculates could be an attempt to engage in the conduct the rule describes. The evidence must show an attempt that is itself the commission of a crime. Nevertheless, the panel opinion indulged in speculation—unmoored from the elements of *any* crime—about whether a jury could have found "that Mr. Trump intended to bring his body into contact with Ms. Stoynoff's genitals and that he took substantial steps toward doing so." 124 F.4th at 163.

In addition to that theory, the panel opinion held that the Stoynoff testimony could also have been admitted as an attempt to violate 18 U.S.C. § 2244(b)—that is, "to 'knowingly engage in sexual contact with another person without that other person's permission.'"

---

the party committed any other sexual assault," Fed. R. Evid. 415, without supplementing it with additional evidence of prior acts. That approach to Rule 415 was doubly erroneous: Before Rule 415 allows the district court to place evidence of a prior sexual assault before the jury, the district court must determine whether a hypothetical reasonable jury could conclude that the evidence shows the commission of a crime of sexual assault. In conducting that gate-keeping analysis, the district court may not assume—in a circular fashion—that the hypothetical jury has seen all the other evidence before the actual jury. In effect, the district court determined that the jury could rely on evidence of the charged conduct to infer that evidence of prior conduct could be admitted as evidence to prove the charged conduct.

124 F.4th at 164 (alteration omitted) (quoting 18 U.S.C. § 2244(b)).[27] But that theory does not make sense either.

At trial, Stoynoff retreated from her pre-trial statement about having been "groped." *See* App'x 2348-53. She instead testified that Trump put "his hands on my shoulders." *Id.* at 2350. Section 2244(b) refers to contact involving another person's "genitalia, anus, groin, breast, inner thigh, or buttocks." 18 U.S.C. § 2246(3). It does not mention shoulders. And we know from the federal case law that touching the shoulders and kissing does not amount to a "substantial step" toward unwanted sexual contact. "Generally, courts have held that mere solicitation and fully clothed but sexually suggestive acts are insufficient to constitute attempted 'sexual acts.'" *United States v. Blue Bird*, 372 F.3d 989, 993 (8th Cir. 2004). The Eighth Circuit has even held that there was no attempted sexual contact when the defendant "held [the victim's] hand, rubbed her stomach, pushed her t-shirt up to just below her breasts, kissed her, and said, 'Let's do it.'" *Id.* at 992. Acts that were still more suggestive have been held not to qualify.[28]

The panel opinion in this case, however, held that a jury could reasonably conclude that a defendant committed the crime of attempted abusive sexual contact under § 2244 when he touched a

---

[27] *See also* 124 F.4th at 164 (noting that federal law defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person") (quoting 18 U.S.C. § 2246(3)).

[28] *See, e.g.*, *United States v. Hayward*, 359 F.3d 631, 640 (3d Cir. 2004) ("The ambiguous and equivocal act of pushing a victim's head toward one's clothed penis does not meet any definition of a 'sexual act' as defined in 18 U.S.C. § 2246(2) and does not constitute a substantial step toward achieving 'contact between the mouth and the penis' under 18 U.S.C. § 2246(2)(B).").

31

woman's shoulders, kissed her against a wall, and—after desisting—made a suggestive remark. *See* 124 F.4th at 163-64. That decision is an outlier among reported federal cases.

Even the same district judge who presided over the trial in this case has previously recognized that testimony about such conduct does not qualify as admissible evidence of sexual assault under Rule 415. In another case involving alleged sexual misconduct, *Rapp v. Fowler*, the plaintiff sought to introduce testimony that the defendant had, on a prior occasion, sat next to a 16-year-old and put his hand "on my leg … about two inches above my knee." No. 20-CV-9586, 2022 WL 5243030, at *2 (S.D.N.Y. Oct. 6, 2022) (Kaplan, J.). The district court explained:

> The incident, assuming it occurred, is not said to have involved any "touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks." It therefore was not a "sexual contact" within the meaning of Section 2246(3). It thus was not a "sexual contact" for purposes of chapter 109A and not proscribed by virtue of Section 2244. The [proposed] testimony accordingly is not evidence of an "other sexual assault" within the meaning of Rule 415(a), regardless of any question of intent. *It is not admissible under Rule 415(a)*.

*Id.* (emphasis added). In that case, the district court did not indulge in speculation that the actions might be "suggestive of a plan" eventually to reach the genitals—or even the inner thigh. 660 F. Supp. 3d at 206. And the district court did not consider whether the conduct might qualify as a general battery that, in conjunction

with such a plan, could satisfy Rule 415.[29]  Those novel theories have been applied only in this outlier case.

## C

The district court determined that the Leeds testimony described a sexual assault because the account "reasonably could be regarded as describing unconsented-to sexual contact by Mr. Trump and also as an attempt by Mr. Trump to bring at least his hands, and perhaps other parts of his body, into contact with Ms. Leeds' genitalia, in each case in violation of federal law." 660 F. Supp. 3d at 203. According to the district court, the conduct "therefore satisfies at least Rule 413(d)(2) and 413(d)(5) and thus Rule 415." *Id.* at 203-04. The district court said that the purported conduct on the airplane would violate 49 U.S.C. § 46506, which prohibits "sexual contact" on an airplane. *See id.* at 203 n.12.

The panel opinion did not even cite 49 U.S.C. § 46506. It instead decided that the conduct on the airplane was (1) a simple assault under 18 U.S.C. § 113(e), and (2) "an 'attempt' under Rule 413(d)(5) to engage in the conduct described in Rule 413(d)(2)." 124 F.4th at 160. But the district court had not even mentioned 18 U.S.C. § 113(e).

The courts could not agree on a rationale for admitting the testimony because none are convincing. A non-sexual-assault offense does not qualify as a "crime" of "sexual assault" under Rule 413(d). Nor does Rule 415 allow the introduction of evidence of an attempt "to engage in the conduct described in Rule 413(d)(2)" that is not the

---

[29] *See Rapp*, 2022 WL 5243030, at *1 n.4 ("Plaintiff's assumption that any crime characterized as sexual assault by state law qualifies is mistaken. In order to constitute 'sexual assault' for purposes of Rule 413(d), the conduct at issue must satisfy one of the five enumerated categories under that rule and, in addition, constitute a crime under either federal or state law.").

commission of "a crime under federal law or under state law." The new doctrine of the panel opinion that an "attempt" under Rule 413(d)(5) does not need to be a *criminal* attempt deprives the defendant of the ability to argue that the conduct would not qualify as an attempt under the relevant "federal law or … state law." The panel opinion dispensed with the requirement under Rule 415 to identify such a law.

## D

The district court did not admit the *Access Hollywood* tape pursuant to Rule 415 but the panel opinion proceeded as if it had. "[W]e conclude," the panel opinion explained, "that the district court did not abuse its discretion in admitting the recording pursuant to Rules 413(d)(2), 413(d)(5), and 415." 124 F.4th at 167. But the district court actually determined that "reliance on Rule 415 was unnecessary because the video was offered for a purpose other than to show the defendant's propensity to commit sexual assault." 683 F. Supp. 3d at 313 n.20. As a result, the district court "did not include the *Access Hollywood* tape in its instructions to the jury on the evidence of Mr. Trump's alleged sexual assaults of other women" that it admitted pursuant to Rule 415. *Id.* The district court instructed the jury that it should apply the definition of sexual assault in Rule 413(d) only when "determining whether Mr. Trump sexually assaulted or attempted to sexual[ly] assault Ms. Leeds or Ms. Stoynoff." App'x 2803. It said that "the definition of 'sexual assault' that I have just given you applies only to your determination of whether to consider the evidence concerning alleged assaults or attempted assaults on those other

women. It has no application to anything else in these instructions." *Id.* at 2804.[30]

That difference in treatment means that the holding of the panel opinion that the tape was admissible under Rule 404(b) makes a difference. If the admissibility of the tape depended only on Rule 415, a court would need to decide whether the erroneous jury instruction mattered to the verdict. And a court would also need to identify the "crime" of "sexual assault" that the *Access Hollywood* tape described. In its preliminary ruling, the district court said only that "a jury reasonably could find … that Mr. Trump admitted in the *Access Hollywood* tape that he in fact has had contact with women's genitalia in the past without their consent, or that he has attempted to do so. … Accordingly, the tape satisfies Rule 415 by virtue of Rule 413(d)(2) and (d)(5)." 660 F. Supp. 3d at 203. The panel opinion said only that "the district court did not abuse its discretion in admitting the recording pursuant to Rules 413(d)(2), 413(d)(5), and 415." 124 F.4th at 167. No court identified "a crime under federal law or under state law," even under the loose interpretation of that requirement the courts applied to the other evidence.

---

[30] The statement insists that the district court still relied on Rule 415 to admit the *Access Hollywood* tape. *See post* at 7 n.7. It does so in reliance on an order the district court issued in a different but related case eight months after the notice of appeal was filed in this case. In that order, the district court said that it admitted the tape "under Rule 415," citing its pretrial ruling, and "alternatively … under Rule 404(b)," citing the post-trial ruling in which it concluded that reliance on Rule 415 was unnecessary. *Carroll v. Trump*, No. 20-CV-7311, 2024 WL 97359, at *9 (S.D.N.Y. Jan. 9, 2024). Whatever the district court later claimed about admissibility, it instructed the jury that the standards for considering evidence admitted under Rule 415 did not apply to the tape. *See* App'x 2801-04.

As noted above, the tape describes an unspecified but unsuccessful advance toward Nancy O'Dell following a furniture-shopping excursion. And it includes the general statement about being "automatically attracted to beautiful" women and "kissing them" because "when you're a star they let you" engage in such conduct, including the touching of genitals. App'x 2883. It is difficult to evaluate whether the tape provides evidence of a crime of sexual assault under federal or state law because neither the district court nor the panel opinion identified such a law.

Still, the account of the interaction with O'Dell does not include any details of sexual conduct—let alone conduct that would constitute the commission of a crime of sexual assault under federal or state law. *See Jacques*, 684 F.3d at 327 (upholding the exclusion of evidence of prior alleged acts of sexual assault when there was "murkiness … with regard to whether, or how much, coercion was involved"). And even if the general statement—about what women might allow celebrities to do—could be interpreted to describe unwanted sexual conduct, it does not describe a particular act constituting a crime. Courts do not normally treat a statement describing conduct in general—such as "generic references to violence"—as probative of criminal conduct unless the statement has "a close relationship to a specific criminal act." *United States v. Jordan*, 714 F. Supp. 3d 158, 166-67 (E.D.N.Y. 2024). In other words, the speaker must reference "specific facts that might relate to his participation" in physical conduct that could be charged as a crime. *Id.* at 165. It is even more important to adhere to that principle when applying an evidentiary rule that requires the admitted evidence to

show that the defendant "committed" a "crime." Fed. R. Evid. 415(a), 413(d).[31]

\*   \*   \*

The trial in this case consisted of a series of indefensible evidentiary rulings. The panel opinion sidestepped the law of defamation, diminished the bar on propensity evidence, weakened Rule 403's limitation on prejudicial evidence, and expanded extratextually the propensity evidence that can be admitted under Rules 413-15. Following the panel opinion, a district court may admit testimony against a criminal defendant to show a propensity for sexual assault based on alleged non-criminal acts that occurred more than four decades earlier with little consideration of prejudice under Rule 403.

The result was a jury verdict based on impermissible character evidence and few reliable facts. No one can have any confidence that the jury would have returned the same verdict if the normal rules of evidence had been applied. Because I would apply the same rules in every case regardless of the identity of the defendant, I dissent from the denial of rehearing *en banc*.

---

[31] *See* Edward J. Imwinkelried, 1 Uncharged Misconduct Evidence § 2:17 (2024) (explaining that, unlike "the common law and Rule 404(b)," Rules 413-15 require that, "to qualify for admission, the act must amount to a criminal offense").